**FILED**

IN THE UNITED STATES DISTRICT COURT FOR   MAY 1 7 2005
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CLERK
U. S. DISTRICT COURT
MIDDLE DIST. OF ALA.

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 2:05CR 119-F |
| | ) | [18 U.S.C. § 371; |
| DON EUGENE SIEGELMAN and | ) | 18 U.S.C. § 666(a) |
| RICHARD SCRUSHY | ) | 18 U.S.C. § 2] |
| | ) | |
| | ) | INDICTMENT |

THE GRAND JURY CHARGES THAT:

## COUNT ONE

### (18 U.S.C. § 371)

### Introduction

At all times material to this Indictment:

1.    Defendant DON EUGENE SIEGELMAN was elected as the Governor of the State of Alabama (the "State") in November 1998, and was defeated for re-election in November 2002; he held the position of Governor from January 1999 through January 2003.

2.    Defendant RICHARD SCRUSHY is the former Chief Executive Officer of Healthsouth, Inc., ("Healthsouth") a corporation that provides healthcare services in the State.

**SCANNED**

3

3.    The Alabama Education Lottery Foundation (AELF), later known as the Alabama Education Foundation (AEF), was a non-profit organization incorporated under the laws of the State for the purpose of raising and spending funds to promote the passage of a statewide referendum to establish a lottery, and as Governor, SIEGELMAN sought passage of this lottery referendum.

4.    The Alabama Certificate of Need Review Board (CON Board) was a part of the executive branch of the State with authority over the provision of healthcare services in the State; the Governor of the State had the sole authority to appoint the members of the CON Board to conduct its business.

5.    The executive branch of the State received benefits in excess of $10,000 in every twelve month period from January 1998 to the present pursuant to federal programs providing assistance to the State.

## THE CONSPIRACY AND ITS OBJECTIVES

6.    From in or about November 1998, and continuing through on or about May 23, 2000, the exact dates being unknown to the grand jury, in Montgomery County, Alabama, in the Middle District of Alabama and elsewhere, the defendants herein,

DON EUGENE SIEGELMAN and
RICHARD SCRUSHY

and others known and unknown to the grand jury, knowingly did conspire and

agree together to commit the following offenses among others against the United States:

7.    To knowingly and corruptly violate Title 18, United States Code, Section § 666(a)(1)(B), an offense against the United States, in that they agreed that SIEGELMAN would accept $500,000 from SCRUSHY to be influenced and rewarded in connection with official acts concerning the membership and business of the CON Board.

8.    To knowingly and corruptly violate Title 18, United States Code, Section § 666(a)(2), an offense against the United States, in that they agreed that SCRUSHY would give SIEGELMAN $500,000 with the intent to influence and reward SIEGELMAN in connection with official acts concerning membership and business of the CON Board.

9.    To knowingly violate Title 18, United States Code, Section 1956(a)(1)(B)(i), an offense against the United States, in that they agreed to conduct financial transactions involving the use of a financial institution which is engaged in, and the activities of which affect, interstate or foreign commerce, and which financial transactions involved the proceeds of specified unlawful activity, that is bribery concerning programs receiving Federal funds, in violation of 18 U.S.C. § 666(a), to wit:  the deposit of a check, in the amount of $250,000, drawn

on Integrated Health Services, Inc., and made payable to the AELF, into the checking account of the AEF at First Commercial Bank, in Birmingham, Alabama, and the direct application of a check, in the amount of $250,000, drawn on Healthsouth and made payable to the AEF, to reduce by a similar amount an indebtedness on an outstanding loan of the AEF at First Commercial Bank in Birmingham, Alabama, knowing these transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

### The Purpose of the Conspiracy

10.    It was the purpose of the conspiracy for SIEGELMAN to obtain $500,000 from SCRUSHY to influence and reward SIEGELMAN in connection with official acts concerning membership and business of the CON Board, and to hide and conceal the nature of their conspiracy and the acts committed in furtherance of the conspiracy.

### Manner and Means of the Conspiracy

11.    It was a part of the conspiracy that SIEGELMAN and SCRUSHY

would and did agree that SIEGELMAN would appoint SCRUSHY to the CON Board and, in return, SCRUSHY would give SIEGELMAN $500,000 to aid SIEGELMAN's efforts associated with the lottery campaign.

12.    It was a further part of the conspiracy that SIEGELMAN would and did use his official position as Governor to appoint SCRUSHY to the CON Board.

13.    It was a further part of the conspiracy that SCRUSHY would and did pay $500,000 to SIEGELMAN in two installments of $250,000 each; one installment paid before SIEGELMAN appointed SCRUSHY to the CON Board, and one installment paid after the appointment.

14.    It was a further part of the conspiracy that SIEGELMAN and SCRUSHY would and did take steps to hide and conceal the true nature of their conspiracy by, among other things:    arranging that the first of the $250,000 payments would be made in the form of a check from a third-party corporation; omitting the first $250,000 payment from official reports that were required to list the contributions to the AELF; and using the second check for $250,000 to reduce a debt for which SIEGELMAN had obligated himself as a personal guarantor.

## OVERT ACTS

15.    Between on or about November 8, 1998, and July 26, 1999, the

exact dates being unknown to the grand jury, SIEGELMAN and SCRUSHY engaged in one or more conversations during which they reached an agreement whereby SIEGELMAN agreed to appoint SCRUSHY to the CON Board and SCRUSHY agreed to give $500,000 to SIEGELMAN.

16.     Between in or about April 1999, and on or about July 19, 1999, the exact dates being unknown to the grand jury, SCRUSHY, aided and abetted by others known and unknown to the grand jury, brokered an arrangement involving Healthsouth, an investment bank known to the grand jury that had a business relationship with Healthsouth, and Integrated Health Services, Inc., ("IHS") whereby the investment bank would forgive an indebtedness of IHS in the approximate amount of $250,000 in exchange for IHS issuing a check for $250,000 to the AELF.

17.     On or about July 18, 1999, the exact date being unknown to the grand jury, IHS issued a check in the amount of $250,000, made payable to the AELF, and on or about that same date, caused this check to be delivered to SCRUSHY.

18.     Between on or about July 19, 1999, and on or about July 26, 1999,

the exact dates being unknown to the grand jury, SCRUSHY personally met with SIEGELMAN at the Governor's office in Montgomery, Alabama, and gave SIEGELMAN the $250,000 check from IHS.

19.    On or about July 26, 1999, the exact date being unknown to the grand jury, SIEGELMAN appointed SCRUSHY to the CON Board.

20.    On or about November 5, 1999, the exact date being unknown to the grand jury, SIEGELMAN caused a checking account to be opened at First Commercial Bank in Birmingham, Alabama, in the name of the Alabama Education Foundation (AEF) and caused to be deposited into that account the $250,000 check from IHS made payable to the AELF.

21.    SIEGELMAN caused the AELF to file with the Office of Secretary of State certain reports of campaign contributions made to the AELF during the lottery referendum campaign that were false in that the reports did not report the IHS check given to SIEGELMAN by SCRUSHY.

22.    On or about March 9, 2000, the exact date being unknown to the grand jury, SIEGELMAN executed a personal guarantee for a loan to the AEF in the amount of approximately $730,000 at First Commercial Bank in Birmingham, Alabama, and the proceeds of that loan were used to satisfy an indebtedness of approximately the same amount incurred by the Alabama Democratic Party at

Colonial Bank to finance support of the lottery referendum, which was held on or about October 12, 1999.

23.    On or about March 13, 2000, the exact date being unknown to the grand jury, SIEGELMAN caused the $250,000 check from IHS to be used to reduce the amount of the lottery-related debt for which he was personally liable.

24.    Between on or about May 18, 2000, and on or about May 23, 2000, the exact dates being unknown to the grand jury, SCRUSHY and SIEGELMAN met in Birmingham, Alabama, where SCRUSHY gave SIEGELMAN a second $250,000 in the form of a check in the amount of $250,000 drawn on a Healthsouth bank account and made payable to the AEF.

25.    On or about May 23, 2000, the exact date being unknown to the grand jury, SIEGELMAN caused the Healthsouth check in the amount of $250,000 to be used to further reduce the amount of the lottery-related debt for which he was personally liable.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

### (18 U.S.C. § 666(a)(1)(B))

26.    The executive branch of the State of Alabama received benefits in

excess of $10,000 in every twelve month period from January 1998 to the present pursuant to federal programs providing assistance to the State.

27.    From on or about July 19, 1999, and continuing through on or about May 23, 2000, the exact dates being unknown to the grand jury, in Montgomery County, Alabama, within the Middle District of Alabama and elsewhere, the defendant

## DON EUGENE SIEGELMAN

being an agent of a State government, aided and abetted by defendant

## RICHARD SCRUSHY

and others known and unknown to the grand jury, which State government received federal assistance in excess of $10,000 in a one-year period, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such State government involving anything of value of $5,000 or more, to wit:   defendant DON EUGENE SIEGELMAN, being Governor of the State of Alabama, corruptly solicited, demanded, accepted, and agreed to accept $500,000 from defendant RICHARD SCRUSHY, intending to be influenced and rewarded in connection with the appointment of defendant RICHARD SCRUSHY to the Alabama

Certificate of Need Review Board. All done in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNT THREE

### (18 U.S.C. § 666(a)(2))

28. The executive branch of the State of Alabama received benefits in excess of $10,000 in every twelve month period from January 1998 to the present pursuant to federal programs providing assistance to the State.

29. From on or about July 19, 1999, and continuing through on or about May 23, 2000, the exact dates being unknown to the grand jury, in Montgomery County, Alabama, within the Middle District of Alabama and elsewhere, the defendant

### RICHARD SCRUSHY

aided and abetted by defendant

### DON EUGENE SIEGELMAN

and others known and unknown to the grand jury, did corruptly give, offer, and agree to give anything of value to any person, with the intent to influence and reward an agent of State government, which State government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such State government involving

-10-

anything of value of $5,000 or more, to wit: defendant SCRUSHY corruptly gave, offered, and agreed to give $500,000 to defendant DON EUGENE SIEGELMAN, Governor of the State of Alabama, intending to influence and reward defendant DON EUGENE SIEGELMAN in connection with the appointment of defendant RICHARD SCRUSHY to the Alabama Certificate of Need Review Board. All done in violation of Title 18, United States Code, Sections 666(a)(2) and 2.

A TRUE BILL:

_____
FOREPERSON

_____
LOUIS V. FRANKLIN, SR.
Acting United States Attorney
Middle District of Alabama


NOEL HILLMAN
Chief
U.S. Department of Justice
Criminal Division
Public Integrity Section

By:

_____
Richard C. Pilger
Trial Attorney