RECEIVED

2005 DEC 21 P 4: 37

DEBRA P. HACKETT, CLK.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA        )
                                )
                                )        CRIMINAL NO. 2:05-CR-119-F
                                )
DON EUGENE SIEGELMAN,           )        FILED UNDER SEAL
RICHARD M. SCRUSHY, et al       )
                                )

## UNITED STATES' RESPONSE TO DEFENDANTS SCRUSHY'S AND SIEGELMAN'S MOTIONS FOR RECONSIDERATION OF MAGISTRATE'S ORDER ON RECUSAL

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting

United States Attorney for the Middle District of Alabama, and hereby files its Response to

Defendants Scrushy's and Siegelman's Motions for Reconsideration of Magistrate's Order and

Memorandum Opinion Denying Defendants' Motions for Recusal (hereinafter collectively, the

"Motions for Reconsideration"). This Court should deny the Motions to Reconsider because

Defendants have not shown that Magistrate Judge Coody is required to recuse himself under either

Title 28, United States Code, Section 455(a) or (b)(5)(iii). Furthermore, this Court should reject

Defendants' requests for an evidentiary hearing on this matter and for Judge Coody to reassign this

issue to a different magistrate judge because Judge Coody has employed the proper procedure in

ruling on Defendants' recusal motions. As grounds for support of its position, the United States

submits the following:

**I.     Judge Coody Was Correct to Rule on Defendants' Motions to Recuse Without Holding an Evidentiary Hearing or Reassigning this Matter to a Different Magistrate Judge**

Defendants contend that the proper procedure for resolving the litigation on the recusal issue

is for Judge Coody to reassign this matter to a different magistrate judge for an evidentiary hearing

and decision. Well-established precedent from this and other Circuits refute Defendants' contention.

Rather, Judge Coody followed the correct procedure in rendering his ruling by undertaking an independent investigation of the facts, not holding an evidentiary hearing, and not reassigning this matter to a different magistrate judge.

Although Section 455 does not specify any particular procedure for ruling on a recusal motion, except for its waiver provisions, see 13A Charles Alan Wright et al., Fed. Prac. & Proc. Juris. 2d § 3550 (Suppl. 2005), the section is specifically addressed to the judge whose recusal is in question. Section 455(a) states that "[a]ny . . . judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). Similarly, Section 455(b) provides that "[h]e shall also disqualify himself" under several other circumstances enumerated in that section. 28 U.S.C. § 455(b) (emphasis added). Compare 28 U.S.C. § 144 (requiring "another judge" to rule on a recusal motion if the supporting affidavit meets the threshold "sufficiency" test).

"The weight of authority indicates that it is perfectly proper, indeed the norm, for the challenged judge to rule on a recusal motion pursuant to section 455." Recusal: Analysis of Case Law Under 28 U.S.C. §§ 455 & 144 Part 1. VII (Federal Judicial Center 2002). Judge Johnson, in In re Corrugated Container Antitrust Litigation, 614 F.2d 958 (5th Cir.), cert. denied, 449 U.S. 888 (1980),[1] noted the substantial precedent for this position by stating that:

> No case referred to by defendants or located in an exhaustive search of the authority suggests any negative inference that can be drawn from the fact that the judge to whom a motion to recuse [pursuant to 28 U.S.C. §§ 144 and 455] is directed rules on the motion. "[I]t is for the judge who is the object of the affidavit [of bias] to pass

---

[1]Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (adopting as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to close of business on September 30, 1981).

on its sufficiency." 13 [Charles Alan] Wright, [Arthur R.] Miller & [Edward H.] Cooper, [Federal Practice and Procedure] § 3551 at 375. "[W]hile the statute undoubtedly permits referring the disposition of an affidavit of bias to another judge, . . . the adoption of such a procedure as a general rule would be unwise." United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978), cert. denied, 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979) (citation omitted); see United States v. Olander, 584 F.2d 876, 883 (9th Cir. 1978); In re Union Leader Corp., . . . 292 F.2d [381,] at 384 [(1st Cir.), cert. denied, 368 U.S. 927 (1961)].

Id. at 963 n. 9. See also Schurz Communications, Inc. v. FCC, 982 F.2d 1057, 1059 (7th Cir. 1992) (Posner, J.) ("'Section 455 clearly contemplates that decisions with respect to disqualification should be made by the judge sitting in the case, and not by another judge.'") (quoting United States v. Balistrieri, 779 F.2d 1191, 1202-03 (7th Cir. 1985), cert. denied, 475 U.S. 1094 (1986)); 13A Wright, supra, § 3550 ("it is entirely proper for the challenged judge to pass on the matter himself").

While the judge has the discretion to transfer a recusal motion, as Judge Johnson noted, a transfer of a recusal motion is "unwise." Other courts have also discouraged such procedure. In Chitimacha Tribe v. Harry L. Laws Co., Inc., 690 F.2d 1157, 1162 (5th Cir. 1982), cert. denied, 464 U.S. 814 (1983), the Fifth Circuit explained the reasons to avoid this "irregular" practice:

> Although, the practice has been permitted in the past, see e.g., United States v. Grinnell Corp., 384 U.S. 563, 582-83 n. 13, 86 S. Ct. 1698, 1709-10 n. 13, 16 L. Ed. 2d 778 (1966); Tenants & Owners in Opposition to Redevelopment v. United States Dep't of Housing & Urban Dev., 338 F.Supp. 29, 31 (N.D.Cal.1972), it is not to be encouraged. The challenged judge is most familiar with the alleged bias or conflict of interest. He is in the best position to protect the nonmoving parties from dilatory tactics. See United States v. Haldeman, 559 F.2d 31, 131 (D.C.Cir.1976), cert. denied, 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977) (submitting § 144 motions to fellow judges for decision is "at most permissive."). Referring the motion to another judge raises problems of administrative inconvenience and delay. Parrish v. Board of Com'rs of Alabama State Bar, 524 U.S. 98, 107 (5th Cir.) (Gee, J., specially concurring), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1975). Although the matter is ultimately within the discretion of the challenged judge, recusal motions should only be transferred in unusual circumstances.

See also 32 Am. Jur. 2d Federal Courts § 54 (2005) (noting that only exceptional circumstances justify the transfer of a recusal motion).

Even in In re Lieb, 112 B.R. 830 (Bankr. W.D. Tex. 1990), a case upon which Defendants heavily rely, the court recognized that "[t]he law is well settled that it is entirely proper for the challenged judge to pass on the disqualification matter himself," id. at 837, and that reassignment to another judge is "'by no means typical or required to insure a just ruling on such motions.'" Id. (quoting In re Demjanjuk, 584 F.Supp. 1321, 1322 n.1 (N.D. Ohio 1984)). The Lieb court noted that permitting the transfer of recusal motions could lead to "delay and disruption of the administration of the courts" and that the judge of first instance "knows better than anyone else whether he could give the parties a fair and impartial trial." Id. (quotations omitted). See also In re Martinez-Catala, 129 F.3d 213, 220 (1st Cir. 1997) (recognizing that permitting the challenged judge to rule on the motion to recuse discourages "judge shopping").

Defendants' reliance on In re Lieb is also misplaced in regard to their argument that an evidentiary hearing is required prior to a ruling on their motions to recuse. The court in Lieb pronounced that "[a] motion for disqualification does not confer upon Defendants a right to make a record in open court nor does it confer upon them a right to an evidentiary hearing." 112 B.R. at 835. See also 13A Wright, supra, § 3350 (a Section 455 motion can be supported by an affidavit, a verified memorandum, or a statement of facts in some other form). Defendants also point to Levitt v. University of Tex., 847 F.2d 221 (5th Cir.), cert. denied, 488 U.S. 984, 109 S.Ct. 536, 102 L.Ed. 2d 567 (1988), to support their demand for an evidentiary hearing. See Scrushy's Mot. for Recons. 4-5. Levitt is unpersuasive, however, because the great weight of authority, including Eleventh Circuit precedent, see supra, establishes that the proper procedure is for the judge to whom the

motion to recuse is addressed to rule on the motion without an evidentiary hearing.  See In re Corrugated Container Antitrust Litigation, 614 F.2d at 963 n. 9.  Other than Lieb, a search of the case law reveals no other published case that has cited Levitt for Defendants' characterization of its holding for the procedure to decide a motion to recuse.

In further contesting Judge Coody's rejection of their request for an evidentiary hearing before a different judge, Defendants erroneously rely upon the following passage in United States v. Cerceda, 139 F.3d 847 (11th Cir.), reh'g granted and opinion vacated, 161 F.3d 652 (11th Cir. 1998) (en banc), aff'd in part, rev'd in part, 172 F.3d 806 (11th Cir.) (on rehearing en banc) (per curiam), cert. denied, 528 U.S. 985 (1999): "'[C]ases within § 455(a) are extremely fact driven "and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence."'" Id. at 853 (quoting Nichols v. Alley, 71 F.3d 347, 351 (10th Cir. 1995)) (further quotation omitted).  This statement, however, does not support the assertion that Defendants are entitled to an evidentiary hearing.  Neither Cerceda nor any case citing to it adopts Defendants' assertion that a judge is required to hold an evidentiary hearing before ruling on a motion to recuse.  Rather, precedent dictates that a court, in evaluating a motion to recuse, must itself conduct an independent investigation of the facts.  See, e.g., United States v. Bremers, 195 F.3d 221, 225 (5th Cir. 1999) ( "[t]he analysis of a 455(a) claim must be guided . . . by an independent examination of the facts and circumstance of the particular claim"), cert. denied, 538 U.S. 1024 (2003).

In fact, Judge Coody undertook the proper procedure in ruling on Defendants' Motions to Recuse by conducting an independent investigation of his relationship with his relatives and his

interaction with Marcato's daughters. In <u>United States v. Morrison</u>, 153 F.3d 34 (2d Cir. 1998), the appellate court approved of the district judge's making "reasonable efforts" to ascertain her husband's and friend's possible involvement with the defendant. <u>Id.</u> at 49 n.4. Having the judge, rather than the parties, conduct the factual investigation is the preferred procedure because the "practice of advising counsel of a possible conflict, and asking counsel to indicate their approval of a judge's remaining in a particular case is fraught with potential coercive elements which make this practice undesirable." <u>United States v. Kelly</u>, 888 F.2d 732, 745-46 (11th Cir. 1989). Defendants, however, claim that they need further information before they can assuage their concerns about Judge Coody's impartiality and pose a series of questions with which to examine Judge Coody and his relatives. <u>See</u> Scrushy's Mot. for Recons. 6 n.1, 20 n.4. Defendants' desire to undertake such an inquisition of Judge Coody and his relatives aptly demonstrates the dangers associated with an evidentiary hearing about which the <u>Kelly</u> court warned – the practice has the unwanted effects of unduly scrutinizing the judge and delaying the proceedings.

Moreover, the Eleventh Circuit has reasoned that, just as a "[r]ecusal cannot be based on 'unsupported, irrational or highly tenuous speculation,'" neither can a request for an evidentiary hearing on that motion be so based. <u>United States v. Cerceda</u>, 188 F.3d 1291, 1293 (11th Cir. 1999) (per curiam) (quoting <u>In re United States</u>, 666 F.2d 690, 694 (1st Cir. 1981)). "Rather, a charge of partiality must be supported by facts." <u>United States v. Greenough</u>, 782 F.2d 1556, 1558 (11th Cir. 1986) (per curiam). Defendants cannot base their request for an evidentiary hearing on speculation, assumptions, or unanswered questions. "[C]onjecture and speculation . . . , without more, are insufficient to warrant . . . the evidentiary hearing that [the defendant] requested to pursue this line of inquiry." <u>Cerceda</u>, 188 F.3d at 1293.

Defendants' demand for an evidentiary hearing also discounts the statutory and ethical obligations under which Judge Coody must make his recusal decision. "[A] judge is under an affirmative, self-enforcing obligation to recuse himself sua sponte whenever the proper grounds exist" pursuant to Section 455.[2] Kelly, 888 F.2d at 744. Further, "judges have an ethical duty to 'disclose on the record information which the judge believes the parties or their lawyers might consider relevant to the question of disqualification.'" American Textile Mfrs. Institute, Inc. v. The Limited, Inc., 190 F.3d 729, 742 (6th Cir. 1999) (quoting Porter v. Singletary, 49 F.3d 1483, 1489 (11th Cir. 1995)), cert. denied, 529 U.S. 1054 (2000).[3] "'[B]oth litigants and counsel should be able to rely upon judges to comply with their own Canons of Ethics.'" Id. (quoting Singletary, 49 F.3d at 1489).

Therefore, "litigants (and, of course, their attorneys) should assume the impartiality of the presiding judge, rather than pore through the judge's private affairs and financial matters." Id. In light of a judge's ethical and statutory responsibilities, an attorney for a party should not demand an inquisition to question a judge about his lack of impartiality. See Porter, 49 F.3d at 1489. See also American Textile Mfrs. Institute, 190 F.3d at 742 ("a litigant's duty to investigate the facts of his case does not include a mandate for investigations into a judge's impartiality"). "Such investigations, of course, would undermine public confidence in the judiciary and hinder, if not

---

[2]In language virtually identical to 28 U.S.C. § 455(a), Canon 3(C)(1) of the Code of Conduct for United States Judges provides, "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned." Code of Judicial Conduct, Canon 3(C)(1), reprinted in 175 F.R.D. 363, 368 (1998).

[3]See also ABA Model Code of Judicial Conduct Canon 3(E)(1) cmt. (2000) (providing that a judge is obligated to "disclose on the record any information that a judge believes the parties or their lawyers might consider relevant to the issue of disqualification, even if the judge believes there is no real basis for disqualification").

disrupt, the judicial process – all to the detriment of the fair administration of justice." Porter, 49 F.3d at 1489.

A review of the instant proceedings shows that Judge Coody complied with his ethical and statutory obligations by disclosing to the parties his relationship with his son-in-law and daughter and his interaction with Marcato's daughters. He properly conducted an investigation into those areas to determine whether recusal was required. Judge Coody correctly conducted his inquiry without conducting an evidentiary hearing or transferring this matter to a different magistrate judge. He has followed the letter and the spirit of the law governing the issue of recusal. The parties have no reason to question Judge Coody's impartiality and in particular, Defendants have in no way rebutted the presumption that Judge Coody is impartial. Ergo, this Court should deny Defendants' request for Judge Coody to transfer this matter to a different magistrate judge and for an evidentiary hearing.

## II.    Neither Judge Coody's Relationship with His Relatives nor His Interaction with Marcato's Daughters Requires His Recusal Under Section 455(a) or (b)(5)(iii)

Defendants Scrushy and Siegelman assert that recusal is required under 28 U.S.C. § 455(b)(5)(iii) because Judge Coody's relatives have "an interest that could be substantially affected by the outcome of [this] proceeding," Scrushy Mot. for Recons. 8-14, and under 28 U.S.C. § 455(a) because Judge Coody's "impartiality might reasonably be questioned" on the basis of (a) his relatives' employment and share-holding relationships with HealthSouth, Scrushy Mot. for Recons. 14-19, and (b) his interaction with the daughters of prospective witness Forrest "Mac" Marcato, who made extrajudicial comments to Judge Coody about their father's business dealings with the Alabama Department of Transportation. See Scrushy Mot. for Recons. 19-21; Siegelman's Mot. for Recons.

3-6. None of Defendants' contentions has merit. They rest on several erroneous premises (e.g., that there is a significant relationship between the instant case and the civil litigation against HealthSouth in which Judge Coody's relatives are putative plaintiffs; that the government will attempt to exploit that relationship by attempting to show that the bribery, conspiracy, and honest services fraud scheme charged in the instant indictment was part of the fraud at HealthSouth at issue in the civil litigation and Defendant Scrushy's previous criminal trial; that Judge Coody's relatives have an interest in the civil litigation that could be substantially affected by the outcome of the instant case; and that Judge Coody's exposure to the comments of Marcato's daughters sufficed to bias him against Defendants).

Defendants' assertions could not be more misplaced. No significant relationship exists between this case and the civil litigation involving HealthSouth and Defendant Scrushy's prior criminal case. As explained more fully infra, and contrary to Defendants' assertions, the United States in no way intends "to offer considerable evidence relating to the allegations of the massive fraud and wrongdoing at HealthSouth." Scrushy's Mot. for Recons. 17. The counts against Scrushy and Siegelman herein focus on the bribe, conspiracy, and honest services mail fraud scheme involving them, namely, that Scrushy paid Siegelman $500,000 for HealthSouth to have membership on, representation at, and influence over the CON Board and that they agreed to commit, and committed, honest services mail fraud through, inter alia, this unlawful bribe and by using Scrushy's seat on the CON Board to affect the interests of HealthSouth and its competitors. Moreover, any interest that Judge Coody's relatives have in the civil litigation is remote and speculative. Finally, the comments of Marcato's daughters are plainly insufficient to cause bias in a judicial officer like Judge Coody.

A.      **The Law of Recusal and Standard of Review**

Defendants assert that Sections 455(a) and (b)(5)(iii) compel the recusal of Judge Coody. These provisions provide that a judge disqualify himself "in any proceeding in which his impartiality might reasonably be questioned," or where "[h]e or his spouse, or a person within the third degree of relationship to either of them, or the spouse of such a person . . . [i]s known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C.§§ 455(a) and (b)(5)(iii), respectively.  Under Section 455, the standard for recusal is one of objective reasonableness, that is, "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir. 1988), cert. denied, 490 U.S. 1066 (1989); see Kelly, 888 F.2d at 744-45. The requirement of reasonableness is important, because "there is the need to prevent parties from . . . manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." FDIC v. Sweeney, 136 F.3d 216, 220 (1st Cir. 1998) (internal quotation marks omitted). Accordingly, "a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation." Greenough, 782 F.2d at 1558. A judge's failure to recuse is reversible error only where a conflict of interest is readily apparent and the risk that the judge will not be impartial is substantial. See United States v. Young, 39 F.3d 1561, 1570 (11th Cir. 1994).

A district court's denial of a motion to recuse is reviewed for abuse of discretion. See Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000), cert. denied, 531 U.S. 1191 (2001). A ruling on a motion for reconsideration is likewise reviewed for abuse of discretion. See Sanderlin v. Seminole Tribe of Florida, 243 F.3d 1282, 1285 (11th Cir. 2001). In the present case, Judge Coody did not

abuse his discretion in denying Defendants' original motions for recusal, and because they have

shown no compelling justification for revisiting those rulings, their Motions for Reconsideration

should be denied as well.

**B.    Judge Coody's Relationship with His Relatives Does Not Require His Recusal Under Section 455(a) or (b)(5)(iii)**

**1.    Recusal Is Not Required Under Section 455(b)(5)(iii)**

Defendants contend, see Scrushy Mot. for Recons. 10-11, 14, that Judge Coody's relatives

have a direct financial interest in the civil securities litigation, and that their direct financial interest

will be substantially affected by the outcome of this criminal case. For several reasons, Defendants

are wrong. Analysis of the recusal issue under Section 455(b)(5)(iii) may begin with the fact that

Judge Coody's son-in-law is a vice-president of HealthSouth and, along with Judge Coody's

daughter, a HealthSouth shareholder, but the analysis cannot end there. This Circuit's cases make

it clear that the recusal question is to be viewed from the perspective of a disinterested lay observer

who is fully informed of the facts underlying the recusal motion. See e.g., Parker, 855 F.2d at 1524.

In the present case, such a fully informed observer would know that no class has yet been certified

in the private securities litigation; that a class may never be certified in that litigation, with the result

that Judge Coody's relatives may never have an "interest" in that litigation; that even if a class is

certified, Judge Coody's relatives will have an opportunity to be excluded from the class, see Fed.

R. Civ. P. 23(c)(2)(B) (providing for notice of availability of exclusion); and that, if they do choose

to be excluded, they will of course not have any "interest" in the litigation, let alone one that could

be "substantially affected."[4] This litany of contingencies alone shows that any interest that Judge

---

[4] Though he has yet to answer the plaintiffs' class action complaint, Scrushy may likely argue against class certification in the civil litigation and, thus, claim that Judge Coody's relatives have no recognizable interest in that proceeding.

Coody's relatives may have in the private civil litigation against Scrushy is at most remote and contingent, and therefore cannot be the "direct financial interest" that Defendants claim it to be. See Jefferson County v. Acker, 92 F.3d 1561, 1582 (11th Cir. 1996) (a remote, contingent benefit is not a "financial interest" within the meaning of the statute; it is, rather, an "other interest" that requires disqualification under a "substantially affected" test) (internal quotation marks and citation omitted); id. ("the term 'financial interest' is limited to direct interests and does not include remote or contingent interests) (emphasis in original), vacated on other grounds, 520 U.S. 1261 (1997). Indeed, the interest is so remote and so contingent that it cannot reasonably provide a basis for Judge Coody's recusal. See Gas Utils. Co. v. Southern Natural Gas Co., 996 F.2d 282, 283 (11th Cir. 1993) (a "'remote, contingent, and speculative interest is not a financial interest within the meaning of the recusal statute . . . nor does it create a situation in which a judge's impartiality might reasonably be questioned"') (quoting In re Placid Oil Co., 802 F.2d 783, 786 (5th Cir. 1986)), cert. denied, 510 U.S. 1042 (1994)). See also In re City of Houston, 745 F.2d 925, 929 n.7 (5th Cir. 1984) (approving the disparate treatment of class members and named parties in a recusal analysis).

Judge Coody's relatives' interest in the civil litigation involving HealthSouth is much more remote and speculative than the interests of family members of judges in other cases where recusal has not been mandated under Section 455. For example, in Hewlett-Packard Co. v. Bausch & Lomb, Inc., 882 F.2d 1556 (Fed. Cir. 1989), cert. denied, 493 U.S. 1076 (1990), a patent infringement case, Bausch & Lomb (B&L) argued that the judge was required to recuse under Section 455(a) because the judge's son had been an employee of Hewlett-Packard (HP) for the past fifteen years, including the time period of the litigation between the parties.[5] Id. at 1567-68. The appellate court upheld the

_____

[5]Notably, B&L did not raise the specter of recusal under Section 455(b)(5)(iii).

trial judge's non-recusal decision because the son's interest as a HP employee would not have been affected by the outcome of the patent infringement suit, even though the son was a member of HP's profit sharing plan. Id. at 1569. The judge's son was one of 83,000 HP employees, and a judgment adverse "to HP in this case [would] neither affect the son's employment status nor his financial interest . . . in the company." Id. The interest of Judge Coody's relatives in this case is more tenuous than the interest of the judge's son in Hewlett-Packard because HealthSouth, unlike HP in that case, is not a party to the instant litigation. Similarly, the outcome of this criminal proceeding will have no effect on Judge Coody's relatives' employment status or financial interests. See also In re Fox West Coast Theatres, 88 F.2d 212, 226 (9th Cir.) (holding disqualification not required where debtor employed bankruptcy judge's child), cert. denied, 301 U.S. 710 (1937).

Defendants further assert, see Scrushy Mot. for Recons. 11-14, 18-19, that Scrushy's conviction on any of the outstanding charges would be a "substantial and undeniable boon" to the plaintiffs in the civil securities action and thus substantially affect Judge Coody's relatives' interest in the HealthSouth litigation. Defendants are mistaken. The district court in the civil case will make every effort to ensure that no such boon accrues to the plaintiffs in that case. For example, if there is a trial in that case, the court will instruct the jurors at the close of all the evidence that they "must not let [their] decision be influenced in any way by sympathy, or by prejudice, for or against anyone," and that, in their deliberations, they "should consider only the evidence -- that is, the testimony of the witnesses and the exhibits . . . admitted in the record." Eleventh Circuit, Pattern Jury Instructions: Civil, § 2.2, at 13 (2000). Jurors are presumed to follow such instructions. See e.g., United States v. Shenberg, 89 F.3d 1461, 1472 (11th Cir. 1996), cert. denied, 519 U.S. 1117 (1997). Accordingly, any suggestion that the outcome of this proceeding will necessarily affect the private

-13-

securities litigation and the financial interests of Judge Coody's relatives should be rejected. Such an effect is at best remote, contingent, and speculative, and would not lead any reasonable observer who is fully informed of these circumstances to conclude that Judge Coody's recusal should be required. See Gas Utils. Co. v. Southern Natural Gas Co., 996 F.2d at 283 (remote, contingent, and speculative interest is not financial interest within meaning of recusal statute; it does not create situation in which judge's impartiality might reasonably be questioned). As a result, that remote, contingent, and speculative interest is no basis for Judge Coody's recusal.

Defendants repeatedly rely, see Scrushy Mot. for Recons. 9-11, 13-14, on Potashnick v. Port City Const. Co., 609 F.2d 1101, 1113-14 (5th Cir.), cert. denied, 449 U.S. 820 (1980), where the court said that Section 455(b)(5)(iii) "requires automatic disqualification when the judge in a proceeding knows of his relative's interest, and the outcome of the proceeding may potentially affect that interest." Potashnick, however, is inapposite. In that case, the judge's father was a senior partner in the law firm representing the plaintiff, and the court reasonably concluded that the judge's father had an interest in the case that could be affected by its outcome. This case is quite different -- the magistrate judge's relatives do not have an "interest" in this case. Their "interest" is in another, unrelated case, and as we have shown, that "interest" has not yet ripened, it may never ripen, and if it does ripen, there is no reasonable likelihood that it will be affected by the outcome of this case. Potashnick does not help Defendants.

Defendants also rely, see Scrushy Mot. for Recons. 15-16, on SCA Services, Inc. v. Morgan, 557 F.2d 110, 116 (7th Cir. 1977), but that case is inapposite for the same reasons that Potashnick is inapposite. Judge Coody's relatives simply do not have an "interest," financial or otherwise, in this case.

-14-

Finally, Defendants repeatedly assert that the counts charged against them pertain to the internal fraud at HealthSouth – the subject of the current private securities litigation and Scrushy's earlier criminal trial – and that the United States intends to offer in this case much evidence of Scrushy's involvement in the fraudulent activities occurring at HealthSouth. Defendants' assertions are simply erroneous. The counts charging Scrushy and Siegelman together as defendants in this indictment are based on their unlawful conduct surrounding Scrushy's paying, and Siegelman's accepting, a bribe to provide HealthSouth with membership on, representation at, and influence over the CON Board, and their agreement and activities to facilitate the use of Scrushy's seat on the CON Board to affect the interests of HealthSouth and its competitors. Consequently, Counts Three and Four charge Defendants with violating 18 U.S.C. § 666, Federal Program Bribery. Count Five charges Defendants with Conspiracy, namely a conspiracy to commit honest services mail fraud, in violation of 18 U.S.C. § 371. Counts Six, Seven, Eight, and Nine charge Defendants with Honest Services Mail Fraud in contravention of 18 U.S.C. §§ 1341 and 1346.

The United States has attached relevant portions of the grand jury testimony of Nick Bailey, Darrin Cline, Mike Martin, Bill McGahan, and Charles Taylor Pickett, see Exhibits A-E, to its Response to support its position that the charges against Defendants are not intertwined with the internal fraud at HealthSouth. A quick review of this testimony shows that this case is not premised in any way on the issues that were or are the subject of litigation involving Scrushy in the Northern District of Alabama. For example, this testimony shows that Scrushy paid Siegelman $500,000 in two installments of $250,000 and in return, Siegelman appointed Scrushy to the CON Board, despite Scrushy's having substantially supported Fob James in the 1998 gubernatorial election. See e.g., Exh. A (Bailey's testimony). The $500,000 from Scrushy to Siegelman was a product of threats, see

Exh. C (Martin's testimony), and Exh. D (McGahan's testimony), and unusual machinations, including the involvement of out-of-state corporations. See Exh. A, Exh. B (Cline's testimony), Exh. C, Exh. D, and Exh. E (Pickett's testimony). Immediately after Scrushy paid Siegelman the first $250,000 installment of the agreed upon $500,000, Siegelman appointed Scrushy to the CON Board and placed him in a leadership position. See Exh. A. Following his appointment to the CON Board, Scrushy paid the remaining $250,000 of the agreed upon $500,000 to Siegelman. See Exh. A. Siegelman's handling of the first $250,000 check from Scrushy did not comport with traditional campaign practices, much to the surprise of the lottery foundation's professional campaign fundraiser. See Exh. B.

In short, this snippet of the government's evidence against Defendants shows that the criminal charges returned against them are well supported and based on facts unrelated to the internal fraud scandal at HealthSouth. The United States has produced to Defendants this grand jury testimony, as well as additional grand jury testimony and other discovery, in part to allay any fear Defendants may have that the government intends to relitigate Scrushy's previous criminal trial or the ongoing private securities litigation.[6]

## 2.    Recusal Is Not Required Under Section 455(a)

Defendants argue that HealthSouth's employment of Judge Coody's son-in-law and his son-in-law's and daughter's ownership of HealthSouth stock would cause a reasonable observer to question his impartiality and mandate recusal under Section 455(a). See Scrushy's Mot. for Recons. 16. Defendants' arguments are specious for many of the same reasons provided supra. Notably, the

---

[6]Obviously, the Double Jeopardy Clause of the Fifth Amendment bars any subsequent prosecution of Scrushy for his actions which were charged in the criminal proceeding for which he was acquitted in the Northern District of Alabama. See Brown v. Ohio, 432 U.S. 161 (1977).

employment position and shareholdings of Judge Coody's relatives in HealthSouth, a nonparty to

the instant proceeding, are so attenuated from and insignificant to Judge Coody and the substance

of this criminal case that any reasonable person knowing all the facts would not question Judge

Coody's impartiality. What the <u>Hewlett-Packard</u> court noted in that case is especially true here:

> The risk to the impartiality of the judge is too small, and the risk of manipulation by
> litigants too large, to treat parent and child as one. A judge who cannot be expected
> to remain impartial through trivial matters such as this should not be sitting even
> when his family is unaffected.

<u>Hewlett-Packard</u>, 882 F.2d at 1598 (quotations omitted).

Here, Defendants assert that Judge Coody's relatives' possible inclusion in a plaintiffs class

requires recusal. They fail to recognize, however, the cases upholding a judge's non-recusal decision

where the judge himself is a member of the plaintiff class in the litigation over which he is presiding.

For example, in <u>In re City of Houston</u>, the district court judge, an African-American, was a member

of the plaintiffs class – all African- and Mexican-American registered voters in Houston, Texas –

that was challenging the city's at-large system of electing its council members. 745 F.2d at 926. The

district court judge denied the City's motion to recuse herself under Section 455. <u>Id.</u> at 927. On

review, the Fifth Circuit, after ruling that the judge was not a "party" for purposes of Section

455(b)(5), noted that the defendant had made no showing "to raise any issue of her impartiality,

either in fact or by appearance." <u>Id.</u> at 932. Consequently, the Court held that the district court was

correct to rule on the recusal motion herself and to deny the defendant's motion under Section 455.

<u>Id.</u> at 927, 932. <u>See also</u> <u>United States v. Alabama</u>, 828 F.2d 1532, 1541-43 (11th Cir. 1987)

(rejecting the defendants' argument that Section 455 required the district court judge, a minority, to

recuse himself from presiding over a civil rights class action where the judge and his children were

members of the class), cert. denied, 487 U.S. 1210 (1988); id. at 1542 n.36 (citing cases permitting judges to preside over cases in which they were members of the plaintiffs class).

Certainly, if recusal is not required under Section 455 when a judge is a member of the plaintiffs class, recusal is not required in this case where the judge's relatives are merely possible members of a yet certified class in an unrelated case not involving any parties to the present criminal proceeding. Judge Coody's relationship with his son-in-law and daughter simply would not cause an objective, disinterested, lay observer to entertain a significant doubt about his impartiality. See Parker, 855 F.2d at 1524.

### C.    Judge Coody's Interaction with Marcato's Daughters Does Not Require His Recusal under Section 455(a)

Contrary to the claims of both Scrushy and Siegelman, see Scrushy Mot. for Recons. 19-20; Siegelman Mot. for Recons. 3-7, the interaction between Judge Coody and the daughters of Marcato -- specifically, the judge's exposure to casual comments of the daughters that echoed their father's complaints about the Alabama Department of Transportation, see Order 2, -- is not a basis for recusal. The Eleventh Circuit has stated that "[t]he mere fact of having presided over previous criminal or civil trials involving the same parties does not mandate recusal from all future litigation involving those parties." Christo v. Padgett, 223 F.3d at 1334. See Jaffe v. Grant, 793 F.2d 1182, 1189 n.4 (11th Cir. 1986) ("Factual knowledge gained during earlier participation in judicial proceedings involving the same party is not sufficient to require a judge's recusal."), cert. denied, 480 U.S. 931 (1987). Moreover, this Circuit has held that a judge is not required to recuse himself because he has knowledge of a particular subject, as distinguished from knowledge of disputed evidentiary facts, based upon his experiences and associations. See United States v. State of

Alabama, 828 F.2d at 1543 (holding that district court judge was not required to recuse from hearing

a civil rights class action lawsuit because of his prior experience as a civil rights lawyer).  Further,

"judges are not required to recuse when they have a casual relationship with a victim, attorney,

witness, or litigant appearing before the court."  United States v. Sundrud, No. Cr. 05-775-DSF,

2005 WL 3027966 at 3* (C.D. Calif. Nov. 1, 2005).  In addition, "the mere fact . . . that a judge has

general familiarity with the facts of a case does not require recusal."  United States v. Cooper, 283

F. Supp. 2d 1215, 1224 (D. Kan. 2003) (quotations and citations omitted).  Recusal, as noted herein,

is required only when "the judge can not be impartial or a reasonable person would question the

judge's impartiality."  Sundrud, 2005 WL 3027966 at * 3.

Judge Coody's exposure to the casual, unsworn comments of a witness's teenaged daughters

about their father's business dealings with an Alabama state agency -- comments made to the judge

while he was serving as unofficial assistant coach of the daughters' high school debate team -- simply

does not rise to the level of intimate and personal knowledge about the parties and substance of this

criminal proceeding to warrant recusal. Judge Coody did not learn of any disputed evidentiary facts

from his interaction with Marcato's daughters. As the attached portions of the grand jury testimony

of Jim Allen and Marcato demonstrate, see Exhibits F & G, the gravamen of the charges against

Siegelman touching upon Marcato is that Siegelman extorted Allen; that Siegelman and Allen agreed

that, in exchange for Allen's paying Siegelman $40,000, Allen had the right to choose the Director

of ALDOT; that Siegelman and Roberts devised a scheme to defraud the State of Alabama of their

honest services; that a part of the scheme was for Siegelman and Roberts to take action in Allen's

best interests rather than in the public's best interest; that Siegelman and Roberts effectuated their

scheme by inter alia approving the State's purchase of Rainline, Marcato's patented process; and that

-19-

Siegelman attempted to extort $250,000 from Marcato during the 2002 gubernatorial campaign. See Exh. F (Allen's testimony) & Exh. G (Marcato's testimony). Judge Coody had no exposure to these facts from his interaction with Marcato's daughters and is thus not required to recuse himself from this proceeding. Judge Coody's oblique awareness of Marcato's dealings with the ALDOT simply would not lead an objective observer to question his impartiality, and does not justify the relief that Defendants' seek.

For these reasons, the United States submits that no objective, disinterested, lay observer fully informed of the facts underlying the grounds on which Defendants seek recusal, see Bolin v. Story, 225 F.3d 1234, 1239 (11th Cir. 2000), would entertain a significant doubt about Judge Coody's impartiality on the basis of complaints about ALDOT relayed to him by Marcato's daughters while he was coaching their high school debate team.

### III.    Conclusion

Defendants' Motions to Reconsider are flawed in several respects. Defendants demand the use of an improper procedure to decide the recusal issue, misconstrue the factual basis for the counts charged against them, and fail to recognize well-established precedent that compels the conclusion that Judge Coody may properly preside over this case. For these reasons, Defendants' Motions to Reconsider are due to be DENIED.

Respectfully submitted this the 21st day of December, 2005

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY


J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7135
Email: **jb.perrine@usdoj.gov**
ASB-9077-E31J

-21-

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DON EUGENE SIEGELMAN, | ) |
| RICHARD M. SCRUSHY, et al | ) |

CRIMINAL NO. 2:05cr119-F

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2005, I have mailed by United States Postal Service

the foregoing document to the following: Gordon Douglas Jones, Esq., 2323 2nd Avenue, North, Post

Office Box 10647, Birmingham, Alabama 35203, and Arthur W. Leach, Esq., 2310 Marin Drive,

Birmingham, Alabama 35243.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

J.B. Perrine
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax: (334)223-7135
E-mail: jb.perrine@usdoj.gov
ASB-9077-E31J