IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 2:05cr119-F |
| | ) | |
| RICHARD M. SCRUSHY, | ) | |
| Defendant. | ) | |

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION
TO DISMISS THE INDICTMENT ON GROUNDS OF PROSECUTORIAL
MISCONDUCT AND DELAY IN UNSEALING THE INDICTMENT**

Comes now the United States of America, by and through Louis V.

Franklin, Sr., Acting United States Attorney for the Middle District of Alabama,

and Andrew C. Lourie, Acting Chief of the Public Integrity Section of the

Criminal Division of the United States Department of Justice, to respond to

defendant Scrushy's motion to dismiss the superseding indictment on grounds of

prosecutorial misconduct and delay in unsealing the original indictment.  Doc. No.

132 (filed February 13, 2006).  Defendant Scrushy asserts that dismissal of the

superseding indictment is warranted because he claims he was prejudiced by what

he asserts was the improper sealing of the original indictment, improper delay in

unsealing that indictment, and improper maintenance of that secrecy when defense

1

counsel approached prosecutors to discuss Mr. Scrushy's possible cooperation.

Defendant Scrushy's assertions are without merit. The record shows that sealing

the original indictment was justified, that it remained justified during the period

complained of, and that Mr. Scrushy was not prejudiced by not being informed of

the existence of the sealed indictment.

## Statement of Facts

On May 17, 2005, a grand jury returned an indictment in the Middle District

of Alabama, Northern Division, charging Don Eugene Siegelman and Richard M.

Scrushy with federal-funds bribery in violation of 18 U.S.C. 666 and with

conspiracy in violation of 18 U.S.C. 371 to commit that bribery and to engage in

money laundering (18 U.S.C. 1956) of the proceeds of that bribery. On the same

day, the government moved the district court to seal that indictment on two

grounds: (1) because Mr. Scrushy was then "being tried in the Northern District of

Alabama in a complex, high profile case" and sealing the indictment was justified

to "prevent and preclude any undue prejudice to this defendant in the ongoing

trial," Doc. No. 1 ¶ 4; and (2) because the "United States, in conjunction with the

Attorney General of the State of Alabama, [was] continuing to investigate other

criminal offenses committed by the named defendants as well as other persons

known and unknown at this time" and "[p]ublic disclosure of the instant

indictment * * * would severely harm the investigative efforts of the United States and the State of Alabama," id. ¶5. United States Magistrate Judge Charles S. Coody ordered the indictment sealed that same day, May 17. Doc. No. 2.

On June 28, 2005, Mr. Scrushy was acquitted of the charges in the Northern District of Alabama. Because the government's investigation of other crimes involving Messrs. Scrushy and Siegelman, and others, was still ongoing in the Middle District, and a sitting grand jury was hearing witnesses relating to those other crimes and persons, the indictment remained sealed. Franklin Aff. ¶ 14 (Aff. attached as Exh. A); Pilger Aff. ¶¶ 5, 6 (Aff. attached as Exh. B).

In late September 2005, defense counsel for Mr. Scrushy, aware that a grand jury investigation was underway in the Middle District involving Mr. Scrushy, approached the prosecution to determine whether there might be a basis for their client's cooperation to avoid prosecution. Franklin Aff. ¶ 15. On October 4, defense counsel met with prosecutors at the United States Attorney's Office in Montgomery. Present on behalf of Mr. Scrushy were attorneys Arthur W. Leach, Henry Lewis Gillis, Christopher Whitehead, and Les Moore; present on behalf of the prosecution were Acting United States Attorney Louis V. Franklin, Sr., Assistant United States Attorney James B. Perrine, Richard Pilger of the Public Integrity Section of the Criminal Division of the U.S. Department of Justice, and

3

Joseph Fitzpatrick of the Alabama Attorney General's Office. Franklin Aff. ¶ 16; Pilger Aff. ¶ 7.

At defense counsel Leach's request, the prosecutors explained, as they had on prior occasions, the relevant facts learned during the investigation that led them to believe that Mr. Scrushy had committed criminal offenses. Franklin Aff. ¶¶ 5, 10, 16; Pilger Aff.¶ 9. Defense counsel did not present any exculpatory information or reveal any detail of a defense strategy. Franklin Aff. ¶ 16; Pilger Aff. ¶ 10. Rather, defense counsel Leach probed government counsel with questions. Franklin Aff. ¶ 16; Pilger Aff. ¶ 9.

At no time did government counsel state that Mr. Scrushy would be indicted or prosecuted if he refused to testify as the government wanted him to testify. Pilger Aff. ¶ 13. Rather, when defense counsel Leach stated that he believed this was the government's position, government counsel Pilger specifically corrected his mischaracterization, explaining that Mr. Scrushy would, like every cooperator, be required to testify fully and truthfully by any cooperation agreement. Ibid.

When defense counsel Leach asked a question about the status of the government's charging decision, the context was discussion of whether the government was amenable to negotiations about Mr. Scrushy's possible cooperation pursuant to a non-prosecution agreement. Pilger Aff. ¶ 11. The

4

government's response sought to convey to defense counsel that the government remained open to considering a non-prosecution proposal from Mr. Scrushy's counsel, without violating the seal of the original indictment by divulging that Mr. Scrushy had been indicted in May to protect against the running of the statute of limitations. Ibid.[1]

Mr. Leach called government counsel Pilger a day or two after the October 4 meeting to advise that he would be meeting with Mr. Scrushy and to ask whether the government would be willing to provide legal authorities for Mr. Leach's use with his client. Pilger Aff. ¶ 15. Mr. Pilger provided the name of a leading case, but declined to further address the matter. Ibid.

On October 7, Mr. Leach initiated a telephone call to Acting United States Attorney Franklin. Mr. Leach expressed an interest in avoiding prosecution of Mr. Scrushy, and offered that if he was not prosecuted he would decline to be a witness in Mr. Siegelman's defense, but Mr. Leach did not suggest that Mr.

---

[1] The quotation provided in paragraph 7 of Leslie V. Moore's affidavit in support of defendant's motion to dismiss, stating that Mr. Leach asked, "Has a charging decision been made?," and that Mr. Pilger answered simply "No," does not accord with the recollection of government counsel of the conversation, nor does it accord with the purpose, nature, and context of the discussion. Pilger Aff. ¶ 11. As discussed infra, however, this is not a material factual issue, because there was no intentional misconduct by the government and the defense has not shown and cannot show any prejudice to it resulting from any misunderstanding about Mr. Scrushy's indictment status.

Scrushy would be willing to cooperate with the government. Franklin Aff. ¶ 17. On October 25, Mr. Leach again called Mr. Franklin. During that conversation, when Mr. Leach asked Mr. Franklin whether a charging decision had been made, Mr. Franklin may have responded that a decision had not yet been made. Franklin Aff. ¶ 18. This reflected the fact that Mr. Franklin at that time was awaiting the final decision of the Criminal Division as to what charges should be included in the superseding indictment that the government intended to present to the grand jury. Ibid.

The next day, after the Criminal Division had authorized which charges the prosecutors might submit to the grand jury, a more comprehensive superseding indictment was returned by the grand jury. Doc. No. 9. That superseding indictment added Paul Michael Hamrick and Gary Mack Roberts as additional defendants and expanded the charges from two counts of bribery and one count of conspiracy involving only Messrs. Scrushy and Siegelman to 30 counts involving racketeering (18 U.S.C. 1962), bribery (18 U.S.C. 666), mail and wire fraud (18 U.S.C. 1341, 1346), obstruction of justice (18 U.S.C. 1512), and extortion (18 U.S.C. 1951). In addition to the bribery offenses charged against Mr. Scrushy in the initial indictment, he was charged in the superseding indictment with mail fraud. Doc. No. 9, Ct. 5. In addition to the bribery offenses charged against Mr.

6

Siegelman in the original indictment, he was charged in the superseding

indictment with racketeering, mail and wire fraud, obstruction of justice, and

extortion.

On the same day that the grand jury returned the superseding indictment,

October 26, 2005, the government filed a motion to unseal the case, which was

granted that same day by Magistrate Judge Coody. Doc. Nos. 5, 6. A second

superseding indictment was returned on December 12, 2005, naming the same four

defendants, and charging Mr. Scrushy in seven counts, including two counts of

bribery, one count of conspiracy, and four counts of wire fraud. Doc. No. 61, Cts.

3-9.

## **Argument and Legal Authorities**

Defendant Scrushy argues that the superseding indictment should be

dismissed. He claims (Mot. 4-8) that there never was a valid reason for sealing the

original indictment and in any event that the indictment should have been unsealed

when Mr. Scrushy was acquitted of charges in the Northern District of Alabama.

He argues (Mot. 9-10) that the prosecutors misled defense counsel about Mr.

Scrushy's indictment status with the purpose of tricking defense counsel into

divulging the defense strategy. Finally, he argues (Mot. 11-12) that the delay in

unsealing the original indictment violated his due process rights. Contrary to

7

these arguments, the record shows that there was a valid basis for sealing the

original indictment and that a justification for sealing it continued until the

superseding indictment was returned. During the October 2005 discussions,

government counsel attempted to carefully communicate to defense counsel that

no final prosecution decision had been made, but government counsel were not at

liberty to violate the sealing order by informing defense counsel that an indictment

had been returned to satisfy the statute of limitations on certain offenses. There

was no intention to prejudice the defense, and the defense was not, in fact, even

colorably prejudiced by anything said by government counsel.

### 1.     The Original Indictment Was Properly Sealed for the Entire Period Between May 17, 2005, and October 26, 2005.

The Eleventh Circuit has held, as have numerous other courts of appeals,

that indictments may be sealed "[w]here the public interest requires it, or for other

sufficient reason, or for sound reasons of policy." United States v. Edwards, 777

F.2d 644, 648 (11th Cir. 1985) (citations omitted), cert. denied, 475 U.S. 1123

(1986); see United States v. Thompson, 287 F.3d 1244, 1252 (10th Cir. 2002)

(indictment may be sealed for "legitimate prosecutorial purposes and when the

public interest otherwise requires it"); United States v. Sharpe, 995 F.2d 49, 52 (5th

Cir.) (sealing proper for "any legitimate prosecutorial objective or where the

public interest otherwise requires it"), cert. denied, 510 U.S. 885 (1993); United States v. Richard, 943 F.2d 115, 119 (1st Cir. 1991) (same); United States v. Lakin, 875 F.2d 168, 172 (8th Cir. 1989) (same).

Defendant accepts (Mot. 5-6) that the prevention of unnecessary prejudice to Mr. Scrushy in connection with his then-ongoing trial in the Northern District of Alabama was a legitimate reason for sealing the indictment. He argues (Mot. 6), however, that sealing was not justified by the government's second reason – that it had an ongoing investigation into other crimes by the defendants named in the sealed indictment and by other persons. Defendant's argument has been rejected by the Eleventh Circuit and by other courts of appeals. In Edwards, the government returned an indictment on some charges in order to satisfy the expiring statute of limitations for those charges, but requested sealing of the indictment while it continued to investigate other charges. The Eleventh Circuit upheld that reason for sealing the indictment. 777 F.2d at 648-649. Other courts of appeals have done likewise. United States v. Wright, 343 F.3d 849, 858 (6th Cir. 2003) ("need to avoid compromising an ongoing investigation falls within the range of permissible reasons for sealing an indictment"); United States v. Bracy, 67 F.3d 1421, 1426-1427 (9th Cir. 1995) ("ongoing nature of [government's] investigation" is legitimate reason for sealing indictment); Richard, 943 F.2d at

119 (sealing proper when "significant new information concerning the alleged drug conspiracy came to the attention of the government which required further investigation"); Lakin, 875 F.2d at 170 (indictment sealed because, although government "had probable cause to indict defendants, it needed more time to gather additional evidence to determine whether the case should be pursued").

It is apparent on the face of the original indictment that the government sought its return at the time when it did because the statute of limitations was soon to expire on those charges. The last overt act of the alleged conspiracy to commit bribery and money laundering was the alleged use by Mr. Siegelman of $250,000 in bribe money to reduce a debt on or about May 23, 2000. Doc. No. 1 ¶ 25. The alleged substantive federal-funds bribery offenses likewise allege the last act on or about May 23, 2000. Id. ¶¶ 27, 29. The indictment was filed on May 17, 2005, just within the five-year statute of limitations provided for by18 U.S.C. 3282(a). It is likewise apparent on the face of the superseding indictment filed on October 26, 2005, that the government had been continuing to investigate other crimes involving Mr. Siegelman and Mr. Scrushy, and other crimes involving other persons. Doc. No. 9. The superseding indictment added two new defendants and added a new charge against Mr. Scrushy and numerous new charges against Mr. Siegelman. The court can satisfy itself from the records of the grand jury that it

was continuing to hear witnesses between June 2005, when Mr. Scrushy was acquitted, and October 2005, when the superseding indictment was returned.

Defendant faults the government (Mot. 6) for not informing the magistrate judge that Mr. Scrushy was acquitted in June 2005 and not at that time reapplying to keep the indictment sealed. There was no requirement for the government to do so. United States v. Balsam, 203 F.3d 72, 81 (1st Cir.) (rejecting argument that "government should have returned to court to inform the magistrate judge of its new objective" for sealing the indictment), cert. denied, 531 U.S. 852 (2000); United States v. Ramey, 791 F.2d 317, 318 (4th Cir. 1986) (finding "no authority for the implied proposition that the government must return to the magistrate judge as each new reason for continuing the sealing order arises"). Indeed, there is no requirement for the government to articulate to the magistrate judge any specific reason for sealing the indictment; rather, it is sufficient if the government provides an adequate reason for sealing the indictment in response to a motion to dismiss after the indictment is unsealed. Balsam, 203 F.3d at 81; Sharpe, 995 F.2d at 52; United States v. Srulowitz, 819 F.2d 37, 41 (2d Cir.), cert. denied, 484 U.S. 853 (1987); Lakin, 875 F.2d at 171-172.[2]

---

[2] This accords with our understanding of the practice in the Middle District of Alabama, where the magistrate judges generally do not require the government to articulate the specific reasons why sealing is sought before the indictment is sealed

Defendant makes the completely baseless claim (Mot. 4-5, 6-7) that the government had no reason to seal the indictment other than to strengthen its case on the charges contained in that indictment. Defendant's claim is defeated by the validity of the government's stated reasons for sealing the indictment. There is no authority for defendant's implied proposition that the government is precluded from preparing its case on the indicted charges during the sealing period.[3] While the government may not use the ongoing grand jury investigation "principally to prepare pending charges for trial," United States v. Flemmi, 245 F.3d 24, 28 (1st Cir. 2001), "accusations of grand jury abuse can be conclusively rebuffed by a showing that the challenged proceedings led to the joinder of new defendants or the inclusion of new charges," id. at 29. Here, the continuing grand jury investigation resulted in additional charges against both Mr. Scrushy and Mr. Siegelman, and the indictment of two additional defendants.

---

and magistrate judges do not articulate the reasons for sealing in the sealing order.

[3] Indeed, the need for further investigation of the charges in an indictment may by itself be a sufficient reason to seal it. Richard, 943 F.2d at 119 (sealing proper when "significant new information concerning the alleged drug conspiracy came to the attention of the government which required further investigation"); Lakin, 875 F.2d at 170 (indictment sealed because, although government "had probable cause to indict defendants, it needed more time to gather additional evidence to determine whether the case should be pursued"). In the instant case, however, there was a need for sealing to investigate other offenses involving the indicted defendants and other offenses involving other persons.

Defendant also makes the baseless claim (Mot. 8) that the government used the sealing of the original indictment to trick defense counsel into revealing confidential information. As defense counsel admit (Mot. 2), they were the ones who approached the government in October 2005 for discussions about possible cooperation by Mr. Scrushy. The government did nothing to use the sealed indictment to cause defense counsel to initiate such discussions. As discussed below, when government counsel avoided breaching the seal on the indictment during discussions with defense counsel, government counsel were acting in accordance with the sealing order and accurately communicated to defense counsel that no final prosecution decision had been made. The only context in which the issue of charging decisions or indictments was raised or addressed at the October 4, 2005 meeting was that context sought by the defense in requesting the meeting: to establishing that a good faith negotiation toward a cooperation agreement was possible, which it was.

Accordingly, it is plain from the existing record that the indictment was properly sealed on May 17, 2005, and remained properly sealed until the superseding indictment was returned and the original indictment was unsealed, both on October 26, 2005. This also disposes of defendant's argument (Mot. 11-12) that an improper delay in unsealing the indictment violated his right to due

13

process. There was no improper delay in unsealing the indictment. The government's reason for sealing continued until the return of the superseding indictment and unsealing of the original indictment.[4]

### 2. During Discussions with Defense Counsel, Government Counsel Did Not Urge that Mr. Scrushy Should Provide False Testimony, Did Not Misstate the Status of the Government's Charging Decision, and Were Precluded by the Sealing Order from <u>Disclosing the Existence of the Sealed Indictment.</u>

Defendant claims (Mot. 8-9) that government counsel sought to pressure Mr. Scrushy into providing false testimony. Defendant also claims (Mot. 10) that the government intentionally misled defense counsel into believing that Mr. Scrushy had not been indicted and this led defense counsel to prejudice Mr.

---

[4] Even if the indictment was improperly sealed or there was an improper delay in unsealing it, defendant would not be entitled to the remedy he seeks unless he showed actual, substantial prejudice arising during a period of improper sealing. E.g, <u>Edwards</u>, 777 F.2d at 649 (11th Cir.) ("indictments maintained under seal beyond the limitations period [will be dismissed] only upon a showing of substantial, irreparable, actual prejudice to the defendants"); <u>United States</u> v. <u>Mitchell</u>, 769 F.2d 1544, 1548 (11th Cir. 1985) (requiring the defendant to "show actual prejudice" resulting from holding the sealed indictment beyond the limitations period), cert. denied, 474 U.S. 1066 (1986). The degree of prejudice must be so substantial that "it substantially influenced a defendant's ability to defend against the charges." <u>Thompson</u>, 287 F.2d at 1254. Defendant Scrushy has made no such showing. His unsupported and baseless claim – discussed <u>infra</u> – that the sealing of the indictment caused him to divulge his defense strategy, even if true, would not prevent him from employing that strategy during trial. The question of prejudice from improper sealing need not be considered, however, because the indictment was at all times justifiably sealed by this Court.

Scrushy by divulging the defense strategy. Contrary to defendant's claims, government counsel never sought to pressure Mr. Scrushy into providing false testimony and never misrepresented, let alone intentionally misrepresented, the status of the decision whether to charge Mr. Scrushy. In any event, Mr. Scrushy's claim that he was prejudiced by his counsel's misunderstanding of the government's intentions or of Mr. Scrushy's indictment status is groundless. No information was disclosed by defense counsel that prejudiced Mr. Scrushy's defense. Without a showing of actual, substantial prejudice to the defense, there is no basis for any remedy, and certainly no basis for dismissing the indictment, regardless of defense counsel's unwarranted claims of government misconduct.

1. Defendant claims (Mot. 5, 9) that government counsel sought to pressure Mr. Scrushy to provide false testimony in support of the government's case. That is not what occurred. At the October 4, 2005 meeting, government counsel, at defense counsel Leach's request, provided a summary of the evidence leading the government to believe that Mr. Scrushy had committed criminal offenses. But the government never sought any false testimony from Mr. Scrushy. Indeed, at the October 4 meeting, when Mr. Leach stated that he thought the government was insisting that Mr. Scrushy agree with the government's version of events, Mr. Pilger expressly rejected that mischaracterization and made it clear that any

cooperation agreement with Mr. Scrushy would call for complete and truthful testimony from him. Franklin Aff. ¶ 16; Pilger Aff. ¶ 13.

Defendant seeks to rely (Mot. 9-10) on United States v. Heller, 830 F.2d 150 (11th Cir. 1987), and United States v. Hammond, 598 F.2d 1008 (5th Cir.), on reh'g, 605 F.2d 862 (1979). Neither case supports defendant's argument. In Heller, the court found that the government directly pressured a witness to provide testimony that was demonstrably false, causing real and substantial prejudice at defendant's trial. 830 F.2d at 152-154. In Hammond, the court found that the government's improper threat to retaliate against a defense witness prejudiced the defendant by causing the witness to refuse to testify further on behalf of the defense. 598 F.2d 1012-1015. The instant case is completely different. Here the government never talked to Mr. Scrushy and any impression by defense counsel Leach that the government was seeking to exert improper pressure on Mr. Scrushy was immediately corrected. The case has not been to trial and Mr. Scrushy can make no claim that the government's conduct will cause him any prejudice whatsoever at trial. Moreover, even in Heller and Hammond, where there was a finding that intentional government misconduct caused the defendant actual prejudice at trial, the remedy was not dismissal of the indictment, but rather remand for trial free from any improper interference by the government with the

16

defense. Heller, 830 F.2d at 156 (remanding for retrial); Hammond, 598 F.2d at

1014-1015 & n. 6 (remanding for new trial and specifically rejecting remedy of

indictment dismissal). Because any possible concern of defense counsel that the

government sought to pressure Mr. Scrushy into providing false testimony was

immediately addressed and rectified at the October 4 meeting, Mr. Scrushy's trial

may proceed without such concern and there is no basis for any remedy, regardless

of whether or why defense counsel had a misimpression about the government's

intentions.[5]

    2. Defendant also argues (Mot. 10) that government counsel made

"deliberate misrepresentations" about whether a charging decision had been made

with respect to Mr. Scrushy. At the October 4 meeting, the government

communicated that it was open to the possibility that Mr. Scrushy would enter into

a cooperation agreement with the government that might include a non-

prosecution agreement. Franklin Aff. 16; Pilger Aff. ¶ 11. It was in this context

that the government communicated that its final prosecution decision had not yet

been made. Ibid. This was accurate and reflected the circumstance that the

---

    [5] Because no remedy is appropriate regardless of the basis for any purported
misunderstanding by defense counsel, no further hearing is required to resolve
immaterial factual disputes concerning what transpired between defense counsel
and government counsel.

prosecution decision was still being discussed and decided both within the U.S.

Attorney's Office for the Middle District and within the Department of Justice.

Because of the sealing order, the government was not at liberty to more fully

explain that, although Mr. Scrushy had been indicted in May 2005, that

preliminary charging decision – undertaken to protect against the running of the

statute of limitations – did not dictate the ultimate prosecution decision. Mr.

Scrushy's counsel, of course, was and is well aware that the government can

decline to prosecute a defendant on some or all charges at any time if

circumstances warrant.[6]

---

[6] Defendant also claims (Mot. 3) that defense counsel Leach specifically asked the government to "let Mr. Scrushy testify before the grand jury and tell his story to the grand jurors." This assertion is at best misleading. In a meeting with defense counsel on July 8, 2004, the government offered the opportunity for Mr. Scrushy to come to the grand jury and present his version of the facts, but defense counsel declined. Franklin Aff. ¶ 7. Defense counsel at no time thereafter requested the opportunity for Mr. Scrushy to appear voluntarily before the grand jury. At the October 4, 2005 meeting, defense attorney Leach in passing made a suggestion that the government compel Mr. Scrushy to appear before the grand jury, which government counsel declined. Franklin Aff. ¶ 16. Government counsel noted the possibility that Mr. Scrushy might appear before the grand jury in connection with a cooperation agreement, but such an agreement was not forthcoming. Pilger Aff. ¶ 14. In any event, a target of an investigation, such as Mr. Scrushy, has no right to appear before the grand jury either before or after indictment. United States v. Pabian, 704 F.2d 1533, 1538-1539 (11th Cir. 1983) ("A target of a grand jury investigation has no constitutional right to appear before that grand jury."); United States v. Briggs, 514 F.2d 794, 804 (5th Cir. 1975) ("One indicted by a grand jury has no right to appear before that body, under oath or otherwise.").

In any event, even if government counsel might have formulated a better response about the status of its prosecution decision that would have avoided any misimpression by defense counsel while preserving the secrecy of the indictment, there is no basis for dismissing the indictment without compelling proof of intentional misconduct and a strong showing of actual prejudice. "A district court may dismiss an indictment pursuant to the federal courts' supervisory power. However, dismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be infrequently utilized." United States v. Shelley, 405 F.3d 1195, 1202 (11th Cir. 2005) (internal quotation omitted). The predicates for dismissal are that the "prosecutor engaged in * * * egregious, flagrant misconduct," ibid., and "prejudice to the defendant is an essential element," United States v. O'Keefe, 825 F.2d 314, 318 (11th Cir. 1987); see United States v. Morrison, 449 U.S. 361, 365 (1981) ("absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation [of defendant's right to counsel] may have been deliberate").

Neither predicate is met here. Whatever misunderstanding defense counsel might have ever actually had about Mr. Scrushy's indictment status was not the result of "egregious, flagrant misconduct" by government counsel. Rather, assuming that such a misunderstanding truly existed, at worst it was the result of

19

government counsel seeking to avoid violating the court's sealing order while answering defense counsels' question whether a charging decision had been made. The purpose of the communications was to truthfully communicate the government's position on the negotiation underway at the request of Mr. Scrushy's counsel. Even if government counsel might have chosen another way of answering that question, government counsels' conduct was certainly not egregious, flagrant misconduct. On the contrary, the United States has made every effort to let Mr. Scrushy know the nature and extent of its case.

Moreover, defendant has not shown the required prejudice. He claims (Mot. 10) that the purported misimpression defense counsel had about Mr. Scrushy's indictment status caused him to reveal defense strategy to his prejudice. Mr. Scrushy has not been prejudiced in presenting his defense. Even if defense counsel had revealed some evidence injurious to the defendant, he recognizes (Mot. 3 n. 1) that any information divulged by defense counsel during that meeting could not in any event be used by the government at trial pursuant to Fed. R. Evid. 410.[7] Further, the government will not offer at trial any information discussed

---

[7] Although defendant asserts (Mot. 4) that during an October 25, 2005 telephone conversation with Acting U.S. Attorney Franklin statements were made leading him to believe that no charging decision had been made, he does not assert that any prejudice resulted from that conversation. The superseding indictment was returned the next day.

during any of the meetings or telephone discussions with defense counsel. Indeed,

considering that Mr. Scrushy's counsel was unwilling to admit his client's

knowing participation in any criminal activity, or make any direct assertion of Mr.

Scrushy's position on the allegations of wrongdoing, the government is at a loss to

see how it could do so. During the government's meetings with Mr. Leach, he

made it clear that he did not know, and could not make a representation about, his

client's position on any of the facts revealed by the government.

Dismissal of the indictment is also inappropriate because Mr. Scrushy

makes no assertion that government misconduct in any way related to the validity

of the indictment. As Circuit Judge Tjoflat discussed in his concurrence in

Shelley, supra, dismissal of an indictment is only an appropriate remedy when

intentional government misconduct infects the grand jury process. 405 F.3d at

1207 n. 7. Even when actual and intentional government misconduct occurs after

indictment – such as knowingly presenting perjured testimony at trial or

threatening defense witnesses, which was involved in Heller and Hammond, supra

– the remedy is either suppression of the fruits of the misconduct or a new trial

free from the misconduct, not dismissal of the indictment. Ibid.; Morrison, 449

U.S. at 365 ("when before trial but after the institution of adversary proceedings,

the prosecution has improperly obtained incriminating information * * *, the

remedy characteristically imposed is not to dismiss the indictment but to suppress the evidence or to order a new trial if the evidence has been wrongfully admitted and the defendant convicted"). If government misconduct during trial interferes with a defendant's ability to present his defense, a new trial is ordered, at which the government is of course aware of that defense. There is no basis for Mr. Scrushy to seek the far greater remedy of indictment dismissal, even if there were some basis to his claim that actual, intentional government misconduct caused him to reveal his defense prior to trial.[8]

---

[8] Again, because there is no basis for the remedy of indictment dismissal regardless of whether and why defense counsel misunderstood the status of the charging decision, and regardless of what information defense counsel divulged to the government, there is no reason to have any further hearing on this matter to resolve factual disputes.

## **Conclusion**

The defendant's counsel sought and received the government's attention to Mr. Scushy's purported interest in cooperating with the investigation. The government attempted to accommodate Mr. Scrushy in good faith while maintaining this Court's proper sealing of the pending indictment. Any purported misunderstanding by defense counsel concerning the existence of a pending indictment that resulted from the government's effort to communicate its negotiating position was entirely unintentional, and even assuming such a misunderstanding existed, the defendant was never prejudiced by it.

WHEREFORE, the United States asks this Court to deny defendant's motion to dismiss the indictment, Doc. No. 132, on its face, in its entirety, and without further hearing or proceedings.

23

Respectfully submitted this the 27th day of February, 2006

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

/s/ Louis V. Franklin, Sr.
Acting United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: louis.franklin@usdoj.gov

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Jennifer Garrett
Special Assistant United States Attorney
Assistant Attorney General
Office the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-8494
Fax:    (334)242-4890
Email: jgarrett@ago.state.al.us
ASB-4600-T77J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

ANDREW C. LOURIE
ACTING CHIEF, PUBLIC INTEGRITY
SECTION

/s/Richard C. Pilger
Department of Justice, Criminal Division
Public Integrity Section
10th & Constitution Ave, NW
Bond Building - 12th Floor
Washington, DC 20530
Phone: (202)514-1412
Fax:    (202)514-3003
Email: richard.pilger@usdoj.gov

/s/Richard A. Friedman
Attorney
Appellate Section
Criminal Division
United States Department of Justice

/s/ Joseph L. Fitzpatrick, Jr. Special Assistant
United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-4839
Fax:    (334)242-4890
Email: j.fitzpatrick@ago.al.state.us

**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )    **CRIMINAL NO. 2:05-CR-119-F** |
| DON EUGENE SIEGELMAN | ) |
| PAUL MICHAEL HAMRICK | ) |
| GARY MACK ROBERTS, and | ) |
| RICHARD M. SCRUSHY. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY


/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334) 223-7280
Fax: (334) 223-7135
E-mail: jb.perrine@usdoj.gov
ASB

Exhibit A

## EXHIBIT A

## DECLARATION UNDER PENALTY OF PERJURY
## OF LOUIS V. FRANKLIN, SR., IN SUPPORT OF
## RESPONSE TO MOTION TO DISMISS INDICTMENT

I, Louis V. Franklin, Sr., make the following declaration pursuant to 28 U.S.C. Section 1746:

1.    I am an Assistant United States Attorney and have been assigned to the Criminal Division for the Middle District of Alabama since joining the United States Department of Justice in 1990, with one period of private practice from May 1996 to March 1998. I have been Chief of the Criminal Division since September 2001, and Acting United States Attorney for the case of United States v. Siegelman, et, al., No. 2:05cr119-F since January 2003.

2.    On June 21, 2004, a special grand jury was empaneled to investigate public corruption during the administration of former Alabama Governor Don Eugene Siegelman. This investigation, as reflected in the second superseding indictment, involved matters of substantial importance to the citizens of the State of Alabama and the United States because it involved evidence amounting to probable cause to find serious misconduct by individuals holding significant positions of public trust. Reporters from various judicial districts began monitoring the courthouse to observe witnesses (and their attorneys) who entered and left the grand jury suite. Articles began appearing in various newspapers around the state. We discussed and decided the government should approach the targets, including Richard M. Scrushy, through counsel, to give them an opportunity to comment on the evidence against them and/or point us to exculpatory evidence, and to let them know we believed from prior experience that a grand jury indictment was very likely.

3.    AUSA Stephen Feaga initiated telephone contact with the lead attorneys for both targets because he had had prior professional dealings with them. AUSA Feaga spoke with Doug Jones, attorney for Mr. Siegelman, and Donald Watkins, attorney for Mr. Scrushy. When initial contact was made, Scrushy had already been indicted in a $2.7 billion dollar corporate fraud case in the Northern District of Alabama, and was awaiting trial. Because of the media attention given to the investigation, at the time AUSA Feaga contacted Mr. Jones, Mr. Siegelman knew that he was a target.

-1-

The United States did not know at this time whether Mr. Scrushy knew that he was a target.

4.      Mr. Feaga and I accepted Mr. Watkins' invitation to drive to Birmingham to meet with him and other members of Mr. Scrushy's Birmingham trial team. On July 8, 2004, we met with attorneys Watkins, Lewis Gillis, and Abbe Lowell at the law offices of Thomas, Means, Gillis and Seay. Although attorneys Arthur Leach and Leslie Moore represented Mr. Scrushy in the Birmingham case, and continue to represent him in the instant case, they did not participate in the meeting.

5.      During the meeting, we explained the evidence that had been discovered during the course of the investigation and extended an opportunity to defense counsel to explain to us and to the grand jury why Mr. Scrushy had not committed a crime. Specifically, we told them that we had evidence supported by witness testimony and documents showing that Mr. Scrushy had paid $500,000 to then-Governor Siegelman's Alabama Education Lottery Foundation and the Alabama Education Foundation in exchange for then-Governor Siegelman's appointment of Mr. Scrushy to the position of Vice Chairman of the Certificate of Need Review Board (CON Board). We further disclosed evidecne showing Mr. Scrushy laundered the first of the two $250,000 payments through a Maryland corporation called Integrated Health Services (IHS) to the Alabama Education Lottery Foundation; and we disclosed evidence that the second $250,000 payment was made through HealthSouth Corporation. Within one week after Mr. Scrushy delivered the first $250,000 payment to then-Governor Siegelman, Mr. Scrushy was appointed to and made Vice Chairman of the CON Board. We noted that the evidence supporting these events included witness accounts, Mr. Scrushy's support for Fob James during the 1998 gubernatorial campaign, the CON Board's importance to the interests of Mr. Scrushy and HealthSouth Corporation, and then-Governor Siegelman's failure to disclose in required reports that Mr. Scrushy was the true source of the payment of $250,000 to the Alabama Education Lottery Foundation made through IHS.

6.      We were very candid in our responses to questions asked by Mr. Scrushy's attorneys. We informed defense counsel that the investigation was a joint effort involving the USAO-MDAL, DOJ Public Integrity Section and the Alabama Attorney General's Office and each entity would participate in all decision-making processes. There is no doubt that during this meeting we communicated to defense counsel that Mr. Scrushy was very likely to be indicted unless some agreement were reached between him and the United States.

7.    Defense counsel's response to our presentation was that Mr. Scrushy had committed no crime.  However, they requested an opportunity to discuss our presentation with their client and revisit these issues at a second meeting should they decide to do so.  They also requested that a representative from the Public Integrity Section of DOJ be present at the next meeting.  Before the meeting ended, we told Mr. Scrushy's attorneys that because of the status of the case in Birmingham, we would not make any public announcement of an indictment before the trial in Birmingham ended.  They expressed appreciation for our taking the time to drive to Birmingham and give them the opportunity to address the concerns of the investigation at that point.  Our offer for Mr. Scrushy to testify before the grand jury was declined.

8.    A similar meeting was held with attorneys for Mr. Siegelman.  Meanwhile, the special grand jury continued its investigation.

9.    During July 2004, we telephonically discussed with counsel for both targets an agreement to toll the running of the statute of limitations, since such an agreement would give them more time to present information that would contradict or shed additional light on the evidence we told them about during our initial meetings.  On July 12 and 13, 2004, the United States entered into separate 30-day tolling agreements with both targets.  The tolling agreement with Mr. Scrushy expressly stated that its purpose was "to permit the U.S. Attorney's Office and Public Integrity Section to complete its investigation and in order to allow Mr. Scrushy to fully present any information he has . . . ."  Neither tolling agreement was extended and it was communicated to attorneys for both targets that an indictment relating to the matters discussed was a likelihood.  During the conversations between the attorneys regarding the execution and possible extension of the tolling agreements, the attorneys for the government and the targets discussed the statute of limitations issues and the dates on when the statute of limitations might expire.  At a meeting that took place after Mr. Scrushy was indicted in May 2005, Mr. Leach asked about the statute of limitations and was told by me that "we do not have a statute of limitations problem."

10.    On August 3, 2004, before the tolling agreement expired, a second meeting with Mr. Scrushy's attorneys was held at the USAO in MDAL.  At Mr. Scrushy's counsels' request, Noel Hillman, Chief of the Public Integrity Section, attended the meeting.  Representing the government was Chief Hillman, myself, AUSA Feaga, AUSA J.B.Perrine and SAUSA John Gibbs (Alabama Attorney General's Office).

Attorneys Lowell, Watkins and Gillis appeared on behalf of Mr. Scrushy. This meeting was much like the first – the attorneys made general arguments about the law and Mr. Scrushy's attorneys reasserted that Mr. Scrushy would not have made any public payment of money to the Alabama Education Lottery Foundation because of the Christian beliefs of his wife. At no point in this meeting did Mr. Scrushy's attorneys provide us with any information that was of any evidentiary value.

11.    I learned from newspaper accounts that in late November 2004, attorney Lowell withdrew as attorney of record for Mr. Scrushy and neither I nor any other member of the prosecution team had any further conversations with attorney Lowell regarding this case.

12.    I was aware that Mr. Scrushy's trial in Birmingham began in January 2005.

13.    On May 17, 2005, while Mr. Scrushy's Birmingham trial was ongoing, the special grand jury returned a three count indictment against Mr. Siegelman and Mr. Scrushy. Both were charged with conspiracy and two counts of federal funds bribery. The Court granted the government's motion to seal the case. Two reasons were presented in support of the motion to seal. Paragraph "4"of the motion stated: "[O]ne of the defendants charged in the indictment is presently being tried in the Northern District of Alabama in a complex, high profile case." Paragraph "5" of the motion stated: "[T]he United States, in conjunction with the Attorney General of the State Alabama, is continuing to investigate other criminal offenses committed by the named defendants as well as other persons known and unknown at this time."

14.    I was aware that Mr. Scrushy's trial ended on June 28, 2005. The special grand jury continued its investigation. In April 2005, we had begun the process of seeking permission from the Organized Crime and Racketeering Section of the DOJ (OCRS) to supersede the indictment and add RICO and RICO conspiracy charges as to Mr. Siegelman and Paul Hamrick, former Chief of Staff during then-Governor Siegelman's administration. The grand jury was also investigating then-Governor Siegelman's appointment of Mr. Gary Mack Roberts to the position of Director of the Alabama Department of Transportation, as well as other matters related to public corruption during then-Governor Siegelman's administration.

15.    On September 29, 2005, I received an unexpected telephone call from defense attorney Gillis requesting a meeting. We met at my office for approximately one hour. During that meeting, we discussed the possibility of resolving the government's case against Mr. Scrushy. I did not tell Mr. Gillis that a sealed indictment against Mr.

Scrushy existed. Although no promises were made, I was left with the impression that Mr. Scrushy was willing to negotiate toward a cooperation agreement with us. I understood that if we had any conversation directly with Mr. Scrushy it would be pursuant to a proffer agreement, and that we would have to address the sealed indictment and the fact that he was indicted. Pursuant to Mr. Gillis' request, we planned another meeting for the upcoming week. In a subsequent telephone conversation prior to October 4, 2005, Mr. Gillis told me that Mr. Scrushy would not be attending the upcoming meeting, but that he (Mr. Gillis) and other members of the trial team wanted to come and talk to the prosecutors. We agreed to meet once again with Mr. Scrushy's attorneys.

16.    On October 4, 2005, I along with AUSA Perrine, Trial Attorney Richard Pilger (DOJ Public Integrity Section), and SAUSA Joseph Fitzpatrick (Alabama Attorney General's Office) met with attorneys Gillis, Leach, Moore and Chris Whitehead. AUSA Feaga was not present for this meeting. We expected to discuss a cooperation agreement and get an attorney proffer from defense counsel. In fact, the purpose of the meeting was to give Mr. Scrushy an opportunity, through his attorneys, to ensure that any information Mr. Scrushy wanted to be considered would be considered; and to pursue the potential for working out a cooperation agreement. However, the meeting began with defense counsel's request for us to once again go through the evidence we had gathered against Mr. Scrushy and we did. At some point, attorney Pilger asked what information Mr. Scrushy would provide, and even after attorney Pilger acknowledged that attorney Leach's response could not be used against Mr. Scrushy, we were not provided any information that was of any evidentiary value.

I recall attorney Pilger informing Mr. Scrushy's attorneys, in response to a question about what would happen if there was no cooperation agreement, that their client could expect to be indicted, which I understood to be a truthful statement of our good faith negotiating position on whether Mr. Scrushy genuinely faced prosecution under the full range of possible charges we had just discussed with Mr. Scrushy's counsel. When defense counsel accused the government of taking the position that Mr. Scrushy would be indicted if he refused to testify as the government wanted him to, attorney Pilger expressly stated that, as in every potential cooperator's case, Mr. Scrushy would be required by any cooperation agreement to testify fully and truthfully. I understood that all of my own and attorney Pilger's remarks to be solely designed to communicate that we would in good faith consider any proposal Mr. Scrushy's counsel wished to make, including a possible non-prosecution agreement as to all of the pending and possible charges.

During this meeting, in the context of the attorneys for the parties discussing the possibility of a cooperation agreement involving Mr. Scrushy, attorney Leach, in passing, made a suggestion that the government compel Mr. Scrushy to appear before the grand jury. We declined because we were not prepared to offer Mr. Scrushy immunity, which would be necessary to compel his testimony. Mr. Leach never made a request for Mr. Scrushy to appear before the grand jury as an ordinary witness.

Again, there was no attorney proffer presented during this meeting. I do not recall attorney Leach asking if a charging decision had been made; however, if he did, any answer from the prosecutors must be put in context. When this meeting occurred, the government had not yet decided to present a comprehensive superseding indictment to the grand jury. In other words, it was entirely within the realm of possibility that if Mr. Scrushy had agreed to give a complete and truthful proffer, we were willing to consider unsealing and dismissing the previously-returned indictment. Once again, this meeting ended with the United States having extended Mr. Scrushy an olive branch and Mr. Scrushy's counsel offering nothing.

17.    On October 7, 2005, while driving back from the National Advocacy Center in South Carolina, I received an unexpected telephone call from attorneys Leach and Moore. During our conversation, attorney Leach spoke in generalities without giving any specific information of any evidentiary value, and prefaced his comments with the caveat that anything he said during our conversation should not be considered as an official proffered statement because he did not want to say anything that would interfere with reaching a cooperation agreement. Also, attorney Leach proposed that if the government would refrain from charging Mr. Scrushy, his client would not testify at a trial of Gov. Siegelman. Further, to ensure that Mr. Siegelman would not call Mr. Scrushy as a witness, attorney Leach stated that he would call Mr. Siegelman's attorneys and tell them that if they called Mr. Scrushy as a witness, Mr. Scrushy would not be helpful to their defense. Again, it was obvious that attorney Leach did not have any intention of giving an attorney proffer or presenting Mr. Scrushy for a proffer meeting. I told the other prosecutors about this conversation on the following Tuesday, October 11, 2005. We continued to work on, and seek permission to present, a superseding indictment to the grand jury.

18.    On October 25, 2005, while finalizing the proposed superseding indictment, we continued to accommodate defense attorney requests to meet and discuss the case. At 10:00 a.m. on that day, prosecutors met with Mr. Siegelman's attorneys. I was unable to attend that meeting. During that afternoon, while dealing with an

assortment of issues involving this case, we received another unexpected telephone call from attorneys Leach and Moore. I do not have any specific recollection of what was said during that conversation, except that it was not an attorney proffer nor an offer to have Mr. Scrushy make a proffer to the United States. If in response to a question by attorney Leach inquiring whether a charging decision had been made, I misspoke to the extent of leaving any misimpression about the existence of the original indictment, I intended only to address what was foremost in my mind: the final position from the Criminal Division regarding the superseding indictment, and in the context of agreeing with defense counsel that no cooperation agreement would be forthcoming from Mr. Scrushy. I never had or acted on any purpose to cause any benefit to the government or prejudice to Mr. Scrushy by any inaccurate statement. To the contrary, I always attempted to avoid any misrepresentation while maintaining the Court's seal.

19.    Throughout my discussions with defense counsel, I gave them the opportunity to provide information they thought ought to be considered, as well as an opportunity to reach an agreement which would mutually benefit both their client and the United States. At the same time, I was under a duty to respect the Order sealing the indictment. During my conversations with Mr. Scrushy's attorneys, they did not offer evidence that would prejudice their case.

20.    I do not recall participating in any other substantive conversations with counsel for Mr. Scrushy.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27th 2006, in Montgomery County, Alabama.

Louis V. Franklin, Sr.
Acting United States Attorney
Middle District of Alabama

# Exhibit B

## EXHIBIT B

## DECLARATION UNDER PENALTY OF PERJURY
## OF RICHARD C. PILGER IN SUPPORT OF
## RESPONSE TO MOTION TO DISMISS INDICTMENT

I, Richard C. Pilger, make the following declaration pursuant to 28 U.S.C. §
1746:

1. I am a Trial Attorney in the Public Integrity Section of the Criminal
Division of the United States Department of Justice. Since approximately April
2005, I have participated in the investigation and prosecution reflected in United
States v. Siegelman et al., No. 2:05cr119-F in the United States District Court for
the Middle District of Alabama.

2. On May 17, 2005, a grand jury returned an indictment in the Middle
District of Alabama, Northern Division, charging Don Eugene Siegelman and
Richard M. Scrushy with federal-funds bribery in violation of 18 U.S.C. 666 and
with conspiracy in violation of 18 U.S.C. 371 to commit that bribery and to engage
in money laundering (18 U.S.C. 1956) of the proceeds of that bribery. That
indictment was returned at that time in order to ensure that the five year statute of
limitations provided by 18 U.S.C. 3282(a) would not run on those charges, insofar
as the last overt act alleged for both the conspiracy and substantive charges
occurred on or about May 23, 2000 (Doc. No. 1 ¶¶ 25, 27, 29).

1

3. On the day the original indictment was filed, May 17, 2005, the government filed a motion to maintain that indictment under seal for two reasons: (1) because Mr. Scrushy was then "being tried in the Northern District of Alabama in a complex, high profile case" and sealing the indictment was justified to "prevent and preclude any undue prejudice to this defendant in the ongoing trial," Doc. No. 1 ¶ 4; and (2) because the "United States, in conjunction with the Attorney General of the State of Alabama, [was] continuing to investigate other criminal offenses committed by the named defendants as well as other persons known and unknown at this time" and "[p]ublic disclosure of the instant indictment * * * would severely harm the investigative efforts of the United States and the State of Alabama," id. ¶5. United States Magistrate Judge Charles S. Coody ordered the indictment sealed that same day, May 17. Doc. No. 2.

4. I understood that the seal, once ordered by the Court, prohibited the government from disclosing the existence of the sealed indictment without permission of the Court.

5. After the filing of the original sealed indictment, the grand jury continued its investigation of other possible crimes by Mr. Siegelman and Mr. Scrushy, and by other persons. That grand jury investigation continued during the entire period between the return of the sealed indictment on May 17 and the return

of the first superseding indictment on October 26, 2005, Doc. No. 9, which alleged additional offenses against Mr. Siegelman and Mr. Scrushy and against other defendants.

6. On June 28, 2005, Mr. Scrushy was acquitted of the charges in the Northern District of Alabama. Because the government's investigation of other crimes involving Messrs. Scrushy and Siegelman, and others, was still ongoing in the Middle District, and a sitting grand jury was hearing witnesses relating to those other crimes and persons, the indictment remained sealed.

7. On October 4, 2005, I attended a meeting with Acting United States Attorney Louis V. Franklin, other government counsel, and several counsel for Richard M. Scrushy at the United States Attorney's Office in Montgomery, Alabama. I was informed in advance of the October 4 meeting by Acting USA Franklin that Mr. Scrushy's counsel had requested the meeting between lawyers, and that Mr. Scrushy would not be in attendance, nor would investigative agents. I understood that the purpose of the October 4 meeting was, at defense counsel's request, to discuss the possibility of a cooperation agreement between the government and Mr. Scrushy, and to consider any exculpatory information that might dissuade the Department of Justice from prosecuting Mr. Scrushy or any other person for any offense. To the best of my knowledge, between the filing of

3

the original sealed indictment on May 17, 2005, and this approach by defense counsel, the government sought to contact defense counsel to engage in discussions about a possible cooperation agreement between the government and Mr. Scrushy.

8. At the time of the October 4 meeting, any actual proffer or interview involving Mr. Scrushy himself could not proceed unless steps were taken to inform him of the pending charges. Had negotiations progressed to that point, the United States would not have entered into any proffer agreements or accepted any proffer of information from Mr. Scrushy until obtaining an order from the Court unsealing the indictment and informing defense counsel of its existence.

9. After introductions at the October 4 meeting, at defense counsel's request, the government outlined the information that caused it to believe that Mr. Scrushy had committed criminal offenses, specifically bribery during 1999 and 2000 of then-Governor Siegelman in connection with Siegelman's appointment of Mr. Scrushy to the Alabama Certificate of Need Review Board. Arthur W. Leach, lead counsel for Mr. Scrushy, then pursued a lengthy effort to discover from the government further information about the evidence and the government's legal theories.

10. No information of any kind that might be plausibly useful to the

4

government or injurious to the defense in any manner of which I am aware was ever provided to us by defense counsel at the October 4 meeting, nor was any agreement of any kind with defense counsel made at that meeting.

11. At the time of the October 4 meeting, the grand jury was still in session. Although part of the case had been indicted so as not to violate the statute of limitations, the United States was open to considering a resolution of the case against Scrushy in a number of ways, including a non-prosecution agreement that called for truthful cooperation. I had a duty during the meeting to avoid disclosure of the existence of the sealed indictment. I specifically recall that defense counsel asked a question about our charging decisions, which related to whether it was even worthwhile for them to engage in discussions with us or their own client about Mr. Scrushy's possible cooperation. Knowing that the grand jury investigation was continuing and we still were willing to consider potential offers from Mr. Scrushy that could have resulted in his truthful cooperation, I replied in a way that intended to make it clear that no final decisions had been made. The quotation provided in paragraph 7 of Leslie V. Moore's affidavit in support of defendant's motion to dismiss, stating that Mr. Leach asked, "Has a charging decision been made?," and that I answered simply "No," is not accurate, nor does it accord with the purpose, nature, and context of the discussion.

12. At all times during the October 4 meeting, I acted in good faith upon my instructions to pursue a preliminary, lawyer-to-lawyer discussion concerning a possible cooperation agreement with Mr. Scrushy without violating the Court's sealing order. At no time did I attempt to convey any false statement during the October 4 meeting or at any other time, to defense counsel or any other person involved in the investigation, nor have I ever attempted to deprive Mr. Scrushy of any right or advantage by such means.

13. In specific response to the assertion of defense counsel Leslie V. Moore in his affidavit accompanying defendant Scrushy's motion to dismiss the indictment, Doc. No. 132, Exh. A ¶ 6, I did not state, nor did any other government counsel state, during the October 4 meeting or at any time that I am aware, that Mr. Scrushy would be indicted if he did not testify as the government wanted him to testify. When defense counsel accused the government of taking this position, I specifically and pointedly rejected that mischaracterization of our position, and I expressly stated that, as in every potential cooperator's case, Mr. Scrushy would be required by any cooperation agreement to testify fully and truthfully.

14. I do not recall counsel for Mr. Scrushy making a specific request at the October 4 meeting or at any later time that Mr. Scrushy be permitted to testify

6

before the grand jury. I do recall that the government suggested at the October 4 meeting the possibility of grand jury testimony if there was a cooperation agreement, which was never forthcoming.

15. One or two days after the October 4 meeting, I received a telephone call from defense counsel Leach, who advised me he would be meeting with Mr. Scrushy. Mr. Leach asked me to provide him with legal points and authorities supporting the government's theory of Mr. Scrushy's liability. Apart from referring Mr. Leach to a leading case relevant to the matter, I declined to further address the matter.

16. In all my dealings with defense counsel relating to this matter, I intended only to accurately inform defense counsel of our willingness to negotiate in good faith, and I had absolutely no purpose or expectation of inflicting any prejudice upon the defendant, nor am I aware of any way in which the defendant was in fact or in theory prejudiced in any manner whatsoever.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 27, 2006, at Washington, D.C.

Richard C. Pilger
Trial Attorney
Public Integrity Section
Criminal Division
United States Department of Justice
202-514-1178

8