**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                              **Case no. 2:05-cr-119-MEF**

**DON EUGENE SIEGELMAN, et al.**

**DEFENDANT DON E. SIEGELMAN'S MOTION FOR RECONSIDERATION
OF ORDER DENYING MOTION TO DISMISS**

Comes now Governor Don Siegelman (hereinafter "Governor Siegelman"), a defendant in this case, by and through the undersigned counsel, and moves this Honorable Court to reconsider its March 15, 2006, Order denying Governor Siegelman's Motion to Dismiss Counts 1, 2, 5 through 14, and 18 through 33 of the Superseding Indictment (hereinafter "indictment").

## INTRODUCTION

As discussed below, the law is well established that there are two types of honest services mail and wire fraud offenses, public corruption and private sector offenses, and the indictment improperly charged Governor Siegelman with private sector "honest *and faithful*" offenses that involve different essential elements of proof than public corruption honest services offenses. Governor Siegelman clearly stands indicted, therefore, for alleged honest services essential elements charging terms that do not constitute public corruption offenses under 18 U.S.C. § 1346. The impact of the government's improper charges against Governor Siegelman is pervasive throughout the indictment, and the law requires that the 28 erroneously charged counts be dismissed.  Furthermore, under well-established Supreme Court and Eleventh Circuit case law the government has no right to

1

come back now and amend the erroneous essential elements charging terms it presented to the Grand Jury; the case law discussed herein unequivocally holds that the 28 honest services related counts in the indictment must be dismissed.

As grounds for this motion for reconsideration, Governor Siegelman, in all due respect, submits that the Court's Order denying dismissal of the "honest services" mail and wire fraud[1] counts (1) does not consider controlling Supreme Court and Eleventh Circuit case law that clearly demonstrate that the indictment's Section 1346 honest services essential elements charges to the Grand Jury alleging Governor Siegelman was engaged in a "scheme and artifice to defraud" that "deprive[d] the State of Alabama of honest *and faithful services*"(emphasis added)[2] charged Governor Siegelman with a *private sector* essential element offense rather than a *public corruption* honest services offense, (2) the Order does not consider the fact that a private sector honest services offense is a fundamentally different honest services offense than a public corruption offense, and "[t]he meaning [and nature] of the 'intangible right of honest services' has *different* implications…when applied to public official malfeasance and private sector misconduct."[3], (3) the Order does not consider the fact that counsel for the government at the March 14, 2006, hearing on Governor Siegelman's Motion to Dismiss in effect conceded Governor Siegelman's above argument that controlling Supreme Court and Eleventh Circuit case law recognizes that charges alleging the essential element scheme to defraud concept associated with the scope of *public* corruption honest services

---

[1] 18 U.S.C. § 1346. ("Section 1346").

[2] Superceding Indictment, at 7-8. The same Section 1346 RICO predicate act and separate count honest services essential element allegations were made throughout the indictment, including through incorporation by reference in the Count 1 RICO conspiracy charge (par. 6 at 4) and Count 5 Section 371 conspiracy charge (par. 53 at 31), as well as the money laundering RICO predicate act charges that allege t Section 1346 violations to be "specified unlawful activity" that underlie the money laundering charges in the indictment.

[3] *United States v. deVegter*, 198 F.3d 1324, 1328 (11th Cir. 1999) (emphasis added).

offenses charge public corruption honest services offenses as a scheme to defraud and deprive the public of "honest services" or "honest and impartial government" rather than depriving the public of "honest *and faithful*" services.  The Supreme Court and  Eleventh Circuit case law regarding the essential element scheme to defraud concept associated with the scope of *private sector* honest service offenses charge private sector honest services offenses as a scheme to defraud and deprive an *employer* of  "honest *and faithful*" services along with other private sector essential elements, including that the defendant employee foresaw, or reasonably should have foreseen that that the employer would suffer economic harm as a result of the defendant employee's depriving the employer of "honest and faithful" services.  Indeed, at the conclusion of oral arguments on the issue the government  informed the Court that it was amending the indictment to redact the charging word "faithful" from all honest services essential elements charges in the indictment, likewise nevertheless arguing that the government considers the word "faithful" in the indictment's alleged public corruption honest services mail and wire fraud essential elements charges to be surplusage, (4) the Order does not consider controlling Supreme Court and Eleventh Circuit case law that requires that the 28 honest services related counts must be dismissed, since the government's amendment redacting the words "and faithful" from the indictment "alters"[4] the "essential elements"[5] charging terms for the honest services offense that was presented to the Grand Jury. Under the Fifth Amendment to the United States Constitution Governor Siegelman may only stand trial for the essential elements charging terms of an offense that was presented to and has

---

[4]  See, e.g., *United States v. Cancelliere*, 69 F.3d 1116, 1121 (11th Cir. 1995)("An amendment to an indictment occurs when the charging terms of the indictment are *altered*. *United States v. Weissman*, 899 F.2d 1111, 1114 (11th Cir. 1990).")(emphasis added).

[5]  See, e.g., *United States v. Fischetti*, 450 F.2d 34, 39 (11 Cir. 1971) ("If, therefore, an amendment goes to an essential element of the crime, it is a substantial change and cannot be made except by resubmission to the grand jury, *Russell v. United State,* 1962, 369 U.S. 749, 82 S.Ct. 1038, 6 L.Ed.2d 240.").

the concurrence of the grand jury.[6]  Moreover, "[w]ords descriptive of what is legally essential to the charge in the indictment cannot be stricken as surplusage. (citations omitted)."[7], and (5) even if the government were not attempting to amend the indictment to redact the words "and faithful" associated with the honest services essential elements charging terms that were presented in the indictment to the grand jury, the Order does not consider that in light of  Supreme Court and Eleventh Circuit case law recognizing the fundamental differences in the nature of public corruption honest services offenses and private sector honest services offenses, additional controlling Supreme Court and Eleventh Circuit case law requires that the Court dismiss the 28 honest services related counts in the indictment, since the "honest *and faithful*" honest services essential elements charging terms do not state a prosecutable honest services public corruption offense.

Accordingly, as discussed below Governor Siegelman respectfully submits that this Honorable Court should grant Governor Siegelman's Motion To Reconsider its March 15, 2006, Order and should grant Governor Siegelman's Motion to Dismiss counts 1, 2, 5 through 14, and 18 through 33 of the indictment.

---

[6]  *Id.*
[7]  Charles Alan Wright, *Wright & Miller Treatise*, 1 Fed. Prac. & Proc. Crim. 3rd § 127 (2005).

## ARGUMENT

### A. The Indictment's Section 1346 Honest Services Essential Elements Charges In The Indictment Charged A Private Sector Honest Services Offense Rather Than A Public Corruption Honest Services Offense.

Congress's amendment to the mail and wire fraud statutes[8] in 1988 provides that a "scheme or artifice to defraud" under the statutes shall also include a scheme or artifice to defraud another of their intangible right of honest services: "For purposes of this chapter[9], the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

The honest services mail and wire fraud statute ("honest services" statute) was enacted as a Congressional response to the Supreme Court's ruling in *United States v. McNally*[10] that held that schemes to defraud citizens of their intangible rights to honest services were not encompassed in the mail and wire fraud statutes as presently enacted by Congress. "If Congress desires to go further, it must speak more clearly than it has." *McNally*, 483 U.S. at 360.

The *McNally* case was a public corruption type honest services intangible rights case. In *Carpenter v. United States*[11], a private sector case[12] decided shortly after

---

[8] *See*, 18 U.S.C. §§ 1341 and 1343 for the only "scheme or artifice to defraud" encompassed in the mail and wire fraud statutes prior to Congress's 1988 Section 1346 honest services amendment to the mail and wire fraud statutes. The Section 1341 mail fraud statute, for example, provides in pertinent part that:

> "Whoever, having devised or intending to devise any *scheme or artifice to defraud*, or *for obtaining money or property* by means of false or fraudulent pretenses, representations, or promises,…for the purpose of executing such scheme or artifice or attempting to do so, [uses the mails or causes them to be used], shall be fined not more than $1,000 or imprisoned not more than five years, or both."

[9] The "chapter" includes schemes or artifices to defraud for the mail and wire fraud statutes, as well as for the bank fraud statute, 18 U.S.C. § 1344, and the health fraud statute, 18 U.S.C. § 1347.

[10] *McNally v. United* States, 483 U.S. 350, 355 (1987).

[11] 484 U.S. 19, 25 (1987).

[12] The *Carpenter* case was private sector "intangible property" scheme to defraud mail and wire fraud type case rather than a private sector "intangible rights" case. *Id.*

*McNally*, the Supreme Court specifically described what it held in *McNally* regarding whether public corruption honest services type intangible rights offenses fall within the scope of the essential elements of mail and wire fraud offenses:

> We held in *McNally* that the mail fraud statute does not reach 'schemes to defraud citizens of their rights to **honest and impartial government**,' *id.*, at 355, 107 S.Ct., at 2879, and that the statute is limited to 'limited in scope to the protection of property rights.' *Id.*, at 360, 107 S.Ct., at 2882. (emphasis added).

Significantly, when the Supreme Court in *Carpenter* spoke of private sector honest services intangible rights offenses, the Supreme Court spoke in private sector honest services offense essential elements charging terms of the employer's right to "honest *and faithful*" services as erroneously charged in the essential elements terms of Governor's Siegelman's "honest *and faithful*" indictment for alleged public corruption.

> This is not a case like *McNally*. [an intangible rights case] The Journal as Winans' employer, was defrauded of much more than its contractual right to his **honest and faithful service**, an interest too ethereal in itself to fall within the protection of the mail fraud statute, which 'had its origin in the desire to protect individual property rights.' *McNally*, *supra*, at 359, n.8, 107 S.Ct.. at 2881, n.8.

*Carpenter*, 484 U.S., at 25.

Thus, in describing the holdings of *McNally* and *Carpenter* the Third Circuit, for example, in *United States v. Zauber*[13] similarly recognized the distinction that the essential elements charging terms for public corruption honest services offenses are charged in terms of the public's right to "honest" services, while the essential elements charging terms for private sector honest services offenses are charged in terms of the employer's right to "honest and faithful" services.

---

[13] *United States v. Zauber*, 857 F.2d 137, 142 (3rd Cir. 1988).

> Allegations of lost 'intangible' rights are insufficient, without more, to support an indictment charging violations of the mail and wire fraud statutes. Intangible rights include the *public's right to have government officials perform their duties* **honestly**. *McNally*, 107 S.Ct. at 2881. They also included an *employer's right to the* **honest and faithful** *services of its employees.* Purely intangible rights are contrasted with rights in intangibles which nevertheless constitute 'property.' See, *Carpenter*, *supra*, (newspaper's financial information, misappropriated by reporter prior to publication, constituted loss of property to newspaper for purposes of mail and wire fraud statutes. (emphasis added).

The Supreme Court thus held that the private sector case before it in *Carpenter* was not a private sector intangible rights "*honest and faithful*" type alleged offense "*too ethereal*" to constitute a mail fraud offense, but rather a private sector alleged offense that encompassed "*intangible property rights*" within the scope of a mail fraud offense. "*McNally* did not limit the scope of § 1341 to tangible as distinguished from intangible property rights." *Id.*

Importantly, the Supreme Court in *Cleveland v. United States*[14] recently clearly enunciated the exact intangible rights mail fraud type offense enacted by Congress under 18 U.S.C. § 1346 in response to *McNally*. The Supreme found:

> The following year [after *McNally*], **Congress amended the law specifically to cover one of the 'intangible rights'** that lower courts had protected[15] under § 1341 prior to *McNally*: **'the intangible right of honest services.'** Anti-Drug Abuse Act of 1988, § 7603(a), 18 U.S.C. § 1346. **Significantly, Congress covered only the intangible right of honest services** even though federal courts, relying on *McNally*, had dismissed, for want of monetary loss to any victim, prosecutions under § 1341 for

---

[14] *Cleveland v. United States*, 531 U.S. 12 (2000).
[15] As contrary to the government's argument that Congress re-instated all of the intangible rights previously recognized by the courts prior to *McNally* as constituting a mail fraud and wire offense.

diverse forms of public corruption, including licensing[16] fraud.[17] (emphasis added).

As consistent with the above case law recognizing a distinction between the essential elements charging terms for honest services public corruption offenses and the essential elements charging terms for honest services private sector offenses, Eleventh Circuit Pattern Jury Instruction 51.2 provides the following essential elements charging terms for honest services mail and wire fraud public corruption offenses, in pertinent part, as follows:

> Title 18, United States Code, Section 1341[18] and 1346, **a Federal crime of offense** for anyone to [use the United States mails] [transmit something by private or commercial interstate carrier] in carrying out **scheme to defraud another of an intangible right of honest services**.
>
> The Defendant can be found **guilty of that offense only if** all of the following facts are proved beyond a reasonable doubt:
>
> <u>First</u>: That the Defendant knowingly devised or participated in a **scheme to fraudulently deprive** [**the public**] [another] **of the intangible right of honest services**, as charged..
>
> <u>Second</u>: That the Defendant did so willfully and with the intent to defraud; and
>
> <u>Third</u>: That the Defendant used [the United States Postal Service by mailing or by causing to be mailed] [a private or commercial interstate carrier by depositing or causing to be deposited with such carrier] some matter or thing for the purpose of executing the scheme to defraud. (emphasis added).

---

[16] The case before the Supreme Court in *Cleveland* involved a Louisiana video poker licensing case asserting that certain Louisiana officials defrauded the state of "property" allegedly associated with its video poker licenses, but the case was not brought under the Section 1346 honest services "intangible rights" statute. *Cleveland, 531 U.S.*, at 20.

[17] *Id.* at 19-20.

[18] Eleventh Circuit Pattern Jury Instructions, 50.2, *Mail Fraud, Depriving Another Of Intangible Right Of Honest Services, 18 U.S.C, §§ 1341 and 1346.* Equally applicable to 18 U.S.C. §§ 1343 and 1346 wire fraud. See, Eleventh Circuit Pattern Jury Instructions, 50.2, *Wire Fraud, Depriving Another Of Intangible Right Of Honest Services, 18 U.S.C. §§ 1342 and 1346.*

Likewise, Eleventh Circuit Pattern Jury Instruction 51.2 further provides the essential element charging terms for honest services mail and wire fraud private sector offenses, in pertinent part, as follows:

> [**With regard to employers in the *private sector***, the government **must prove the employee intended to breach a fiduciary duty**, **and** that the **employee foresaw**, or reasonably should have foreseen, that the **employer might suffer an economic harm** as a result of that beach.]
> Under the law, every agent or employee representing or working for someone else—the employer—has a duty (called a fiduciary duty) to act **honestly and faithfully** in all of his or her dealings with the employer….

Indeed, the charging terms of the indictment involved in the Eleventh Circuit's private sector honest services case in *United States v. deVegte*r,[19] charged in pertinent part, for example, that defendant deVegter "'had a duty to act **honestly and faithfully**…."[20] Moreover, the Eleventh in *deVegter* specifically found that "[t]his case involves the alleged commission of honest services fraud by the private sector defendants, *not* a defrauding of the public of the **honest** governmental services of a public official." (emphasis added).[21]

Finally, it is very significant to note that the honest services essential elements charging terms of Governor Siegelman's indictment erroneously and prejudicially charged the public corruption honest services offense against Governor Siegelman with the private sector honest services essential elements charging terms of "depriv[ing] the State of Alabama of its right to his **honest and faithful services**".[22] Yet, to the contrary, the essential elements charging terms of the government's indictment of the ongoing

---

[19] 198 F.3d 1324 (11th Cir. 1999).
[20] *Id.* at 1330.
[21] *Id.* at 1328.
[22] See, e.g., Superceding Indictment, par. 17 at 8.

similar case against Governor Ryan in Illinois charged the alleged public corruption

honest services offense against Governor Ryan in public corruption honest services

essential elements charging terms as follows: "In his capacity as Secretary of State and

Governor defendant Ryan owed a duty of **honest services** to the people of Illinois and to

the State of Illinois in the performance of his public duties."[23]

Moreover, the government's own manual for prosecuting RICO cases,

*Racketeering Influenced & Corrupt Organization, A Manual For Federal*

*Prosecution,* U.S. Department of Justice, Criminal Division, Organized Crime and

Rackeering Section (Fourth Edition July 2000) refers to the honest services essential

elements charging terms offense of honest services public corruption cases only in terms

of "honest services" rather than "honest and faithful services." The Department of Justice

describes the essential elements of the public corruption honest services offense as

intended

> "…to reach schemes such as those involving **public corruption**, where a defendant defrauds a citizen of his/her right to **honest services.** In response to the Supreme Court's decision, Congress enacted 18 U.S.C. § 1346 in 1988, which expressly defines 'scheme or artifice to defraud.' For purposes of the mail and wire fraud statutes, to include a 'scheme or artifice to deprive another of the intangible right of **honest services**.'"[24] (emphasis added).

Accordingly, as demonstrated by Supreme Court and Circuit Court case law, as

well as the Eleventh Circuit's Pattern Jury Instructions, the government's charging terms

in its ongoing case against Governor Ryan in Illinois and the government's own RICO

prosecution manual, there can be not doubt that the indictment's charging terms against

---

[23] See, e.g., Second Superceding Indictment, *United States if America v. Lawrence E. Warner and George H. Ryan, Sr.*, 2003 WL 23305543, Count One, par. 2B and Count Three, par. 1 (N.D.Ill.).

[24] *Id*. at 21-22.

Governor Siegelman erroneously charged the essential elements for the alleged public corruptions offense against Governor Siegelman in the essential elements charging terms of a private sector honest services offense.

> **B. There Is A Fundamental Difference In Public Corruption "Honest Services" Offenses And Private Sector "Honest and Faithful" Services Offenses. Moreover, The Private Sector "Honest and Faithful" Essential Elements Charging Terms Of The 28 Honest Services Related Counts In The Indictment Against Governor Siegelman Prejudicially Change The Very Nature Of And Broaden The Scope Of The Public Corruption "Honest Services" Offense Far Beyond The Scope Of The Section 1346 Statute Enacted By Congress As Already Interpreted By The United States Supreme Court.**

It is widely recognized by the Courts and commentators that there is a fundamental difference in public corruption honest services offenses and private sector honest services offenses. Indeed, the Eleventh Circuit in *United States v. deVegter*[25] specifically found that "[t]he meaning of the 'intangible right of honest services' has *different implications*, however, when applied to public official malfeasance and private sector misconduct."[26] (emphasis added). "Moreover, there are different policy concerns and reasons for limits when the honest services doctrine is applied in the private sector than when it is applied in the public sector." Tendler, *An Indictment Of Bright Line Tests For Honest Services Mail Fraud*, 72 Fordham L.Rev. 2729, 2741 (2004) (recognizing that the private sector honest services prosecutions have had their own unique problems with various essential elements approaches applied by the circuits courts to assure that an application of the honest services doctrine does not overly criminalize business relationships between employers and their employees). **"**According to one commentator, this 'exotic flower [private sector honest services prosecutions]…quickly overgrew the

---

[25] 198 F.3d 1324. (11th Cir. 1999).
[26] *Id.* at 1328.

landscape in the manner of kudzu vine until…few ethical or fiduciary breaches seemed beyond its potential reach."[27] Ultimately, the courts in their quest to establish some appropriate boundaries of what unfaithful, disloyal breaches of fiduciary duties constitute illegal dishonest services under Section 1346 have established essential element requisites that in addition to an employee's unfaithful breach of a fiduciary relationship with an employer there must be, for example, a reasonable foreseeability of harm to the employer[28] or a material[29] breach associated with the employee's unfaithfulness and disloyalty.[30]

Where much of the focus in private sector honest services case law has thus been upon whether there existed a type of relationship between an employee and employer *in the context of the business world* that gave rise to a duty of "honest and faithful services"[31] under Section 1346, the focus in public corruption honest services case law

---

[27] *Id.* at 2734. (quoting John C. Coffee, Jr., *Modern Mail fraud: The Restoration of the Public/Private Distinction,* 35 Am. Crim. L. Rev. 427 (1998).

[28] *See, e.g., deVegter,* 198 F.3rd at 1330. (Eleventh Circuit ruling that "a private sector violation of § 1346 honest services involves a breach of a fiduciary **and** reasonably foreseeable economic harm.") (emphasis added); *see also,* Eleventh Circuit Pattern Jury Instruction 50.2, *Mail Fraud, Depriving Another Of Intangible Right Of Honest Services, 18 U.S.C. §§ 1341 and 1346.* ("With regard to employers in the private sector" charging that the employee "has a duty (called a fiduciary duty) to act **honestly and faithfully**" but providing essential element charging terms that "the government must prove that the employee intended to breach a fiduciary duty, and that the employee foresaw, or reasonably should have foreseen, that the employer might suffer an economic harm as a result of that beach." (emphasis added).

[29] *See, e.g., Rybicki II,* No. 00-1043, 2003 WL 23018917, at *14 (2d Cir. Dec. 29, 2003) (in banc) (rejecting *Rybicki I* reasonably foreseeable harm test and adopting a materiality test requiring that the trier of fact determine whether the employee's misconduct has a natural tendency to influence or is capable of influencing te employer to change his behavior); *Rybicki I,* 287 F.3rd 257 (2d Cir. 2002)(adopting a reasonably foreseeable harm test with a de minimis harm requirement).

[30] *See generally,* Kessiman, *Business Fiduciary Relationships And Honest Services Fraud: A Defense Of The Statute,* 2004 Columbia L.Rev. 197 (2004); Moohr, *Mail Fraud Meets Criminal Theory,* 67 U. Chicago L. Rev. 1 (1998).

[31] *See, e.g.,* Eleventh Circuit Pattern Jury Instructions 50.2, *supra; see also, deVegter,* 198 F.3rd at 1330-1331.(finding that the nature of the relationship involved in *deVegter* involved a fiduciary relationship and further finding that "[w]e therefore, need not decide the question reached by the district court—whether a fiduciary duty is necessary in private sector § 1346 cases."); *cf., Langford v. Rite Aid of Alabama,* 231 F.3rd 1308, 1312 (11th Cir. 2000)(recognizing that a fiduciary relationship as well as "some other relationship of trust" in private sector business relations can give rise to a duty of disclosure between private parties the breach of which may give rise to mail and wire fraud violations under 18 U.S.C. §§ 1341 and 1343).

has assumed public officials to have a fiduciary duties to the public[32] and has focused rather on whether the public official has *in the context of the political world[33]* provided "honest services", impartial[34] and free of fraudulent[35] self-interested benefits in the public official's decision-making.

Importantly, it is in the context of "different implications"[36] and "different concerns and reasons for limits"[37] in the political world and the business world that the nature of the indictment's original "honest *and faithful*" essential elements charging terms are broader than the scope of Section 1346 public corruption offenses recognized, for example, by the Supreme Court in *Cleveland*,[38] *supra*, and mandate dismissal of the 28 honest services related counts in the indictment. Moreover, as the case law below clearly demonstrates the government cannot amend the indictment to redact the erroneous "and faithful" charging terms since the "and faithful" charging terms were provided to the grand jury in charging the essential elements of the alleged public corruption honest services offense.

The "honest *and faithful*" services essential elements charging terms clearly take on an entirely different context when applied to the reality of the political world in which public officials are engaged in "honest services" decision-making on behalf of the

---

[32]   *See, e.g.*, *deVegter*, 198 F.3rd at 1328; *see also,* Moohr, *Mail Fraud Meets Criminal Theory, supra.*

[33]   Something not considered, for example, by the Eleventh Circuit *deVegter* decision. "In this case, it is not alleged that deVegter deprived *the public* of **honest** *governmental* services." (italics emphasis supplied by the 11th Circuit). "The cases illuminate [the] standard for a defrauding of 'honest' services in the private sector." *Id.* at 1329.

[34]   *See, e.g.*, *McNally*, 107 S.Ct. at 2879; *see also,* Moohr, *Mail Fraud Meets Criminal Theory, supra.*

[35]   *deVegter*, 198 F.3rd, note 3 at 1328.

[36]   *Id.* at 1328.

[37]   Tendler, *An Indictment Of Bright Line Tests For Honest Services Fraud, suprs* at 2741.

[38]   *Cleveland*, 531 U.S., at 19-20. ("…Congress amended the law **specifically to cover one of the 'intangible rigts'** that lower courts had protected under § 1341 prior to *McNally*: '**the intangible right to honest services.'**" (emphasis added).

public.[39] Thus, as consistent with the Supreme Court's extremely close parsing of the essential elements of mail and wire scheme to defraud concept[40] evidenced in *McNally*, *supra*, and *Carpenter*, *supra*,[41] as well as the Supreme Court's extremely close parsing of the limited scope of Congress's enactment of the Section 1346 intangible rights "honest services" statute evidenced in *Cleveland*, *supra*,[42] it is no wonder that other commentators have counseled that the courts should limit their consideration of the appropriate descriptive words of the essential elements of the Section 1346 public corruption offense to a deprivation of "honest services" even though pre-*McNally* case law sometimes utilized other words to describe the essential elements of the offense.[43]

---

[39] *See, e.g., Williams, Good Government By Prosecutorial Decree: The Use And Abuse Of Mail Fraud*, 32 Ariz. L.Rev. 137 (1990); Moohr, *Mail Fraud And The Intangible Rights Doctrine: Someone To Watch Over Us*, 31 Harv. Journal On Legislation 153 (Counseling restraint in interpreting the scope of Section 1346 honest services political corruption offenses; "Federal mail fraud prosecutions of state and local officials have generated much controversy. In their efforts to eradicate local political corruption, federal prosecutors have extensively used, and possibly abused, the doctrine of 'intangible right' to the honest services of public officials." *Id.*); Beale, *Comparing The Scope Of The Federal Government's Authority To Prosecute Federal Corruption And State And Local Corruption: Some Surprising Conclusions And A Proposal*, 51 Hastings L.J. 699 (2000)(Counseling restraint in interpreting the scope of Section 1346 honest services political corruption offenses; Regarding an overly broad interpretation of statutes such as the honest services fraud essential elements offense, the article begins by stating: "Indeed this essay will suggest that, at its outer limits, the 'honest services' branch of the mail and wire fraud statutes has the potential to give federal prosecutors authority to prosecute state and local conduct…that do not otherwise constitute crimes."; Absent a strict policing by the courts to interpret the essential elements of Section 1346 public corruption offenses in close adherence to the limited language and intent of the "honest services" statute [as also recognized by the Supreme Court in *Cleveland*, *supra*,], the article further warns that "Prosecutors may succumb to the desire to chalk up a victory over prominent political figures, even when the evidence shows only relatively unimportant misconduct." *id.* at 719; The article further concludes by stating: "In order to place appropriate limits on the concept of honest services under the mail and wire fraud statutes, the federal courts should assume that Congress did not intend the phrase to sweep more broadly than the criminal statutes that regulate the conduct of federal officials, and should use those statutes to give content to § 1346." *Id.* at 722.

[40] See, e.g., *McNally*, 483 U.S., at 356-360 (closely reviewing the essential elements of mail fraud offenses as amended by Congress in 1909; "If Congress desires to go further [to encompass intangible rights to honest government], it must speak more clearly than it has." *Id.* at 360.).

[41] The Supreme Court in *McNally* and *Carpenter* did not recognize the public's "intangible rights" to "honest and impartial" by public officials or the employer's "intangible rights" to "honest and faithful" by employees, considering such rights to be "too ethereal". *Carpenter*, 484 U.S., at 25.

[42] *Cleveland*, 531 U.S., at 19-20. ("**Significantly, Congress covered only the intangible right of honest services**…." *Id.*).

[43] In all due respect, counsel would note that the Court's March 15 Order cites *United States v. Lopez-Lukis*, 102 F.3d 1164, 1168 (11th Cir. 1997) for "noting the use of Section 1346 to 'prosecute schemes to defraud the public of the *honest and faithful services* of government officials." *United States v. Siegelman*, 2006 WL 680566, at * (March 15, 2006). Significantly, as consistent with the Supreme Court *Cleveland* case, *supra*, and Eleventh Circuit Pattern Jury Instructions 50.2, *supra*, the Eleventh Circuit *Lopez-Lukis*

> These pre-*McNally* cases, however, were not always predicated on the words 'honest services,' the terms presently used in the most recent mail fraud addendum....As such, even the wealth of pre-*McNally* cases employing the intangible rights doctrine need to be mitigated to include only those that provide actual correlation to the language presently used in section 1346.[44]

Podgar, *Mail Fraud: Opening Letters*, 43 S.C. L.Rev. 223, 237 (1992).

Indeed, it is most significant to note that in closely parsing and strictly adhering to the language of the mail fraud statute the Supreme Court in *Cleveland*, *supra* at 25, further found: "We resist the Government's reading of § 1341 as well because it invites us to approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress."

Furthermore, "an eloquent [even prophetic] statement of the potential dangers of the honest services theory in the political context"[45] is provided by Judge Ralph K. Winter in the pre-*McNally*, pre-Section 1346 "honest services" statute often quoted case of *United States v. Margiotta*, 688 F.2d 108, 139-144 ( 2nd Cir. 1982) (J. Winter, concurring and dissenting opinion). Indeed, Judge Winter dissented to the Second Circuit's pre-*McNally*, pre-Section 1346 affirming of a conviction based on an

---

case specifically recognizes that "Sections 1341 and 1346 of Title 18 of the United States Code, the federal mail fraud statutes, make it unlawful to deprive the electorate of a governmental officer's **honest services**." (emphasis added). *Id.* at 1164. Moreover, *Lopez-Lukis* cites *United States v. Waymer*, for the proposition that Section 1346 "honest services" statute is "...frequently used to combat government corruption." *Lopez-Lukis*, 102 F.3rd, note 1 at 1164. Counsel respectfully submits that the Eleventh Circuit was merely noting that government prosecutors had utilized the intangible rights doctrine as early as the 1940's and was not suggesting that "honest and faithful" services is the appropriates essential elements of a public corruption "honest services" offense since the enactment of Section 1346. *See*, *Lopez-Lukis, supra* at 1164. 1168. Moreover, the 1940 pre-*McNally*, pre-Section 1346 case cited by *Lopez-Lukis*, *Shusan v. United States*, 117 F.2d 110 (5th Cir. 1940), does not even stand for the proposition that the appropriate essential elements for the public corruption intangible rights offense was a deprivation of the public's intangible right to "honest and faithful" services from the defendant.

[44] See, e.g., Eleventh Circuit Pattern Jury Instructions 50.2, *supra*, setting out the "FIRST" essential element for the charging terms of a Section 1346 public corruption offense as proof beyond a reasonable doubt that the defendant deprived the "public" of "honest services."

[45] Beale, *supra*, 51 Hastings L.J., note 95 at 719.

indictment that among other public corruption intangible rights defrauding charges alleged (as also very similar to the essential elements "honest *and faithful*" charging terms in Governor Siegelman's indictment) that the defendant "defraud[ed] the State, the Town of Hempstead and Nassau County and their citizens…of the *honest and faithful* participation of (Margiotta) in (their) affairs." (emphasis added). *Id.* at 140. Understandably, Judge Winter offered the following conclusion with respect to the amorphous "honest and faithful" political corruption essential elements charge in the context of the political world of public officials:

> Juries are simply left to apply a legal standard which amounts to little more than the rhetoric of sixth grade civics classes. **One searches in vain for even the vaguest contours** of the legal obligations created beyond the legal obligation to conduct government "*honestly*" or "*impartially*,"[46] **to ensure one's 'honest and faithful participation' in government**…."[47] (emphasis added).

Indeed, immediately after quoting the above amorphous "**honest *and faithful***" charging terms which are very similar to the charging terms for the alleged Sections 1346 honest services offense against Governor Siegelman, and as also clearly applicable to how the charging terms broadly exceed the scope of Section 1346, Judge Winter found:

> *Given this sweeping charge* and the majority [pre-*McNally,* pre-Section 1346] opinion, no amount of rhetoric seeking to limit the holding to the facts of this case can conceal that *there is no end to the common political practices which may now be swept within the ambit of mail fraud.*[48] (emphasis added).[49]

---

[46]  *See*, *McNally*, *Carpenter* and *Cleveland*, *supra*, and the Section 1346 "honest services" statute which was enacted six years after Judge Winter's dissent in *Margiotta.* As recognized by the Supreme in *Cleveland*, *supra*, the Section 1346 enactment regarding political corruption intangible rights case now by statute "covers only" "honest services" essential  elements offenses.

[47]  *Margiotta*, 688 F.2d at 142-143.

[48]  *Id.* at 140

[49]  Counsel would further note that the Supreme Court has been very sensitive to the political realities, for example, of campaign financing, campaign financing related to political access for a public official's time, political patronage, and requisite proof of quid pro quos for gratuities  in assuring that other criminal statutes are not interpreted overly broadly in the world of politics. For example, in recognizing the

Judge Winter also opined that part of the origins for such amorphous intangible rights standards "and wholly impermissible result" being applied in the context of political corruption cases was "brought about, I believe, by drawing an erroneous analogy between fiduciary relationships involving private parties[50] based on express or implied contract and relationships between politically active persons and the general citizenry in a pluralistic, partisan, political system."[51]

> The words fiduciary are no more than a legal conclusion and the legal obligations actually imposed under that label vary greatly from relationship to relationship.
>
> ….
>
> To transfer this complex, variable body of law to the political context, **simply by mouthing the word fiduciary**, makes the very mistake underlined by Mr. Justice Frankfurter in *Chenery*.[52] Although the courts have, with precious little analysis, brought virtually all participants in government and politics under the rubric fiduciary, the

---

appropriate limitations on the scope of other criminal statutes in the context of the realities of the political world, the Supreme Court in *McCormick v. United States*, 500 U.S. 257, 272 (1991) spoke of the limitations of alleged extortion in the realm of campaign financing:

> Serving constituents and supporting legislation that will benefit the district and individuals and groups therein is the everyday business of a legislator. It is also true that campaigns must be run and financed. Money is constantly being solicited on behalf of candidates, who run on platforms and who claim support on the basis of their views and what they intend to do or have done. Whatever ethical considerations and appearances may indicate, to hold that legislators furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, 'under color of official right.' To hold otherwise would open to prosecution not only conduct that has long been thought to be well within the law but also conduct that in a very real sense is unavoidable so long as elections campaigns are financed by private contributions or expenditures, as they have been from the beginning of the Nation. It would require statutory language more explicit than the Hobbs Act contains to justify a contrary conclusion. (citation omitted).

[50] As previously discussed, the essential elements alleged political corruption intangible rights charging terms of Governor Siegelman's indictment erroneously charged Governor in private sector terms of "honest *and faithful*" services; see also, Eleventh Circuit Pattern Jury Instructions 50.2, *supra.* (charging a fiduciary "honest and faithful" essential element for private sector Section 1346 offenses).

[51] *Id.* at 142.

[52] *Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 85-86 (1943).

obligations imposed are wholly the creation of recent interpretations of the mail fraud statute itself.[53]

Therein lies an additional problem with the indictment's erroneous private sector "honest *and faithful*" type alleged public corruption type charging terms that are rooted in private sector context fiduciary type concepts.[54] Indeed, as insightfully analogously recognized by Judge Winter, by simply "mouthing the word fiduciary"[55] just as the indictment erroneously "simply mouths the words honest *and faithful*" the very nature of the indictment's charging terms are far broader than the scope of "honest services" fraud embodied in the Section 1346 statute recognized as limited in its intangible rights application, for example, by the Supreme Court in *Cleveland*, *supra*. After much controversy regarding the overly broad consequence of such a broad, amorphous application of the honest services statute in the private sector itself, the courts refused to allow the overly broad criminalizing of business relationships brought about by Judge Winter's similar recognition in the context of alleged political corruption intangible rights offenses.

> We recognize that the *literal terms* of the 'intangible right to honest services' doctrine do not indicate that the prosecution must prove that a fiduciary breach has created a risk of economic harm to the employer. Rather, the literal terms suggest that dishonesty by an employee, standing alone, is a crime. Courts, however, have refused to interpret the doctrine so broadly.
>
> ….
>
> This refusal to carry the intangible rights doctrine to its logical extremes stems from a need to avoid the over-criminalization of private relationships: '[I]f merely depriving the victim of the loyalty *and faithful service* of his fiduciary constitutes mail fraud, the ends/means

---

[53] *Margiotta*, 688 F.2d at 142.

[54] *See*, *e.g.*, private sector essential elements Section 1346 charging instructions , Eleventh Circuit Pattern Jury Instructions, 50.2, *supra*. ("employee…has a duty (called a fiduciary duty) to act *honestly and faithfully* in all of his or her dealings with the employer….").

[55] *Id.*

> distinction is lost. Once the ends/means distinction is abolished and disloyalty alone becomes the crime, little remains before every civil wrong is potentially indictable.' *Lemire*, 720 F.2d at 1336 n. 11 (quoting John C. Coffee, Jr., *From Tort to Crime: Some Reflections on the Criminalization of Fiduciary Breaches and the Problematic Line Between Law and Ethics*, 19 AM.CRIM.L.Rev. 117, 167 (1981). (emphasis added).

Similarly, to now add "honest *and faithful*" to the context of alleged political corruption essential elements for honest services offenses broadens and stretches the honest services statute far beyond what the Supreme Court in *Cleveland*, *supra*, must surely have envisioned when the Supreme Court found that Section 1346 was enacted to cover only one of the intangible rights previously protected by the pre-*McNally* courts. Indeed, as analogously recognized by the above Circuit Courts regarding the overly broad application of this concept in the context of private sector intangible rights offenses, when "unfaithfulness alone becomes the crime, little remains before limitless undisclosed political indiscretions would be potentially indictable." Moreover, aside from the overly broad "sweeping nature of the *and faithful*" essential elements charge[56] a public official in the political context of such a runaway essential elements charging terms for alleged Section 1346 pubic corruption charges would be even more vulnerable than the private sector to such erroneous charges since, for example, as opposed to the charging terms for private sector honest services offenses (1) Public corruption honest services Section 1346 honest services charges begin with an assumption there is a

---

[56] And as implicitly recognized by Judge Winter in *Margiotta*, *supra*, what does a chargeable political corruption essential elements honest services crime of "unfaithfulness" even mean, where are its limits and boundaries, and what does the charging term mean to a grand jury or jury when it is "amounts to little more than the rhetoric of sixth grade civic classes"?  Indeed, The Oxford Dictionary defines "unfaithful" as "**1** not faithful, esp. adulterous. **2** not loyal. **3** treacherous."  "Dishonest" on the other hand, which the Supreme Court in *Cleveland*, *supra*, "Significantly" indicates Section 1346 is limited to in the context of Section 1346 political corruption charges within the scope of Section 1346, is defined in The Oxford Dictionary in such understandable "honest services" political corruption concepts "fraudulent", "double-dealing", "thievish", "crooked" and "corrupt."

fiduciary relationship that may be breached, and (2) a public official may be held guilty of a Section 1346 honest services public corruption offense even if there is no harm or foreseeable harm to the public.  Indeed, the distinct trend in the courts as well as with experienced former prosecutor commentators is to call for a more limited, responsible, even-handed interpretation of the scope of Section 1346 political corruption offenses rather than a broadening of the offense to include such amorphous runaway Section 1346 essential elements charges as "faithful" rather "honest" services. *See*, *e.g.*, *United States v. Sawyer*, 85 F. 3d 713, 725, 741 (1st Cir. 1996) ([A]lthough a public official might engage in reprehensible misconduct related to an official position, the conviction of that official cannot stand where the conduct does not actually deprive the public if its right to *honest services....*" *id.* at 725; "The practice of using hospitality, including lavish hospitality, to cultivate business or political relationships is longstanding and pervasive….It may well be that such hospitality should be flatly prohibited by law, but if [the defendant] had this limited intent—to cultivate friendship rather than to influence an official act—the federal statutes here involved [honest services fraud and bribery] would not be violated."); DiBiagio, *Politics And The Criminal Process: Federal Public Corruption Prosecutions Of Popular Public Officials Under The Honest Services Component Of The Mail And Wire Fraud Statutes*, 105 Dickson L. Rev. 57, 92 (2000)( former federal prosecutor concluding that rather than expanding Section 1346 prosecutions public corruption offenses and prosecutions should be limited to serious offenses that likewise violate and are "viewed through the prism" of other federal corruption statutes); Moohr, *Mail Fraud Meets Criminal Theory*, 67 U. Chicago L.Rev. 1, 50-51 (1998) (concluding that the Section 1346 honest services statute and public

corruption offenses should be interpreted and evaluated through the lenses of criminal theory to assure that only serious, culpable honest services violations are recognized as criminal political offenses.)

Accordingly, there can be no doubt that the "honest *and faithful*" essential elements charging terms included in the indictment of Governor Siegelman changed the very nature of and broadened the scope of Section 1346 far beyond the scope the "honest services" statute enacted by Congress and as already interpreted by the United States Supreme Court.

Furthermore, as discussed below, the government cannot amend the indictment to redact the charging terms "and faithful" since the terms involves involve the very essential elements of the alleged public corruption offense charged against Governor Siegelman in the indictment. Accordingly, the 28 honest services related must be dismissed or face certain reversal on appeal as requires by Supreme Court and Eleventh Circuit case law.

   **C.  The 28 Honest Services Related Counts In The Indictment Must Be Dismissed Since The Government's Attempt To Amend The Indictment To Redact "AND FAITHFUL" Goes To The Essential Element Of The 28 Section 1346 Charges Presented To The Grand Jury.**

As previously discussed at length herein, the utilized the terms "honest *and faithful*" to charge the essential elements of the Section 1346 honest services counts against Governor Siegelman. Contrary, for example, to the Section 1346 "honest services" charges the government utilized recently to charge Governor Ryan in Illinois and contrary to the Eleventh Circuit Pattern Jury Instructions 50.2 that specifically provide that the "<u>FIRST</u>" essential element of a Section 1346 public corruption offense is proof beyond a reasonable doubt the defendant engaged in a scheme or artifice to defraud

the public of "honest service", the government charged Governor Siegelman with allegedly engaging in a scheme of artifice to deprive the people of Alabama of "honest *and faithful*" services.

Accordingly, there cab be no doubt that the indictment must be dismissed since the government cannot amend an indictment to redact words that go to the essential elements of the offense that were presented to the grand jury.

The Supreme Court, Fifth Circuit, and Eleventh Circuit case law is very clear on this:

> If, therefore, an amendment goes to an essential element of the crime, it is a substantial change and cannot be made except by resubmission to the grand jury. *Russell v. United States*, 1962, 369 U.S. 749, 82 S.Ct. 1038, 6 L.Ed.2d 240.

*United States v. Fishetti*, 450 F.2d 34, 39 (5th Cir. 1971).[57]

As held by the Supreme Court in *Russell v. United States*[58]:

> This underlying principle is reflected by the settled rule in the federal courts that an indictment may not be amended except by the resubmission to the grand jury, unless the chamge is merely a matter of form. *Ex parte Bain*, 121 U.S. 1 (Supreme Court citations omitted)…'If it lies within the providence of a court to change the charging part of an indictment to suit its own notions of what it ought to have been or what the grand jury would probably have made if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment be a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed.***any other doctrine would place the rights of citizens, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the constitution places upon the power of the court, in regard to the

---

[57] As the Court is aware, the Eleventh Circuit has adopted all Fifth Circuit case law as precedent prior to the formation of the Eleventh Circuit.
[58] 369 U.S. 749, 770-771 (1962).

prerequisite of an indictment, in reality no longer exists.' *Ex parte Bain*, *supra*, 121 U.S. at 10, 13, 7 S,Ct. at 786.  We reaffirmed thus rule only recently, pointing out that 'The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.' *Stirone v. United States*, *supra*, 361 U.S. at 218, 89 S.Ct. at 273.

Indeed, the Department of Justice's own prosecutorial guidelines provide:

> The general rule is that indictments cannot be amended in substance. "An amendment to an indictment occurs when the charging terms of an indictment are altered." *United States v. Canciellere*, 69 F.3d 1116, 1121 (11th Cir. 19950. This follows from the fundamental distinction between the information and the indictment…which must be returned by a grand jury. If the indictment could be changed by thecourt or by the prosecutor, then it would no longer be the indictment returned by the grand jury. Indeed, in *Russell v. United States*, 369 U.S. 749,769 (1962), the Court pointed out that a consequence of amending the indictment is that a defendant 'could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." "Thus, the Fifth Amendment forbids amendment of an amendment of an indictment by the court, whether actual or constructive." *United States v. Wacker*, 72 F.3d 1453, 1474 (10th Cir. 1995).

U.S. Attorneys Manual, Title 9, Criminal Resource Manual, 236 *Amendment of Indictments.*

Similarly, contrary to the government's position that its amendment striking the words "and faithful"  from the charging terms of the indictment is appropriate as the words are "surplusage" that the prosecutor has the authority to strike or redact from the indictment, likewise well-established black letter law that "Words of description of what is legally essential to the charge in the indictment cannot be stricken as surplusage." WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 127, at 426; *United States v. Oakar*, 111 F. 3d 146, 157 ( D.C.Cir.1997).

Indeed, as pertinent to the government's attempt to amend the essential elements of the honest services charges presented to the grand jury against Governor Siegelman, "[i]

is *reversible error per se* to amend an indictment without resubmission to the grand jury…." *United States v. Ramirez*, 670 F.2d 27, 29 (5th Cir. 1982) (Supreme Court and Circuit Court citations omitted) (emphasis added).

**D. Even If The Government Were Not Attempting To Amend The Indictment, The Law Requires The Court To Dismiss The 28 Honest Services Counts Since the "Honest *And Faithful*" Essential Elements Charging Terms Do Not State A Prosecutable Honest Services Public Corruption Offense.**

As previously discussed at length, the essential elements "honest *and faithful*" charging terms in the indictment far exceed the scope of the Section 1346 honest services statute and do not state a prosecutable honest services public corruption offense.

Accordingly, the 28 honest service counts in the indictment must be dismissed.

The law is clear that "[i]t is perfectly proper, and in fact *mandated* that the district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." *United States v. Caia*, 719 F.2d 1120, 1123 (11th Cir. 1983); *see also*, *United States v. Cure*, 804 F.2d 625, 627 (11th Cir. 1986)(holding that a district court must dismiss an indictment that fails to properly charge a prosecutable offense).

Indeed, the Eleventh Circuit has held that a district court's failure to dismiss an indictment that does not charge a prosecutable offense is reversible error. *See*, *e.g.*, *United States v. Adkinson*, 135 F.3d 1363 (11th Cir. 1998).

## CONCLUSION

For all the reasons stated herein, Governor Siegelman respectfully moves this Honorable Court to reconsider its Order dated March 15, 2006, and dismiss the 28 honest services related counts which cannot under Governor Siegelman's constitutional rights be amended be by the government and which in any event far exceed the scope of Congress's Section 1346 honest services statute and do not state a prosecutable offense.

Respectfully submitted,


 /s/ Vincent F. Kilborn, III
Vincent F. Kilborn, III (KILBV4484)
 W. Perry Hall (HALLW9043)
KILBORN, ROEBUCK & McDONALD
1810 Old Government Street
 Mobile, Alabama 36606
 Telephone:  251/479-9010
 Fax: 251/479-6747

Hiram Eastland, MS. BAR #5294
EASTLAND LAW OFFICES
107 Grand Boulevard
Greenwood, Mississippi 38930
662-897-0495
662-453-2808 (fax)
eastlandlaw@bellsouth.net

 OF COUNSEL:
 Professor G. Robert Blakey
 D.C. Bar #424844
 NOTRE DAME LAW SCHOOL
 South Bend, Indiana
 574-681-6626
 gblakey@nd.edu

OF COUNSEL:

David A. McDonald, Esquire
203 South Warren Street
Mobile, Alabama 36602
Telephone: 251/434-0045

Charles Redding Pitt, Esquire
2119 Third Avenue North
Birmingham, Alabama 35203
Telephone: 205/324-0223


## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such to all counsel of record.

　　　　　　　　　　　　　　 /s/ Vincent F. Kilborn, III
　　　　　　　　　　　　　　COUNSEL