IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR NO. 2:05CR119-F |
| | ) | |
| DON EUGENE SIEGELMAN | ) | |

ORDER

A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

FED.R.CRIM.P. 17(c)(1).

The defendant has filed a motion (doc. # 245) pursuant to this rule requesting that the court issue an order directing issuance of subpoenas to four entities for the production of records prior to trial the purpose of permitting the attorneys pretrial inspection. The motion recites that this production is "for purposes of **impeachment** and **cross-examination** under Rules 607 and 611 of the Federal Rules of Evidence, as well as for **affirmative substantive evidence** . . . " For the reasons which follow, the court concludes that the motion is due to be denied. Of course, the denial of this motion is not a denial of the defendant's right to issue trial subpoenas. Pursuant to FED.R.CRIM.P. 17(a) the "clerk must issue a blank subpoena--signed and sealed--to the party requesting it . . ." for the purpose of commanding a witness to appear. The subpoena may further command a witness to produce "any books, papers, documents, data, or other objects the subpoena designates." FED.R.CRIM.P. 17(c)(1). The issuance of trial subpoenas is designed to work

extrajudicially until objection is made. Thus, the issue before the court is whether it is appropriate to order that the materials be produced for inspection prior to trial.

It is well settled that FED.R.CRIM.P. 17 "was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). Rather, the chief purpose of the rule "was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials," 418 U.S. at 698-99. *United States v. Nixon*, 418 U.S. 683 (1974), established the standards for issuance and enforcement of a FED.R.CRIM.P. 17(c) subpoena and requires the moving party to demonstrate

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.* at 699-700 (footnote omitted).

Thus, to meet his burden, Siegelman "must clear [the] three hurdles" of relevancy, admissibility, and specificity. *Id.* at 700. "Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Id.* at 701 (citation omitted). In the same vein, cross-examination is not a sufficient reason. The Confrontation Clause is not a "constitutionally compelled rule of pretrial discovery." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987). More to the point, the defendant makes no showing that any of the documents sought are necessary for or material to effective cross-examination of

any witness.[1]

The defendant does claim that the documents sought are material and relevant to the charge that he caused the deposit of a check to the Alabama Lottery Education Foundation "knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds . . . " Siegelman contends as follows:

> [The records] are relevant and admissible in this case on the issue of impeachment and cross-examination of any Government witness who testifies in support of the Government's claim that a PAC's error in reporting contributions constitutes money laundering or that a contribution to or from a PAC is a way to unlawfully conceal or disguise money . . . as well as being **affirmative substantive evidence** that late disclosures often occur for innocent reasons. Moreover, these documents will go to show the Government's attitude of looking the other way based on party-affiliation of those involved . . .

Def.'s Mot. at 6.

First, the government's conduct is not at issue in this case nor relevant. *See e.g., United States v. McVeigh*, 153 F.3d 1166, 1192 (10th Cir. 1998) ("[U]nder our system of criminal justice, the issue submitted to the jury is whether the accused is guilty or not guilty. The jury is not asked to render judgment about non-parties, nor is it normally asked to render a verdict on the government's investigation."). Moreover, decisions by

---

[1] A few cases have required disclosure under different circumstances. *See Davis v. Alaska*, 415 U.S. 308 (1974) (juvenile records of witness must be made available to defendant for purposes of cross-examination); *Smith v. Illinois*, 390 U.S. 129 (1968) (witness must reveal his name so as to allow cross-examination); *Dennis v. United States*, 384 U.S. 855(1966) (grand jury testimony of witnesses must be disclosed to defendant). But in each of these cases, witnesses were compelled to make disclosure as opposed to extrinsic evidence from persons or organization unrelated to the case.

prosecutors about prosecutions " 'are not readily susceptible to the kind of analysis the courts are competent to undertake,' we have been 'properly hesitant to examine the decision whether to prosecute.' " *Town of Newton v. Rumery,* 480 U.S. 386, 396 (1987) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985).

That leaves the question of whether the documents sought are admissible substantive evidence. Facts about what happens in the conduct of other organizations are hardly probative of whether the actions charged in the indictment constitute crimes. For example, the fact that 99 of 100 contributions were lawful does not prove that the other one also was lawful. Of course, the burden of proof is on the government. At this juncture it is pure speculation that the government might produce a witness who would testify that a reporting error constitutes money laundering. Indeed, were a witness to testify that a particular PAC contribution is a way of disguising or concealing money in an unlawful manner, the fact that other PAC contribution were not unlawful is not probative of whether the challenged contributions were criminal acts. In short, the defendant has failed to meet his burden under *Nixon*. Accordingly, it is

ORDERED that the motion be and is hereby DENIED.

Done this 5th day of April, 2006.

                    /s/Charles S. Coody
                CHARLES S. COODY
                CHIEF UNITED STATES MAGISTRATE JUDGE