IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA   ) | |
| ) | |
| v.   ) | |
| ) | CRIMINAL NO. 2:05-CR-119-MEF |
| DON EUGENE SIEGELMAN,   ) | |
| PAUL MICHAEL HAMRICK,   ) | |
| GARY MACK ROBERTS, and   ) | |
| RICHARD M. SCRUSHY   ) | |

**UNITED STATES' RESPONSE TO DEFENDANT HAMRICK'S MOTION IN LIMINE TO BAR EVIDENCE AND ARGUMENT THAT MR. HAMRICK DEPRIVED THE STATE OF ALABAMA OR THE PUBLIC OF HIS OWN HONEST GOVERNMENTAL SERVICES BY ACTS COMMITTED WHEN HE WAS A PRIVATE CITIZEN**

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting United States Attorney for the Middle District of Alabama, and Andrew C. Lourie, Acting Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice, and hereby files its Response to Defendant Hamrick's Motion in Limine to Bar Evidence and Argument that Mr. Hamrick Deprived the State of Alabama or the Public of his Own Honest Governmental Services by Acts Committed When he was a Private Citizen (hereinafter, the "Motion").[1] In the Motion, Defendant Hamrick requests this Court to bar all evidence and argument exposing him to criminal liability for having deprived the State of Alabama of his honest services in regard to his telephone conversation with a Cherokee County public official concerning Lanny Young's business

---

[1] In an accompanying motion, Doc. 285, Defendant Hamrick asserts that he cannot be prosecuted for having deprived the State, during the period he was without formal office, of Defendant Siegelman's honest governmental services because he did not owe such a duty to the public during that time.

1

interests in a Cherokee County landfill.[2]  This telephone conversation occurred during the eight-month period when Defendant Hamrick worked for Defendant Siegelman's gubernatorial campaign and then on the Governor-elect's transition team.  Defendant Hamrick insists that "the prosecution cannot charge [him] with honest governmental services fraud for the alleged conversations regarding the Cherokee County landfill," Mot., at 8, because he did not, at that time, owe any duty to the public to render honest governmental services.

## I.  The Motion Should be Denied on the Procedural Ground that it is Premature

The Motion is nothing more than a thinly-veiled sufficiency-of-evidence claim.  Defendant Hamrick has been properly indicted; therefore, the Government is entitled to present its evidence at

---

[2]Defendant Hamrick is charged with honest services mail fraud in Counts 10 through 12, pursuant to §§ 1341 and 1346; and honest services wire fraud in Counts 13 and 14, pursuant to §§ 1343 and 1346.  "Except for the jurisdictional nexus (mails in § 1341, interstate wires in § 1343), the statutes are the same, are interpreted identically, and cases decided under one are controlling under the other." United States v. deVegter, 198 F.3d 1324, 1327 n.1 (11th Cir. 1999), cert. denied, 530 U.S.1264 (2000).  Thus, the United States, in this Response, applies the jurisprudence of honest services fraud without differentiating between the mail and wire fraud statutes.

In relevant part, 18 U.S.C. §§ 1341 and 1343 provide, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . [uses the mails or wires, or causes their use] for the purpose of executing such scheme or artifice . . . [shall be punished]." Section 1346 defines "scheme or artifice to defraud" as "a scheme or artifice to deprive another of the intangible right of honest services."

Defendant Hamrick mistakenly asserts that the Government has conceded that he did not owe a duty to render honest services during this period.  The statement he cites in support of this unfounded assertion is in the Government's Response to Hamrick's Motion to Dismiss the Honest Services Fraud Charges in Counts One, Two, and Ten Through Fourteen of the Indictment (Doc. 199), at 6:  "defendant may not owe an independent duty to the State or citizenry."  (Emphasis added.)  Obviously, by its choice of words, the Government contemplated various scenarios in which a private citizen could certainly be liable for a breach of duty to render honest services.

trial. Defendant Hamrick may contest the sufficiency of that evidence via a Rule 29 motion at the end of the Government's case-in-chief. See United States v. Salman, 378 F.3d 1266 (11th Cir. 2004) ("A motion for acquittal under Rule 29 is the proper avenue for contesting the sufficiency of the evidence in criminal cases because there is no explicit authority to grant a pre-trial judgment as a matter of law on the merits under the Federal Rules of Procedure."); United States v. Triumph Capital Group, Inc., 260 F. Supp. 2d 444, (D. Conn. 2002) ("It is axiomatic that . . . a defendant may not challenge a facially valid indictment prior to trial for insufficient evidence. Instead, a defendant must await a Rule 29 proceeding or the jury's verdict before he may argue evidentiary sufficiency.") (quotations and citation omitted). To entertain this Motion at this procedural juncture, the Court would inject into this proceeding a creature foreign to criminal procedure – the summary judgment motion. See United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992) (per curium) ("There is no summary judgment procedure in criminal cases [nor d]o the rules provide for a pre-trial determination of sufficiency of the evidence."). The Court cannot extrapolate from extraneous information submitted by a defendant that the evidence at trial will be insufficient. Triumph Capital Group, Inc., 260 F. Supp. 2d at 459. Thus, a ruling on this Motion cannot rest upon snippets of grand jury testimony, as Defendant Hamrick has presented. Accordingly, this Motion should be denied.

**II. The Evidence Will Show that Defendant Hamrick Participated in a Scheme to Deprive The State of Alabama of Defendant Siegelman's Honest Services**

The duty to render honest governmental services does not necessarily have to belong to the defendant himself. Precedent from this and other Circuits teaches that a defendant, while a non-public-official, may be exposed to criminal liability for a scheme to deprive the public of a public

official's honest services. See, e.g., United States v. Hasner, 340 F.3d 1261 (11th Cir. 2003) (consultant's scheme to deprive the public of the local housing authority chairman's honest services), cert. denied, 543 U.S. 810 (2004); United States v. Lopez-Lukis, 102 F.3d 1164, 1169 (11th Cir. 1997) (a lobbyist's scheme to deprive citizens of the honest services of a county commissioner by inducing the commissioner to vote favorably for his clients' projects and to gain control of a majority of the board). Moreover, by virtue of aiding and abetting a public official in a scheme to defraud the public of that official's honest services, a private citizen actively participates in the breach of the public official's fiduciary duty. United States v. Paradies, 98 F.3d 1266, 1281-82 (11th Cir. 1996), cert. denied, 521 U.S. 1106, and cert. denied, 522 U.S. 1014 (1997). In addition, a person without formal office may be held to be a public fiduciary if others rely on him because of "'a special relationship in the government and he in fact makes governmental decisions.'" deVegter, 198 F.3d at 1328 n. 3 (quoting McNally v. United States, 483 U.S. 350, 355 (1987)). Such is the case here.

The Second Superceding Indictment properly charges that Defendants Hamrick and Siegelman and Young and "Nick" Bailey aided and abetted each other in the commission of the honest services fraud offenses, pursuant to 18 U.S.C. § 2. See, e.g., Second Superceding Indictment, at ¶ 28. "Aiding and abetting 'is an alternative charge in every count, whether explicit or implicit, and the rule is well-established . . . that one who has been indicted as a principal may be convicted on evidence showing that he merely aided and abetted the commission of the offense.'" United States v. Howard, 13 F.3d 1500, 1502 (11th Cir. 1994) (quoting United States v. Bullock, 451 F.2d 884, 888 (5th Cir. 1971)). "To support a conviction for aiding and abetting an offense, the evidence must simply show that 'the defendant was associated with the criminal venture, participated in it as

something he wished to bring about, and sought by his action to make it succeed.'" Id. at 1502 (quoting United States v. Hewitt, 663 F.2d 1381, 1385 (11th Cir. 1981)). See Eleventh Circuit Pattern Jury Instruction 7, Aiding and Abetting (Agency), 18 U.S.C. § 2 ("[I]f the Defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds the Defendant responsible for the conduct of that other person just as though the Defendant had personally engaged in such conduct.") Defendant Hamrick is properly charged as an aider and abetter based on his participation in the honest services fraud scheme with Defendant Siegelman even when he was no longer officially being paid by the State. In addition to maintaining a corrupt pay for play scheme with Young himself, at all times pertinent to the indictment, Defendant Hamrick actively participated in and facilitated Defendant Siegelman's relationship with Young – both, symbiotic relationships corrupted by bribery and concealment of material conflicts of interests. Thus, Defendant Hamrick actively participated in the breach of Defendant Siegelman's duty to render honest services.

**III.  The Scheme To Fraudulently Deprive the State of Alabama of the Honest Services of Defendants Hamrick and Siegelman Should not be Dissected According to Defendant Hamrick's Employment Status**

Defendant Hamrick's argument that he is being prosecuted for his participation in a particular part of the scheme, i.e., the acts he and/or Defendant Siegelman performed to influence the Cherokee County Commission in favor of Young's business interests, misconstrues the nature of the averment in the "Manner and Means of the Scheme," Second Superceding Indictment, at ¶ 30(g). The honest services fraud counts charge a long-running scheme by Defendants Hamrick and Siegelman and Young and "Nick" Bailey to fraudulently deprive the State of Alabama of Defendants Hamrick's and Siegelman's honest governmental services, a scheme carried out in a variety of ways over a six-

year period. The indictment sets out, as just one of those ways, that Defendants Hamrick and Siegelman assisted and enriched Young and enabled him to provide them with money and property through their official power, actions, and influence, including influencing the Cherokee County Commission in favor of Young's business interests.

"Fraudulent schemes cannot often be easily dissected into discrete parts." United States v. Bonansinga, 773 F.2d 166, 170 (7th Cir. 1985), cert. denied, 476 U.S. 1160 (1986). Here, the ongoing scheme evidenced by a generalized, broad pattern of giving things of value to induce ongoing favorable official action cannot be segmented by artificial and arbitrary criteria. See, e.g., United States v. Warner, No. 02-CR-506, 2004 WL 1794476, at *21-22 (N.D. Ill. Aug. 11, 2004) (the allegations constituting a broad scheme should not be characterized as separate schemes to defraud the people of the State of the public official's honest services as the Secretary of State on the one hand and as Governor on the other). See also United States v. Woodward, 149 F.3d 46, 65 (1st Cir. 1998) (in rejecting the defendant's contention that the mailing of the lobbyist's credit card bill was not for the purpose of executing the ongoing scheme, the court admonished the defendant for focusing too narrowly on each gratuity individually by assuming a new fraudulent scheme began and ended every time the lobbyist used his credit card to pay for illegal gratuities and reiterated that "'a person with continuing and long-term interests before an official might engage in a pattern of repeated, intentional gratuity offenses in order to coax ongoing favorable official action in derogation of the public's right to impartial official services'") (quoting United States v. Sawyer, 85 F.3d 713, 730 (1st Cir. 1996)), cert. denied, 525 U.S. 1138 (1999). A jury is not required to examine the evidence in isolation, for "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it[; t]he sum of an evidentiary presentation may well be greater than is

constituent parts." Woodward, 149 F.3d at 57 (quotations and citations omitted).

For example, by isolating the anticipated evidence by distinct time frames, Defendant Hamrick erroneously assumes that a duty to render honest governmental services must be coterminous with the mailings and wires used to further the scheme to defraud. The Tenth Circuit in United States v. Worley, 751 F.2d 348 (10th Cir. 1984), rejected the argument that county warrants sent to vendors after the defendant left public service were not part of the scheme to defraud and therefore could not be used as proof of honest services mail fraud. The court noted that "to commit mail fraud a defendant must set forces in motion which . . . would involve mail uses . . .[and t]he only causation required by the mail fraud statute is whether the defendant could reasonably foresee the occurrence of mailings." Id. at 350 (quotations and citation omitted). According to the court, the post-public-office mailings were properly charged as honest services mail fraud counts because "all was set in motion as part of the scheme and by defendant's acts." This observation applies equally to Defendant Hamrick. The Second Superceding Indictment thus properly charges that Defendant Hamrick schemed to defraud the State, not only of Defendant's Siegelman's honest services, but of his honest services while in State service, and his concomitant criminal liability, did not cease when he left State service from May 8, 1998, to January 19, 1999, because his participation in the unlawful scheme charged in the indictment continued throughout this time period. See Hasner, 340 F.3d at 1272 (the fraud "did not achieve fruition until [a defendant] received the checks from the ill-obtained contract"; thus, the mailing element was satisfied).

Here, the unlawful scheme was crafted and executed by Defendants Hamrick and Siegelman. The scheme covered years and was carried out in a variety of ways. Contrary to Defendant Hamrick's representation, the scheme did not conclude before he returned to State service.

7

Prosecution of this unlawful scheme cannot be thwarted on the basis of Defendant Hamrick's attempt to mechanically dissect it into discrete parts or separate schemes isolated only by arbitrary, sterile criteria. See, e.g., Lopez-Lukis, 102 F.3d at 1168 (approving prosecution of "a broad bribery scheme: . . . pa[y] . . . for political favors"); Sawyer, 85 F.3d 713 (prosecution of a generalized pattern of gratuities or bribes to coax ongoing favorable official action). "Surely, section 1346 was intended to prohibit just this sort of conduct," as charged in the present indictment. Lopez-Lukis, 102 F.3d at 1170.

## IV. Conclusion

The allegations of the Motion are appropriately presented only in a Rule 29 motion at the conclusion of the Government's evidence. Thus, the Motion should be denied because it is premature. Moreover, the evidence will show that Defendant Hamrick participated in a long-running scheme to deprive the State of Alabama of his and Defendant Siegelman's honest services throughout the period charged in the present indictment. The Motion should be denied.

Respectfully submitted this the 10th day of April, 2006

| | |
|---|---|
| LOUIS V. FRANKLIN, SR.<br>ACTING UNITED STATES ATTORNEY | ANDREW C. LOURIE<br>ACTING CHIEF, PUBLIC INTEGRITY SECTION |

/s/ Louis V. Franklin, Sr.
Acting United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: louis.franklin@usdoj.gov

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Jennifer Garrett
Special Assistant United States Attorney
Assistant Attorney General
Office the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-8494
Fax:    (334)242-4890
Email: jgarrett@ago.state.al.us
ASB-4600-T77J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

/s/Richard C. Pilger
Department of Justice, Criminal Division
Public Integrity Section
10th & Constitution Ave, NW
Bond Building - 12th Floor
Washington, DC 20530
Phone: (202)514-1412
Fax:    (202)514-3003
Email: richard.pilger@usdoj.gov

/s/ Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-4839
Fax:    (334)242-4890
Email: j.fitzpatrick@ago.al.state.us

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| vs. ) | CR. NO. 2:05-cr-119-MEF |
| ) | |
| DON EUGENE SIEGELMAN, ) | |
| PAUL MICHAEL HAMRICK, ) | |
| GARY MACK ROBERTS, and ) | |
| RICHARD M. SCRUSHY. ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

/s/ Louis V. Franklin, Sr.
LOUIS V. FRANKLIN, SR.
Acting United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
louis.franklin@usdoj.gov