IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| | *   CRIMINAL NO.: 2:05-cr-119-MEF |
| vs. | * |
| | * |
| DON EUGENE SIEGELMAN, et al., | * |

**MOTION FOR RECONSIDERATION OF ORDER DENYING ISSUANCE OF SUBPOENAS DUCES TECUM TO REPUBLICAN GOVERNORS ASSOCIATION, MISSISSIPPI BAND OF CHOCTAW INDIANS, CAPITAL CAMPAIGN STRATEGIES, AND THE REPUBLICAN NATIONAL STATE ELECTION COMMITTEE**

**INTRODUCTION**

The Defendant Governor Don E. Siegelman ("Defendant") hereby moves the Court to reconsider its April 5, 2006, Order that denied Defendant's motion for an Order directing issuance of subpoenas *duces tecum* to the Republican Governor's Association, the Mississippi Band of Choctaw Indians, Capitol Campaign Strategies, LLC (c/o Michael P.S. Scanlon), and the Republican National State Election Committee to produce certain documents prior to trial under Rule 17(c) of the Federal Rules of Criminal Procedure.

As discussed below, this Motion for Reconsideration asserts additional substantive grounds for which the documents sought from these organizations constitute admissible substantive evidence that is highly probative that the contributions and actions charged in the indictment against Governor Siegelman were not criminal acts.

Indeed, as discussed below, the very fact that other organizations of the esteemed integrity of the Republican Governor's Association and the Republican National State

1

Election Committee have engaged in similar contributions conduct and actions associated with Governor Bob Riley without corrupt and willful intent is highly probative that the charges in the indictment against Democratic Governor Siegelman for similar contributions conduct and actions do not constitute criminal acts.[1]

For example, just as the conduct[2] associated with the Republican related contributions and actions evidenced in the requested documents was not corruptly and willfully intended to commit money laundering, was not corruptly and willfully intended to commit the alleged underlying money laundering "specified unlawful activity"[3] of extortion under color of law,[4] state bribery,[5] federal funds bribery,[6] and mail and wire fraud,[7] and was not corruptly and willfully intended to be a contribution to unlawfully

---

[1] None of the similar political contributions techniques and conduct related to the government's charges against Governor Siegelman and the similar political contributions techniques and conduct related to the Republican contributions to Governor Bob Riley constitute criminal acts.

[2] The factual similarities of the conduct charged in the indictment against Democratic Governor Siegelman and the conduct the of the Republican organizations related to contributions for Governor Bob Riley was described in detail in Defendant Governor Siegelman's original Motion For Issuance Of Subpoenas *Duces Tecum* and is incorporated herein by reference.

[3] For example, Superceding Indictment, Count 2, pars. 23 and 47 charge RICO money laundering predicates acts that are premised on the underlying "specified unlawful activity" of federal extortion, state bribery, federal funds bribery and mail and wire fraud. "The term 'specified unlawful activity'" under the money laundering statute includes "any act or activity constituting an offense listed in section 1961(1)" of the RICO statute, which includes any act involving federal extortion, bribery, and mail and wire fraud. 18 U.S.C. § 1956(c)(7) (money laundering "specified unlawful activity"); 18 U.S.C. § 1961(1) (RICO predicates acts).

[4] 18 U.S.C. § 1951; see, e.g., Second Superceding Indictment, Count 2 par. 23 (charging extortion underlying money laundering "specified unlawful activity" related to the deposit of a check made payable to the Alabama Lottery Foundation ("ALEF"); see also, Superceding Indictment, Count 1, pars 4 and 7-8. (charging RICO conspiracy with alleged underlying extortion and money laundering RICO predicate acts as described in Count 2).

[5] ALA. CODE 1975 § 13A-10-1; ALA. CODE 1975 § 17-22A-7.; see, e.g., Second Superceding Indictment, Count 2 pars. 23 and 47. (charging state bribery as underlying money laundering "specified unlawful activity."; see also, Superceding Indictment, Count 1, pars. 4 and 7-8. (charging RICO conspiracy with alleged underlying state bribery and money laundering predicate acts as described in Count 2).

[6] 18 U.S.C. § 666; see, e.g., Second Superceding Indictment, Counts 3 and 4, pars. 49 and 51. (charging federal funds bribery related to the two $250,000 checks paid to the ALEF discussed herein).

[7] 18 U.S.C. §§ 1341, 1343 and 1346; see, e.g., Second Superceding Indictment, Count 2, pars. 23. (charging mail and wire fraud as underlying money laundering "specified unlawful activity" related to the deposit of a check made payable to the ALEF); see also, Superceding Indictment, Count 1, pars. 4, 6 and 8. (charging RICO conspiracy with alleged underlying mail and wire fraud and money laundering RICO predicate acts).

conceal or disguise money[8] for Governor Bob Riley, there is no requisite corrupt and willful intent attributable to Governor Siegelman that constitutes crimes for similar political contributions conduct.[9]

Indeed, as discussed below, such similar appropriate political contributions techniques and conduct that public servants of the stature of Governor Bob Riley and Governor Don Siegelman have been and are conscious and aware of is highly probative substantive evidence relevant to Governor Siegelman's lack of the requisite consciously[10] corrupt and willful intent to commit criminal acts through such political contributions techniques and conduct charged in the indictment.

Accordingly, in all due respect the Court should reconsider its April 5 Order and grant Defendant Governor Siegelman's motion for the issuance of subpoenas *duces tecum* as previously requested.

## ARGUMENT

**Governor Siegelman's Motion For The Issuance of Subpoenas *Duces Tecum* Clearly Meets The Standards For The Issuance Of A Subpoena Under Fed. R.Crim.P. 17(c)**

Governor Siegelman respectfully submits that his motion for the issuance of subpoenas *duces tecum* clearly meets the standards for the issuance and enforcement of a subpoena under Fed.R.Crim.P. 17(c) established by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974). The documents are "evidentiary and relevant";

---

[8] See, e.g., Second Superceding Indictment, Count 2, pars. 23 and 47. (charging that the deposit of checks was made to conceal and disguise the proceeds of "specified unlawful activity" as alleged RICO predicate acts money laundering); see also, Second Superceding Indictment, Count 1, pars. 4 and 8. (charging RICO conspiracy with alleged underlying money laundering predicate acts as described in count 2).

[9] Indeed, the contributions to the Alabama Education Foundation ("AEF") were not even made to Governor Siegelman as were the Republican campaign contributions to Governor Bob Riley.

[10] See, e.g., *Arthur Andersen, LLP v. United States*, 544 U.S. 696, 125 S.Ct. 2129, 2136 (2005) (As discussed below, in interpreting similar corrupt intent provisions that are also included in the indictment through the obstruction of justice charges, the Supreme Court held that "[o]nly persons *conscious of wrongdoing*" can be said to be knowingly corrupt in their conduct).

3

the documents "are not otherwise procurable reasonably in advance of trial by exercise of due diligence"; Defendant Siegelman "cannot properly prepare for trial without such production and inspection in advance of trial [and] the failure to obtain such inspection may tend unreasonably to delay the trial"; and "the application is made in good faith and is not intended as a general 'fishing expedition.'" *Id.*

Indeed, in asserting additional substantive grounds herein for the Court's reconsideration of its April 5 Order, Governor Siegelman's respectfully submits that the requested documents regarding similar contribution and reporting conduct in the context of politics associated with Republican contributions to Governor Bob Riley will provide relevant and *highly probative substantive evidence* as to Governor Siegelman's *lack of corrupt and willful intent* to violate the previously cited criminal statutes underlying the charges[11] against Governor Siegelman in the Superceding Indictment.

Moreover, this relevant and substantive evidence clearly meets this Court's interpretation of the Supreme Court's *Nixon* standards and this Court's implicit recognition in its April 5 Order that a defendant is entitled to the issuance of a subpoena *duces tecum* when the defendant presents a request for documentary evidence that is "probative of whether the actions charged in the indictment constitute crimes" or thus whether the requested documentary evidence is "probative of whether the challenged contributions were criminal acts."  April 5 Order, at 4.

### A. The Documents Are Evidentiary and Relevant To Governor Siegelman's Lack Of A Corrupt And Willful State Of Mind To Commit Criminal Acts

The requested documentary evidence of similar political contributions techniques and conduct regarding Republican contributions to Republican Governor Bob Riley is in

---

[11] See notes 3-9, *supra*.

law and fact relevant to Democratic Governor Don Siegelman's lack of a conscious, corrupt and willful intent to commit the previously described criminal acts in the indictment.[12]

1.  **The Relevant Substantive Factual Evidence.**

The evidentiary background and content of the requested Republican related contributions documents was discussed at length in Governor Siegelman's original motion and is incorporated herein by reference.

By way of summary of the relevant similarity and analogy of the Republican contributions techniques and reporting conduct evidenced in the requested documents, the documents, for example, contain relevant evidence of similar sized checks of $250,000 each being provided to the Republican Governor's Association by a Republican campaign strategies group[13] with the campaign money finding its way through the Republican Party to Governor Bob Riley, then running against Governor Don Siegelman.[14] Yet, the government makes allegations a federal criminal case against Governor Siegelman for the two similar sized checks provided the Alabama Education Foundation in the indictment for $250,000, charging, for example, that the two checkstotaling $500,000 constitute extortion[15] under color of right by Governor

---

[12] *Id.*

[13] Capitol Campaign Strategies, the firm of Michael Scanlon, a former congressional staff member of Governor Bob Riley.

[14] Similarly, the Second Superceding Indictment alleges, for example, that two checks provided the Alabama Educations Foundation at Governor Siegelman's suggestion; see also, Governor Siegelman's original Motion, at 3-4. In Governor Siegelman's case the two $250,000 checks to the Alabama education foundation do not even go to Governor Siegelman or his campaign as do the two $250,000 Republican checks that ultimately find their way to Governor Bob Siegelman as campaign contributions.

[15] Second Superceding Indictment, Count 2, Racketeering Act 1(a), par. 15, at 6. (charging extortion under color of right, 18 U.S.C. § 1951).

Siegelman, state bribey,[16] federal funds bribery,[17] dishonest services mail fraud,[18] and money laundering.[19]

Moreover, as similar to the Alabama Education Foundation's failure to initially report two checks for $250,000 but later reporting the money upon finding the innocent error in Governor Siegelman's case, the Republican Governor's Association initially failed to report the two contribution checks for $250,000, but later filed an amended report for the checks to correct the innocent error around 18 months later.[20]

Additionally, for example, the requested documentary evidence that includes innocent use of Republican related political action committees ("PACs"), some of which even fought certain of Governor Siegelman's education and lottery initiatives,[21] is similar and analogous to the accusations in the indictment that Governor Siegelman caused checks to be sent to various Alabama political action committees[22] and tried to conceal or disguise "the nature, location, source, ownership, and control of the[se] proceeds." Second Superceding Indictment, Count 2 Money Laundering RICO Racketeering Act 5 (ll)-(tt), par. 47, at 28.

---

[16] Second Superceding Indictment, Count 2, Racketeering Act 1(b), par. 16, at 7. (charging bribery under ALA.CODE 1975, § 13A-10-61(a)(2).

[17] Second Superceding Indictment, Counts 3 and 4, at 29-31. (charging federal funds bribery, 18 U.S.C. § 666).

[18] Second Superceding Indictment, Count 2, Racketeering Act 1(c)-(e), par. 17-18, at 7-8. (charging dishonest services mail fraud under 18 U.S.C. § 1341 and 1346).

[19] Second Superceding Indictmen, Count 2, Racketeering Act 1(f)-1(g), at 10-11. (charging money laundering with underlying "specified unlawful activity" of extortion, state bribery, federal funds bribery and mail and wire fraud dishonest services).

[20] Governor Siegelman's original Motion, at 5.

[21] Governor Siegelman would also note that the Birmingham News reported today that Capitol Campaign Strategies executive Michael Scanlon also may have given four $25,000 contributions to Governor Bob Riley in 2002 through four PACS he provided the checks to in Alabama. When Mr. Scanlon contributed the four $25,000 contributions he was representing the Choctaw Indian tribe in Mississippi that operates casinos. Governor Siegelman indicated to the Birmingham News "I don't know" whether the contributions were received by his campaign and his spokesman indicated "We've fully reported every contribution the campaign has received and strictly followed the law." These contributions totaling $100,000 are in addition to the previously discussed two checks from Capital Strategies in 2002 totaling $500,000.

[22] The Government's allegations relate to Black Warrior Parkway's contributions to 9 PACs. Governor Siegelman's original Motion, at 7.

2. **The Criminal Statutes Governor Siegelman Is Charged Under As Well As Recent Supreme Court Case Law Make It Clear That The Similar Political Contributions Techniques And Conduct Contained In The Requested Documents Is Relevant Highly Probative Substantive Evidence Of Governor Siegelman's Lack of Corrupt And Willful Intent To Commit Criminal Acts**

The requested documents including similar political contributions techniques and conduct are clearly relevant and highly probative substantive evidence that may be utilized as evidence of Governor Siegelman's lack of corrupt and willful intent to commit criminal acts, since the previously cited statutes[23] Governor Siegelman is charged under such as extortion under color of law, state bribery, federal funds bribery, mail and wire fraud and the statutes that underlie the "specified unlawful activity"[24] for the money laundering charges all include requisite elements of proof of corrupt and willful intent.[25]

---

[23] See, notes 3-8, *supra*.

[24] That includes, for example, extortion, bribery, and mail and wire fraud as "specified unlawful activity" for purposes of the money laundering statute. 18 U.S.C. § 1956 (c)(7)(A).

[25] The crimes charged do not carry anything akin to strict liability, but rather a conscious, specific corrupt and willful intent to commit the crimes must be proved beyond a reasonable doubt. *See*, *e.g.,* ALA.CODE 13A-10-61(a)(2), bribery of public servants ("solicits, accepts or agrees to accept any pecuniary benefit *understanding* that his vote, opinion, judgment, exercise of discretion or action as a public servant will thereby be *corruptly influenced*.") (emphasis added); 18 U.S.C. § 666, federal funds bribery ("*corruptly* solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, *intending to be influenced*....[or] *corruptly* gives, offers, or agrees to give anything of value to any person, *with intent to influence*....") (emphasis added); 18 U.S.C. § 1951, extortion under color of law (Gayed, "'*CORRUPTLY*':WHY CORRUPT STATE OF MIND IS AN ESSENTIAL ELEMENT FOR HOBBS ACT EXTORTION UNDER COLOR OF OFFICIAL RIGHT", 78 Notre Dame L.Rev. 1731 (2003); 18 U.S.C. §§ 1341 and 1346 (honest services), Eleventh Circuit Pattern Jury Instructions, Criminal 50.2 ("The Defendant can be found guilty of that offense *only if* the following facts are proved beyond a reasonable doubt: First: That the Defendant *knowingly* devised or participated in a scheme to deprive the public of the intangible right of honest services, as charged; Second: That the Defendant did so *willfully with an intent to defraud*....What must be proved beyond a reasonable doubt is that the Defendants, *with the specific intent* to defraud, *knowingly* devised, *intended* to devise, ...a scheme to defraud substantially the same as the one alleged in the indictment...." (emphasis added).

Moreover, the "unanimity" in the Supreme Court's recent *Arthur Andersen, LLP v. United States*, 544 U.S. 696, 125 S.Ct. 2129 (2005) decision[26] "sends a strong signal: even during an era of rampant corporate misconduct, courts and prosecutors must adhere to traditional rules in applying criminal statutes."[27] Thus, in interpreting the corrupt intent provisions of the federal obstruction of justice statute[28] the Supreme Court in *Arthur Andersen* held:

> "[o]nly persons *conscious of wrongdoing* can be said to '*knowingly…corruptly* persuad[e].' And limiting criminality to persuaders *conscious of their wrongdoing* sensibly allows § 1512(b) to reach only those with a level of 'culpability…we require in order to impose criminal liability.' *United States v. Aguilar,* 515 U.S., at 602, 115 S.Ct. 2357; see also *Liparota v. United States*, supra, at 426, 105 S.Ct. 2084. (emphasis added).[29]

*Accord, United States v. Byrne*, 435 F. 3d 16, 24 (1st Cir. 2006) ("the defendant correctly observes that *Arthus Andersen* mandates—to prove the *mens rea* required by § 1512(b)(2) and § 1512(b)(3)—a showing of 'consciousness of wrongdoing.'); *see also,* Gayed, *"Corruptly": Why Corrupt State Of Mind Is An Essential Element For Hobbs Act Extortion under Color Of Official Right*, 78 Notre Dame L.Rev. 1731 (2003); *Roma Construction v. aRusso*, 96 F.3d 566, 573-574 (1st Cir. 1996) ("The term 'corruptly' adds the element of corrupt intent to the crime of bribery. [Supreme court citation omitted]….H.R. 748, 87th Cong., 1st Sess. 18 (1961) (reporting section 201 federal bribery statute) (stating that '[t]he word 'corruptly' which is also in the obstruction of justice statutes…means with wrongful or dishonest intent'").

---

[26] *Arthur Andersen, LLP v. United States*, 544 U.S. 696, 125 S.Ct. 2129 (2005).
[27] *The Supreme Court, 2004 Term, Leading Cases*, Harv. L.Rev. 404, 408 (2005).
[28] 18 U.S.C. § 1512(b).
[29] *Arthur Andersen*, 125 S.Ct., at 2136.

### 3. Relevance Of The Evidence Of Similar Republican Political Contributions Techniques and Conduct Requested In The Motions For Subpoenas *Duces Tecum* To Providing Substantive Evidence Relevant To Governor Siegelman's Lack Of A Corrupt and Willful Intent To Commit Criminal Acts

Public servants and politicians do not conduct their political contributions affairs in a vacuum. The requested documentary evidence of similar Republican political contributions techniques and conduct is clearly relevant to Governor Siegelman's lack of a corrupt and willful state of mind to commit criminal acts for similar political contributions techniques and conduct, since Governor Siegelman's understanding and awareness of appropriate political contribution techniques and conduct is also necessarily shaped by his awareness of how such other political organizations appropriately conduct their political contributions affairs.[30]

Such documentary evidence of similar political contributions techniques and conduct that public servants of the stature of Governor Bob Riley and Governor Don Siegelman have been and are *conscious and aware of* is, therefore, highly probative substantive evidence relevant to Governor Siegelman's lack of the requisite *consciously*[31] *corrupt and willful intent* to commit criminal acts through such similar political contributions techniques and conduct charged in the indictment. *cf.*, *McCormick v. United States*, 500 U.S. 257, 257-273 (1991) ("To hold otherwise would open to prosecution not only conduct that has long been thought to be within the law, but also conduct that, in a very real sense, is unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been since the beginning of the Nation.").

---

[30] Gayed, 78 Notre Dame L.Rev., at 1770-1771.
[31] *Arthur Andersen*, 125 S.Ct., at 2136. ("[o]nly persons *conscious of wrongdoing*" can be said to be knowingly and willfully corrupt in their wrongdoing).

9

Moreover, it is widely recognized that lack of a corrupt and willful intent to commit criminal acts and thus an innocent state of mind "naturally requires circumstantial evidence for its proof."[32] Indeed, the thoughtful analysis of why a "corrupt state of mind" is such an essential element of proof in alleged political corruption cases provided by Jeremy M. Gayed in a recent Notre Dame Law Review article[33] specifically recognizes the significance of a public servant's general awareness of what has been accepted as appropriate techniques and conduct in the political process by other politicians. A corrupt state of mind analysis utilizing circumstantial evidence such as the documentary evidence of similar acceptable political contributions techniques and conduct is thus relevant and probative of Governor Siegelman's lack of a corrupt and willful intent to commit criminal acts.

The Notre Dame article uses an example the long accepted political technique of "logrolling" that would be considered a criminal act but for consideration of a defendant public servant's innocent state of mind through circumstantial evidence of the public servant's awareness of acceptable conduct in the political process.

> Politicians, as a regular part of their occupation, agree to trade support. Generally, officials will 'sell' votes on issues not directly relevant to their constituencies in return for similar votes from other officials on issues that do. For example, a senator from Indiana might agree to vote for a bill authorizing the construction of more coastal lighthouses if a senator from Maine agrees to vote favorably for corn subsidies….Logrolling quite literally falls within a quid pro quo proscription: each official is making an explicit promise that his official conduct will be influenced in return for the other's favor.
> ….

---

[32] Gayed, 78 Notre Dame L.Rev., at 1771; John Kaplan et al., *Criminal Law*, note 18, at 706-708. (4th ed. 2000).

[33] Gayed, 78 Notre Dame, at 1770-1771.

> Much of the utility of corrupt state of mind as a standard is that it is an element of *intent*. As such, it naturally requires circumstantial evidence for its proof…..Corrupt state of mind analysis mitigates the over-breadth problem by limiting the statute to persons who know that they are misusing their office. For example, logrolling, which falls squarely within the quid pro quo standard, is rightfully viewed as lawful conduct under the corrupt state of mind analysis. (emphasis supplied by the author).[34]

Accordingly, as previously discussed, it is clear that the similar political contributions techniques and conduct evidenced by the requested documentary evidence is relevant and highly probative substantive evidence of Governor Siegelman's lack of a conscious, corrupt and willful intent to commit the criminal acts charged in the indictment for contributions techniques and conduct that is widely accepted in the political process by his fellow Democrats as well as his Republican opponents and public servants of the stature of Governor Bob Riley.

## CONCLUSION

For all the reasons stated herein as well as in Governor Don Siegelman's original Motion, Governor Siegelman respectfully submits that this Honorable Court should reconsider its April 5 Order a GRANT Governor Siegelman's Motion for Subpoenas *Duces Tecum*.

Respectfully submitted,

/s/ Vincent F. Kilborn, III
Vincent F. Kilborn, III, Esquire (KILBV4484)
W. Perry Hall, Esquire (HALLW9043)
KILBORN, ROEBUCK & McDONALD
1810 Old Government Street (36606)
Post Office Box 66710
Mobile, Alabama  36660

---

[34] *Id.*

Telephone: (251) 479-9010
Fax: (251) 479-6747

Hiram Eastland, MS.Bar #5294
EASTLAND LAW OFFICES
107 Grand Boulevard
Greenwood, Mississippi 38930
Telephone: (662) 897-0495
Fax: (662) 453-2808

OF COUNSEL:
Professor G. Robert Blakey
D.C. Bar #424844
NOTRE DAME LAW SCHOOL
South Bend, Indiana
Telephone: (574) 681-6626

David A. McDonald, Esquire (MCDOD5329)
KILBORN, ROEBUCK & McDONALD
203 South Warren Street (36602)
Post Office Box 832
Mobile, Alabama 36601
Telephone: (251) 434-0045
Fax: (251) 434-0047

Charles Redding Pitt, Esquire
2119 Third Avenue North
Birmingham, Alabama  35203
Telephone: (205) 324–0223
Fax: (205) 323-1583

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of April, 2006, I electronically filed the foregoing Motion for Reconsideration with the Clerk of the Court using the CM/ECF system which will send notification of such to all counsel of record.

    /s/ Hiram C. Eastland, Jr.
    COUNSEL