Code of Alabama Currentness
  Title 22. Health, Mental Health and Environmental Control.
    Subtitle 1. Health and Environmental Control Generally. (Refs & Annos)
      Chapter 21. Hospitals and Other Health Care Facilities Generally. (Refs & Annos)
        ➡ Article 9. Control and Regulation of Development of Certain Health Care Facilities. (Refs & Annos)

### § 22-21-260. Definitions.

As used in this article, the following words and terms, and the plurals thereof, shall have the meanings ascribed to them in this section, unless otherwise required by their respective context:

(1) ACQUISITION. Obtaining the legal equitable title to a freehold or leasehold estate or otherwise obtaining the substantial benefit of such titles or estates, whether by purchase, lease, loan or suffrage, gift, devise, legacy, settlement of a trust or means whatever, and shall include any act of acquisition. The term "acquisition" shall not mean or include any conveyance, or creation of any lien or security interest by mortgage, deed of trust, security agreement, or similar financing instrument, nor shall it mean or include any transfer of title or rights as a result of the foreclosure, or conveyance or transfer in lieu of the foreclosure, of any such mortgage, deed of trust, security agreement, or similar financing instrument, nor shall it mean or include any gift, devise, legacy, settlement of trust, or other transfer of the legal or equitable title of an interest specified hereinabove by a natural person to any member of such person's immediate family. For the purposes of this section "immediate family" shall mean the spouse of the grantor or transferor and any other person related to the grantor or transferor to the fourth degree of kindred as such degrees are computed according to law.

(2) APPLICANT. Any person, as defined in this section, who files an application for a certificate of need.

(2.1) CAMPUS. The contiguous real property, contained within a single county, which is owned or leased by a health care facility and upon which is located the buildings and any other real property used by the health care facility to provide existing institutional health services which are subject to review.

(3) CAPITAL EXPENDITURE. An expenditure, including a force account expenditure (i.e., an expenditure for a construction project undertaken by the health care facility as its own contractor), which, under generally accepted accounting principles, is not properly chargeable as an expense of operation and maintenance and which satisfies any of the following:

  a. Exceeds two million dollars ($2,000,000) indexed annually for inflation for major medical equipment; eight hundred thousand dollars ($800,000) for new annual operating costs indexed annually for inflation; four million dollars ($4,000,000) indexed annually for inflation for any other capital expenditure. The index referenced in this paragraph shall be the Consumer Price Index Market Basket Professional Medical Services index as published by the U.S. Department of Labor, Bureau of Labor Statistics. The SHPDA shall publish this index information to the general public.

  b. Changes the bed capacity of the facility with respect to which such expenditure is made.

  c. Substantially changes the health services of the facility with respect to which such expenditure is made.

(4) CONSTRUCTION. Actual commencement, with bona fide intention of completing the construction, or completion of the construction, erection, remodeling, relocation, excavation, or fabrication of any real property constituting a facility under this article, and the term construct shall mean and include any act of construction. "Ground breaking ceremony," "receipt of bids," "receipt of quotation," or similar action that will permit unilateral termination without penalty shall not be considered construction.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(5) FIRM COMMITMENT or OBLIGATION. Any of the following:

   a. Any executed, enforceable, unconditional written agreement or contract not subject to unilateral cancellation for the acquisition or construction of a health care facility or purchase of equipment therefor.

   b. Actual construction of facilities peculiarly adapted to the furnishing of one or more particular services and with the bona fide intention of furnishing such service or services.

   c. Any executed, unconditional written agreement not subject to unilateral cancellation for the bona fide purpose of furnishing one or more services.

(6) HEALTH CARE FACILITY. General and specialized hospitals, including tuberculosis, psychiatric, long-term care, and other types of hospitals, and related facilities such as, laboratories, out-patient clinics, and central service facilities operated in connection with hospitals; skilled nursing facilities; intermediate care facilities; skilled or intermediate care units operated in veterans' nursing homes and veterans' homes, owned or operated by the State Department of Veterans' Affairs, as these terms are described in Chapter 5A (commencing with Section 31-5A-1) of Title 31, rehabilitation centers; public health centers; facilities for surgical treatment of patients not requiring hospitalization; kidney disease treatment centers, including free-standing hemodialysis units; community mental health centers and related facilities; alcohol and drug abuse facilities; facilities for the developmentally disabled; and home health agencies and health maintenance organizations. The term health care facility shall not include the offices of private physicians or dentists, whether for individual or group practices and regardless of ownership, or Christian Science sanatoriums operated or listed and certified by the First Church of Christ, Scientist, Boston, Massachusetts, or a veterans' nursing home or veterans' home owned or operated by the State Department of Veterans' Affairs, not to exceed 150 beds to be built in Bay Minette, Alabama, and a veterans' nursing home or veterans' home owned or operated by the State Department of Veterans' Affairs not to exceed 150 beds to be built in Huntsville, Alabama, for which applications for federal funds under federal law are being considered by the U.S. Department of Veterans' Affairs prior to March 18, 1993.

(7) HEALTH SERVICE AREA. A geographical area designated by the Governor, as being appropriate for effective planning and development of health services.

(8) HEALTH SERVICES. Clinically related (i.e., diagnostic, curative, or rehabilitative) services, including alcohol, drug abuse, and mental health services customarily furnished on either an in-patient or out-patient basis by health care facilities, but not including the lawful practice of any profession or vocation conducted independently of a health care facility and in accordance with applicable licensing laws of this state.

(9) INSTITUTIONAL HEALTH SERVICES. Health services provided in or through health care facilities or health maintenance organizations, including the entities in or through which such services are provided.

(9.1) MAJOR MEDICAL EQUIPMENT. Medical clinical equipment intended for use in the diagnosis or treatment of medical conditions, which is used to provide institutional health services of a health care facility which are subject to review, and which expenditure exceeds the thresholds referenced in this section and in Section 22-21-263.

(10) MODERNIZATION. The alteration, repair, remodeling, and renovation of existing buildings, including equipment within the existing buildings. Modernization does not include the replacement of existing buildings which are used by a health care facility to provide institutional health services which are subject to review and does not include the replacement of major medical equipment.

(11) PERSON. Any person, firm, partnership, association, joint venture, or corporation, the State of Alabama and its political subdivisions or parts thereof, and any agencies or instrumentalities and any combination of persons herein specified, but person shall not include the United States or any agency or instrumentality thereof, except in the case of voluntary submission to the regulations established by this article.

(12) RURAL HEALTH CARE PROVIDER/APPLICANT/HOSPITAL. A provider or applicant or hospital which is designated by the United States Government Health Care Financing Administration as rural.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(13) STATE HEALTH PLAN. A comprehensive plan which is prepared triennially and reviewed at least annually and revised as necessary by the Statewide Health Coordinating Council, with the assistance of the State Health Planning and Development Agency, and approved by the Governor.

The Statewide Health Coordinating Council shall meet at least annually to determine whether revisions for the State Health Plan are necessary. If the Statewide Health Coordinating Council fails to meet and to review or revise the State Health Plan on an annual basis, there shall be no fees required on all certificate of need applications filed with the Certificate of Need Review Board until the Statewide Health Coordinating Council meets and reviews or revises the State Health Plan. For purposes of this paragraph, the annual meeting of the Statewide Health Coordinating Council shall occur on or before August 1 of each calendar year.

The State Health Plan shall provide for the development of health programs and resources to assure that quality health services will be available and accessible in a manner which assures continuity of care, at reasonable costs, for all residents of the state. Nothing in this section should be construed as permitting expenditures for facilities, services, or equipment which are inconsistent with the State Health Plan.

(14) STATE HEALTH PLANNING AND DEVELOPMENT AGENCY (SHPDA). An agency of the State of Alabama which is designated by the Governor as the sole State Health Planning and Development Agency, which shall consist of three consumers, three providers, and three representatives of the Governor who all shall serve staggered terms and all be appointed by the Governor. Where used in this article, the terms, "state agency," and the "SHPDA," shall be synonymous and may be used interchangeably.

(15) STATEWIDE HEALTH COORDINATING COUNCIL. A council, appointed by the Governor, established pursuant to Sections 22-4-7 and 22-4-8 to advise the State Health Planning and Development Agency on matters relating to health planning and resource development and to perform other functions as may be delegated to it, to include an annual review of the State Health Plan.

(16) TO OFFER. When used in connection with health services, a health care facility or health maintenance organization that holds itself out as capable of providing, or as having the means for the provision of, specified health services.

Code of Alabama Currentness (Refs & Annos)

Title 22. Health, Mental Health and Environmental Control.

Subtitle 1. Health and Environmental Control Generally. (Refs & Annos)

Chapter 21. Hospitals and Other Health Care Facilities Generally. (Refs & Annos)

Article 9. Control and Regulation of Development of Certain Health Care Facilities. (Refs & Annos)

§ 22-21-261. Legislative findings; purpose of article.

The Legislature of the State of Alabama declares that it is the public policy of the State of Alabama that a certificate of need program be administered in the state to assure that only those health care services and facilities found to be in the public interest shall be offered or developed in the state. It is the purpose of the Legislature in enacting this article to prevent the construction of unnecessary and inappropriate health care facilities through a system of mandatory reviews of new institutional health services, as the same are defined in this article.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**§ 22-21-262. Repealed by Acts 1979, No. 79-577, p. 1033, § 5, effective July 30, 1979.**

**§ 22-21-263. New institutional health services subject to review.**

(a) All new institutional health services which are subject to this article and which are proposed to be offered or developed within the state shall be subject to review under this article. No institutional health services which are subject to this article shall be permitted which are inconsistent with the State Health Plan. For the purposes of this article, new institutional health services shall include any of the following:

(1) The construction, development, acquisition through lease or purchase, or other establishment of a new health care facility or health maintenance organization.

(2) Any expenditure by or on behalf of a health care facility or health maintenance organization which, under generally accepted accounting principles consistently applied, is a capital expenditure in excess of two million dollars ($2,000,000) indexed annually for inflation for major medical equipment; in excess of eight hundred thousand dollars ($800,000) for new annual operating costs indexed annually for inflation; in excess of four million dollars ($4,000,000) indexed annually for inflation for any other capital expenditure by or on behalf of a health care facility or a health maintenance organization. The index referenced in this subdivision shall be the Consumer Price Index Market Basket Professional Medical Services index as published by the U.S. Department of Labor, Bureau of Labor Statistics. The SHPDA shall publish this index information to the general public.

(3) A change in the existing bed capacity of a health care facility or health maintenance organization through the addition of new beds, the relocation of one or more beds from one physical facility to another, or reallocation among services of existing beds through the conversion of one or more beds from one category to another within the following bed categories: general medical surgical, inpatient psychiatric, inpatient/residential alcohol and drug abuse or inpatient rehabilitation beds, or long-term care beds including skilled nursing care, intermediate care, transitional care, and swing beds. Notwithstanding any provision of this subdivision to the contrary, any health care facility or health maintenance organization in which at least 65 percent of the beds are dedicated or used exclusively for acute care services, general medical surgical, or nonspecialized services may reallocate existing beds within the following specialized bed categories: inpatient psychiatric, inpatient/residential alcohol and drug rehabilitation beds, to acute care services, or general medical surgical beds without first obtaining a certificate of need from the SHPDA.

(4) Health services proposed to be offered in or through a health care facility or health maintenance organization, and which were not offered on a regular basis in or through such health care facility or health maintenance organization within the 12 month period prior to the time such services would be offered. Health services, other than those health services involving long-term care services, including without limitation, skilled and intermediate nursing home care, swing beds services, or transitional care services, provided directly by acute care hospitals classified as rural by the U.S. Bureau of Census/Office of Management and Budget, United States Government Health Care Financing Administration or acute care hospitals with less than 105 beds that are located over 20 miles from the nearest acute health care facility located within Alabama shall not be subject to this subdivision but shall be subject to the other subdivisions of this subsection. Provided, however, that the exemption from this subdivision herein established shall not apply to home health services provided outside of the county in which the hospital is located.

(b) The four conditions of new institutional health services listed in this section shall be mutually exclusive.

(c) Notwithstanding all other provisions of this article to the contrary, those facilities and distinct units operated by the Department of Mental Health and Mental Retardation and those facilities and distinct units operating under contract or subcontract with the Department of Mental Health and Mental Retardation where the contract constitutes the primary source of income to the facility shall not be subject to review under this article.

(d) For the purposes of this article, and notwithstanding all other provisions of this article to the contrary and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

notwithstanding any and all provisions of the State Health Plan on September 1, 2003, relating to lithotripsy, magnetic resonance imaging, and positron emission tomography, new institutional health services, which are subject to this article, shall not include any health services provided by a mobile or fixed-based extracorporeal shock wave lithotripter, mobile or fixed-based magnetic resonance imaging, or positron emission tomography proposed to be offered in or through a health care facility or health maintenance organization. The SHPDA, after consultation with and the advice of the Statewide Health Coordinating Council, in accordance with the Alabama Administrative Procedure Act and within 60 days of September 1, 2003, shall cause the State Health Plan to be amended to repeal and delete all sections of the Alabama State Health Plan relating to mobile and fixed-based lithotripters, mobile and fixed-based magnetic resonance imaging, and positron emission tomography, and cause the amendment and repeal of any other SHPDA rules and regulations inconsistent with this article.

### § 22-21-264. Criteria for state agency review.

The SHPDA, pursuant to the provisions of Section 22-21-274, shall prescribe by rules and regulations the criteria and clarifying definitions for reviews covered by this article. These criteria shall include at least the following:

(1) Consistency with the appropriate State Health Facility and services plans effective at the time the application was received by the State Agency, which shall include the latest approved revisions of the following plans:

a. The most recent Alabama State Health Plan which shall include updated inventories and separate bed need methodologies for inpatient rehabilitation beds, inpatient psychiatric beds and inpatient/residential alcohol and drug abuse beds.

b. Alabama State Health Plan for services to the mentally ill.

c. Alabama State Plan for rehabilitation facilities.

d. Alabama developmental disabilities plan.

e. Alabama State alcoholism plan.

f. Such other State Plans as may from time to time be required by state or federal statute.

(2) The relationship of services reviewed to the long-range development plan (if any) of the person providing or proposing such services.

(3) The availability of alternative, less costly or more effective methods of providing such services.

(4) Determination of a substantially unmet public requirement for the proposed health care facility, service or capital expenditure that is consistent with orderly planning within the state and the community for furnishing comprehensive health care, such determination to be established on the merits of the proposal after giving appropriate consideration to:

a. Financial feasibility of the proposed change in service of facility;

b. Specific date supporting the demonstration of need for the proposed change in facility or service shall be reasonable, relevant and appropriate;

c. Evidence of evaluation and consistency of the proposed change in facility or service with the facility's and the community's overall health and health-related plans;

d. Evidence of consistency of the proposal with the need to meet nonpatient care objectives of the facility such as teaching and research;

e. Evidence of review of the proposed facility, service or capital expenditure when appropriate and requested by

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

other state agencies.

f. Evidence of the locational appropriateness of the proposed facility or service such as transportation accessibility, manpower availability, local zoning environmental health, etc.;

g. Reasonable potential of the facility to meet licensure standards.

h. Reasonable consideration shall be given to medical facilities involved in medical education.

(5) Determination that the person applying is an appropriate applicant, or the most appropriate applicant in the event of duplicative applications, for providing the proposed health care facility or service, such determination to be established from the evidence as to the ability of the person, directly or indirectly, to render adequate service to the public, including affirmative evidence as to the following:

a. Professional capability of the facility proposing the capital expenditure;

b. Management capability of the facility proposing the capital expenditure;

c. Adequate manpower to enable the facility to offer the proposed service;

d. Evidence of the existence of the applicant's long-range planning program and an ongoing planning process;

e. Evidence of existing and ongoing monitoring of utilization and the fulfilling of unmet or under met health needs in the case of expansion;

f. Evidence of communication with all planning, regulatory, utility agencies and organizations that influence the facility's destiny.

(6) Consideration of the special needs and circumstances of those entities which provide a substantial portion of their services or resources, or both, to individuals not residing in the health service area in which the entities are located or in adjacent health service areas.

(7) The special needs and circumstances of health maintenance organizations.

(8) In case of a construction project, consideration shall be given to:

a. The costs and methods of the proposed construction including the costs and methods of energy provision; and

b. The probable impact of the construction project reviewed on the costs of providing health services.

### § 22-21-265. Certificates of need -- Required for new institutional health service.

(a) On or after July 30, 1979, no person to which this article applies shall acquire, construct, or operate a new institutional health service, as defined in this article, or furnish or offer, or purport to furnish a new institutional health service, as defined in this article, or make an arrangement or commitment for financing the offering of a new institutional health service, unless the person shall first obtain from the SHPDA a certificate of need therefor. Notwithstanding any provisions of this article to the contrary, those facilities and distinct units operated by the Department of Mental Health and Mental Retardation, and those facilities and distinct units operating under contract or subcontract with the Department of Mental Health and Mental Retardation where the contract constitutes the primary source of income to the facility, shall not be required to obtain a certificate of need under this article.

(b) Notwithstanding all other provisions of this article to the contrary, the replacement of equipment by health care facilities shall be exempt from certificate of need review, provided:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1) The replacement does not change the purpose, use, or application of the equipment.

(2) The existing equipment is taken out of service.

(3) The replacement equipment does not enable the health care facility to expand its health services.

(4) The replacement equipment does not enable the health care facility to provide any health services not previously provided on a regular basis.

A determination of whether the acquisition of equipment is exempt from review under this section shall be made by the Executive Director of the SHPDA upon the filing of an application requesting the determination, on the form or forms prescribed by the CON Review Board, together with a fee in the amount of 10 percent of the fee provided in Section 22-21-271. If it is determined that the replacement is not reviewable pursuant to this section, the applicant shall be notified in writing that no certificate of need is required. The SHPDA shall define an appeals process.

Any provision in this article to the contrary notwithstanding, no rural hospital shall be required to submit an application fee when filing a request for determination under this section.

(c) Notwithstanding any other provision of this article to the contrary, the modernization or construction of a nonclinical building, parking facility, or any other noninstitutional health services capital item on the existing campus of a health care facility shall be exempt from certificate of need review, provided the construction or modernization does not allow the health care facility to provide new institutional health services subject to review and not previously provided on a regular basis.

(d) The SHPDA shall maintain the Alabama State Health Plan to include separate bed need methodologies for inpatient psychiatric services, inpatient rehabilitation services, and inpatient/residential alcohol and drug abuse services. The SHPDA shall utilize these methodologies in considering all certificate of need applications.

(e) Notwithstanding all other provisions of this article to the contrary, the increase in the number of nursing home beds of a health care facility licensed pursuant to Section 22-21-260(6) as a skilled nursing care facility or an intermediate care facility, but excluding an increase in the bed capacity of an intermediate care facility designated as an ICF-MR by the State Board of Health and operated by the state Department of Mental Health and Mental Retardation which facilities shall be governed by the other provisions of this article, shall be exempt from certificate of need review, provided:

(1) The increase does not exceed 10 percent of the total skilled nursing beds of the facility, rounded to the nearest whole number, or 10 beds, whichever is greater.

(2) The average rate of occupancy for the nursing home beds of the facility is not less than 95 percent, rounded to the nearest whole number, for the 24-month period ending on June 30 of the year immediately preceding the application for exemption from the certificate of need review.

(3) The aggregate average rate of occupancy for all other skilled nursing facilities and intermediate nursing facilities in the same county as the requesting facility's is not less than 95 percent, rounded to the nearest whole number, for the 24-month period ending on June 30 of the year immediately preceding the application for exemption from certificate of need review.

(4) The increase does not require capital expenditures exceeding the capital expenditure thresholds prescribed in Section 22-21-263(a)(2).

(5) The facility has not been granted an increase of beds under this exemption within the immediately preceding 24-month period.

In calculating the average occupancy for the facility under subdivision (2) of this subsection and for all other skilled and intermediate nursing facilities in the same county under subdivision (3) of this subsection, beds previously granted, including beds granted after January 1, 1995, to the facility, and to other skilled or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

intermediate nursing facilities in the same county as the requesting facility, pursuant to a certificate of need or to this exemption shall be deemed built and available for occupancy as of the date granted regardless of when the beds were placed in service. SHPDA shall promulgate regulations to determine how occupancy shall be calculated for the purpose of this subsection, taking into account certain factors such as, but without limitation, disregarding beds that have not been available for use for the three years next preceding the period for which occupancy is being measured.

(6) The facility has had an average daily census comprised of 40 percent of Medicaid patients within the fiscal year ended June 30 immediately prior to filing an application for exemption under this section.

(7) Any exemption to add beds without a certificate of need shall expire and be deemed null and void unless the beds are placed in service not less than 12 months after the date the exemption is granted. Notwithstanding the foregoing, SHPDA may promulgate rules permitting the Executive Director of SHPDA to grant one extension not to exceed twelve months upon a showing of substantial progress. Notwithstanding the foregoing, any exemption granted by the SHPDA prior to April 10, 1995, for facilities which have agreed to the provisions of the June 21, 1995 consent decree, is ratified and confirmed and shall be deemed to have been granted in accordance with this subsection. In addition, any facility which was granted an exemption by the SHPDA prior to April 10, 1995, is ratified and confirmed and shall be deemed to have been approved as of the latter of the actual date approved or March 3, 1995 and to have been granted in accordance with this subsection.

A determination of whether the increase in beds is exempt from review under this section shall be made by the Executive Director of SHPDA upon the filing of an application requesting the determination, on the form or forms prescribed by the CON Review Board, together with a fee in an amount to be determined by the review board in accordance with Section 22-21-271(a). The SHPDA shall promulgate rules affording an applicant pursuant to this subsection a right to appeal adverse rulings.

Applications pursuant to this section for exemption from certificate of need review for an increase in bed capacity shall be made only during the 90-day period beginning January 1 through March 31 of each year.

The provisions of this section shall automatically terminate and become null and void on December 31, 2005, unless a bill to continue or reestablish the provisions of this section shall be passed by both houses of the Legislature and enacted into law.

(f) Notwithstanding all other provisions of this article to the contrary, an existing home health agency may accept referrals of patients from outside its Medicare certified service area without obtaining a certificate of need, provided all of the following conditions are met:

(1) The county of the referral is contiguous to a county for which the home health agency holds a certificate of need or an exemption granted pursuant to provisions of Section 22-21-263.

(2) The home health agency establishes no branch office in the county of the referral.

(3) The home health agency incurs no capital expenditures in the county of the referral in excess of five hundred dollars ($500).

The home health agency shall notify the SHPDA that it has begun accepting referrals from a county contiguous to its service area within 14 days of the receipt of the first referral from the contiguous county. No notice to the SHPDA shall be required related to subsequent referrals in the same contiguous county. The SHPDA shall take steps to provide for the inclusion of statistical information relating to the service to referrals outside the Medicare certified service area in its annual statistical reports. The SHPDA shall charge the home health agency no fee for servicing referrals outside the service area.

(g) Notwithstanding all other provisions of this article to the contrary, the replacement, including relocation in the same county, of an existing acute care hospital by the construction of a new digital hospital shall be exempt from certificate of need review provided the hospital meets all of the following:

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1) The digital hospital design incorporates a fully automated centralized digital system to integrate all current and future medical technologies with capabilities for all systems to interface in a comprehensive medical record. The integration of medical technology shall include, but not be limited to, all patient medical records, diagnostic images, diagnostic reports, laboratory results, pharmacy data, pharmacological interactions, contraindications, surgical reports, surgical streaming video, pathology reports, unique patient identification, voice activated transcription, wireless applications, automated billing with electronic transmission capability, and electronic procurement systems.

(2) The electronic medical systems shall interface on a single electronic platform to produce the most favorable patient outcome with a reduction in medical errors.

(3) Medical records shall only be accessed by authorized clinical personnel who are provided access by hospital consoles, physician offices, physician homes, or any remote location via unique identification requirements.

(4) Patient rooms shall be designed to provide optimal electronic documentation of vital signs, real-time data entry, any and all treatment protocols, physician orders, and patient progression.

(5) The digital hospital shall have a minimum project cost of one hundred million dollars ($100,000,000) to include design, systems, property, buildings, equipment, and electronic software development.

(6) The construction and design of the facility shall utilize technology and materials for patient flow to limit general public contact with patient care areas, healthcare workers, and hazardous materials to reduce the potential for cross-contamination and resulting direct medical costs.

(7) The digital hospital environment shall be energy efficient, cost effective, and clinically designed to produce the most favorable environment.

(8) The digital hospital shall meet all of the following conditions:

  a. Operate as an acute care hospital.

  b. Replace an existing acute care hospital located in the same county as the digital hospital.

  c. Be licensed for no more than the same number of hospital beds and for the same bed categories as the existing acute care hospital to be replaced by the digital hospital, unless otherwise approved by the Certificate of Need Review Board through issuance of a certificate of need.

  d. Shall not exceed the same scope of health services, including the same amount of diagnostic or therapeutic major medical equipment, as the existing acute care hospital to be replaced by the digital hospital, unless otherwise approved by the SHPDA approval process.

  e. Shall not exceed the number of inpatient and outpatient surgical suites as contained in the existing acute care hospital to be replaced by the digital hospital, unless otherwise approved by the SHPDA approval process.

(9) The existing acute care hospital, replaced by the digital hospital, shall be taken out of service as an acute care hospital and shall not be converted to or used as another health care facility, unless approved by the Certificate of Need Review Board through issuance of a certificate of need.

(10) Any presently reviewable health service which is proposed to be offered by the digital hospital which was not offered on a regular basis within the preceding twelve-month period in or through the existing acute care hospital to be replaced by the digital hospital shall be subject to Certificate of Need Review Board approval through issuance of a certificate of need.

(11) The only digital hospital exempt from certificate of need review shall be the first digital hospital developed in the state, and the digital hospital shall be located in a county where there is located an accredited medical school and teaching facility and not less than 3,000 licensed general hospital beds, and construction shall be commenced

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

within one year from the issuance of a certificate of need by SHPDA.

A determination whether the construction of a digital hospital is exempt from review under this subsection shall be made by the Executive Director of the SHPDA, upon the filing of an application requesting the determination, on the forms acceptable to the Executive Director of SHPDA together with an application fee as provided in Section 22-21-271. If it is determined that the replacement facility is not reviewable pursuant to this section, SHPDA shall notify the applicant in writing that the application is exempt from certificate of need review and shall issue a certificate of need. The applicant shall have a right of appeal from any adverse ruling denying exemption and the SHPDA shall promulgate rules affording an applicant a right to appeal adverse rulings pursuant to this subsection.

The provisions of this subsection shall automatically terminate and become null and void upon the issuance of the first certificate of need for the construction and operation of a digital replacement hospital as herein provided or on December 31, 2005, whichever first occurs, unless a bill to continue or reestablish the provisions of this subsection shall be passed by both houses of the Legislature and enacted into law.

### § 22-21-265.1. Certificates of need -- No legislative intent to ratify illegal actions or false information of applicants, agents, etc.

It is not legislative intent to forgive, ratify or confirm any illegal actions or presentation of information known to be false on the part of applicants for certificates of need or the agents or employees of either the applicants or SHPDA.

### § 22-21-265.2. Certificates of need -- Legislative intent reiterated.

It is not the intent of the Legislature to forgive, ratify, or confirm any illegal actions or presentation of information known to be false on the part of applicants for certificates of need or the agents or employees of either the applicants or the State Health Planning and Development Agency.

### § 22-21-265.3. Certificates of need -- All-digital, automated hospital exempt from review process.

The Legislature finds and determines that the well-being and health of the citizens of the State of Alabama will be enhanced by the development and growth of a state of the art digital, automated hospital using the latest technological advances in healthcare to lower healthcare costs, reduce human errors, and provide patients with the best medical care available, and that it is in the best interest of the state to induce the location of one all-digital, automated hospital, meeting the requirements of a digital hospital as provided in subsection (f) of Section 22-21-265, in a county in which is located an accredited medical school and teaching facility and not less than 3,000 licensed general hospital beds, in order to set new standards for quality, efficiency, and cost-effective delivery of healthcare services, and to promote these purposes by exempting from the certificate of need review process the first all-digital, automated hospital to be developed and located in such a county. The Legislature further finds and declares the exemption to be granted by subsection (f) of Section 22-21-265 and the purposes to be accomplished hereby are proper governmental and public purposes and that the inducement of the location of an all-digital, automated hospital in such a county is of paramount importance to the development of state of the art healthcare in this state.

### § 22-21-266. Certificates of need -- Required findings for inpatient facilities.

No certificate of need for new inpatient facilities or services shall be issued unless the SHPDA makes each of the following findings:

(1) That the proposed facility or service is consistent with the latest approved revision of the appropriate state plan effective at the time the application was received by the state agency;

(2) That less costly, more efficient or more appropriate alternatives to such inpatient service are not available, and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the development of such alternatives has been studied and found not practicable;

(3) That existing inpatient facilities providing inpatient services similar to those proposed are being used in an appropriate and efficient manner consistent with community demands for services;

(4) That in the case of new construction, alternatives to new construction (e.g., modernization and sharing arrangement) have been considered and have been implemented to the maximum extent practicable; and

(5) That patients will experience serious problems in obtaining inpatient care of the type proposed in the absence of the proposed new service.

### § 22-21-267. Certificates of need -- Application for certificate or modification thereto and extensions thereof.

Any application for a certificate of need under Section 22-21-265, for a modification thereto or for an extension thereof shall be made in written form and shall include such information and supporting data relevant to the merits of the application as may be prescribed by the approved rules and regulations of the SHPDA. The application shall be filed with the SHPDA not less than 90 days prior to the date of the proposed obligation for the capital expenditure or the inauguration of the proposed service.

### § 22-21-268. Certificates of need -- Emergency certificate prior to hearing.

Any person may apply, either independently and without notice under Section 22-21-267 or as a part of an application filed under Section 22-21-267, for an emergency certificate of need for the authorization of capital expenditures made necessary by unforeseen events which endanger the health and safety of the patients. Emergency capital expenditures include, but are not necessarily limited to, emergency expenditures to maintain quality care, to overcome failure of fixed equipment, including heating and air conditioning equipment, elevators, electrical transformers and switch gear, sterilization equipment, emergency generators, water supply and other utility connections. Applications for emergency certificates of need shall include a description of the work to be done and/or equipment to be purchased, the cost thereof, justification for considering the capital expenditure as being of an emergency nature and such other information as the SHPDA may require. Emergency certificates of need issued hereunder shall be subject to such special limitations and restrictions as the duration and right of extension or renewal as may be prescribed in the rules and regulations adopted by the SHPDA.

### § 22-21-269. Certificates of need -- Certificate of need for planning. Repealed by Acts 1990, No. 90-468, § 2, effective April 18, 1990.

### § 22-21-270. Certificates of need -- Period for which valid; extension of time; termination; transferability.

(a) A certificate of need issued under subsection (a) of Section 22-21-265 and Section 22-21-268 shall be valid for a period not to exceed 12 months and may be subject to one extension not to exceed 12 months, provided the criteria for extension as set forth in the rules and regulations of the SHPDA are met. If no obligation has occurred within such period, the certificate of need shall be considered terminated and shall be null and void. Should the obligation be incurred within such valid period, the certificate of need shall be continued in effect for a period not to exceed one year or the completion of the construction project, whichever shall be later, or the inauguration of the service or the actual purchase of equipment.

(b) Failure to commence the construction project within the time period stated in the construction contract or to complete the construction project within the time period specified in the construction contract, which may be extended by mutual agreement of the parties to the contract, shall render the certificate of need null and void, unless tolled or extended pursuant to statute or SHPDA rule or regulation. Provided, the SHPDA, or an administrative law judge appointed by the Governor on appeal for a fair hearing, may for causes beyond the control of the applicant, continue the certificate of need in force if commencement of the construction project is delayed for a period not to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

exceed 60 days or if during the specified construction period the construction work should cease for not more than six months, or in the event of default in the construction contract by the contractor, or if, for any cause, the construction work has not ceased or otherwise been stopped for a period exceeding 60 consecutive days.

(c) Applicants who held valid certificates of need which were terminated under this section may file a new application for a certificate pursuant to and subject to the provisions of this article.

(d) Upon completion of the construction and issuance of a certificate of completion or the receipt of proof of purchase of equipment, the certificate of need shall be continued in force and effect.

(e) A certificate of need shall not be transferable, assignable, or convertible, other than between members of a parent-subsidiary controlled corporate group as defined in Internal Revenue Code, 26 U.S.C. § 1563 (a)(1), and shall be valid solely to the person and purpose named thereon, except to such other member of the controlled group, or by change of name or merger with another corporation.

(f) The transfer of stock in, or change of name or merger of, a corporation which holds a certificate of need shall not constitute a transfer, assignment, or conversion of the certificate.

### § 22-21-271. Certificates of need -- Application fees; appropriation of funds; disposition of fees.

(a) Each application for a certificate of need shall be accompanied by a fee of one percent of the estimated cost of the proposed cost of the new Institutional Health Service, or a maximum of $12,000.00 (indexed) per application. Provided, that the application fee shall be one half of one percent of the estimated cost of the proposed cost of the new Institutional Health Service, or a maximum of $4,000.00 if the applicant has had an average daily census comprised of 50 percent or more medicaid patients within the last year prior to the filing of the application and a maximum of $2,000.00 if a rural hospital applicant has had an average daily census comprised of 30 percent or more Medicaid/Medicare patients within the last year prior to the filing of the application. The minimum fee shall be set by the SHPDA. Fees shall be used for the purpose of defraying the lawful operating expense of the certificate of need program conducted by the SHPDA and of the Statewide Health Coordinating Council.

(b) Each request for an opinion from the State Agency as to whether a project is subject to review under this article shall be accompanied by a fee to be established by the SHPDA.

(c) There is hereby authorized to be appropriated from the General Fund of the State of Alabama such amounts as may be necessary from time to time to defray the costs of administering this article over and above such fees as may be collected under this section.

(d) Application fees collected under this article shall not be refundable. Fees collected under this article are hereby appropriated for the purposes stated in this article.

(e) All fees collected under this article shall be retained in a separate fund for the purpose of enforcing and administering this article, and shall be disbursed as other funds of the state are disbursed.

### § 22-21-271.1. Certificates of need -- Fee increases.

(a) Any law to the contrary notwithstanding, the staff agency of the State Health Planning and Development Agency or its executive director may not increase or set any fees otherwise authorized relating to the certificate of need process pursuant to this article.

(b) Any fee increase by the staff agency of the State Health Planning and Development Agency or its executive director adopted after January 1, 1998, is rescinded and shall not be operative unless readopted in accordance with this section.

(c) Any fee increase related to the certificate of need process of the State Health Planning and Development Agency

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

shall be adopted as a rule pursuant to the Alabama Administrative Procedure Act, Chapter 22 of Title 41.

(d)(1) For the purpose of this section, the term "State Health Planning and Development Agency" means the CON review board which is defined as the State Health Planning and Development Agency (SHPDA) in subdivision (14) of Section 22-21-260, and which consists of three consumers, three providers, and three representatives of the Governor.

(2) For the purpose of this section, the term "any fee related to the certificate of need process" means any fee authorized to be established by the State Health Planning and Development Agency, its staff agency, or the executive director of the staff agency. The term includes, but is not limited to, applications for a CON, opinions from the state agency as to whether a project is subject to review, or any other fee established pursuant to this article.

### § 22-21-272. Certificates of need -- Contracts for review and recommendations concerning applications. Repealed by Acts 1990, No. 90-468, § 2, effective April 18, 1990.

### § 22-21-273. Repealed by Acts 1979, No. 79-577, p. 1033, § 5, effective July 30, 1979.

### § 22-21-274. Adoption and public notice of review procedures and criteria.

The SHPDA, with the advice and consultation of the Statewide Health Coordinating Council, shall prescribe by rules and regulations the review criteria and review procedures required by this article. Said review criteria and review procedures shall be consistent with this article and with appropriate federal regulations. Prior to the adoption of rules and regulations, the SHPDA shall give wide publicity to the proposed rules and regulations and shall conduct a public hearing following legal notice of not less than 30 days. The public hearing shall be held in the City of Montgomery, Alabama. Prior to advertising the public hearing, the SHPDA shall submit the proposed rules and regulations to the Statewide Health Coordinating Council and other interested agencies. Future revisions of the rules and regulations shall be made as required in this section for the original rules and regulations and in accordance with the Administrative Procedure Act (§ 41-22-1 et seq.).

### § 22-21-275. Procedures for review of applications for certificates of need.

The SHPDA, pursuant to the provisions of Section 22-21-274, shall prescribe by rules and regulations the procedures for review of applications for certificates of need and for issuance of certificates of need. Rules and regulations governing review procedures shall include, but not necessarily be limited to, the following:

(1) Agreement with other review agencies for review procedures consistent with this article and federal regulations.

(2) Application procedures and forms of the application necessary to elicit and provide all necessary information as required by the review criteria.

(3) Establishment of a project review period of 90 days from the date the state agency determines that the application is complete and notification thereof is made to the applicant. The rules and regulations may provide for a period of not more than 15 days for determination of the completeness of the application, notification of the beginning and termination dates of the project review period and criteria for determining by the state agency of an extension of the project review period not to exceed 30 days with or without the consent of the applicant. An extension of the review period without limitation may be made with the written consent of the applicant. All reviews must be completed prior to the termination of the review period. If the state agency does not make a decision within the period of time specified for state agency review, the proposal shall be deemed to have been found not to be needed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(4) Provision for a "nonsubstantive" review which shall be a modified review applicable to proposals for capital expenditures up to $500,000.00 and which:

    a. Do not result in a substantial change in a service; or

    b. Propose equipment to upgrade or expand an existing service; or

    c. Increase the bed capacity by not more than 10 percent of the existing bed capacity; provided, that such increase in bed capacity is consistent with the State Health Plan.

(5) Public notification of receipt of application, review periods, public hearings, decisions of the state agency, fair hearings if requested and final decisions regarding a certificate of need.

(6) Provisions and procedures for public hearings in the course of agency review on any application for the certificate of need for new institutional health service which requires substantive review. The SHPDA shall make provisions for a public hearing of any contested case before an administrative law judge designated by the Governor, which shall be conducted as a contested hearing pursuant to the requirements of the Alabama Administrative Procedure Act, Chapter 22 of Title 41, and regulations consistent therewith adopted under this article. SHPDA shall make provisions that if neither the applicant nor aggrieved party shall have requested the application be heard before an administrative law judge, the application shall be heard before SHPDA at a public hearing. Any aggrieved party to a final decision of SHPDA may appeal the final decision of SHPDA to the circuit court in the county in which the applicant resides or of the county in which the applicant is situated or in which the new institutional health service being applied for is located.

(7) Schedule for reviews to include hearings before the state agency, beginning and ending of review periods and time of the review period as provided in this section.

(8) Provision of the applicant to submit such information that he may deem advisable in justification of the application over and above the minimum information required by this article and the regulations adopted hereunder.

(9) Provisions for periodic reports by the health provider or applicant respecting the development of the proposal subject to review and for which a certificate of need is issued.

(10) Provisions for written findings, as appropriate, which the state used as the basis for its decision or any recommendation of the state agency. Such findings and recommendations shall be provided to the applicant and available to other interested persons upon request and upon payment of a reasonable fee to cover actual costs of reproduction and handling.

(11) Notification upon request of providers of health services and other persons subject to review of findings, recommendations and decisions made under this article.

(12) Provision for a public hearing upon written request for the reconsideration of a decision by the SHPDA and for good cause by any aggrieved party, including any competing applicant, or any aggrieved person who has intervened pursuant to Section 41-22-14. Request for reconsideration shall be made in writing not more than 15 days subsequent to the date the agency (SHPDA) decision is deemed final and shall have the effect of holding in abeyance the final decision and suspending any certificate of need issued pursuant thereto, subject to the outcome of the public hearing. The provision shall state that there can be no reconsideration by the SHPDA of a decision on a prior request for reconsideration; that an aggrieved party shall not be required to request reconsideration prior to or as a condition to requesting a fair hearing; and that an aggrieved party shall not be required to request reconsideration or a fair hearing prior to or as a condition to seeking judicial review pursuant to Section 41-22-20.

(13) Provision that no decision of the SHPDA under this article shall be deemed final until 15 days following the date of the decision.

(14) Provisions that any adverse decision of the agency (SHPDA) (other than a SHPDA decision after first being

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

heard as a contested case before an administrative law judge pursuant to the requirements of the Alabama Administrative Procedure Act) may be appealed to an administrative law judge designated by the Governor for fair hearing which appeal shall be heard de novo as a contested case in accordance with Sections 41-22-12 and 41-22-13. The fair hearing appeal proceedings shall be conducted pursuant to the requirements of the Alabama Administrative Procedure Act, Chapter 22 of Title 41, and regulations consistent therewith adopted under this article. The appeal shall be commenced by a request for a fair hearing by the applicant or any competing applicant, which request shall be made within 15 days of the date that the decision by the state agency became final, or in the event of a request for reconsideration, within 15 days of the date that the decision of the state agency on reconsideration became final and shall have the effect of holding in abeyance the decision and suspending any certificate of need issued pursuant thereto subject to the outcome of the fair hearing. The decision of the administrative law judge in the fair hearing proceedings shall be considered the final decision of the state agency (SHPDA); provided, that any aggrieved party may appeal the decision to the circuit court of the county in which the applicant resides or of the county in which the applicant is situated or in which the new institutional health service being applied for is located.

(15) Preparation and publication, at least annually, of reports by the state agency of the reviews being conducted, decisions reached, certificates issued and status of proposals.

(16) Access by the general public to applications reviewed by the SHPDA and to other written material pertinent to the review.

(17) Provisions for letters of intent in the case of construction projects by persons proposing such projects. Letters of intent shall be in such detail as the SHPDA may direct by regulations. Letters of intent shall not substitute for the formal application for a certificate of need as provided in this article.

(18) Provision that the review procedure may vary according to the purpose for which a particular review is being conducted and/or the nature and type of service or expenditure proposed.

### § 22-21-276. Injunctive relief; issuance of license for inpatient beds or facilities in violation of article prohibited; facilities in violation of article not to receive reimbursement for services.

(a) Injunctive relief against violations of this article or any reasonable rules and regulations of the SHPDA may be obtained from the Circuit Court of Montgomery County, Alabama, at the instance of the SHPDA, any holder of a certificate of need that is adversely affected in the exercise of privileges thereunder by such violation or any member of the public directly and adversely affected by such violation. Upon written request by the SHPDA, it shall be the duty of the Attorney General of the State of Alabama to furnish such legal services as may be appropriate and to prosecute such action for injunctive relief to an appropriate conclusion.

(b) The State Board of Health shall not issue a license to operate new inpatient beds or any health care facility constructed, or acquired in violation of this article and without a certificate of need issued pursuant to this article.

(c) Any facility or service provided or constructed in violation of this article and without a certificate of need shall not receive reimbursement for services rendered by the health care facility or for the service provided by the facility which is provided in violation of said article without a certificate of need. This provision applies to all reimbursement programs administered by the State of Alabama. Recommendations will be made to other reimbursing agencies that reimbursement be denied.

### § 22-21-277. Article cumulative; conflicting laws.

The provisions of this article are cumulative and, insofar as possible, they shall be construed in pari materia with other laws relating to public health. Nevertheless, all laws or parts of laws, including, but not limited to any part of Chapter 5A (commencing with Section 31-5A-1) of Title 31, which conflict with this article are repealed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**§ 22-21-278. Kidney Disease Treatment Centers in certain municipalities exempted from certificate of need requirement.**

(a) The Legislature hereby finds and declares that it is in the best interest of the state and its residents for Kidney Disease Treatment Centers to be established and operated throughout the state so that any patient needing such treatment will be able to utilize a hemodialysis unit located within a reasonable distance from his or her home; that a shortage of Kidney Disease Treatment Centers now exists in the rural areas and smaller municipalities in the state; that the existence of the certificate of need requirement with respect to new Kidney Disease Treatment Centers is a factor that hinders the establishment of new treatment centers in the less heavily-populated areas of the state; that, in order to encourage and facilitate the development of new Kidney Disease Treatment Centers in those areas of the state where such centers are most needed, it is rational, appropriate and desirable to provide an exemption from the certificate of need requirement for any Kidney Disease Treatment Center located in a Class 3, 4, 5, 6, 7 or 8 municipality that contains no more than ten hemodialysis units; and that, because of the existence in Class 1, 2 and 3 municipalities of major medical facilities that serve the residents of such municipalities and the surrounding areas, it is rational, appropriate and desirable to provide that the exemption granted by this section shall not apply to a Kidney Disease Treatment Center located in a Class 4, 5, 6, 7 or 8 municipality if such municipality is located in a county in which a Class 1, 2 or 3 municipality is located.

(b) Notwithstanding any existing law to the contrary, any Kidney Disease Treatment Center that contains no more than ten freestanding hemodialysis units and that is located in a Class 3, 4, 5, 6, 7 or 8 municipality (as such classes are defined in Sections 11-40-12 and 11-40-13 or any successor provision of law) shall not be subject to or governed by the provisions of Article 9 of Chapter 21 of Title 22 (including, without limitation, the provisions of said article which require that a certificate of need be obtained from the State Health Planning and Development Agency as a condition precedent to the offering or development of new institutional health services).

(c) The provisions of subsection (b) shall not apply to a Kidney Disease Treatment Center located in a Class 4, 5, 6, 7 or 8 municipality if such municipality or any part thereof is located in a county in which a Class 1, 2 or 3 municipality or any part thereof is located.

Current through End of 2005 First Special Session.
END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.