IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** * | |
| * | |
| v. * | Case No. 2:05-cr-119-MEF |
| * | |
| **DON EUGENE SIEGELMAN** * | |

### RENEWED MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29 ON COUNT SEVENTEEN – 18 U.S.C. § 1512(b)(3) OBSTRUCTION OF JUSTICE

The government tried Count Seventeen on the wrong theory. It attempted (unsuccessfully) to prove that, in October 2001, Governor Siegelman "disguise[d]" or covered-up a January 2000 check from Lanny Young. That would not be a violation of 18 U.S.C. § 1512(b)(3) even if it had happened. Governor Siegelman respectfully requests a judgment of acquittal.

Section 1512(b)(3) is a tampering statute. It forbids a defendant to "corruptly persuade" or to "engage in misleading conduct" toward a person who communicates – or whom he believes will communicate – with federal authorities. It does not address a disguise or cover-up that does not involve tampering.

The government offered no evidence that Governor Siegelman tampered with Mr. Young, Mr. Bailey, or Mr. Beck.[1] That is the end of the § 1512(b)(3) inquiry. There is no proper judgment

---

[1] Count Seventeen alleges:

> On or about October 16, 2001, in the Middle District of Alabama, the defendant DON EUGENE SIEGELMAN, aided and abetted by others known and unknown to the Grand Jury, did knowingly corruptly persuade and attempt to knowingly corruptly persuade another person, and did engage in misleading conduct toward another person, with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission of a federal offense and a possible commission of a federal offense, to wit, defendant DON EUGENE SIEGELMAN did cause Nicholas D. Bailey to provide him with a check in the amount of $2,973.35 with the notation "balance due on m/c" with intent to hinder, delay, and prevent communication to the Federal

but acquittal.

## I. THE GOVERNMENT TRIED COUNT SEVENTEEN ON THE WRONG THEORY

### A. Mr. Bailey's Testimony

Mr. Bailey wrote a $2,973.35 check on October 16, 2001 to buy Governor Siegelman's remaining interest in a motorcycle. *Nick Bailey Testimony on Direct Examination, May 2, 2006* 136/8-13; 138/10-23. Mr. Bailey said he already had bought a part interest in January 2000, using $9,200 he got from Lanny Young. *Id.* 102/14 – 108/7. He said that he bought the part interest, not because he wanted to own part of a motorcycle, but to stop Mr. Young from doing so:

> The Governor and Lanny had a meeting at the Capitol sometime before – sometime during the time between when the Governor bought the motorcycle in December [1999] and when Lanny wrote this check on January 20th [2000] and informed me that he was going to be purchasing part of the Governor's motorcycle that he just purchased for $9200.
>
> *       *       *       *
>
> I made the suggestion that Lanny give me the money and let me give it to the Governor rather than Lanny giving the money directly to the Governor [because] I didn't think it was appropriate Lanny to be in a partnership with the Governor on a motorcycle given the business that Lanny had with the State and the potential for future business with the State.

*Id.* 106/23 – 107/7; 107/11-14; 107/16-20.

On June 5, 2001, Mr. Bailey wrote a check to Mr. Young for $10,503. *Nick Bailey Testimony on Direct Examination, May 2, 2006* 128/18 – 129/3; 130/13-14. He said the check "was disguised as a repayment of the $9200 plus interest." *Id.* 129/2-3. He said he wrote it because:

---

> Bureau of Investigation by Clayton "Lanny" Young and Nicholas D. Bailey, and by counsel for Nicholas D. Bailey, of information concerning federal offenses related to $9,200 that Clayton "Lanny" Young gave to DON EUGENE SIEGELMAN on January 20, 2000.

*Second Superseding Indictment* ¶¶ 37, 68. Mr. Beck was Mr. Bailey's counsel.

> I found out about the investigation that was going on with Lanny, could have involved others. We weren't sure at the time. I wanted to repay Lanny's $9200. I did it in the form of a check through a promissory note with Lanny, or an IOU. Repaid his $9200 plus interest, $10,503.

*Id.* 130/8-14.  Mr. Bailey got the $10,503 from "some of my family." *Id.* 132/15.[2]

Then, in October 2001, Mr. Bailey asked Governor Siegelman to buy his part interest (for which Mr. Bailey had not paid with his own money) or to sell Mr. Bailey the remaining interest, so that Mr. Bailey could sell the motorcycle.

> I had a discussion with the Governor and expressed interest in either the Governor buying the motorcycle from me or me buying the motorcycle from the Governor in full so if I bought it, I could sell it and be done with the motorcycle. That's what ultimately happened on October 16th, 2001.

*Nick Bailey Testimony on Direct Examination, May 2, 2006,* 139/8-14.  Mr. Bailey said this transaction also was part of the disguise:

> Q.  Mr. Bailey, if you would, just kind of put it down – put the hay down on the ground here. What was happening here? What was going on here?
>
> A.  We made a decision to finalize the agreement we made regarding the motorcycle early on. And this was the finish that – we had met at the Governor's attorney's office and with my attorney. And that's when I finished paying the Governor in full for the motorcycle to carry out the plan that we entered into probably 12 to 18 months earlier.
>
> Q.  And what was that plan?
>
> A.  To disguise the $9200 from Lanny to the Governor.

*Nick Bailey Testimony on Direct Examination*, *May 2, 2006*, 141/18 – 142/9.

Mr. Bailey's claim that the October 2001 transaction was part of the disguise does not make sense. Any "disguise" of Mr. Young's involvement was complete when Mr. Bailey wrote the June

---

[2] The June 2001 transaction formed the basis for the 18 U.S.C. § 1512(b)(3) charge against Governor Siegelman in Count Sixteen. The jury acquitted Governor Siegelman of that charge.

5, 2001 check. Mr. Bailey did not say – and the government offered no other evidence – how the October 2001 transaction added anything, or was in any way necessary, to the "disguise" created by the June 2001 transaction. All the October 2001 transaction did was allow Mr. Bailey to reap some profit – to sell the motorcycle for far more than he invested in it.

But it does not matter whether the October 2001 transaction was a disguise or not. Even if it was a disguise, standing alone, does not violate 18 U.S.C. § 1512(b)(3).

### B.  Section 1512(b)(3) Does Not Address Efforts to Disguise or Cover-Up That Do Not Involve Tampering

As originally drafted, § 1512(b)(3) might have covered a disguise or cover-up that did not involve tampering. The original version contained a catch-all provision reaching anyone who "corruptly . . . intentionally influences, obstructs, or impedes or attempts to influence, obstruct, or impede the . . . enforcement and prosecution of federal law." S. 2420, 97th Cong., 2d Sess., sec. 201(a), § 1512(a)(3), 128 Cong. Rec. S11,439 (daily ed. Sept. 14, 1982). The catch-all provision aimed to "protect[] against the rare type of conduct that is the product of the inventive criminal mind and which also thwarts justice." *S. Rep. No. 532, 97th Cong., 2d Sess. at 18, reprinted in 1982 U.S. Code Cong. & Ad. News 2515, 2524*. But the original version of § 1512(b)(3) did not pass. The version that did pass omitted the catch-all provision.[3]

The Second Circuit in *United States v. King*, 762 F.2d 232, 237-38 (2d Cir. 1985) held that

---

[3] Senator Heinz explained the omission as follows:

> Subsection (3) of section 1512(a) [the catchall provision] of the Senate passed bill, general obstruction of justice residual clause of the intimidation section, was taken out of the bill as beyond the legitimate scope of this protection measure. It also is probably duplicative of abstrusion [sic] of justice statutes already in the books.

*128 Cong. Rec. S13063 (daily ed. October 1, 1982)*.

4

the omission of the catch-all provision meant that § 1512(b)(3) did not cover general attempts to disguise or cover-up transactions to throw federal investigators off the trail:

> The government contends that, notwithstanding the actual language of § 1512, Congress meant for § 1512 to reach conduct that was not misleading to the person at whom it was directed but was intended to mislead the government. . . . We are unpersuaded.
>
> *   *   *   *   *   *   *   *   *   *
>
> [T]he original bill that led to the enactment of the Act contained, in addition to the eventually enacted enumeration of specific types of conduct to be reached, a catchall section designed to reach any person who "corruptly, by threats of force, or by any threatening letter or communication, intentionally influences, obstructs, or impedes or attempts to influence, obstruct, or impede the . . . enforcement and prosecution of federal law." S. 2420, 97th Cong., 2d Sess., sec. 201(a), § 1512(a)(3), 128 Cong. Rec. S11,439 (daily ed. Sept. 14, 1982). The Senate Judiciary Committee opined that the prevention of obstructions of justice could not be fully carried out by a simple enumeration of the commonly prosecuted obstruction offenses and stated that the residual [or catchall] section was not intended to be limited by the doctrine of ejusdem generis. S. Rep. No. 532, 97th Cong., 2d Sess. 18, *reprinted in* 1982 U.S. Code Cong. & Ad. News 2515, 2524. Thus, the Senate Report stated that the residual section was intended to reach, *inter alios*, "a person who induces another to remain silent or to give misleading information to a Federal law enforcement officer . . . irrespective of whether he employed deception, intimidation, threat, or force as to the person." *Id.* (footnote omitted). ***The residual section, however, was deleted from the Act as finally passed. We agree with the courts in United States v. Lester and United States v. Beatty that the legislative history of § 1512 does not su ggest that Congress intended that section, as enacted, to reach modes of conduct other than those enumerated there.***

762 F.2d at 237-38 (emphasis supplied).

Other courts agreed with *King*'s reasoning.[4] No court has held otherwise. Eleventh Circuit

---

4   *See, e.g., United States v. Risken*, 788 F.2d 1361, 1368 (8th Cir.) ("§ 1512 prohibits only specific types of conduct – intimidation, physical force, threats, or attempts to do so, misleading conduct, or harassment"), *cert. denied* 479 U.S. 923 (1986); *United States v. Lester*, 749 F.2d 1288, 1293 (9th Cir. 1984) ("If witness tampering shall fall exclusively under section 1512, and if the accused used a method other than one prescribed in section 1512 (intimidation, physical force, threats, harassment, or misleading conduct), that conduct would no longer be prohibited").

cases describe § 1512(b)(3) as a tampering statute,[5] as do cases in other circuits.[6]

## II. NO EVIDENCE OF TAMPERING

The § 1512(b)(3) conviction cannot stand, because the government offered no evidence that Governor Siegelman engaged in corrupt persuasion or misleading conduct toward Mr. Young, Mr. Bailey, or Mr. Beck.

### A. Corrupt Persuasion

Congress enacted the corrupt persuasion provision in 1988, reacting to another aspect of the *King* decision. As passed in 1982, § 1512(b)(3) did not mention corrupt persuasion. The relevant part read:

---

[5] *See, e.g., United States v. Ellis*, 419 F.3d 1189, 1190 (11th Cir. 2005) ("Ellis was indicted . . . on . . . one count of witness tampering, 18 U.S.C. § 1512)(b)(3)"); *United States v. Anazco*, 135 Fed. Appx. 273, 2005 WL 1389957 *1 (11th Cir. June 13, 2005) (unpublished disposition) ("Appellant was convicted in the district court . . . of witness tampering in violation of 18 U.S.C. §1512(b)(3)"); *United States v. McQueen*, 86 F.3d 180, 181 (11th Cir. 1996) ("[t]he United States appeals the sentence imposed on defendant Darrell McQueen after his conviction for tampering with a witness. 18 U.S.C. § 1512(b)(3).").

[6] *See, e.g., United States v. Serrata*, 425 F.3d 886, 892 (10th Cir. 2005) ("Count 5 . . . [c]harges each of the defendants with obstructing justice by witness tampering in violation of 18 U.S.C. § 1512(b)(3)"); *United States v. Bailey*, 405 F.3d 102, 106 (1st Cir. 2005) ("Bailey was also charged with . . . conspiring to obstruct and obstructing a federal criminal investigation, *see* 18 U.S.C. § 1512(b)(3) (the witness tampering statute)"); *United States v. Soler*, 124 Fed. Appx. 62, 63, 2005 WL 545433 *1 (2d Cir. March 4, 2005) ("The defendant-appellant, Isais Soler, pleaded guilty to . . . one count of conspiring to engage in witness tampering in violation of 18 U.S.C. § 1512(b)(3)") (unpublished disposition); *United States v. Bost*, 105 Fed. Appx. 361, 362, 2004 WL 1588180 *1 (3d Cir. July 16, 2004) (unpublished disposition); *United States v. Bryant*, 93 Fed. Appx. 573, 574, 2004 WL 728385 *1 (4th Cir. April 6, 2004) ("Montiqua Jarvell Bryant was convicted of witness tampering in violation of 18 U.S.C. § 1512(b)(3)") (unpublished disposition); *United States v. Massey*, 2003 WL 1720064 *3 (2d Cir. April 1, 2003) (referring to 18 U.S.C. § 1512(b)(3) as "the witness tampering statute") (unpublished disposition).

> Whoever knowingly . . . engages in misleading conduct toward another person, with intent to –
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . .
>
> shall be fined under this title or imprisoned . . . or both.

The statute now reads:

> Whoever knowingly . . . ***corruptly persuades another person, or attempts to do so,*** or engages in misleading conduct toward another person, with intent to –
>
> &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;
>
> (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense . . . .
>
> shall be fined under this title or imprisoned . . . or both.

(Emphasis supplied).

Congress made the change in the Anti-Drug Abuse Act of 1988, Pub. L. No. 100-690, 102 Stat. 4181. *King* held that the original version of § 1512(b)(3) did not prohibit a straightforward request to a witness to lie in exchange for money, because nothing about the request was misleading. 762 F.2d at 237-38. Noting that "by its terms, § 1512 does not purport to reach all forms of tampering with a witness, but only tampering by specified means, *i.e.*, by . . . engaging in 'misleading conduct toward another person,'" *id.* at 237,[7] *King* held that § 1512(b)(3) did not cover

---

[7] The Second Circuit went on to say:

> No rational juror could conclude from the [relevant] conversations – in which King urged Orgovan that the two should stick together, that Orgovan should not implicate King but only Dennis, and that Orgovan's silence would be rewarded financially – that Orgovan was in any way misled. [S]ince the evidence failed totally to support any inference that Orgovan was, or even could have been, misled, the conduct proven by the government was not within the terms of § 1512.
>
> 762 F.2d at 237.

7

a "nonmisleading, nonthreatening, nonintimidating attempt to have a person give false information to the government." *Id.* at 238.

That holding left a gap in Second Circuit obstruction jurisprudence. *United States v. Hernandez*, 730 F.2d 895, 898 (2d Cir. 1984) had held that, after the enactment of § 1512, conduct related to witnesses no longer was punishable under § 1503.[8] While there was some debate among the circuits on this point,[9] *King* and *Hernandez* together meant that, at least in the Second Circuit, no federal statute punished non-misleading, non-coercive influence on a witness. Congress amended § 1512(b)(3) to remedy the uncertainty.

Senator Biden explained in his floor statement:

[The amendment to § 1512(b)(3) is] intended, therefore, merely to include in section 1512 the same protection of witnesses from non-coercive influence that was (and is) found in section 1503. It would permit prosecution of such conduct in the Second Circuit, where it is now not permitted, and would allow such prosecution in other circuits to be brought under section 1512 rather than under the catcha-all provision of section 1503.

---

[8] Section 1512(b)(3) was part of the reorganization of the federal obstruction of justice statutes in the Victim and Witness Protection Act of 1982. *Pub. L. No. 97-291, 96 Stat. 1248.* Before 1982, former 18 U.S.C. § 1503 broadly forbade "corrupt" attempts to "influence, obstruct, or impede the due administration of justice," including by tampering (in virtually any way) with witnesses. *See, e.g., United States v. King,* 762 F.2d at 237-38; *United States v. Ladum,* 141 F.3d 1328, 1337 (9th Cir. 1998). The Victim and Witness Protection Act removed all express references to witnesses in former § 1503 and enacted § 1512, which was addressed specifically to the influencing of witnesses, victims, and informants. *Id.*

[9] The Ninth Circuit disagreed with *Hernandez,* holding that, while non-coercive influence on a witness was not punishable under § 1512(b)(3), it did fall within the catch-all provision of 18 U.S.C. § 1503, which prohibited "corruptly endeavoring" to impede the due administration of justice. *Lester*, 749 F.2d at 1292-93 (9th Cir. 1984). The Eighth Circuit agreed with the Ninth Circuit. *Risken*, 788 F.2d at 1368 ("[w]e agree [with *Lester*] and hold that witness tampering is punishable under § 1503").

*134 Cong. Rec. S17,369 (1988)* (statement of Senator Biden).[10]

The circuits agree that asking a witness to lie to investigators constitutes corrupt persuasion.[11] The Eleventh and Second Circuits hold that asking a witness to remain silent during an investigation also is corrupt persuasion.[12] The Third Circuit and at least one district court disagree, holding that the defendants must ask the person to do more than exercise a constitutional right to remain silent – he must ask the person to lie or otherwise to do something illegal to hinder the investigation.[13]

---

[10] *See also, e.g., United States v. Khatami,* 280 F.3d 907, 912 (9th Cir. 2001) (the point of the new § 1512(b)(3) was "to prohibit attempts to 'corruptly persuade' a prospective witness to engage in certain obstructive activities").

[11] *See, e.g., United States v. Pennington,* 168 F.3d 1060, 1066 (8th Cir. 1999) ("the ambiguous term 'corruptly persuades' includes 'attempting to *persuade* someone to provide *false* information to federal investigators'") (citation omitted); *United States v. Morrison,* 98 F.3d 619, 629-30 (D.C. Cir. 1996) ("[the defendant] tried to 'corrupt' [the witness] by exhorting her to violate her legal duty to testify truthfully in court"); *United States v. Thompson,* 76 F.3d 442, 452-53 (2d Cir. 1996) (defendant guilty of corrupt persuasion because he asked a person, who had bought marijuana from him 20 times, "[b]asically just to tell [the grand jury] I purchased marijuana from him a couple of times and that was it, just don't tell them anything else other than that").

[12] In *United States v. Shotts,* 145 F.3d 1289, 1299-1301 (11th Cir. 1998), *cert. denied* 525 U.S. 1177 (1999), a lawyer under investigation by the FBI told his secretary to "just not say anything and I wasn't going to be bothered." *Shotts*, 145 F.3d at 1301. The Eleventh Circuit held that this evidence, though "not overwhelming," permitted an inference "that Shotts was attempting with an improper motive to persuade [the secretary] not to talk to the FBI," and thus supported a charge under § 1512(b)(3). *Id.* The Second Circuit cases include *United States v. Gotti,* __ F.3d __, 2006 WL 1903057 *44 (2d Cir. July 12, 2006) ("[w]e have also specifically stated that the Obstruction of Justice Act can be violated by corruptly influencing a witness to invoke the Fifth Amendment privilege in his grand jury testimony") (citing *United States v. Cioffi*, 493 F.2d 1111, 1118 (2d Cir. 1974)).

[13] *See, e.g., United States v. Vega,* 2006 WL 1674155 *5 (3d Cir. June 19, 2006): *United States v. Farrell,* 126 F.3d 484, 487-90 (3d Cir. 1997); *United States v. Makham,* 2005 WL 3533263 *7-8 (D.Or. December 23, 2005).

That circuit split does not matter in this case. The point here is that all of the cases hold that "corrupt persuasion" requires that the defendant ask somebody to do something. The defendant must exert some sort of "non-coercive influence," to use Senator Biden's term. The Ninth Circuit in *United States v. Khatami,* 280 F.3d 907, 911 (9th Cir. 2001) explained:

> The verb "persuade" has many definitions, but within the context of § 1512(b)(3) can be understood to mean "to coax," *Oxford English Dictionary* (2d ed. 1989); "to plead with," *Merriam Webster's Collegiate Dictionary* at 868; or "[t]o induce one by argument, entreaty, or expostulation into a determination, decision, conclusion, belief, or the like; to win over by an appeal to one's reason and feelings, as into doing or believing something." *Black's Law Dictionary* at 1144-45.

Mr. Bailey was the government's only witness on Count Seventeen. Nothing in his testimony, set forth above, indicates that Governor Siegelman asked him, Mr. Young, or Mr. Beck to do anything – much less to lie, remain silent, or do anything illegal to hinder an investigation.

### B. Misleading Conduct

*United States v. Veal,* 153 F.3d 1233 (11th Cir. 1998), *cert. denied*, 526 U.S. 1147 (1999) and *United States v. Ronda,* 2006 WL 1914248 (11th Cir. July 13, 2006) involved investigations into civil rights violations by Miami police officers. In *Veal,* "four Miami police officers . . .beat a suspect to death and then lied to state investigators about the beating." *Ronda,* 2006 WL 1914248 * 8. Specifically, the *Veal* defendants "used deception to thwart the investigation into [the] death by creating false and misleading information, which they related to state investigators with the knowledge that this information would be relayed to and relied on by other investigators." 153 F.3d at 1247. Additionally:

> To ensure that they would be exonerated of any wrongdoing in [the] death, they further used police officers and personnel, such as the technician photographer . . . , who they either knew would be or likely would be witnesses in the . . . investigation, as conduits to create false and misleading evidence about the events, resulting in [the] death. *Cf. United States v. King,* 762 F.2d 232 (2d Cir. 1985)

>(observing that § 1512(b)(3) should not have been charged because the alleged misleading conduct, outright subornation of perjury, did not involve any deceptive or misleading conduct). FBI agents who were investigating the possible commission of a civil rights crime were among the investigators who learned of and relied upon this contrived information.

*Id.*

The *Ronda* defendants shot drug suspects on various occasions. They then planted guns at the scenes and lied under oath to police department investigators about the shootings to make them appear justified. 2006 WL 1914248 *1. As in *Veal,* the *Ronda* defendants knew that the misleading information they gave the police department investigators "not only [was] 'likely' to be transferred to federal investigators, it in fact was transferred to federal investigators." *Id.* * 9.

Coupled with the Second Circuit's decision in *King*, *Veal* and *Ronda* make clear that a defendant engages in misleading conduct if he does something to deceive someone who speaks – or whom he believes will speak – to authorities who turn out to be federal. The *King* defendant did not deceive anyone and did not violate § 1512(b)(3). The *Veal* and *Ronda* defendants deceived numerous people who spoke to federal authorities, and therefore did violate the statute.

Nothing in Mr. Bailey's testimony indicates that Governor Siegelman deceived anyone in the October 16, 2001 transaction. Mr. Bailey's testimony did not mention Mr. Young at all. Governor Siegelman did not deceive Mr. Bailey, because the transaction was Mr. Bailey's idea. Governor Siegelman did not deceive Mr. Beck, who simply was one of the lawyers present when the transaction closed.

Mr. Bailey testified that he did not tell Mr. Beck about the "disguise," and that he did not see

Governor Siegelman do so,[14] but that is not evidence that Governor Siegelman deceived Mr. Beck. In *Veal* and *Ronda*, the defendants lied and fabricated evidence. Mr. Bailey did not say that Governor Siegelman lied, and nothing about the October 16, 2001 transaction was contrived. Mr. Bailey actually paid Governor Siegelman the money and actually purchased the motorcycle. There probably are numerous people that Mr. Bailey did not tell about the disguise (for example, the person to whom he sold the motorcycle and his family members from whom he borrowed the money). To hold that Mr. Bailey's testimony proves a violation, the Court would have to impose upon a defendant a duty to volunteer – to anyone with whom he has contact and whom he believes will speak to federal authorities – that he has committed a crime. That would not be consistent with the Fifth Amendment.

---

[14]  Mr. Bailey's testimony specifically was:

Q. Did you tell the lawyer – who were the lawyers [present for the October 16, 2001 transaction]?

A. My attorney was George Beck, and the Governor's attorney was Bobby Segall.

Q. Did you tell either of these lawyers about this plan to disguise this original $9200 when you guys exchanged these checks that day at the lawyers'?

A. No.

Q. Why didn't you tell the lawyers about it?

A. I didn't see it was necessary.

Q. Did the Governor tell the lawyers about it?

A. Not that I'm aware of.

Q. He didn't do it in your presence?

A. No.

*Nick Bailey Testimony on Direct Examination, May 2, 2006* 142/16 – 143/7.

### III.  ADDITIONAL GROUNDS FOR ACQUITTAL

In *United States v. Guadalupe,* 402 F.3d 409, 412 (3d Cir. 2005), the Third Circuit held that the government must prove that the defendant believed the person he tampered with "might communicate with federal authorities."  402 F.3d at 412.  *Veal* and *Ronda* imposed a similar requirement – that it be "likely" that the person misled would transfer the information to a federal agent.  *Veal*, 153 F.3d at 1251; *Ronda*, 2006 WL 1914248 * 8-10.

There is no such evidence here, especially with respect to Mr. Beck.  The transaction was in October 2001.  Mr. Bailey did not give his first interview to federal investigators until December 21, 2001.  *Nick Bailey Testimony on Cross-Examination, May 3, 2006* 29/9-13 ("Q. . . . . Will you agree with me, Mr. Bailey, that when you first met with the Government on December 21, 2001 – do you remember that meeting?  A.  I do.").  There is no evidence that Governor Siegelman had any idea – in October 2001 – that Mr. Beck might serve as Mr. Bailey's counsel during the investigation.

More fundamentally, Mr. Beck was just the lawyer.  There is no evidence that Governor Siegelman believed in October 2001 that Mr. Beck would communicate substantively with federal authorities in the investigation.  In fact, there is no evidence that Mr. Beck had any substantive communication with them.  He attended some of Mr. Bailey's interviews, but that is all.

### IV.  CONCLUSION

For at least the foregoing reasons, Governor Siegelman respectfully requests a judgment of acquittal pursuant to Fed. R. Crim. P.29 on Count Seventeen.

    Respectfully submitted,

    s/Vince F. Kilborn, III
    Vince F. Kilborn, III

        Kilborn, Roebuck & McDonald
        P.O. Box 66710
        Mobile, Alabama 36606
        Phone: (251) 479-9010
        Fax:    (251) 479-6747
        E-mail: vfk@krmlaw.com


        s/David A. McDonald
        David A. McDonald
        Kilborn, Roebuck & McDonald
        P.O. Box 832
        Mobile, Alabama 36602
        Phone: (251) 434-0045
        Fax:    (251) 434-0047
        E-mail: dam@krmlaw.com


        s/ Professor G. Robert Blakey
        Professor G. Robert Blakey
        D.C. Bar #424844
        NOTRE DAME LAW SCHOOL
        South Bend, Indiana
        574-681-6626
        gblakey@nd.edu


        s/Hiram Eastland
        Hiram Eastland, MS. BAR #5294
        EASTLAND LAW OFFICES
        107 Grand Boulevard
        Greenwood, Mississippi 38930
        662-897-0495
        662-453-2808 (fax)
        eastlandlaw@bellsouth.net

## **CERTIFICATE OF SERVICE**

       I certify that on August 4, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.


                                        s/David A. McDonald
                                        David A. McDonald
                                        Kilborn, Roebuck & McDonald
                                        P.O. Box 832
                                        Mobile, Alabama 36602
                                        Phone: (251) 434-0045
                                        Fax:    (251) 434-0047
                                        E-mail: dam@krmlaw.com