IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Case No. 2:05-cr-119-MEF |
| | * | |
| DON EUGENE SIEGELMAN | * | |

## GOVERNOR SIEGELMAN'S REPLY TO UNITED STATES' RESPONSE TO DEFENDANTS' MOTIONS FOR JUDGEMENT OF ACQUITTAL PURSUANT TO RULE 29 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

COMES NOW Defendant Don Eugene Siegelman, by and through the undersigned counsel, and files this reply to the United States' response to his motion for judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure.[1]

## PRELIMINARY STATEMENT

This case involves very fundamental differences between the Defendants and the government as to the appropriate application of criminal law when individuals and public officials are engaged in traditional political conduct.

In taking a very narrow, myopic view of the Supreme Court's and the Circuit Courts' repeated expression of a profound and deeply felt need to exercise restraint in the area of the law where politics, political fundraising, political patronage[2] and criminal law collide, the

---

[1]   Governor Siegelman respectfully submits that oral argument on Defendants' Rule 29 motions for judgment of acquittal is in the interest of justice and in the interest of a full and fair consideration of the important issues of law before the Court.

   Additionally, Governor Siegelman hereby incorporates by reference all previous arguments by the Defendants in the previous Rule 29 hearings, as well as all arguments in Mr. Richard M. Scrushy's initial post-trial Rule 29 motion for judgment of acquittal and in Mr. Scrushy's reply to the United States' response to his post-trial Rule 29 motion for judgment of acquittal.

[2]   "It would be naïve to suppose that contributors do not expect some benefit . . . for their contributions." *United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993); Similarly, "[t]he practice of . . . cultivat[ing] business or political relationships is long standing and pervasive." *United States v. Sawyer*, 85 F.3d 713, 741 (1st Cir. 1996) ("*Sawyer I*").

government prosecutors in this case are stretching thoughtfully balanced[3] and well-established case law and legal standards beyond recognition.

The Supreme Court has repeatedly reasoned that the unrealistic, untethered, overly aggressive prosecution of the type political conduct involved in this case "would open to prosecution not only conduct that has long been thought to be well within the law"[4], but would leave "nothing but the Government's discretion" to "prevent" citizens such as Governor Siegelman and Mr. Scrushy "from being prosecuted."[5]  As recognized by the Eleventh Circuit: "A contrary conclusion, the [Supreme] Court reasoned, would have the effect of criminalizing conduct traditionally within the law and unavoidable under this country's present system of elected politics."[6]

This case is not the first case in this area of the law in which the government has taken the wrong, overreaching prosecutorial position on the law; this case is not the first case in this area of the law in which the government has attempted to take the courts in the wrong direction; and this case will not be the first case in this area of the law in which the government has been and will be corrected by the court with the government conviction being resolved by a judgment of acquittal or reversal.

---

[3] In achieving the appropriate balance and restraint in this area of the law, the courts require the government to prove an "*explicit* quid pro quo", a "*specific* quid pro quo", to sustain a conviction against public officials involving accusations, for example, that political contributions constitute bribery, "bribery-type honest services" charges, or extortion. *United States v. Allen*, 10 F.3d at 411 (7th Cir. 1993) (recognizing requisite "*explicit* quid pro quo" proof for bribery-type charges); *United States v. Martinez*, 14 F.3d 543, n.5 at 553 (11th Cir. 1994) (recognizing requisite "*explicit* quid pro quo" proof for bribery-type charges); *Sawyer I*, 85 F.3d at 730 (recognizing requisite "*specific* quid pro quo" proof for "bribery-like" honest services charges); *United States v. Sawyer*, 239 F.3d 31, 41 (1st Cir. 2001) ("*Sawyer II*") (recognizing requisite "*specific* quid pro quo" proof for "bribery-like" honest services charges); *United States v. Warner*, 2005 WL 2367769, *3, *5 (N.D. Ill. Sept. 23, 2005) (recognizing requisite "*explicit* quid pro quo" proof for bribery based honest services charges); *United States v. White*, 2004 U.S. Dis. LEXIS 22886, *15 (E.D. Pa. Oct. 29, 2004) (recognizing requisite quid pro quo proof for bribery-type honest services charges); *McCormick v. United States*, 500 U.S. 257, 272 (1991) (recognizing extortion requisite "*explicit* quid pro quo" proof for extortion charges).

[4] *McCormick*, 500 U.S. at 272.

[5] *United States v. Sun-Diamond Growers*, 526 U.S. 398, 408 (1999).

[6] *Martinez*, 14 F.3d at 553 (citing *McCormick*, 500 U.S. at 272).

"[T]he government argu[ed]" in the Eleventh Circuit *Martinez* case that the Supreme Court case law in this area of the law "does not require the government to prove a *quid pro quo*"[7], and the Eleventh Circuit reversed the lower court decision, recognizing that the government is required to prove an "*explicit quid pro quo*" where political contributions are involved, as well as a quid pro quo where "non-campaign contribution[s]" are involved.[8]

The government, in *United States v. Davis*, 967 F.2d 516, 520-22 (11th Cir. 1992) ("*Davis I*"), argued that it is not required to prove an "explicit" or "specific quid pro quo" where political contributions are involved. The government in *Davis I* argued that the fact the jury was instructed there was "misuse of office 'by taking or offering to take or agreeing[9] to take or withhold official action . . . . [was] near enough to the 'explicit' promise or undertaking" required by the explicit quid pro quo requisite of *McCormick*. *Id*. at 522. The Eleventh Circuit, in *United States v. Davis*, 30 F.3d 108 (11th Cir. 1994), reversed the *Davis I* panel, holding that "the government must prove a *specific quid pro quo*" and that the jury must be specifically charged "as to the necessity of finding an *explicit promise*", "a *specific quid pro quo*." *Id*. (emphasis added).

The government, in *McCormick* agreed that "proof of a *quid pro quo* would be essential" "if the payments to McCormick were campaign contributions." "The Government nevertheless insist[ed] that a properly instructed jury . . . found that the payment at issue was not a campaign contribution at all and that the evidence amply supports this finding." The Supreme Court held that the government's argument was "mere speculation." The Supreme Court held that to sustain

---

[7] Emphasis added by the Eleventh Circuit.

[8] *Martinez*, 14 F.3d at 553. ("A contrary conclusion, the [Supreme] Court reasoned, would have the effect of criminalizing conduct traditionally within the law and unavoidable under this country's present system of elected politics." *Id*.).

[9] As similar to the erroneous jury instruction provided regarding the Count Three Section 666 charge that did not require an *explicit* quid pro quo.

the extortion conviction involving campaign contributions the government was required to prove an "*explicit*" quid pro quo and reversed the lower court decision for failing to provide the appropriate explicit quid pro quo jury instruction.[10]

The government in *United States v. Sun-Diamond*, 526 U.S. 398, argued that it was not required to prove that an illegal gratuity under the federal bribery and gratuity statutes was connected to a specific official act by the public official. The Supreme Court noted: "The Government insists that its interpretation is the only one that gives effect to all of the statutory language." *Id*. at 408. The Supreme Court held, however, that the government's argument "would criminalize, for example, token gifts to the President based on his official position and not linked to any identifiable act . . . ." *Id*. at 407. The Supreme Court thus reversed the lower court decision, holding that the government's position would leave "nothing but the government's discretion prevent[ing] [public officials] . . . from being prosecuted." *Id*. at 408.

As discussed in more detail below, when confronted with the above well established case law in the previous Rule 29 hearings in this case, as well as in responding to Governor Siegelman's recent briefing of these critical issues, the government has largely ignored the applicability of such case law to this case. Indeed, even when the government selectively chose in its response brief to engage these issues, the government's arguments and positions regarding the case law were specious at best; the government cited cases that don't specifically apply; and the government's responses have often been downright misleading. Similarly, when confronted with other arguments such as Governor Siegelman's First Amendment argument and *strictissimi juris* standard of review argument, both of which involve legal principles that are uniquely

---

[10] *McCormick*, 500 U.S. at 272-74.

applicable to this case,[11] the government largely chose to ignore such arguments in its response

brief, rather than engage in a meaningful response that could be of assistance to the Court in

resolving these issues that are so critically important to the Defendants—and critically important

to affording appropriate restraint to applying criminal laws to the democratic process and

traditional political conduct in this area of the law.  Likewise, as discussed in more detail below,

the government largely ignored and did not provide applicable substantive responses to other

issues and arguments critically important to Governor Siegelman's defense, such as Governor

Siegelman's Section 666 federal bribery statute of limitations defense[12] and other compelling

arguments[13] raised regarding the Section 666 federal bribery conviction.

     In all due respect, in light of the government's cavalier and recalcitrant attitude in the

face of very profound, deeply felt and considerable Supreme Court and Circuit Court case law

calling for prosecutorial restraint in this area of the law, the words of the late Justice William O.

Douglas most definitely come to mind.  Speaking in his dissent in *Donnely v. DeChristoforo*, 416

U.S. 637, 648-49 (1974), Justice Douglas stated:

> The *function of the prosecutor under the federal constitution* is not
> to tack as many skins of victims as possible to the wall.  His
> function is to *vindicate the right of the people **as expressed in the
> laws*** *and give those accused of crime a fair trial*. (emphasis
> added).

     Justice Douglas further quoted the Supreme Court opinion in *Berger v. United States*, 295

U.S. 78, 88 (1935) as follows:

---

[11] Even *assuming arguendo* this is a case of first instance on these particular issues and there is, therefore, no all-fours precedent for these legal principles as there plainly is for the cases previously discussed, it is clear that these legal principles are consistent with the Supreme Court and Circuit Court case law in this area of the law in which the courts have explicitly recognized strict restraint.

[12] Indeed, for example, the best the government could come up with regarding Governor Siegelman's Section 666 federal bribery statute of limitations defense was that the defense was *waived*.  Yet, significantly, as discussed below the very case cited by the government arguing that the statute of limitations defense was waived in fact supports Governor Siegelman's defense that it *was not waived*.

[13] Including but not limited to the "not a thing of value" argument and the "not corruptly" argument asserted in Governor Siegelman's Supplemental Brief in support of his Rule 29 Motion for Judgment of Acquittal.

> **The United States Attorney is** the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that *justice[14]* shall be done.  As such, he *is **in a peculiar and very definite sense a servant of the law**, the two-fold aim of which is that guilt shall not escape or innocence suffer.  He may prosecute with earnestness and vigor—indeed, he should do so.  But, *while he may strike hard blows, he is not at liberty to strike foul ones*.  **It is as much his duty to refrain from** *improper methods calculated to produce **a wrongful conviction** as it is to use every legitimate means to bring about a just one*. (emphasis added).

In this spirit, Governor Siegelman is entitled, therefore, to a full and fair independent review[15] of his conviction based upon a sober and thoughtful application of the law as it is, rather than the law as government prosecutors have often tried for it to be and lost—but begrudgingly, would obviously still like for it to be.

Similarly, as applicable to the honest services case law[16] about to be discussed below along with the other two counts of conviction, the Second Circuit in *United States v. Rybicki*, 354 F.3d 137, 138 (2nd Cir. 2003) found: "*there is no reason to think Congress sought to grant carte blanche to federal prosecutors*, judges and juries *to define 'honest services' from case to case for themselves*." (emphasis added).

As discussed below, and as previously discussed in Governor Siegelman's supplemental brief in support of his Rule 29 motion for judgment of acquittal, Governor Siegelman respectfully submits that **a thoughtful and independent review of "the real applicable law" in**

---

[14] It should never be lost on anyone that as long as the American flag is flying the role and vigilant goal of this esteemed federal wing of the executive branch of government is that it is to be the Department of Justice—not the Department of Injustice.

[15] "[A] criminal defendant . . . is afforded protection against . . . error by the *independent review* of the sufficiency of the evidence undertaken by the trial and appellate courts." *United States v. Powell*, 469 U.S. 57, 60 (1984). "*A question of law is* . . . presented . . . to determine whether there was . . . evidence . . . before the jury . . . to sustain the verdict." (emphasis added).

[16] Affecting five out of seven of the conviction counts in this case.

**this case and "the insufficiency of the evidence under that law"** presented at the time the government rested its case, as well as at the time the case was presented to the jury, plainly reveals the Court should grant Defendant's motion and enter a judgment of acquittal as to Counts Three, Five through Nine and Count Seventeen.

## STANDARD OF REVIEW

The government failed to address or counter Governor Siegelman's argument that the customary standard of review, in the context of campaign contributions, is insufficient to adequately protect the important First Amendment issues involved in this case. The *United States v. Lyons* and *United States v. Forszt* cases cited by the government for the principle that the doctrine of *strictisimi juris* is "of no moment since the standard of review is the same regardless of the nature and substance of the evidence presented"[17] do not counter and are not responsive to Governor Siegelman's argument that the doctrine of *strictisimi juris* should apply in this area of the law in which the Supreme Court and Circuit Courts have expressed the profound need for restraint. Furthermore, First Amendment concerns in this area of the law clearly call for restraint.

## FIRST AMENDMENT CONTEXT

The government failed to address or counter Governor Siegelman's argument that this prosecution raises delicate and profound First Amendment issues that cannot be ignored. By way of emphasis here, Governor Siegelman respectfully submits that, contrary to the government's apparent lack of concern for First Amendment rights in this very sensitive area of the law, the Court should thoughtfully consider the applicability of the First Amendment concerns to this case, as well as the case law and arguments presented by Governor Siegelman

---

[17] Government's Response at 2.

that were in no way countered by the government in its memorandum in response to Governor

Siegelman's Rule 29 Motion for Judgment of Acquittal.

## ARGUMENT

**I.    Governor Siegelman Has Met His Burden Of Demonstrating That The Evidence Was Insufficient To Sustain His Conviction.**

Governor Siegelman has carried his burden of showing that the evidence was insufficient

to sustain his convictions on Counts Three, Five, Six through Nine, and Seventeen for allegedly

violating 18 U.S.C. §§ 371, 1341, and 1346, 666(a)(2), and 1512(b)(3).

As discussed in more detail below, the evidence presented at trial was indisputably

insufficient to establish Governor Siegelman's guilt for these crimes.[18]

As discussed below, Count Three and Counts Five through Nine must all be

independently reviewed pursuant to a Rule 29 sufficiency of the evidence standard applying the

heightened quid pro quo requisite of proof that requires an *explicit* agreement, and *explicit*

promise, and *explicit quid pro quo—a specific quid pro quo*, an express agreement. Indeed, the

government conceded at trial that it must prove an *explicit*, *expressed* agreement that if Mr.

Scrushy paid Governor Siegelman $500,000.00 Governor Siegelman would appoint Mr. Scrushy

to the CON Board: "if its campaign money, you have to find there was an *expressed* what they

call *quid pro quo*, an *expressed agreement*." Opening Statement by Mr. Feaga, May 1, 2006 69-

3-18. (emphasis added). The government further promised that "Mr. Bailey . . . [is] going to

come in and . . . tell you there was an *expressed agreement*." *Id.*

---

[18] Governor Siegelman would note that the government in its response brief objected to the defendants quoting and citing extensively to the unofficial trial transcripts in these proceedings. Governor Siegelman respectfully submits that for purposes of the Court's consideration of the Defendants' Rule 29 motions, the Defendants' references to the unofficial transcripts are clearly more reliable than the Government's reference to testimony from the government attorneys' memory based on their "information and belief."

As discussed below, there is clearly insufficient evidence in the record to establish an *explicit quid pro quo*, an *expressed agreement*.  Accordingly, the Court must grant Governor Siegelman's Motion for Judgment of Acquittal on Count Three (Section 666 federal bribery), Count Five (conspiracy to commit honest services fraud), and Counts Six through Nine (honest services fraud).

Furthermore, the government failed to meet its burden of proving beyond a reasonable doubt that the Section 666 federal bribery charge involved a "thing of value" under 18 U.S.C. § 666(b)(2), and even *assuming arguendo* the alleged agreement between Governor Siegelman and Mr. Scrushy was an expressed agreement it did not constitute a "corrupt" agreement under Section 666.  Likewise, the Court must in any event grant judgment of acquittal on the Section 666 charge since the charge was barred by the statute of limitations.

Finally, as discussed below, the government failed to meet its burden of proving beyond a reasonable doubt that Governor Siegelman committed a violation under 18 U.S.C. § 1512(b)(3). Indeed, as discussed below, the government's theory of law in asserting the alleged Count Seventeen Sections 1512(b)(3) violation is without merit and the case law the government cites in support for its position is plainly and indisputably distinguishable.

**A.     Governor Siegelman Has Carried His Burden Of Showing That The Evidence Was Insufficient To Sustain His Conviction On Counts Three Through Nine**

Governor Siegelman has clearly shown that the evidence at trial was insufficient to sustain his honest services conviction as well as his federal bribery conviction under Counts Three through Nine.

The honest services charges as well as the federal bribery charges do in fact and law require that the government prove an *explicit quid pro quo*—a *specific quid pro quo* in order to

sustain Governor Siegelman's conviction on Count Three (federal bribery), Count Five (conspiracy to commit honest services fraud), and Counts Six through Nine (honest services fraud).

As discussed below, no rational juror hearing the evidence presented at trial could conclude beyond a reasonable doubt that Governor Siegelman had an *explicit*, *expressed agreement*, *specific quid pro quo* with Mr. Scrushy that he would provide HealthSouth with membership owned, representation at, and influence over the CON Board in exchange for fraudulent, corrupt payments of $500,000.00. Accordingly, this Court should grant Governor Siegelman's Rule 29 Motion for Judgment of Acquittal on Count Three, Count Five, and Counts Six through Nine.

1.      **The Honest Services Mail Fraud Charges Require Proof Of An Explicit Quid Pro Quo—A Specific Quid Pro Quo**

In a desperate attempt to circumvent its burden of proving an "explicit", "specific quid pro quo" beyond a reasonable doubt the government repeatedly prefaces essentially all of its arguments by speciously portending that by raising the requisite proof of an explicit, specific quid pro quo Governor Siegelman is "graft[ing] additional elements onto the relevant statutes",[19] "graft[ing] a Hobbs Act quid pro quo element onto every statute charged in the indictment",[20] "urging this Court to import the specialized jurisprudence of the Hobbs Act",[21] "ask[ing] this Court to re-write Section 666 to require a Hobbs Act quid pro quo",[22] "attempt[ing] to bootstrap to *McCormick* and its progeny",[23] "lead[ing] this Court to extend the specific interpretation of the Hobbs Act in *McCormick* to the wholly different statutory context of honest services mail

---

[19] Government's Response at 1.

[20] *Id*. at 6.

[21] *Id*. at 7.

[22] *Id*. at 8.

[23] *Id*.

fraud",[24] "transplant[ing] onto Sections 1341 and 1346" "a Hobbs Act formulation of a quid pro quo element",[25] "artificially narrow[ing] Section 1346 to the confines of one element of the Hobbs Act",[26] and "*urg[ing] the Court to engraft the **strictest** possible Hobbs Act formulation of a quid pro quo element, the* **'explicit' or 'specific' quid pro quo element** *sometimes required for Hobbs Act cases*".[27]

The government claims there is an "**absence of any precedent on point**"[28] wherein the courts recognize that bribery type honest services charges require the government to prove an "**explicit**" or **"specific" quid pro quo** to sustain an honest services mail fraud conviction.

Much to the contrary, the government's own case law cited to the Court throughout the Rule 29 hearings and cited to the Court during the jury instructions conference specifically recognizes the necessity of requisite **"specific quid pro quo"** proof for **"bribery-like"** "**honest services charges."**  The First Circuit *Sawyer I* case the government cited to the Court to mislead the court into not requiring a quid pro quo for the honest services charges, much less an explicit, specific quid pro quo, specifically recognizes a "specific quid pro quo"[29] "bribery-like"[30] "honest services"[31] charge as one of the types of honest services charges.

Indeed, it is most interesting to note that once Governor Siegelman brought this salient point to the government's attention in his recent Rule 29 Brief for Judgment of Acquittal, the government in deceptively arguing in its Response that there was "no precedent"[32] on point for

---

[24] *Id*. at 21.

[25] *Id*. at 26.

[26] *Id*. at 24.

[27] *Id*. at 28.

[28] *Id*. at 24.

[29] *Sawyer I*, 85 F.3d at 730.

[30] *Id*. at 724, 730, 741.

[31] *Id*.

[32] Government's Response at 24.

requiring an "explicit or specific quid pro quo"[33] for bribery-type honest services charges did not cite *Sawyer I* one time—even though the government had previously cited *Sawyer I* to the Court numerous times.

Furthermore, Governor Siegelman would note that the Eleventh Circuit uses the terms "explicit quid pro quo" and "specific quid pro quo" interchangeably. *Davis II*, 30 F.3d at 108. (Eleventh Circuit granted "rehearing on a single issue whether . . . the government must prove that the defendant *explicitly* promised to take or refrain from some action in consideration of the allegedly illegal payment received; *in other words*, whether the government must prove a *specific quid pro quo* and, more particularly, whether the jury must be charged on the *specific-quid pro quo element*." *Id.*).

Additionally, Governor Siegelman would note that while the government did cite the First Circuit *Sawyer II*[34] and *Woodward*[35] cases for the limited point that the First Circuit has followed the Eleventh Circuit *Lopez-Lukis*[36] case, the point actually supports Governor Siegelman's position since the *Lopez-Lukis* case cite simply recognizes that bribery-type honest services charges is one of the primary types of honest services charges.[37] Moreover, although the government carefully chose not to cite the *Sawyer I* case as previously described, the *Sawyer II* case and *Woodward* cases themselves also further recognize and quote the *Sawyer I* concept that "bribery-like" honest services charges require a "specific quid pro quo." *See, e.g., Sawyer II,* 239 F.3d at 41.

---

[33] *Id*. at 28.

[34] Government Response at 24. (citing *Sawyer II*, 239 F.3d at 39).

[35] *Id.* (citing *Woodward*, 149 F.3d at 46).

[36] *Id.* (citing *United States v. Lopez-Lukis*, 102 F.3d 1164, 1169 (11th Cir. 1997).

[37] Indeed, the Eleventh Circuit recognizes bribery-type honest services charges to be the "paradigm case" for honest services charges. *United States v. deVegter*, 198 F.3d 1324, 1327 (11th Cir. 1999) ("[T]his court has noted that . . . the paradigm case of honest services fraud is the bribery of a public official . . . .").

Indeed, the *Sawyer II* case even further emphasizes the fact that *Sawyer I* and *Woodward* plainly recognize bribery-type specific quid pro quo honest services type charges and the fact that *Sawyer I* simply expanded the types of honest services charges to also include gratuities-type honest services charges that do not require a quid pro quo.[38]  *Sawyer II*, 239 F.3d at 40.  (quoting *Sawyer I*, *Sawyer II* recognizes, for example, that "the cases in which the deprivation of an official's honest services is found typically involve either bribery or failure to disclose a conflict of interest").  Upon recognizing the *Sawyer I* bribery-type honest service charge in the previous quote, *Sawyer II* dropped a footnote that further emphasizes that *Sawyer I* quid pro quo bribery-type honest services charges was not replaced by the recognition of gratuities-type honest services charges.[39]

Furthermore, contrary to the government's misrepresentation to the Court that there is "no precedent"[40] for explicit, specific quid pro quo bribery-type honest services charges there clearly are other such cases in addition to the *Sawyer I*, *Sawyer II*, and *Woodward* trilogy.  For example, the federal district court in *United States v. Warner*, 2005 WL 2367769 (N.D. Ill. Sept.

---

[38] Governor Siegelman would note that as discussed in his original Rule 29 Brief the government misled the Court at the jury instructions conference into following *Sawyer I* for the erroneous proposition of not requiring a quid pro quo instruction for the honest services charges, much less an explicit, specific quid pro quo instruction as required by First Circuit as well as Eleventh Circuit previously discussed case law.  The *Sawyer I* case that itself recognizes a requisite "specific quid pro quo" for "bribery-like" honest services cases was itself actually a gratuities case.  The government misled the Court into following the gratuities type language from the case that does not require a quid pro quo.  As discussed *infra*, and as the government itself has admitted in previous pretrial briefs and as charged in the Indictment the honest services charges are bribery-type honest services charges.  Governor Siegelman would also note that the government itself in other cases has taken the position that *Sawyer I* was a gratuities case not requiring a quid pro quo as opposed to a bribery-type honest services type case that requires a quid pro quo.  *United States v. Potter*, 2005 U.S. Dist. LEXIS 21451, **20-21 (D.R.I. Sept. 27, 2005) ("the governments also established defendants' intent to deprive the public of Harwood's honest services. . . . .  The government argues that *Sawyer I* should be distinguished on the basis that it is an honest services wire fraud case dealing with *gratuities, whereas the case before the Court concerns an alleged quid pro quo bribery scheme*.").

[39] The footnote reads as follows: "although *Sawyer* initially describes this first element of § 1346 as involving proof of bribery, we recognized in *Woodward* that "[t]he *Sawyer* case *expanded* category (1) from quid pro quo bribery, to include a more generalized pattern of gratuities to coax 'ongoing favorable official action.'"  *Sawyer II*, 239 F.3d n.9 at 40. (emphasis added) (quoting *Woodward*, 149 F.3d at 55 that quotes *Sawyer I*, 85 F.3d at 730).  As discussed *infra*, the government charged a bribery-type quid pro quo honest services charge in this case as opposed to a gratuities-type honest services charge.

[40] Government Response at 24.

23, 2005) specifically recognized that bribery-type honest services charges require the government to prove an *explicit quid pro quo* for, as here, political contribution cases. *Id.* at **2-5; *See also*, *United States v. White*, 2004 U.S. Dist. LEXIS 22886, *15 (E.D. Pa. Oct. 29, 2004) ("there are two types of honest services fraud, one involving quid pro quo bribery ('Theory 1') , . . ."); *United States v. Potter*, 2005 U.S. Dist. LEXIS 21451, **20-21 (D.R.I. Sept. 27, 2005) ("The government must also establish Defendants' intent to deprive the public of Harwood's honest services. . . . . the case before the Court concerns an alleged quid pro quo bribery scheme.").

It is very interesting to note that even though the *Warner* case involving Governor Ryan of Illinois specifically recognized that the government must prove an explicit quid pro quo for honest services charges involving campaign contributions, the government nevertheless twisted and spun the *Warner* case in their Response Brief to speciously state that the *Warner* case "actually holds simply that non-campaign contribution violations have no quid pro quo element under Section 1346."[41]  In so distorting the actual findings of the *Warner* case by speciously suggesting to this Court that the court in *Warner* did not recognize that proof of an explicit quid pro quo for the honest services charges involving campaign contributions was required, the government neglected to recognize that the court in *Warner* specifically addressed and accepted the defendant's argument that the government must prove an explicit quid pro quo for honest services charges involving campaign contributions.  Thus, the court granted Governor Ryan's Motion in Limine in part and denied the motion in part.  *See*, *Warner* at **2-5.

In any event, the government clearly charged a bribery-type explicit, specific quid pro quo type honest services charge in this case and must prove it.  *See, e.g.*, *United States of America v. Triumph Capital Inc.*, 260 F.Supp.2d 444, 457 (D. Conn. 2002)("even if the generic

---

[41] Government Response at 24.

Connecticut statutes do not contain a quid pro quo, the indictment here alleges a quid pro quo—

that the campaign contributions were offered and received in exchange for official state acts.

The government will have to prove a quid pro quo in connection with the alleged campaign

contributions and the jury will be instructed that a quid pro quo for conviction.").  Indeed,

Governor Siegelman provided the Court an exhibit at the conclusion of the Rule 29 hearings that

tracked the specific manner in which the honest service charges in the indictment were charged

in specific quid pro quo charging terms.[42]  *See also*, *United States v. Cancelliere*, 69 F.3d 1116,

1121 (11th Cir. 1995) ("We have held that 'a fundamental principle stemming from the [fifth]

amendment is that a defendant can only be convicted for a crime charged in the indictment.

*United States v. Keller,* 916 F.2d 628, 633 (11th Cir. 1990, *cert. denied* 499 U.S. 978 (1991).  Per

se reversible error occurs 'when the essential elements of the offense are altered to broaden the

possible basis for conviction beyond what is contained in the indictment.' *Id.* at 634."); *United*

*States v. Weismann*, 899 F.2d 1111, 1115-16 (11th Cir. 1990) ("It is a fundamental principle of

our system of criminal justice that '[a] defendant has a substantial right to be tried solely on [the]

charges presented in the indictment by a grand jury. (citations omitted)").[43]

---

[42] Governor Siegelman would also note that the government erroneously misled and confused the jury by stating in its Opening Statement that "if its campaign money, you have to find there was an expressed, what they call quid pro quo, an expressed agreement . . . . Then on the mail fraud and the other things, you're are just going to have to find that the evidence fairly infers that they denied the citizens of the state of their honest services you don't have to find an expressed agreement."  Opening Statement, excerpt from the proceedings on 05-01-06, at 69-70.  The government thus erroneously suggested that no quid pro quo was required for the honest services charges even though the Indictment is charged in quid pro quo charging terms and must be proved.

[43] Significantly, Governor Siegelman would note that the government admitted the following in pretrial briefing: "Each of the honest services fraud counts in which Defendant is charged arises out of a bribery scheme in which he participated—the paradigm case of honest services fraud.  See the deVegter, 198 F.3d at 1327-28 (citing Lopez-Lukis, 102 F.3d at 1165 n.1)."  United States' Response to Defendant Hamrick's Motion to Dismiss the Honest Services Fraud Charges, at 9.

  Similarly, Governor Siegelman would note that the honest services charges are bribery-type honest services charges rather than material non-disclosure type honest services charges.  The government's arguments that the charges are material non-disclosure type honest services charges are, therefore, without merit and are nothing more than an obvious attempt to circumvent the specific quid pro quo requirements of the bribery-type honest services charges involving political contributions.

Finally, rather than "engrafting" the "explicit", "specific quid pro quo" requisite proof from the Hobbs Act as the government repeatedly suggests throughout its Response Brief, as also discussed in more detail below, the Circuit Courts including the Eleventh Circuit have simply recognized the appropriateness of imposing the explicit, specific quid pro quo restraint where political contributions are involved. "A contrary conclusion, the [Supreme] Court reasoned, would have the effect of criminalizing conduct traditionally within the law and unavoidable under this country's present system of elected politics." *Martinez*, 14 F.3d at 553. (citing *McCormick* and also recognizing that the same principles of restraint apply to bribery. *Id.*, n.5 at 553.); *Davis II*, 30 F.3d at 108. ( "explicit", "specific quid pro quo" requisite ruling based on the "reasons stated in *United States v. Martinez*"; also following *Allen,* 10 F.3d at 411. (*Allen* also recognizes at page 11 cited by *Davis II* that the restraint principles requiring an explicit quid pro quo recognized by the Supreme Court in *McCormick* also apply to federal bribery).

## 2.      The Federal Bribery Charges Require Proof Of An Explicit Quid Pro Quo— A Specific Quid Pro Quo

There can be no doubt that the government is required to prove an explicit, specific quid pro quo requisite for the Section 666 bribery charges as well since the courts' recognition of the explicit quid pro quo requisite is based on the principles of restraint recognized in *McCormick* where there are political contributions involved—rather that a narrow minded, myopic application of the explicit quid pro quo element only to Hobbs Act extortion cases as the government would mislead the Court in to adopting as the appropriate legal approach in this area of the law.

Indeed, the Eleventh Circuit in *Martinez* as well as *Davis II* have already recognized the sound principle of restraint where political contributions are involved regardless of whether a

case involves Hobbs Act extortion. This reasoning is well stated in *Martinez* through the Eleventh Circuit's recognition that a contrary recognition would "criminalize" traditional political such as the circumstances of this case and through the Eleventh Circuit in *Martinez* recognizing that the same principles of restraint expressed in *McCormick* for Hobbs Act extortion also apply to bribery charges as well.[44]

Likewise, the Eleventh Circuit in *Davis II* also followed the Seventh Circuit *Allen* case, a case specifically based upon the necessity of applying the restraint explicit quid pro quo requisite proof principles of *McCormick* to Section 201 federal bribery charges as well in this area of the law, rather than accepting a narrow application of these principles as only applying to Hobbs Act extortion cases that involve political contributions as the government have this Court erroneously do.  In fact, the Seventh Circuit in *Allen* responded to the government and the district court's erroneous distinction between Section 201 bribery and Hobbs Act extortion as a basis for limiting the explicit quid pro quo requirement to Hobbs Act extortion by acknowledging the validity of Allen's response of "So what?"[45] as a forcefully valid position.[46]  As previously extensively quoted in Governor Siegelman's initial Rule 29 Motion for Judgment of Acquittal brief, the Seventh Circuit upon eloquently stating the principles of restraint associated with political contributions and traditional political conduct concluded that the principles of restraint were not limited to the Hobbs Act and equally applied to other federal statutes such as Section 201 federal bribery statute when political contributions are involved.[47]

Likewise, Governor Siegelman would also note that contrary to the government's contention that Section 666 bribery is a stand alone statute that has its very own unique

---

[44] *Martinez*, 14 F.3d at 553, n. 5 at 553.

[45] *Allen*, 10 F.3d at 410.

[46] *Id.*

[47] *Id.* at 410-11.

background that is incapable of accepting such principles of restraint as those accepted in the Seventh Circuit *Allen* decision[48] that applied the *McCormick* principles of restraint to the Section 201 bribery statute, the Section 666 federal bribery statute is actually patterned after the Section 201 bribery statute and explicitly requires a quid pro quo specific intent as well.

For example, the Second Circuit in *United States v. Ford*[49] recently found that the Section 666 federal bribery statute is patterned after the framework of the Section 201 federal bribery statute and specifically held that the Section 666 federal bribery statute explicitly requires the government to prove a specific quid pro quo intent to sustain a Section 666 conviction. The Second Circuit in *Ford* found that "Section 666 was patterned on the general federal bribery and gratuity statute."[50] The Second Circuit in *Ford* further recognized that the Supreme Court in *Sun Diamond* requires a requisite quid pro quo associated with the Section 201 bribery statute.[51] In reviewing Section 666 the Second Circuit concluded, for example: "In short, the recipient must have accepted the thing of value while 'intending to be influenced.' Or as the Supreme Court put it plainly in Sun-Diamond Growers, there must be a quid-pro-quo."[52]

Thus, Governor Siegelman would also note that the Supreme Court in *Sun-Diamond* specifically recognized that it is necessary to apply restraint to government prosecutors' attempts to overextend the Section 201 gratuities statute, much less the Section 201 bribery statute provisions that the Second Circuit in *Ford* found supportive of requisite proof for a quid pro quo to sustain Section 666 convictions.

---

[48] Followed by the Eleventh Circuit in *Davis II. Davis II*, 30 F. 3d at 108.

[49] 435 F.3d 204 (2nd Cir. 2006)

[50] *Id.* at 210.

[51] *Id.*

[52] *Id.* at 213. Likewise, Governor Siegelman would note that the Second Circuit in *Ford* even found that "what the recipient said is not the issue to be resolved. Rather, it is the actual state of mind of the recipient that must be proven." *Id.*

As previously discussed, the Supreme Court in *Sun-Diamond* also clearly based the rationale for its ruling on principles of restraint in this area of the law involving traditional political conduct, concluding that absence such restraint "nothing but the government's discretion prevents [public officials] . . . from being prosecuted."[53]

Accordingly, as similar to the reasons for requiring the government to prove an explicit, specific quid pro between Governor Siegelman and Mr. Scrushy to sustain the honest services charges there can be no doubt that the courts, including the Supreme Court and the Eleventh Circuit, require the government to prove beyond a reasonable doubt an explicit, specific quid pro quo between Governor Siegelman and Mr. Scrushy for the Section 666 federal bribery counts since they involve political contributions involved political contributions and political conduct that it would be unrealistic to consider illegal under our present system of political fundraising and political patronage.[54] *Sun-Diamond*, *supra*; *McCormick*, *supra*; *Davis II*, *supra*; *Martinez*, *supra*; *Allen*, *supra*; *Ford*, *supra*.

### 3.     The Evidence Was Plainly Insufficient To Sustain Governor Siegelman's Conviction For Count Three, Count Five And Counts Six Through Nine.

The government's substantive proof fail to provide sufficient evidence on Counts Three, Five, and Six through Nine, because the government failed to prove a quid pro quo, much less the requisite *explicit*, *specific quid pro quo*.

---

[53] *Sun-Diamond*, 526 U.S. at 408.

[54] Governor Siegelman would note that the government's suggestion throughout the Response brief that somehow the type of political contributions in this case warrant less consideration than other cases is clearly just another desperate attempt to circumvent the explicit, specific quid pro quo restraint widely recognized by the Supreme Court and Circuit Courts and is without merit. Indeed, the Supreme Court in *McCormick* dismissed similar attempts by the government to downgrade the political contributions in *McCormick* through the government's argument that the jury could have found the contributions not to be campaign contributions at all as "mere speculation." *McCormick*, 500 U.S. at 272-74.  Similarly, Governor Siegelman would also note, for example, that the Eleventh Circuit in *Davis II* required the requisite restraint of an "explicit", "specific quid pro quo" requisite proof by the government even though the contributions in that case were egregiously extorted payments for Montgomery, Alabama legislator Davis's support and assistance for particular legislation. *See generally*, *Davis I* and *Davis II*, *supra*. Much to the contrary, the political contributions in this case were part of traditional political conduct in which Mr. Scrushy helped legally engineer contributions to Governor Siegelman's campaign to enact a lottery to assist with the education of Alabama's children.

The government's evidence for such an alleged quid pro quo was exclusively based on Bailey's testimony about what transpired at a meeting he did not attend. The most the government could come up with in alleged support for such a quid pro quo was the question discussed in detail in Governor Siegelman's previous Rule 29 brief in which Bailey stated "what in the world is he going to want for that? And the Governor said, the C-O-N Board or CON Board. And I said, I wouldn't think there would be a problem with it; and he said I wouldn't think so." Nick Bailey testimony on Direct Examination, May 2, 2006.

This testimony is as close as the government ever gets to presenting evidence of an alleged quid pro quo much less an explicit quid pro quo agreement between Governor Siegelman and Mr. Scrushy.

As discussed in detail in Governor Siegelman's original Rule 29 brief, applying the heightened explicit quid pro quo requirment to the facts of this case plainly reveals there was no "explicit promise", no "specific quid pro quo", and no "express agreement" under the previously discussed case law. Furthermore, as consistent with the legal meaning of the heightened *explicit requisite quid pro quo*, there is no evidence in this case indicating:

> *Express*: Clear; definite; *explicit*; plain; direct; unmistakeable; not dubious; or ambiguous. Declared in terms; set forth in words. Directly and distinctly stated. *Made known distinctly and explicitly, and not left to inference. Manifested y direct and appropriate language, as opposed to inferred from conduct. The word is contrasted with 'implied'* [emphasis added]

Black's Law Dictionary.

"Explicit" or "expressed" or very limiting terms when considering the Rule 29 insufficiency of the evidence of an "expressed agreement", and "explicit quid pro quo," a "specific quid pro quo." Mr. Bailey did not and could not testify to "an expressed agreement that

was "clear", "definite", "explicit", "plain", because Mr. Bailey did not participate in or observe any conversations between Governor Siegelman and Mr. Scrushy.

Accordingly, this Court must grant Governor Siegelman's Rule 29 Motion for Judgment of Acquittal on Count Three, Count Five, and Counts Six through Nine.

**4.      The Government Failed To Meet Its Burden Of Proving That The Promotion Of Funding Education For The General Public Was A "Thing Of Value" To Governor Siegelman Under § 666.  Furthermore, The Government Failed To Meet Its Burden Of Proving At Governor Siegelman's Appointment Of Mr. Scrushy To The CON Board Was Done "Corruptly" As Defined By § 666.**

The government failed to fully address or counter Governor Siegelman's arguments that the promotion of funding of education for the general public was not a "thing of value" to Governor Siegelman under Section 666.  Similarly, the government failed to fully address or counter Governor Siegelman's arguments that the government failed to meet its burden of proving that Governor Siegelman's appointment of Mr. Scrushy to the CON Board was done "corruptly" under Section 666.

Accordingly, by way of emphasis here Governor Siegelman respectfully submits that the government has failed to meet its burden of proving sufficient evidence for these operative elements of Section 666, and this Court should grant Governor Siegelman's Rule 29 Motion for Judgment of Acquittal on the Count Three Section 666 conviction.

**5.      The § 666 Count Three Of The Second Superseding Indictment Is Time Barred By The Applicable Statute Of Limitations**

In his Supplemental Brief in Support of his Rule 29 Motion for Judgment of Acquittal on Count Three, Governor Siegelman set forth the evidence upon which the government relied in bringing Count Three and demonstrated that this alleged conduct was outside the applicable five

year statute of limitations.[55]  The government offered no substantive response.  Instead, the

government attempts to dodge the issue by arguing, wrongly, that Governor Siegelman waived

his statute of limitations defense by not raising this as an affirmative defense to the Indictment:

> Because Defendant Siegelman did not likewise present his claim in
> a Rule 12 motion to dismiss the indictment, his post-verdict
> assertion of the expiration of the limitations period as a ground for
> acquittal in regard to Count Three is not cognizable.

[Doc 459, Government's Response, p. 20]

The government relies upon cases in which it is clear from the face of the indictment that

the indictment is defective.  In such cases, the defendant must raise the statute of limitations

defense as an affirmative defense before trial.  Federal Rule of Criminal Procedure 12 states, in

part:

**(b)      Pretrial Motions.**

**(2)      Motions That May Be Made Before Trial.**  A party may raise by
pretrial motion any defense, objection, or request that the court can
determine without a trial of the general issue.

**(3)      Motions That Must Be Made Before Trial.**  The following must
be raised before trial:

(A)      a motion alleging a defect in instituting the prosecution;

---

[55]The general statute of limitations for non-capital federal offenses, 18 U.S.C. §3282, governs prosecutions under 18 U.S.C. §666.

> (B)    a motion alleging a defect in the indictment or information
> −but at any time while the case is pending, the court may
> hear a claim that the indictment or information fails to
> invoke the court's jurisdiction or to state an offense

*Fed.R.Crim.P. 12(b)(2) and 12(b)(3).*

Federal Rule of Criminal Procedure 12(e) states that if a defense, objection, or request that must be raised (pursuant to Fed.R.Crim.P. 12(b)(3)) is not raised before trial, it is waived. However, the Committee Comments to the old Fed.R.Crim.P. 12(f)[56] reflect that the Committee placed the waiver provision in Rule 12 to prevent defendants from "sandbagging" the government by delaying pleading a defect in the indictment until jeopardy attaches.  Governor Siegelman's statute of limitations defense could *not* be determined "without a trial of the general issue" because it was not clear from the face of the Indictment that the government's charges were outside the statute of limitations.  Because Governor Siegelman's objection on statute of limitations grounds ***could not*** **have been raised before trial, Fed.R.Crim.P 12(b)(3) does not apply, and the government cannot, therefore, raise waiver under the plain language of Rule 12(e) and its predecessor, Rule 12(f)**.  *Cessante ratione legis, cessat et ipsa lex* (cease the rationale, cease the rule).

In Count Three, the government charged:

> From on or about **July 19, 1999, and continuing through on or about May 23, 2000** . . . the defendant DON EUGENE SIEGELMAN . . . corruptly solicited, demanded, accepted, and agreed to accept $500,000.00 from defendant RICHARD SCRUSHY, intending to be influenced and rewarded in connection with the appointment of defendant RICHARD SCRUSHY to the CON Board. [Emphasis added]

---

[56]"In 2002, Rule 12 was substantially amended in accordance with a general restyling of the rules.  Most changes to Rule 12 were not substantive. . . although amended Rule 12(e) is a revised version of current Rule 12(f), the Committee intends to **make no changes in the current law regarding waivers of motions or defenses**." [2002 Advisory Committee Note to Rule 12]

[Second Superseding Indictment, Count Three, ¶49]

The Indictment did not specify what conduct the government alleged was "continuing" from July 19, 1999 through on or about May 23, 2000.  This is important because the Original Indictment was returned on **May 17, 2005**–less than five years after May 23, 2000.  **On its face, the Indictment alleged that a crime occurred within the five year statute of limitations.**

However, at trial, the government revealed (through primarily the testimony of Nick Bailey) that the basis of Count Three was a meeting between Governor Siegelman and Richard Scrushy whereat Mr. Scrushy allegedly agreed to raise $250,000.00 and have HealthSouth contribute another $250,000.00 to the Alabama Education Lottery Foundation (AELF).  The government claims that this alleged July 1999 agreement was "continuing" because HealthSouth did not contribute the $250,000.00 (allegedly promised by Mr. Scrushy in July 1999) until May 2000.  **But, the law does not support the government's theory of a "continuing" crime.**  As discussed in detail in Governor Siegelman's prior brief, the crime alleged by the government in Count Three occurred (if at all) in **July of 1999** when the agreement was allegedly **made,** *not* in **May of 2000** when the final contribution was **received**.  See *United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999).

Governor Siegelman's statute of limitations defense is a question of law for this Court to determine.  It is not a *factual dispute*.  Governor Siegelman is not asking the Court to choose between two competing factual assertions as to the date of the alleged crime.  Under those circumstances, the issue would be a factual question for the jury to determine.  See, for example, *United States v. Alfonso-Perez*, 535 F.2d 1362, 1363-65 (2nd Cir. 1976).  Under *those* circumstances, a failure to ask for a statute of limitations instruction might constitute a waiver.  *United States v. Grammatikos*, 633 F.2d 1013, 1022 (2nd Cir. 1980).

In *this* case, Governor Siegelman's statute of limitations defense is properly before the Court on Governor Siegelman's Rule 29 Motion because **assuming the alleged crimes occurred on the dates alleged by the government—they fall outside the statute of limitations**. The very nature of a motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29(a) is to question the sufficiency of the evidence to support a conviction. See *United States v. Jones*, 174 F.2d 746, 748 (7th Cir. 1949); 2 C. Wright, *Federal Practice & Procedure* §466, at 654 (1982).

Governor Siegelman has a right, under Fed.R.Crim.P. 29, to have this Court *independent* of the jury pass on the sufficiency of the evidence. The Supreme Court unfailingly recognizes that the "sufficiency of the evidence" is for the courts; as such, it is a question of law, not fact. *See, e.g., United States v. Powell*, 469 U.S. 57, 60 (1984) ("[A] criminal defendant . . . is afforded protection against jury . . . error by the *independent* review of the sufficiency of the evidence undertaken by the trial and appellate courts.") [Emphasis added]; *United States v. Abrams v. United States*, 250 U.S. 616, 619 (1919) ("A *question of law is* . . . presented . . . to determine whether there was . . . evidence . . . before the jury . . . to sustain the verdict.") [Emphasis added]

Had the government clearly set forth the basis for its Count Three allegations (instead of waiting until trial to reveal its theory of the case), Governor Siegelman would have had an opportunity to raise his statute of limitations defense in a Rule 12 motion. The government elected not to issue a clear Indictment, and **it now appears that the government's wording of the Indictment was expressly intended so that Governor Siegelman *would not* raise a statute of limitations defense. The government essentially concedes the running of the statute of limitations** but argues that this issue was not timely raised. **In this case, the "sandbagging" was *not* perpetrated by the Defendant (which is what Rule 12 addresses),**

**but by the government which carefully worded the Indictment to mask the statute of limitations defect.**

Governor Siegelman requested that the government clarify its allegations through a Bill of Particulars.  Specifically, Governor Siegelman asked the government to clarify the allegations of Count Three and disclose: "when, specifically, did the actions alleged take place?" [Governor Siegelman's 02/20/06 Motion for Bill of Particulars]

The government objected to clarifying its Indictment and argued that doing so would reveal the government's "trial strategies":

> Defendants have requested a plethora of information, including, but not limited to, the names and identities of co-conspirators, ***exact dates, times, and places where they engaged in illegal activities,*** **and a detailed description of the overact acts they performed** as part of the charged conspiracies and honest services fraud schemes.  Defendants are not entitled to a bill of particulars setting forth the United States' position on each of these requests because by so doing the **United States would be revealing to defendants its trial strategies, theories, witness lists, and evidence it intends to introduce at trial**. [Emphasis added]

[Doc 162, Government's 02/27/06 Response to Governor Siegelman's Request for Bill of Particulars]

It is the height of disingenuousness for the government to draft an Indictment that obfuscates the government's theory of liability (thereby masking the statute of limitations defect), vigorously oppose all efforts to clarify the Indictment, and then, after the government reveals at trial a defective theory of liability, claim that Governor Siegelman should have alerted the Court to the government's defective Indictment in a Rule 12 motion.  **Governor Siegelman's motion is a timely objection to the government's failure of *proof at trial*.**

*United States v. York*, 888 F.2d 1050 (5th Cir. 1989) is instructive.  In *York*, the Fifth Circuit reversed York's conviction on two counts of providing false information on loan

applications because, *at trial*, the government failed to meet its burden of proving that the

prosecution was not barred by the statute of limitations:

> York was indicted on September 16, 1987, and hence could be
> prosecuted . . . for acts occurring on or about September 16, 1982.
> On October 1, 1982, Lancaster First Federal Savings and Loan
> Association approved York's loan application based upon his
> March 15, 1982, financial statement, on which the jury found York
> had falsified information.
>
> York was charged with submitting false financial statements;
> **hence, the crime was completed at the time of the submission of
> the loan application, not at the time of the application's
> approval by the financial institution**.  At trial, the government
> could not produce York's loan application and adduced no
> evidence whatsoever to show that it was, for example, standard
> practice at Lancaster Savings and Loan to approve or deny loan
> applications within 15 days of their submission.
>
> **Therefore, there was no evidence from which a jury could
> conclude that the application was submitted between
> September 16, 1982 and October 1, 1982**, rather than between
> March 15, 1982, and September 15, 1982.  **Thus, the evidence in
> insufficient to satisfy even a preponderance standard, so we
> need not give any further consideration to the degree of the
> government's burden.** [Emphasis added]

*York* at 1057.

    **Similarly, in this case, the government's evidence at trial proved that if a crime**

**occurred, it occurred in July of 1999 − outside the statute of limitations.**

The cases cited by the government do not support its position in this case. In *United States v. Najjar*, 283 F.3d 1306 (11th Cir. 2002), the Court properly held that the defendant waived any statute of limitations defense he may have had because he initially pled guilty to the charges brought against him and then later tried to withdraw his guilty plea. In *United States v. Jockish*, No. 04-14723, 2005 WL 3445579 (11th Dec. 16, 2005), the defendant did not timely challenge an indictment which, **on its face**, was clearly defective as outside the statute of limitations. Instead, the defendant waited until his appeal to raise this issue. The Court properly held that the defendant had waived his statute of limitations defense. Likewise, in *United States v. Arky*, 938 F.2d 579 (5th Cir. 1991), the defendant first raised his statute of limitations defense on appeal. The Fifth Circuit ruled that the defendant had waived his defense by not asserting it at trial.

The government relies upon *United States v. Ramirez*, 324 F.3d 1225, 1227-28 (11th Cir.), cert. denied, 540 U.S. 881 and cert. denied, 540 U.S. 928 (2003), but *Ramirez* is contrary to the government's position. In *Ramirez*, unlike here, the indictment, **on its face**, was defective because the dates provided by the government were outside the statute of limitations. Rather than filing a Rule 12 motion asserting that the indictment failed to state an offense, the defendants waited until immediately after opening statements to assert their statute of limitations defense. The trial court found this to be a deliberate and calculated attempt to seek a strategic advantage by waiting until jeopardy had attached upon the swearing in of the jury:

> [The] Defendants in this case clearly "had all the information necessary to challenge [the indictment] prior to the date set by the district court for pretrial motions, but did not."

*Ramirez* at 1228 quoting *United States v. Suescun*, 237 F.3d 1284 (11th Cir.).

The Eleventh Circuit affirmed the trial court's finding, pursuant to Fed.R.Crim.P. 12(f), that defendants had waived their statute of limitations defense by not raising it before trial. However, **the Court also recognized that there are cases (such as this) where a statute of limitations defense *cannot* be raised before trial because "the development of facts pertaining to that defense is necessary."** *Ramirez* at 12

The government bears the burden of proving that Governor Siegelman committed the alleged offenses within the limitations period. *United States v. York*, 888 F.2d 1050 (5th Cir. 1989); *Grunewald v. United States*, 353 U.S. 391, 396-97, 77 S.Ct. 963, 969-70, 1 L.Ed 2d 931 (1957). Further, courts should liberally interpret the application of periods of limitation in favor of repose. *United States v. Marion*, 404 U.S. 307, 323 (1971) ("liberally interpreted in favor of repose"). The government failed to carry its burden on Count Three, and the government's attempt to shift the blame for this error to Governor Siegelman is unavailing. Governor Siegelman is entitled to an acquittal on Count Three of the Second Superseding Indictment.

### B.    Governor Siegelman Has Carried His Burden Of Showing That The Evidence Was Insufficient To Sustain His Conviction On Count Seventeen

Governor Siegelman has plainly shown that the evidence was insufficient to sustain his conviction on the Count Seventeen obstruction of justice charge alleging he violated 18 U.S.C. § 1512(b)(3).

The government clearly failed to counter Governor Siegelman's argument in his original Rule 29 Brief in Support of Motion For Judgment of Acquittal on the Count Seventeen Obstruction of Justice Charge. Accordingly, Governor Siegelman hereby incorporates by reference his Renewed Motion For Judgment Of Acquittal Pursuant to

Fed. R. P. 29 on Count Seventeen—18 U.S.C. § 1512(b)(3) Obstruction Of Justice filed on August 4, 2006.

The government erroneously claims that the evidence at trial conclusively established Governor Siegelman's guilt on Count Seventeen in that the jury could have found that Governor Siegelman engaged in misleading conduct "in a number of ways"[57] all of which involved alleged co-conspirators Bailey and Young or Bailey's counsel Mr. Beck.[58]

Importantly, Section 1512(b)(3) is a tampering statute. It forbids a defendant to "corruptly persuade" or to "engage in misleading conduct" toward a person who communicates or whom he will communicate—with federal authorities it does not address a disguise or cover up that does not involve tampering.

The government offered no evidence that Governor Siegelman tampered with Mr. Young, Mr. Bailey, or Mr. Beck. Accordingly, that is the end of this Court's independent review of the sufficiency of the evidence regarding the § 1512(b)(3) inquiry, and this Court must grant Governor Siegelman's Rule 29 Motion For Judgment of Acquittal on the Count Seventeen Obstruction of Justice conviction.

Governor Siegelman's conduct clearly does not fall within the ambit of criminal activities Congress intended to punish under Section 1512(b)(3). Indeed, for example, the Second Circuit decision in *United States v. King*, 762 F.2d 232, 237-38 (2nd Cir. 1985) extensively discussed in Governor Siegelman's original Rule 29 brief specifically held that the omission of the catchall provision by Congress meant that Section 1512(b)(3) did not cover general attempts to disguise or cover up transactions to throw

---

[57] Government's Response at 37.
[58] *Id.*

federal investigators off the trail as the government argues its evidence allegedly
sufficiently supports as an erroneous basis for sustaining Governor Siegelman's
conviction.

Furthermore, as discussed in detail in Governor Siegelman's original Rule 29
brief the cases that the government cites such as the *Veal*[59] and *Ronda*[60] case are clearly
distinguishable.  For example, coupled with the Second Circuit's decision in *King*, *Veal*,
and *Ronda*, the decisions make clear that a defendant engages in misleading conduct if he
does something to deceive someone—or whom he believes will speak—to authorities
who turn out to be federal.  The *King* defendant did not deceive anyone and, therefore,
did not violate § 1512(b)(3).  To the contrary, the defendants in the *Veal* and *Ronda*
decisions the government has repeatedly relied so heavily upon deceived numerous
people who spoke to federal authorities and, therefore, did violate the statute.  The
decisions are therefore plainly distinguishable from the government's allegations in this
case, much less the evidence in this case.

Nothing in Mr. Bailey's testimony indicates that Governor Siegelman deceived
anyone and Mr. Bailey's testimony mention Mr. Young at all.  Furthermore, Governor
Siegelman did not deceive Mr. Bailey, because the transaction was Mr. Bailey's idea.
Moreover, Governor Siegelman clearly did not deceive Mr. Beck, who was simply one of
the lawyers present when the transaction closed.

Additionally, Governor Siegelman would note that Mr. Beck, as Bailey's agent, is
*not* an independent witness who was interacting with federal investigators.  There could
not, therefore, be any misleading of Mr. Bailey as someone dealing with federal

---

[59] *United States v. Veal*, 153 F.3d 1233 (11th Cir. 1998), *cert. denied*, 526 U.S. 1147  (1999).

[60] *United States v. Ronda*, 2006 WL 1914248 (11th Cir. July 13, 2006).

investigators.  Moreover, Mr. Beck, as Bailey's agent, is likewise charged with the knowledge of his principle.

Finally, if the government considered Mr. Beck a witness, they violated the pretrial order by not disclosing his 302.  Indeed, if the government considered Mr. Beck a witness they also violated the order by not even listing him as a witness and by allowing him in the courtroom.

Accordingly, as discussed in detail in Governor Siegelman's previous Rule 29 brief, there is simply no way the Section 1512(b)(3) statute applied to any conduct of Governor Siegelman, much less to any conduct constituting illegal conduct under Section 1512(b)(3). This Court, therefore, must grant Governor Siegelman's Rule 29 Motion for Judgment of Acquittal on the Count Seventeen Section 1512(b)(3) Obstruction of Justice charge.

## CONCLUSION

For all the reasons stated herein as well as the reasons stated in the course of oral argument at the previous Rule 29 hearings and in Governor Siegelman's previous Rule 29 brief, Governor Siegelman respectfully request a judgment of acquittal on Count Three, Count Five, Counts Six through Nine, and Count Seventeen.

Respectfully Submitted,

s/David A. McDonald
David A. McDonald
Kilborn, Roebuck, & McDonald
P.O. Box 832
Mobile, Alabama 36602
Phone: (251) 434-0045
Fax:    (251) 434-0047
Email: dam@krmlaw.com

s/Vince F. Kilborn, III
Vince F. Kilborn, III
Kilborn, Roebuck & McDonald
P.O. Box 66710
Phone: (251) 479-9010
Fax:    (251) 479-6749
Email: vfk@krmlaw.com

s/George Robert Blakey
George Robert Blakey
University of Notre Dame Law
School
Kresge Law Library
P.O. Box R
Notre Dame, IN 46556
Phone: (574) 631-5717
Fax:    (574) 631-4197
Email: blakey.1@nd.edu

s/Hiram Chester Eastland, Jr.
Hiram Chester Eastland, Jr.
Eastland Law Offices
107 Grand Boulevard
Greenwood, MS 38930
Phone: (662) 453-1227
Fax:    (662) 453-2808
Email: eastlandlaw@bellsouth.net

## CERTIFICATE OF SERVICE

I certify that on August 25, 2006, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to counsel of record.

s/David A. McDonald
David A. McDonald
Kilborn, Roebuck, & McDonald
P.O. Box 832
Mobile, Alabama 36602
Phone: (251) 434-0045
Fax:    (251) 434-0047
Email: dam@krmlaw.com