IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| DON EUGENE SIEGELMAN and | ) | |
| RICHARD M. SCRUSHY | ) | |

UNITED STATES' SUBMISSION OF ADDITIONAL FACTUAL OR LEGAL
ARGUMENTS REGARDING EXPERT WITNESSES' STATEMENTS FILED AFTER
THE CLOSE OF THE EVIDENTIARY HEARING ON JURY SELECTION ISSUES

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting

United States Attorney for the Middle District of Alabama, and Edward C. Nucci, Acting Chief of

the Public Integrity Section of the Criminal Division of the United States Department of Justice, and

hereby files, pursuant to this Court's Order, dated February 8, 2007, additional factual and legal

arguments on the expert witnesses' statements filed after the close of the evidentiary hearing on jury

selection issues. These additional arguments further support the United States' contention, made in

its prior filings to this Court, which pleadings, responses, and arguments the United States adopts

and incorporates by reference herein, that this Court should deny Defendants' challenges to the jury

selection process in the Middle District of Alabama. To support its position, the United States

submits the following:

I.    **Defendants' Expert Witness's Absolute Disparity Analysis is Fundamentally Flawed
      Such That Defendants Cannot Meet Their Burden Under Duren.**

In his supplemental affidavit,[1] Dr. Gundlach claims that the percentage of African-Americans

in Pools 201060403 and 201060405 was 19.0% and 19.5%, respectively. Doc. # 392-2, at ¶ 3.

---

[1] Exhibit A (Doc. # 392-2) of Defendant Scrushy's "Amended Second Motion to
Supplement Record in Jury Challenge and Request for Additional Data," Doc. # 392-1.

Consequently, he asserts that the absolute disparity of each of these pools was greater than 10%. Id. He then concludes that the "trend" of alleged underrepresentation of African-Americans on jury pools has "continued" throughout the life of the 2005 QJW. Id.

Dr. Gundlach is correct that a trend has continued from his March 29, 2006, report until his most recent submission. The trend, however, is not a continued underrepresentation of African-Americans in pools drawn from the 2005 QJW; rather, it is that his analysis of absolute disparity has been and remains fundamentally flawed. This flaw, which is present in his supplemental affidavit as well as his prior reports, was identified by Judge Thompson in United States v. Carmichael, No. 2:03cr259-MHT, 2006 WL 3754794 (M.D. Ala. Dec. 18, 2006), where he stated that Dr. Gundlach, in calculating the absolute disparity for each jury pool, "treated all racially non-identifying jurors as if they were not black in order to find an absolute disparity of over 10% in the representation of African-Americans." Id. at * 22. This error is manifest in Dr. Gundlach's supplemental affidavit as he counts all the "missing" jurors in each pool in the denominator, but no "missing" juror in the numerator, of his racial composition calculations. Doc. # 392-2, at ¶ 3. Like in Carmichael, if a certain number of the "missing" jurors in Pools 201060403 and 201060405 is black, then the absolute disparity for each pool would be less than 10% in the representation of African-Americans. See Carmichael, 2006 WL 3754794 at * 22. Further, like the defendants in Carmichael, Defendants here have presented no evidence of the race of the "missing" jurors for any pool drawn from the 2005 QJW, and "it is now far too late to go and gather new evidence in this case." Id.

Consequently, the result in this case is the same as in Carmichael regarding Defendants' fair cross-section challenge under the Sixth Amendment and the JSSA:

The law is clear that the defendants bear the burden of establishing a prima-facie

case, <u>Duren</u>[ v. Missouri, 439 U.S. 357, 364 (1979)], and without clarification of the racial makeup of the non-identifying jurors, the defendants cannot meet their burden.

<u>Id</u>. at * 23.  Since Judge Thompson has already found Dr. Gundlach's analysis to be fatally flawed, this Court should disregard Dr. Gundlach's absolute disparity calculations, and opinions based thereon, contained in his supplemental (and previous) affidavit(s).

## II.    Defendants' Expert Witness Incorrectly Assumes that the Jury Administrator Made a "Discretionary Decision" to Use Less Than Ten Percent of Deferred Jurors in Certain Pools.

In his supplemental affidavit, Dr. Gundlach opines that the jury administrator made a "discretionary decision as to what percentage of previously deferred jurors [would] be included in a particular jury pool." Doc. # 392-2, at ¶ 5.  Dr. Gundlach further states that the jury administrator intentionally decided to "include nearly 10% previously deferred jurors on the Siegelman/Scrushy pool, while selecting only 2% previously deferred jurors for Pool 201060405." <u>Id</u>. at ¶ 6.  From these allegations, Dr. Gundlach contends that the jury administrator's practices "ha[ve] consistently reduced the presence of African-Americans on District-wide jury panels in the Middle District of Alabama." <u>Id</u>.  Dr. Gundlach makes these assertions about the jury administrator's intent and actions and the consequences therefrom without any factual basis to support them and absent the rigors of cross-examination.  This Court, therefore, should dismiss Dr. Gundlach's allegations and contentions in this section of his affidavit as mere speculation and conjecture.

Rather than showing that the jury administrator "impeached" her testimony before this Court on April 11, 2006, as Defendant Scrushy argues in his Amended Second Motion to Supplement and Request for Data, Doc. # 392-1, at ¶ 12, the difference in the percentage of deferred jurors in Pool 201060403 (9.667%) compared to Pool 201060405 (2.0%) demonstrates the varying quantity of

deferred jurors in the Deferred Maintenance Pool (DMP) during the early stages of the life of the 2005 QJW. As the government's expert correctly notes in his supplemental affidavit,[2] the percentage of deferred jurors was lower in Pool 201060405 than in Pool 201060403 because of the use of deferred jurors to construct Pool 201060404 – a Northern Division civil pool drawn after Pool 201060403. Doc. # 405-2, at 8. After the jury administrator filled Pool 201060404, the DMP contained an insufficient number of deferred jurors to provide more than 2% deferred jurors in Pool 201060405, even though the jury administrator maintained a 10% draw from the DMP.

Defendant Scrushy's objection that the government's expert's opinion on this issue is based on "hearsay" ignores the teaching of Fed. R. Evid. 703, which permits an expert's opinion to be based upon facts or data of "a type reasonably relied upon by experts" in this particular field (i.e., jury selection challenges). Fed. R. Evid. 703. Hearsay is not a valid basis to exclude an expert's opinion since "the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted." Id. Contrary to Defendant Scrushy's contention, Doc. # 530, at ¶ 6,[3] the source of the government's expert's information is not a subject of speculation since this Court has given each party access to the Clerk's office to obtain data throughout this lengthy litigation over Defendants' jury selection challenges. Notably, Defendant Scrushy does not challenge the accuracy of the government's expert's data. Moreover, Defendant Scrushy can scarcely complain of the lack of cross-examination of the government's expert report when he knowingly agreed to the government's filing of a counter-affidavit after he submitted Dr. Gundlach's supplemental affidavit

---

[2]Attachment A, Doc. # 405-2, to the "United States' Response to Defendants' Motions to Supplement Record in Jury Challenge Hearing," Doc. # 405-1.

[3]Defendant Scrushy's "Motion Submitting Additional Factual or Legal Arguments Regarding Expert Witnesses' Statements Filed After Close of Evidentiary Hearing."

after the close of the evidentiary hearing.  Doc. # 392-1, at ¶ 13.

### III.   Defendants' Expert Witness Incorrectly Argues that the Presence of Ten "Bleed-Over Jurors" in the 2005 QJW is a Substantial Violation of the JSSA.

Dr. Gundlach identified ten "bleed-over jurors" in the 2005 QJW from the 2001 QJW.  He claims that the presence of these ten "bleed-over jurors" demonstrates a number of errors in the selection of jury pools in the Middle District of Alabama, including "a continued pattern of systematic over-inclusion of previously deferred jurors which has the effect of reducing the number of African-Americans that are chosen to serve on District-wide jury pools."  Doc. # 392-2, at ¶ 14. The presence of these ten "bleed-over jurors" has further led Defendant Scrushy to assert that the jury administrator did not empty the 2001 QJW in "clear violation of the JSSA and the Middle District Plan."  Doc. # 392-1, at ¶ 8.  Dr. Gundlach and Defendant Scrushy are mistaken as to the cause and consequences of these ten bleed-over jurors.

Judge Thompson addressed the impact of "bleed-over jurors" in <u>Carmichael</u>.  In that case, five or six "bleed-over jurors" from the 1997 QJW were present in the 2001 QJW.  2006 WL 3754794 at * 11.  Rather than being the product of a failure of the jury administrator to empty the 1997 QJW or a consequence of a continued pattern of systematic over-inclusion of previously deferred jurors, Judge Thompson found that the presence of these "bleed-over jurors" was "the result of some error or oversight."  <u>Id</u>.  Moreover, Judge Thompson concluded that:

> [B]ecause the number of jurors improperly transferred was minuscule, and because their presence in the qualified wheel did not significantly affect the random selection of jurors for jury pools, the court finds that the error falls squarely within the category of violations that do not substantially violate the JSSA.

<u>Id</u>.

The same analysis applies to the presence of "bleed-over jurors" in this case.  Like in

Carmichael, only a "minuscule" number of 2001 QJW members (i.e., ten) was present on the 2005 QJW. Defendant Scrushy has not produced any evidence to support his claim that the jury administrator did not empty the 2001 QJW as required by the JSSA and Middle District Plan. He, therefore, once again cannot carry his burden of proof. Like in Carmichael, the presence of "bleed-over jurors" on the 2005 QJW was a result of a mere oversight, constitutes only a technical violation of the JSSA and warrants no post-conviction relief.

## IV. Defendant Scrushy's Objections to the Government's Expert's Statements are not Meritorious.

Defendant Scrushy asserts that this Court should reject certain portions of the government's expert's statement because he has impermissibly given "legal opinions." Doc. # 530, at ¶¶ 4, 5. This assertion is faulty for two reasons. First, Defendant Scrushy ignores the similar opinions given by his own expert who has repeatedly opined on whether certain actions have violated the JSSA and Middle District Jury Plan, including whether the absolute disparity of the 2001 and 2005 QJWs and individual pools drawn from those wheels has exceeded 10% in the representation of African-Americans. See, e.g., Doc. # 392-2, at ¶ 3. To the extent Defendant Scrushy is asking this Court to disregard the government's expert's "legal opinions," he is also inviting this Court to exclude significant portions of Dr. Gundlach's testimony and affidavits, especially those portions where Dr. Gundlach gives his personal opinions not based on fact or law (e.g., the jury administrator's "discretionary decision" to alter the percentage of deferred jurors drawn from the DMP).

Second, Defendant Scrushy fails to acknowledge Fed. R. Evid. 704 in complaining about the government's expert's providing a "legal opinion." Rule 704 abolished the "ultimate issue rule" by stating that an expert's opinion "is not objectionable because it embraces an ultimate issue to be

decided by the trier of fact." Fed. R. Evid. 704(a).  The government's expert <u>qua</u> expert is permitted

to opine on whether certain circumstances constitute a violation of the JSSA and Middle District

Jury Plan.  For example, under Rule 704, the government's expert may state whether the absolute

disparity is less than 10% in the representation of African-Americans on a given QJW or individual

pool.  The upshot of expert testimony is that it is admissible to the extent it "assist[s] the trier of fact

to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, even if it "embraces

an ultimate issue to be decided by the trier of fact."  Fed. R. Evid. 704.

Throughout his pleading providing additional arguments on the experts' statements, Doc. #

530, Defendant Scrushy objects to the government's expert's affidavit because it is before this Court

without having been subjected to cross-examination.  As mentioned <u>supra</u>, Defendant Scrushy, upon

filing Dr. Gundlach's supplemental affidavit after the close of the evidentiary hearing, agreed to the

government's expert's submitting a counter-affidavit because he knew that he was presenting to this

Court expert witness testimony that the government had not had the opportunity to cross-examine.

Doc. # 392-1, at ¶ 13 ("In light of the fact that the Government cannot cross-examine Dr. Gundlach's

sworn statement, Defendant has no objection if the Government submits a counter-affidavit from its

expert witness.").  The United States, in its Response to Defendants' Motions to Supplement Record

in Jury Challenge Hearing, Doc. # 405-1, which the United States incorporates by reference herein,

argued that this Court should not consider supplemental affidavits from Dr. Gundlach because, <u>inter</u>

<u>alia</u>, it unduly prejudiced the government's cross-examination rights.  <u>See</u> Doc. # 405-1, at 5-7.  Like

with his complaint about the government's expert's making a "legal opinion," to the extent

Defendant Scrushy asks this Court to disregard the government's expert's statement because of the

absence of cross-examination, he is also arguing against the admissibility of Dr. Gundlach's

statements which have never been subjected to the crucible of cross-examination.

Defendant Scrushy's additional objections to other aspects of the government's expert's statement (e.g., inclusion of data from civil jury pools, critique of Dr. Gundlach's affidavits) are equally non-meritorious. In his statement, the government's expert provides additional information and analysis to assist the trier of fact. Defendant Scrushy cannot object that this information speaks to issues about which the government expert testified since such a linkage is to be expected given that this affidavit was filed after the close of the evidentiary hearing and in response to additional issues Defendant Scrushy raised after the hearing. Defendant Scrushy has submitted supplemental and modified statements of Dr. Gundlach throughout this litigation, and the government has done nothing more than rebut these statements by having its own expert critique Dr. Gundlach's analysis and opinions.

## V.     Conclusion

Defendant Scrushy's expert's latest statement provides further evidence why this Court should deny Defendants' requests for relief based on challenges to the jury selection system for the Middle District of Alabama. In his supplemental affidavit, Dr. Gundlach continues to propagate his fatally flawed analysis to determine absolute disparity, makes personal opinions not based on fact or law, and misconstrues the cause and effect of the presence of ten "bleed-over jurors" in the 2005 QJW. Dr. Gundlach's most recent submission, therefore, advances not Defendants' jury selection challenges. Consequently, the United States respectfully asks this Court to deny Defendants' challenges and further move this case to sentencing.

Respectfully submitted this the 14th day of February, 2007.

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

Acting United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: louis.franklin@usdoj.gov

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Jennifer Garrett
Special Assistant United States Attorney
Assistant Attorney General
Office the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-8494
Fax:    (334)242-4890
Email: jgarrett@ago.state.al.us
ASB-4600-T77J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

EDWARD C. NUCCI
ACTING CHIEF, PUBLIC INTEGRITY
SECTION

/s/Richard C. Pilger
Department of Justice, Criminal Division
Public Integrity Section
10th & Constitution Ave, NW
Bond Building - 12th Floor
Washington, DC 20530
Phone: (202)514-1412
Fax:    (202)514-3003
Email: richard.pilger@usdoj.gov

/s/ Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-4839
Fax:    (334)242-4890
Email: j.fitzpatrick@ago.al.state.us

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| vs. | ) | CR. NO. 2:05-cr-119-MEF |
| | ) | |
| DON EUGENE SIEGELMAN and | ) | |
| RICHARD M. SCRUSHY | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

Louis V. Franklin, Sr.
Acting United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
louis.franklin@usdoj.gov