IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| | ) | |
| DON EUGENE SIEGELMAN | ) | |

**UNITED STATES' MOTION FOR UPWARD DEPARTURE FOR SYSTEMATIC AND PERVASIVE GOVERNMENT CORRUPTION**

COMES NOW the United States of America, by and through Louis V. Franklin, Sr., Acting United States Attorney for the Middle District of Alabama, and William M. Welch, II, Chief of the Public Integrity Section of the Criminal Division of the United States Department of Justice, and hereby moves this Court to depart upwardly in the sentence of Defendant Siegelman. The United States so moves this Court because Defendant Siegelman's criminal activity is far outside the "heartland" of cases considered by the Guidelines. In particular, Defendant Siegelman's criminal conduct was part of a systematic and pervasive corruption of the office of Governor and Lieutenant Governor, as well as various state agencies, such as the CON Board, of the State of Alabama that may cause loss of public confidence in government. To support this Motion, the United States provides as follows:

**I.    This Court Should Upwardly Depart in the Sentence of Defendant Siegelman Because His Criminal Conduct Was Part of a Systematic and Pervasive Corruption of the Office of Governor and Lieutenant Governor that Caused Loss of Public Confidence in Government.**

The United States contends that an upward departure of four levels is warranted in this case under Section 5K2.0 because Defendant Siegelman's conduct "was part of a systematic or pervasive corruption of a governmental function, process, or office that may cause loss of public confidence

in government." U.S.S.G. § 2C1.1 cmt. 5. See United States v. Milan, 304 F.3d 273, 291, 296 (3d Cir. 2002) (upholding the district court's upward departure under comment 5 to Section 2C1.7, which is identical to comment 5 to Section 2C1.1).  The evidence at trial established beyond a reasonable doubt that Defendant Siegelman executed a bribery agreement, a conspiracy, and an honest services fraud scheme that together injected corruption throughout the government of the State of Alabama as Defendant Siegelman and his co-conspirators utilized every opportunity to extract money through the use of Defendant Siegelman's political power in the Office of Governor and Lieutenant Governor of the State of Alabama.  If any public corruption case can ever meet the standard for this expressly recognized departure, and if the inclusion of that departure in the Guidelines commentary is to have any meaning at all, then this case must warrant the departure as a paradigmatic example of pervasive government corruption.

Specifically, the offense conduct reflected in Counts 4-9 establish pervasive corruption of the Office of Governor and the Alabama CON Board.  Not only did Defendant Siegelman corrupt the Office of Governor by selling Defendant Scrushy a seat for HealthSouth on the CON Board, but he also further corrupted the CON Board because he agreed to provide Defendant Scrushy with influence over the CON Board to affect the interests of HealthSouth and its competitors.  The further corruption of the CON Board included foreseeable offense conduct such as the concealed payments and employment given to Tim Adams, and the ex parte lobbying of CON Board Chairperson, Margie Sellers.

Further, the offense conduct reflected in Count 17 establishes the introduction of corruption into no less than eight further components of Alabama government.  Specifically, the evidence at trial showed that the obstruction of justice found by the jury in Count 17 was for the purpose of

concealing Defendant Siegelman's corrupt activities, including, but not limited to, his criminal relationship with Lanny Young. Defendant Siegelman's criminal conduct with Young included the Goat Hill Construction project, for which the evidence showed that Defendant Siegelman and his co-conspirators exerted corrupt influence upon the Alabama Department of Finance, the Montgomery Downtown Redevelopment Authority, the Alabama Alcohol Beverage Control Board, and the Alabama Department of Economic and Community Affairs. Defendant Siegelman further exerted corrupt influence on Young's behalf concerning Talladega Speedway legislation in the Alabama Legislature. Moreover, Defendant Siegelman and his co-conspirators exerted corrupt influence on Young's behalf at the Cherokee County Commission concerning Young's involvement with the Three Corners Landfill, at the Alabama Department of Revenue and the Alabama Department of Environmental Management concerning regulation of Young's client, Waste Management, and at the Alabama Development Office concerning the financial interests of another Young client, Bill Blount.

Defendant Siegelman's corrupt activities in this case are as, if not more, egregious than those of the defendant in United States v. Shenberg, 89 F.3d 1461 (11th Cir. 1996), where the Eleventh Circuit upheld the district court's upward departure of five levels for systematic and pervasive government corruption pursuant to comment 5 to Section 2C1.1. In Shenberg, the defendant, a circuit court judge, was convicted of a RICO conspiracy and extortion for his participation in a kick-back scheme wherein he and other judges agreed to fix cases in exchange for cash payments, and disclosed the identity of a confidential informant. Id. at 1465-69. The district court found that the defendant's "conduct caused an undermining of the system of justice in Dade County and in this country" and upwardly departed five levels under comment 5 to Section 2C1.1. Id. at 1476. In

3

particular, the trial court departed from a guideline range of a level 29 with 87-108 months imprisonment to a guideline range of level 34 with 151 to 188 months imprisonment and sentenced the defendant to the high end of 188 months. Id. at 1477.

In affirming the defendant's sentence, the Eleventh Circuit held that "the district court reasonably departed from the Sentencing Guidelines range." Id.. First, the Court ruled that the Sentencing Commission did not adequately consider systematic and pervasive government corruption resulting in a potential loss of public confidence in government in Section 2C1.1. Id. Second, the loss of public confidence in government in Dade County and throughout the United States "qualifie[d] as an aggravating circumstance" justifying an upward departure. Id. Importantly, in making this ruling, the Court noted that the government need not present proof at the sentencing hearing of the local community's sentiment toward the defendant or of the loss of confidence in government from the defendant's criminal conduct. Id. The government at trial had proved systematic and pervasive corruption by a preponderance of the evidence. Id. Moreover, comment 5 to Section 2C1.1 did not require a showing of "actual public harm," but rather only required the court to find "that the corruption 'may' cause loss of public confidence in government." Id. Importantly, the Court instructed that the trial court "can properly take judicial notice of public reaction to this case and consider it in making its decision to depart from the Sentencing Guidelines." Id. at 1477; United States v. Gutman, 95 F. Supp. 2d 1337, 1351 n.17 (S.D. Fla. 2000) ("The court may take judicial notice of public reaction to this case and consider it in making its decision to depart from the Sentencing Guidelines.") (citing Shenberg). The defendant was on notice via the government's upward departure motion that the district court was contemplating an upward departure, and he had an opportunity to comment before the court departed from the sentencing

guidelines; nothing more was required. Shenberg, 89 F.3d at 1477.

The degree and breadth of government corruption in this case is much more severe than it was in Shenberg. In this case, Defendant Siegelman stands convicted of corrupting and abusing the office of Governor of the State of Alabama, while the defendant in Shenberg was a state circuit court judge. Defendant Siegelman used his position as Governor to corrupt the Alabama Legislature and several different state agencies to effectuate his criminal schemes, while the defendant's actions in Shenberg were limited to his office as circuit court judge. The amount of loss inflicted on the citizens of Alabama, and the degree of improper benefit received, from Defendant Siegelman's criminal behavior was far greater than the amount the defendant received from the kick-back scheme in Shenberg. Certainly, the extensive and widespread press coverage about this case manifests the public's keen interest in Defendant Siegelman's criminal actions, reflects the concern the public has for his abuse of political office and power, and demonstrates the loss of public confidence in government that has resulted from his criminal conduct.

Simply stated, if an upward departure under comment 5 to Section 2C1.1 was "reasonable" according to the Eleventh Circuit in Shenberg, then an equivalent or greater upward departure in this case would certainly be merited, warranted, justified, and upheld on appeal. See id. ("We therefore find that a departure based on systematic corruption and massive loss of public confidence furthers the objectives of the guidelines."); United States v. Reyes, 239 F.3d 722, 744-46 (5th Cir. 2001) (upholding district court's upward departure under comment 5 to Section 2C1.1 because the role of the defendant, a city councilman, as an organizer/leader demonstrated that the corruption was "systematic, pervasive, or both" and the widespread media coverage of the case showed the potential loss of public confidence in government from the defendant's criminal actions); Gutman, 95 F. Supp.

5

2d at 1351-52 (sentencing the defendant to the statutory maximum because "[w]hen [callous disregard of the public trust] occurs in such a systematic and pervasive manner, it is incumbent upon the sentencing court to . . . consider further, and apply, the basis purposes of criminal punishment, namely just punishment and deterrence. For deterrence purposes, the punishment should be clear enough to discourage similar reprehensible actions from those who are inclined to disregard their fundamental responsibilities to the public who empowered them."); United States v. Paulus, 331 F. Supp. 2d 727, 733-38 (E.D. Wis. 2004) (applying a six level upward departure under comment 5 to Section 2C1.1 where the defendant, the elected county district attorney, accepted multiple bribes over a two-year period) (citing Shenberg).

## II.  Conclusion.

If any case can ever qualify for a departure to account for systematic and pervasive corruption, this is that case given the tremendously harmful effect upon public perception of and confidence in Alabama state government resulting from Defendant Siegelman's criminal behavior. The offense conduct in this case demonstrates a sweeping corruption of Alabama State government at all levels, and particularly of the Office of Governor and Lieutenant Governor, and justifies an upward departure of four levels from the Guidelines range.

Respectfully submitted this the 25th day of May, 2007.

| | |
|---|---|
| LOUIS V. FRANKLIN, SR.<br>ACTING UNITED STATES ATTORNEY | WILLIAM M. WELCH, II<br>CHIEF, PUBLIC INTEGRITY SECTION |

/s/ Louis V. Franklin, Sr.
Acting United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: louis.franklin@usdoj.gov

/s/ J.B. Perrine
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7135
Email: jb.perrine@usdoj.gov
ASB-9077-E31J

/s/ Stephen P. Feaga
Assistant United States Attorney
One Court Square, Suite 201
Montgomery, AL 36104
Phone: (334)223-7280
Fax:    (334)223-7560
Email: steve.feaga@usdoj.gov
ASB-7374A60S

/s/ Joseph L. Fitzpatrick, Jr.
Special Assistant United States Attorney
Assistant Attorney General
Office of the Attorney General
11 S. Union
Montgomery, AL 36130
Phone: (334)353-4839
Fax:    (334)242-4890
Email: j.fitzpatrick@ago.al.state.us

/s/Richard C. Pilger
Department of Justice, Criminal Division
Public Integrity Section
10th & Constitution Ave, NW
Bond Building - 12th Floor
Washington, DC 20530
Phone: (202)514-1412
Fax:    (202)514-3003
Email: richard.pilger@usdoj.gov

IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:05-CR-119-MEF |
| | ) | |
| DON EUGENE SIEGELMAN | ) | |
| | ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

Respectfully submitted,

LOUIS V. FRANKLIN, SR.
ACTING UNITED STATES ATTORNEY

/s/ Louis V. Franklin, Sr.
LOUIS V. FRANKLIN, SR.
Acting United States Attorney
Post Office Box 197
Montgomery, Alabama 36101-0197
(334) 223-7280
(334) 223-7135 fax
louis.franklin@usdoj.gov