# EXHIBIT 7

LAW OFFICES
## KAUFMAN & ROTHFEDER
A PROFESSIONAL CORPORATION

SAMUEL KAUFMAN
ALAN E. ROTHFEDER
JO KAREN PARR
THOMAS R. DeBRAY
RICHARDSON B. McKENZIE, III
ROBERT E. L. GILPIN
GEORGE W. THOMAS
JOHN WARD WEISS
ROBERT M. RITCHEY
SIMEON F. PENTON
WILLIAM B. SELLERS*
J. SCOTT PIERCE
CARLA R. COLE

ALLANT CENTER
2740 ZELDA ROAD
MONTGOMERY, ALABAMA 36106

MAILING ADDRESS:
P.O. DRAWER 4540
ZIP 36103-4540

AREA CODE 334
TELEPHONE 244-1111

FAX (334) 244-1969

*ALSO ADMITTED TO
DC BAR



March 26, 1997

**VIA U.S. MAIL AND HAND DELIVERY**
Wade Hope, Esq.
Office of General Counsel
State of Alabama Department of Revenue
Montgomery, Alabama

    Re: Treated Waste at the Chemical Waste Management Facility at Emelle, Alabama ("Emelle Facility")

Dear Wade:

    At our last meeting you requested information regarding the amount of waste received at the Emelle Facility which is being treated and transshipped to a Subtitle D facilities. You also requested that we provide information regarding the status of the "guarantee" amount being paid to Sumter County.

    I have enclosed our proposed draft Alabama Revenue Department Ruling for your review. As we have discussed, the Emelle Facility receives different types of waste for treatment and disposal. Those types of waste are referenced at §22-30b-2 (c) Code of Alabama 1975. As you know, the amount of fee imposed on the Emelle Facility depends on the type of waste that is disposed of at Emelle. Section 22-30b-2 (c)(1) imposes a base fee of $41.60 per ton (total $51.00 per ton) on all hazardous wastes that is identified or listed under §3001 of the Resource Conservation and Recovery Act of 1976 as amended ("RCRA"). RCRA waste is identified by codes which are established through EPA regulations and which have been adopted by the Alabama Department of Environmental Management ("ADEM").

    As we noted in our draft proposed Alabama Revenue Department Ruling, EPA imposed Land Ban Regulations which requires that the Emelle Facility treat hazardous waste through stabilization by treating the waste with measured mixtures of portland cement, ferrous sulfate, ferric sulfate, cement kiln dust, and various other or exotic reagents. As a result of the Land Ban Regulations which became effective December 19, 1994, the Emelle Facility must stabilize all such RCRA waste prior to disposal. The lower "all other waste" fee of $11.60 (total $21.00 per ton with all local and other fees included) imposed by §22-30b-2(c)(4)" is levied on hazardous waste which is treated in accordance with the Land Ban Regulations outside the gates of the Emelle Facility. However, at the present time, if the same waste is treated inside the Emelle Facility in an identical


DEFENDANT'S EXHIBIT

KAUFMAN & ROTHFEDER

March 26, 1997
Page 2

fashion, and disposed of at Emelle, the fee is elevated to $41.60 per ton (total $51.00 per ton). The higher fee is imposed solely because of where the waste is treated, i.e., inside the Emelle Facility plant gates.

As a result of the Land Ban Regulations imposed by EPA and adopted by ADEM, certain hazardous wastes are required to be rendered non-hazardous prior to disposal for the purpose of the hazardous waste tax/fee. The resulting waste no longer meets the definition of the term "hazardous waste" but rather falls within the category of "all other waste" referenced in §22-30b-2(c)(4) Code of Alabama 1975 and is subject to a fee of $11.60 per ton (total $21.00). Further, such wastes are eligible for disposal at any Subtitle "D" facility. In fact this practice is the accepted form of disposal throughout the State of Alabama in municipal or private Subtitle "D" landfills. No tax or fee is imposed on such non hazardous treated waste which is disposed in a Subtitle "D" facility.

In calender year 1996 the total volume of waste received at Emelle for treatment under the Land Ban Regulations was 32,136 tons. Of this total, 24,014 tons are what is referred to as "characteristic waste" which carry "D" codes. The remaining 8,122 tons of waste received for treatment at the Emelle Facility are what is referred to as "listed waste" which carry F006, F019, and K061 codes.

Of the 24,014 tons of characteristic waste, 9,312 tons were treated at the Emelle Facility and transshipped to a Subtitle "D" facility. The impact of the transshipment of the characteristic waste was a loss of $474,912.00 in tax revenues to the State of Alabama and Sumter County. ($51.00 per ton X 9,312 tons = $474,912.00). If the 9,312 tons that were transshipped had been taxed at the $21.00 per ton level (i.e. the "other waste" fee of $11.60 per ton imposed by §22-30b-2(c)(4) together with the other fees imposed by the section) the State of Alabama and Sumter County would have realized $195,552.00 in revenue ($21.00 per ton X 9,312 tons = $195,552.00). Of the 24,014 tons of characteristic waste treated at Emelle, 14,702 tons were land filled at Emelle. If this waste had been treated and transshipped to a Subtitle "D" facility, the State of Alabama and Sumter County would lose an additional $749,802.00.

The 14,702 tons of characteristic waste treated at the landfill at Emelle netted the State of Alabama and Sumter County (at $51.00 per ton) $749,802.00 in 1996. If all of the 24,014 tons of characteristic waste were treated and land filled at Emelle at the lower rate of a total of $21.00 per ton tax, the net to the State of Alabama and Sumter County would be $504,294.00.

The management of CWM may determine that if the State of Alabama does not allow the imposition of the lower rate, all, or a substantial majority, of characteristic waste received at the Emelle Facility will be treated and transshipped to Subtitle "D" facilities. If that policy had been in place in the calendar year 1996 the potential loss of revenue to the State of Alabama and Sumter County at the $51.00 per ton rate would have been $1,071,714.00 ($51.00 per ton X 24,014 tons

KAUFMAN & ROTHFEDER

March 26, 1997
Page 3

= $1,071,714.00). The potential loss to the State of Alabama in calendar year 1996 under the lower tax rate would be $504,294.00. ($21.00 per ton X 24,014 tons = $504,294.00). Put another way, our proposal allow the state and Sumter County to collect $21.00 a ton on waste which can be legally disposed elsewhere for no fee in any licenses facility other than the Emelle Facility. It is important to note that CWM began transshipments slowly during calendar year 1996 solely due to the tax and the necessity to stay price competitive. Again, we project t' t in calendar year 1997 all or a substantial majority of this waste will go to a Subtitle "D" landfill without the requested tax adjustments.

As noted above, there were 8,122 tons of treated listed waste disposed of at the Emelle Facility. The State of Alabama received $414,222.00 at the $51.00 per ton level for the treated listed waste ($51.00 per ton X 8,122 tons = $414,222.00). Had the lower amount of $21.00 per ton been imposed, the State would have received $170,562.00 ($21.00 per ton X 8,122 tons = $170,562.00) which is $243,660.00 less than the State received at the $51.00 per ton level in 1996. However, again, it is the decision of management to treat and tranship all of that waste if the tax relief being sought is not granted. That would result in a loss to the State of $414,222.00 for treated listed waste.

Management projects, however, that if the tax on treated listed waste were reduced to $21.00 a ton, we could triple our volume with K061 waste alone therefore generating a substantial increase in tax revenue for listed hazardous waste. This is due in part to the fact that a major generator of waste located in Tuscaloosa (only 60 miles from the Emelle Facility) is presently shipping approximately 40,000 tons of K061 waste per year to Ohio. We believe that we could attract all of that waste at the lower $21.00 per ton fee.

If the Emelle Facility does not receive the proposed tax relief and the Facility treats and tranships 20,000 to 24,000 tons of waste to a Subtitle "D" facility in calendar year 1997, the State will be required to subsidize all of that tax revenue lost for Sumter County. During the most recent calendar year we believe that the State of Alabama lost $195,552.00 in potential revenue (9,312 tons treated and transshipped times $21.00 per ton tax) by not recognizing treated characteristic waste at the lower tax level. Further, and more importantly for 1997 and beyond, the State will lose all of the revenue now being generated by treated characteristic waste being disposed at Emelle. All of the loss of that revenue will result in the State having to subsidize the $4.2 million dollar payment to Sumter County at a higher level.

Management projects a 1997 total tonnage of 240,000 tons at the Emelle Facility operating under the present tax structure. (Please note that these are projections based on past experience - the actual tonnage may fluctuate according to market conditions and other factors). Should the Emelle Facility dispose of only 240,000 tons during calendar year 1997 the State will owe approximately $1,944,000.00 to Sumter County under the guarantee. We have calculated this figure

KAUFMAN & ROTHFEDER

March 26, 1997
Page 4

by assuming a 446,800 ton break even point minus 240,000 tons actually disposed equals 206,808 tons times approximately $9.40 per ton to Sumter County equal $1,944,000.00. However, management projects that we could increase "D" waste shipments by a factor of 15% in 1997 if we are able to obtain the tax relief being sought. In 1998 that amount could increase by as much as 30%.

The projections above do not take into account upcoming disposal opportunities as a result of the clean-up of the ILLCO in Leeds Alabama. I am involved on behalf of another client in that clean-up and their may be as much as 50,000 tons of excavated soil which will require disposal. That excavation may begin in late 1997 or early 1998. However, under the present tax structure, that waste would carry a $51.00 per ton fee making it virtually impossible for the Emelle Facility to compete for that work. If that waste could be treated and taxed at $21.00 per ton, management believes strongly that due to the proximity of the clean-up site with the Emelle Facility that the ILLCO waste will come to Emelle. An additional 50,000 tons form ILLCO at $21.00 per ton would result in an additional $1,050.00.00 in new revenue.

The enclosed chart will summarize the potential loss and gain to the state based upon the scenarios outlined above. I will be happy to have a representative of the Emelle Facility available to discuss these matters with you and Floyd Atkins at your earliest convenience. In the meantime, should you have any questions or comments please do not hesitate to call.

Sincerely,

KAUFMAN & ROTHFEDER, P.C.

Thomas R. DeBray

TRD:aml

cc: Johnny Crawford
    Roger Henson

S:\TdeBray\hope.ltr

## POTENTIAL LOSS TO STATE

32,136 tons characteristic and listed waste transshipped to Subtitle "D" facility (CY 1996 figures)
x $51 per ton
$1,638,936

32,136 tons characteristic and listed waste transshipped to Subtitle "D" facility (CY 1996 figures)
x $21 per ton
$674,856.00

## POTENTIAL GAIN TO STATE IF TAX ADJUSTMENT IS APPROVED

24,014 tons characteristic waste (CY 1996 figures)
+ 15% projected increase
27,616 tons
+40,000 tons projected from Tuscaloosa customer
67,616 tons projected in CY 1997
x $21 per ton
$1,419,938 fees on characteristic waste CY 1997
- $1,071,714 fees paid to State on characteristic waste CY 1996
$348,224