# EXHIBIT 8



Direct Dial: 205-250-9237
chrazeal@walstonwells.com

June 21, 1999

James P. Hayes, Jr.
Commissioner
Alabama Department of Revenue
P. O. Box 320001
Montgomery, AL 36132-0001

Re:    Petition for refund of overpayment of fees for disposal of waste at Chemical
Waste Management's Emelle, Alabama facility and request for a revenue
ruling regarding same.

Dear Mr. Hayes:

## PETITION FOR REFUND UNDER ALABAMA TAXPAYERS' BILL OF RIGHTS

Pursuant to Alabama Code §40-2A-7(c)(1), and Alabama Administrative Code §810-14-1-18, Chemical Waste Management, Inc. ("CWM"), hereby petitions the Alabama Department of Revenue for a refund of certain taxes which were charged, and paid, erroneously and provides the following relevant information in support of its petition.

Petitioner:        Chemical Waste Management, Inc.
                   P.O. Box 55
                   Emelle, Alabama 35459

FEIN:

Type of tax:       Tax on Operators of Commercial Hazardous Waste Disposal Sites

Tax years:         1996, 1997, 1998

Refund amount:     $4.622 million



FACTS AND ANALYSIS

CWM has been paying a higher fee than is required by Alabama Code § 22-30B-2 ("Fee Act") on at least three categories of waste received at its Emelle facility ("Emelle"). The three categories of waste for which excessive fees have been paid are (1) certain PCB wastes disposed of subsequent to August 28, 1998, (2) class "D" metals received for treatment under federal mandates found in the Resource Conservation and Recovery Act ("RCRA"), rendered non-hazardous at the Emelle site, and thereafter disposed of at that facility, and (3) "special waste," which can be disposed at any Subtitle D site in the State. CWM has been erroneously paying § 22-30B-2 (c) (1)'s higher fee of $51.00 per ton on waste types (1) and (2) when the plain language of the Fee Act mandates only § 22-30B-2 (c)(4)'s fee of $21.00 per ton for these types of non-hazardous wastes. Accordingly, CWM demands a refund of $2.025 million, for excessive fees paid for the disposal of decharacterized waste since July 1, 1996. In addition, the $21.00 per ton fee on non-hazardous waste dumped at Emelle violates the equal protection clauses of the U.S. and Alabama Constitutions. A refund based upon the unconstitutionality of the $21.00 per ton fee would amount to $2.597 million.

CWM's right to a refund, explained below, is authorized by the Alabama Taxpayers' Bill of Rights, and amply supported by Alabama caselaw. *Alabama Code (1975) § 40-2A-7; Williams v. Hank's Ambulance Service, Inc.*, 699 So. 2d 1230 (Ala. 1997); *State of Alabama v. Union Oil Company of California*, 686 So. 2d 284 (Ala. Civ. App. 1996); *State Board of Administration v. Roquemore*, 117 So. 757 (Ala. 1928); *Curry v. Woodstock Slag Corporation*, 6 So.2d 479 (Ala. 1942). As the Alabama Supreme Court stated in *Roquemore, supra*:

> It is manifestly fitting and proper that in order to maintain orderly government, each taxpayer is required to furnish his fair share of the State's revenue–its life blood. Of no man is one drop in excess of his share required. The citizen is required to render unto Caesar those things which are Caesar's but not to make further obeisance.
>
> It is harsh and unjust for the State to withhold overpayments made through mistake by the over-conscientious taxpayer. When the Legislature of Alabama enacted Section 913 [currently § 40-2A-7], supra, they thereby created the machinery for the satisfaction of the **State's moral duty to refund taxes erroneously paid.** [emphasis supplied]

*Id.* at 758.

James P. Hayes, Jr.
June 24, 1999
Page 3

## Current Fees Required Under the Fee Act

The Fee Act imposes different fees based upon the type of waste disposed at Emelle. The pertinent subdivisions of the Fee Act are:

Under § 22-30B-2(c)(1), a base fee of $41.60 per ton is imposed upon all hazardous waste identified or listed under Section 3001 of RCRA and on polycholorinated biphenyl ("PCB") wastes received for disposal which are required to be disposed of in a chemical waste landfill approved under the Federal Toxic Substance Control Act (TSCA).

Under § 22-30B-2(c)(4), a fee of $11.60 per ton is imposed upon all other waste not referenced in subdivisions (c) (1) through (3) disposed at a commercial site for the disposal of hazardous waste and hazardous substances. *Alabama Code (975)§22-30B-2.* [emphasis supplied]

CWM has been paying $51.00 per ton on the PCB wastes and on decharacterized "D" metals under subdivision one ($41.60 base fee found in § 22-30B-2 (c)(1) plus additional fees of $9.40) and $21.00 on "special waste" ( $11.60 required by § 22-30B-2 (c) (4) plus additional fees of $9.40)

## PCB Waste Under the New Federal "Mega Rule"

The Environmental Protection Agency has amended its rules under TSCA to provide more flexibility in dealing with PCB wastes in 40 CFR §§ 750 and 761. Dubbed the "Mega Rule," this extensive amendment changes the requirements regarding the use and disposal of PCB wastes. Prior to the Mega Rule, all PCB wastes were required to be disposed of at a hazardous waste landfill. Under the new rules, most PCB wastes now may be disposed of at any subtitle D facility. Accordingly, these PCB wastes no longer fall under the plain language of subsection (c)(1), because they are no longer are required to be disposed of in a TSCA - approved chemical waste landfill. Instead, they now fall within subsection (c) (4)'s "all other waste" category and should be taxed at the lower rate of $21.00 per ton.

CWM has not kept track of the amount of "Mega Rule" PCBs which it has disposed since the enactment of the Waste Rule. Accordingly, CWM seeks no refund with respect to these PCBs but rather seeks a declaratory ruling that the wastes are subject to the fee imposed under § 22-30B-2 (c)(4), rather than subsection (c)(1).

James P. Hayes, Jr.
June 24, 1999
Page 4

### Decharacterized Metals or "D" Wastes

CWM also is due a refund for fees paid in excess of that required under the Fee Act for the disposal of decharacterized metals or treated "D" waste under RCRA. In December of 1994, the EPA's "Land Ban Regulations" under RCRA came into effect requiring these wastes to be treated and rendered non-hazardous prior to disposal. ADEM has adopted these requirements, and CWM treats this class of wastes at its facility accordingly. Once treated, these metals are no longer hazardous as defined by RCRA or ADEM and can be disposed of at any subtitle D landfill. In short, the treated decharacterized metals clearly fall within the Fee Act's category of "all other wastes" under subsection (c)(4).

Alabama Code § 22-30-10(d) provides that ADEM, in developing its criteria for hazardous waste management in the state, must consider action taken by contiguous states and the federal government for the development and approval of uniform criteria. Subsection (e) further states that ADEM "shall exclude from regulation under this act such solid wastes and processes producing solid wastes as are excluded from regulation by the RCRA or the regulations promulgated under authority of the RCRA." Since Alabama's Hazardous Waste Act expressly requires consistency with RCRA, and because these treated or decharacterized wastes are no longer hazardous under RCRA when treated, they cannot be considered to fall within the higher fee category of the Fee Act. Since July 1, 1996, CWM has disposed of 67,300 tons of these treated decharacterized metals at its Emelle facility and paid the $51.00 per ton fee rather than the appropriate $21.00 per ton fee. Accordingly, CWM is due a refund from the department of $2,025.

### Constitutional Problems with the Fee Act

In addition to the wrong fee being assessed (the $51.00 v. the $21.00 fee), the Fee Act itself is unconstitutional both on its face and as applied to the CWM facility. The $21.00 per ton fee imposed on "all other wastes" at a commercial hazardous waste site pursuant to (c)(4) violates the equal protection clauses of both the state and federal constitutions. By imposing a fee on the owner of a commercial hazardous waste site for non-hazardous waste disposed there while not simultaneously imposing a fee on the owner of a non-hazardous waste landfill for the disposal of the identical type of waste, the State has denied CWM the equal protection of the laws. The exercise of a states' taxing powers is subject to the restrictions of both state and federal equal protection clauses and a state cannot impose upon members of a particular class a burden which is not shared by other members of that class. While a state has broad powers to impose and collect taxes and may divide different kinds of property into classes and assign to them a different tax burden, it must have

James P. Hayes, Jr.
June 24, 1999
Page 5

a rational basis for the classifications. *Allied Stores of Ohio v. Bowers*, 358 U.S. 522 (1959). The inquiry under the equal protection clause is the "rational basis test" which asks: 1) whether the classification furthers a proper governmental purpose, and 2) whether the classification is rationally related to that purpose. *Gideon v. Alabama State Ethics Commission*, 379 So. 2d 570 (Ala. 1980)

The Alabama legislature explicitly declared its purpose under the Fee Act in § 22-30B-1.1(6) which states:

> Because all waste and substances disposed at commercial sites for the disposal of hazardous waste and hazardous substances, whether or not such waste and substances are herein defined as hazardous, contribute to the continuing problems created for the state [these problems, set out in § 22-30B-1.1 (3), being "the existence of hazardous waste disposal activities in the state"] and because state and federal definitions of "hazardous waste" have regularly changed and are likely to change in the future to include waste not previously defined as hazardous, it is necessary that all waste and substances disposed of at a commercial site for the disposal of hazardous waste or hazardous substances be included within the requirements of this act.

The United States Supreme Court has held that a statutes' expressed purpose must pass muster under the equal protection clause. Once the legislature declares the statutory purpose, there is no room to conceive of any other rational basis for its existence. *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522 (1959). Accordingly, the Fee Act's bald statement that "all waste, including non-hazardous waste, contributes to the continuing problem of the disposal of hazardous waste in Alabama," must be grounded in fact and reason in order for the clearly discriminatory fee to survive constitutional analysis.

To assume that the disposal of non-hazardous waste "contributes to the continuing problems" of hazardous waste disposal activities is arbitrary and not grounded in fact. To go further and suggest that the disposal of non-hazardous waste at a highly secure, highly regulated commercial hazardous waste disposal site causes more problems for the state than does disposing the very same waste at a less secure Subtitle D facility flouts reason and common sense. The Fee Act's imposition of fees for non-hazardous waste on commercial sites and not on other disposal sites is not rationally related to its expressed purpose. The classification is illusory and cannot be sustained. *Society of the Plastics Industry, Inc. v. City of New York*, 326 NYS 2d 788 (1971).

In *Society of the Plastics Industry*, the statute imposing a tax upon the sale of containers made out of plastic but not those made out of other materials was held to be an unreasonable and

James P. Hayes, Jr.
June 24, 1999
Page 6

arbitrary discrimination and violative of equal protection provisions of both the State and Federal Constitutions. New York's argument that the classification was a reasonable classification to promote recycling and to reduce the cost of solid waste disposal failed. The Court held that the discrimination "did not rest upon any ground of difference having any relation to the objective of the legislation." Expert testimony showed that the desirability of biodegradable waste for landfills is at best arguable, that some of the non-plastic containers were not biodegradable anyway, and that the law did not promote the recycling of non-plastic containers and might even lead to an increase of such containers in use.

The Alabama Supreme Court has similarly struck down a sales tax assessment by this Department on the grounds that it was arbitrary, unreasonable, and unconstitutional. In *State of Alabama v. Blount Brothers Corporation*, 172, So. 2d 389 (Ala. 1965), the trial court found that the State's tax upon a highway contractor using asphalt on the job without a similar assessment upon a highway contractor using concrete violated the equal protection clause of the State and Federal Constitutions, and the Alabama Supreme Court affirmed. Under this case, the assessment of a fee against CWM for the disposal of not merely similar, as in *Blount Bros.*, but the very same type of waste disposed of without assessment at other facilities, is clearly arbitrary, unreasonable and unconstitutional. *See, also, Department of Revenue v. Amrep Corporation*, 358 So. 2d 1343 (Fla.1978) (Unequal tax treatment of identical receivables based solely on the residence of a corporation violated equal protection); *Merchants Refrigerating Co. v. Taylor*, 9 N.E. 2d 799 (N.Y. Ct. App. 1937) (tax on storage receipts of refrigerated warehouses but not general warehouses held unconstitutionally arbitrary discrimination, which bore no fair and substantial relation to the object of the legislation so that all persons similarly circumstanced should be treated alike.)

If challenged on equal protection grounds, the Fee Act's imposition of the $21.00 fee on "all other waste" would fail. When a taxing authority is found to have imposed an impermissibly discriminatory tax under the equal protection clause, it is obligated to award retroactive relief. *McKesson Corp. v. Division of Alcoholic Beverages and Tobacco, Department of Business Regulation of Florida*, 496 U.S. 18 (1990); *Tax Appeal of County of Maui v. KM Hawaii, Inc*, 915 P.2d 1349 (1996). The relief required may be in the form of a refund of the difference between the tax paid and the tax that would have been paid had it been assessed in the same manner as others in its class. *Tax Appeal of County of Maui, supra.* Accordingly, CWM would be entitled to a refund or other retroactive relief for the entire sum of fees assessed under §22-30B-2 (c) (4) from July 1, 1996, for a total of $2.597 million.

Conclusion

James P. Hayes, Jr.
June 24, 1999
Page 7

Based upon the plain language of the statute, CWM is owed a refund of $2.025 million for the treated "D" metals; and, based upon the equal protection clause, CWM is owed an additional sum of $2.597 million for the treated "D" metals and the "special waste." In addition, since CWM has not kept records in the past of the amounts disposed of the "Mega Rule" PCBs, CWM is making no claim for refund as to these, but is seeking a declaratory ruling that such PCBs should not be taxed or, at the very least, should not be taxed at the $51.00 per ton rate. To the extent that any further information is required or desired to assess this petition for tax refund, please contact the undersigned.

Very truly yours,

C. Ellis Brazeal III

205 - 251 - 2022

CEBIII/jb