# EXHIBIT 11

LAW OFFICES OF
# DAVID CROMWELL JOHNSON & ASSOCIATES
2101 FOURTH AVENUE SOUTH, SUITE 200
BIRMINGHAM, ALABAMA 35233-2029
(205) 327-5700     (205) 327-5773 FAX
E-MAIL: DCJ@DCJLAW.COM
WEBSITE: WWW.LAWYERS.COM/DAVIDCROMWELLJOHNSON

DAVID CROMWELL JOHNSON
BRETT M. BLOOMSTON
JULIE KATZ CALLAWAY
CHRISTOPHER B. PARKERSON*
HUBERT G. TAYLOR

BARRY REED TUGGLE
(1967 - 1997)

* ALSO LICENSED TO PRACTICE IN ARKANSAS

March 25, 2002

The Honorable Larry D. Thompson
Deputy Attorney General
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

The Honorable Kenneth L. Wainstein
Director, EOUSA
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

I represent the Governor of Alabama, Don Siegelman. On behalf of my client, I respectfully ask that Leura Garrett Canary, the United State Attorney for the Middle District of Alabama, be removed from any role in the investigation of Governor Siegelman or any member of his administration because of her fatal and inescapable conflict of interest. As detailed below, based on federal law and the indisputable facts, Mrs. Canary's continued involvement in this matter causes serious financial, personal and political conflicts of interest.

Federal laws and regulations concerning executive branch employees generally, and Department of Justice employees in particular, are designed not just to prevent an actual conflict, but also to ensure that there is no appearance of a conflict. It should go without saying that a prosecutor should not participate in a matter where she has a personal interest in the outcome. The United States Supreme Court has stated that "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 249-50 (1980); *see also Young v. U.S. ex rel.*

The Honorable Larry D. Thompson
The Honorable Kenneth L. Wainstein
Page 2
March 25, 2002

*Vuitton et Fils S.A.*, 481 U.S. 787, 803-04 (1987)[1]; *U.S. v. Heldt*, 668 F.2d 1238, 1275 (D.C. Cir. 1981) ("It is of course improper for a prosecutor to participate in a case when he has a pecuniary interest in the outcome.").

The United States Code is even more specific on this matter. 28 U.S.C. § 528. Section 528 is very clear and directly applicable to the facts involved here. It provides:

> §528. Disqualification of officers and employees of the Department of Justice.
>
> The Attorney General shall promulgate rules and regulations which require the disqualification of any officer or employee of the Department of Justice, <u>including a United States Attorney</u> or a member of such attorney's staff, from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, <u>or the appearance thereof</u>. Such rules and regulations may provide that a willful violation of any provision thereof shall result in removal from office. (emphasis added).[2]

28 U.S.C. § 528.

Pursuant to section 528 of Title 28, the Attorney General promulgated regulations, set forth at 28 C.F.R. 45.2. According to that regulation,

> § 45.2. Disqualification arising from personal or political relationship.
>
> Unless authorized under paragraph (b) of this section, no employee shall participate in a criminal investigation or prosecution if he has a personal or political relationship with:
>
> . . .

---

[1] "[The] distinctive role of the prosecutor is expressed in Ethical Consideration (EC) 7-13 of Canon 7 of the American Bar Association (ABA) Model Code of Professional Responsibility (1982): 'The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict.' <u>Because of this unique responsibility, federal prosecutors are prohibited from representing the Government in any matter in which they, their family, or their business associates have any interest.</u> 18 U.S.C. § 208(a). Furthermore, the Justice Department has applied to its attorneys the ABA Model Code of Professional Responsibility, 28 CFR § 45.735-1(o) (1986), which contains numerous provisions relating to conflicts of interest." (emphasis added).

[2] The 7th Circuit Court of Appeals has characterized 28 U.S.C. § 528 as the "federal statute disqualifying a federal prosecutor from participating in an investigation or litigation in which he or she has a personal, financial, or political interest, or appearance thereof. . ." *In the matter of Grand Jury Subpoena of Rochon*, 873 F.2d 170, 175 (7th Cir. 1989).

The Honorable Larry D. Thompson
The Honorable Kenneth L. Wainstein
Page 3
March 25, 2002

>Any person or organization which he knows has a specific and substantial interest that would be directly affected by the outcome of the investigation or prosecution.

28 C.F.R. 45.2.

The United States Attorney's Manual (3.2-170) requires the recusal of a Prosecutor not only where they have "a personal interest in the outcome" of a matter, but "for other good cause." "Good cause" necessarily includes not just a financial interest, but also the need to assure the public of the integrity and neutrality of the U.S. Attorney. Indeed, the commitment of the Department of Justice to the importance of public perceptions of the manner in which Justice is administered is set forth in the strongest terms where every prosecutor is advised to remove themselves on their own initiative "where there is the appearance of a conflict of interest." Further, the Department of Justice, as a part of the Executive Branch, is bound to observe all ethical requirements set forth in 5 CFR 2635.101, including not using public office for private gain, and avoiding "any action creating the appearance" of a violation of ethical standards.

Finally, the United States Code makes it a criminal act for an officer or employee of the executive branch to participate personally and substantially through, *inter alia*, an investigation in a judicial or other proceeding, or other matter in which he or his spouse has a financial interest. 18 U.S.C. § 208(a). See *U.S. v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (government employee may not participate in a matter in which spouse has a financial interest).

Mrs. Canary's conflict of interest in this matter is the result of the work that her husband, William J. "Bill" Canary, does and the business that he is in. Mr. Canary is a well-known, longtime successful Republican political consultant. While that, standing alone, might not create a conflict of interest for Mrs. Canary, Mr. Canary's documented financial ties with the direct political opponents of Governor Siegelman make it imperative that Mrs. Canary be removed from this matter.

Campaign disclosure forms filed by Steve Windom clearly demonstrate that Mrs. Canary and her husband have received direct financial gain from one of Governor Siegelman's gubernatorial opponents. Mr. Canary has served as a political consultant for Steve Windom, who is currently running for Governor against Don Siegelman. Bill Canary is currently working as a political consultant for Bill Pryor, the State Attorney General, Mrs. Canary's ally in this joint investigation and a candidate for reelection this year. Moreover, Mr. Canary and the companies he operates have been are heavily involved financially in the campaigns of both Lt. Governor Windom and Attorney General Pryor.

The Honorable Larry D. Thompson
The Honorable Kenneth L. Wainstein
Page 4
March 25, 2002

Mr. Canary operates both William J. Canary & Company, Inc., and the Capitol Group LLC. William J. Canary & Company, Inc. is a Montgomery-based consulting firm, for which Mr. Canary serves as president. The firm was incorporated May 1, 1995 in Montgomery County.[3] Capitol Group LLC is a partnership between William J. Canary & Company, Inc., and the McWhorter Group.[4] According to corporate records available from the Secretary of State, The McWhorter Group, William J. Canary & Company, Inc., and The Capitol Group, LLC all list Suite 368 of the RSA Union Building in Montgomery, Alabama as their address.

Records available from the Alabama Secretary of State's Office show the following:

- Bill Canary was paid $8,000 last year by Lt. Governor Windom's campaign when Canary served as a consultant to the campaign.
- Public records and filings indicate that since 1999, Steve Windom has paid William J. Canary $38,022 for polling and consulting.
- According to Lt. Governor Windom's 2001 campaign finance forms, Steve Windom's campaign fund made four separate $2,000 payments to William J. Canary & Company, Inc. for "Consulting and Polling" on January 3, January 11, March 27 and May 1, 2001.

In 2000, Windom made ten separate $2,000 payments and one $4,022 payment to campaign "consultant" William J. Canary & Company, Inc.

In 1999, Windom's campaign made three $2,000 payments to campaign "consultant" William J. Canary.[5]

- Mr. Canary's business partner in Capitol Group LLC, Patrick McWhorter, has given Lt. Governor Windom's gubernatorial campaign $150,000 in PAC and personal donations.
- According to Windom's 2001 annual disclosure form, Patrick McWhorter's PAC's donated $149,000 to Windom last year, as follows:
    - FOR PAC gave $27,000;
    - GOV PAC gave $27,500;
    - INS PAC gave $34,500;

---

[3] Records concerning the incorporation of William J. Canary & Co. are available from the Alabama Secretary of State's Office at www.sos.state.al.us.

[4] According to the Alabama Ethics Commission, Patrick McWhorter, who operates The McWhorter Group, is the registered lobbyist for, among others, The Williams Companies, Anheuser-Busch, Assurant Group, Nationwide Insurance Enterprise, Primerica Financial Services Home Mortgages, Liberty Mutual, National Association of Independent Insurers, and Gulfstream Natural Gas Systems. These records are available from the Alabama Ethics Commission, (334)242-2997.

[5] Steve Windom, 2001 Annual "Fair Campaign Practices Act" Disclosure, Form 5: Expenditures, page 42, line 4-7; Windom Victory Fund, Expenditures, 1999-2000, Alabama Secretary of State.

The Honorable Larry D. Thompson
The Honorable Kenneth L. Wainstein
Page 5
March 25, 2002

- MC PAC gave $33,500; and
- MUST PAC gave $26,500.

On July 24, 2001, McWhorter personally donated $1000 to Windom's campaign fund.[6]

Mr. Canary also has political ties to Governor Siegelman's other potential Republican opponent, Representative Bob Riley. Since 2000, Canary has served as American Trucking Associations' ("ATA") Executive Vice President for State, Federation and Intergovernmental Affairs, and has served as the organization's chief political analyst and liaison between ATA and its affiliated organization and state and local governments. Mr. Canary was named Interim President and CEO of the American Trucking Associations on July 1, 2001. At the 2001 ATA Management Conference and Exhibition in Nashville, Chairman Duane Ackhe announced that the "interim" designation would be removed from Canary's title, and that he would remain ATA President and CEO until January 2003.[7] ATA gave Riley $1,500 in 1996, $2,000 in 1998, and $1,000 in 2000. Since 1996, Riley has taken $20,226 from trucking interests.[8]

Further, there appear to be additional conflicts of interest in this joint investigation. Mr. Canary is the political consultant and senior adviser to Republican Attorney General Bill Pryor, the other prosecutor in the investigation.[9] Mr. Canary's Capitol Group LLC has been paid $40,665.56 for consulting, polling and advertising for Attorney General Pryor's reelection campaign.[10] Canary donated $2,000 to Bill Pryor's 1998 campaign. On August 6, 2001, Canary personally donated $500 to Pryor's campaign. On July 19, 2001, William J. Canary & Co., Inc. gave $500 to Pryor's campaign. On October 25, 2001, The Capitol Group, Canary and Patrick McWhorter's partnership, donated $4,500 to Pryor's campaign. On December 28, 2001, GOV PAC, a political action committee chaired by Canary business partner Patrick McWhorter, gave $17,500 to Pryor's 2002 campaign. On December 28 McWhorter's MC PAC gave $20,000 to Pryor's campaign.[11]

The available public records demonstrate clearly, and without question, that U.S. Attorney Canary's family has benefited financially from its connection with the chief political rivals of Governor Siegelman. There can be no question that Lt. Governor Windom has

---

[6] Steve Windom, "Fair Campaign Practices Act" Disclosure, Form 2: Contributions, filed 1/31/02, Alabama Secretary of State.
[7] This information is available at www.Alabamatrucking.org.
[8] See the Center for Responsive Politics at www.opensecrets.org.
[9] Florence Times Daily, Beyerle, 10/19/01.
[10] Bill Pryor, 2001 Annual "Fair Campaign Practices Act" Disclosure, Form 5: Expenditures, pages 2-4; Pryor 1999 and 2000 Campaign Disclosures, Alabama Secretary of State.
[11] All records of campaign contributions are available from the Alabama Secretary of State's Office at www.sos.state.al.us.

The Honorable Larry D. Thompson
The Honorable Kenneth L. Wainstein
Page 6
March 25, 2002

benefited, and will continue to benefit both financially and politically from the publicity surrounding the investigation of my client. Using the government's own "reasonable person" standard, there is more than an appearance of a conflict when a prosecutor is conducting an investigation of the administration and her husband has received cash payments from and made significant contributions to the administration's political opponents. It is clear that Mr. Windom believes that he will benefit from the investigation of Governor Siegelman, as his website is littered with articles discussing it. *See* **www.stevewindom.com**.

Any assistance given to Mr. Windom's political prospects by this investigation is extremely likely to benefit Mr. and Mrs. Canary, both politically and financially. The 5th Circuit Court of Appeals noted a possible conflict of interest based on a prosecutor's potential financial interest in the outcome of a case, despite the tenuous nature of this interest. *Shaw v. Garrison*, 467 F.2d 113, 118 (5th Cir. 1972). In that case, the financial conflict was based on the fact that the prosecutor had written a book about the case and that "the sale of defendant's [the prosecutor's] book may be promoted by the publicity resulting from the continued prosecution of Clay Shaw." *Id.* The financial interest was thus tied to the publicity of the prosecution which might result in sales of the prosecutor's book.

I submit that the public records alone require swift action by your office. Leura Garrett Canary, the United States Attorney for the Middle District of Alabama must be removed from any role in the investigation of my client, Governor Don Siegelman, or any member of his administration, because of her inescapable conflicts of interest. Indeed, your review should dictate that her entire staff is tainted by these facts and any investigation would have to be conducted by someone outside of the Middle District. As a practical matter, in an office as small as that of the Middle District of Alabama, compartmentalization is, necessarily, insufficient and, construction of the proverbial "Chinese Wall" is not feasible as a means of isolating Mrs. Canary from either knowledge of or influence over the future conduct of this investigation. The "cows are already out of the barn." Mrs. Canary has already defined the purpose and parameters of the joint investigation and the public will never believe that both Mr. Canary's wife or his present employer have not been influenced. The only practical, efficacious remedy is the recusal of the entire office and the assumption of responsibility for this matter by your Department's Public Integrity Section. Governor Siegelman is now facing the power and taxpayer resources of both state and federal governments being used for the benefit of his political opponents and to the apparent political and financial advantage of the very Federal official charged with the fair and neutral enforcement of the law.

The political nature of this matter becomes more insidious in light of leaks associated with the investigation and the apparent involvement in the "investigation" of lobbyist Claire Austin. On Sunday, February 10, the Birmingham News reported that state and federal

The Honorable Larry D. Thompson
The Honorable Kenneth L. Wainstein
Page 7
March 25, 2002

prosecutors have subpoenaed Governor Siegelman's financial records as part of an ongoing joint investigation. The newspaper cited anonymous leaks as the source for its story.

The leaking of this subpoenaed information is a potential crime and intentional violation of the law, and those responsible should be held accountable. As you know, Rule 6(e) of the Federal Rules of Criminal Procedure prohibits leaks from the grand jury, a prohibition that applies to attorneys of the government. In addition, the Code of Alabama makes it a felony to reveal secret Grand Jury proceedings. Ala. Code § 12-16-214 (1975). Such secrecy is essential to the fair and impartial administration of justice, and insures that innocent people are not harmed. After the news report, I requested that U.S. Attorney Canary and Attorney General Pryor determine the source of these leaks including giving members of their staffs polygraph examinations. I have received no response. These leaks appear to be intentional and have been timed and designed to harm the reelection campaign of Governor Siegelman.

More recently, on March 16 the *Montgomery Advertiser* reported, "Vaughan said Friday the newspaper [the *Mobile Register*] was led to the story by Claire Austin, a lobbyist with ties to Republicans, who wanted to get back at her former business partner, Lanny Young... Austin confirmed Friday that Young was a former business partner but denied providing information to the newspaper. '**But I can't really be talking to you about this because of other reasons,**' **Austin said. 'There are several more indictments pending.**'" *Montgomery Advertiser*, Kleffman, 3/16/02. If this information is true, Ms. Austin appears to have broken the law, as has the person who gave her the information, which should require a full investigation by your office.

Ms. Austin was the campaign manager and paid consultant of Attorney General Bill Pryor in 1998. Between January 1998 and January 1999, Pryor paid Austin $76,519.12 for administrative and travel expenses.[12] Ms Austin, who also worked for former Attorney General Jeff Sessions as public affairs and legislation director and was his U.S. Senate campaign spokeswoman, was Pryor's main campaign fund-raiser. She left Pryor's employment after his November election to set up her own business for lobbying, public relations and PAC development. *See Atlanta Journal Constitution*, Smith, 10/13/96; AG Bulletin, 11/95; Harbinger, Donaldson, 5/4/99. Claire Austin and Lanny Young formed Austin & Young Capital Resources LLC on January 28, 1999 in Montgomery County for "providing general consulting and public relations."[13] Canary's Capitol Group and Austin & Young are neighbors; as noted above, the Capitol Group's office is in 100 N Union Street's Suite 368, Austin & Young are in Suite 364.

---

[12] Bill Pryor Campaign Finance Disclosure Forms, 1998-9, Alabama Secretary of State.
[13] Records are available from the Alabama Secretary of State's Office at www.sos.state.al.us.

The Honorable Larry D. Thompson
The Honorable Kenneth L. Wainstein
Page 8
March 25, 2002

    Not only my client, but the people of Alabama must have confidence that where serious charges are made about those who hold public office and how the public's business is conducted that these matters will be dealt with in a fair, professional manner. No one should have to endure a situation where there is even the appearance that a prosecutor can make criminal charges that help the politicians who hire her husband and pay him for these services.

    The facts in this matter are clear, the conflict is a matter of public record. It is a conflict that for reasons of her own Mrs. Canary has not acknowledged, just as she has not voluntarily removed herself from this matter as required by the standards of conduct set forth for all United States Attorneys in the Department's Manual or for Executive Branch officials in the CFR. My client and the people of Alabama have a right to expect that those entrusted to enforce the law are themselves bound to follow it. I ask you to take action by disqualifying Mrs. Canary, disqualifying the office of the United States Attorney for the Middle District of Alabama, removing the auspices of the federal government from the so-called joint investigation, and referring the investigation of the actions of Bill Canary and Ms. Austin to the appropriate prosecutorial agency of the United States Government.

Sincerely,

David Cromwell Johnson

DCJ/jhu
Enclosures
Via Facsimile Copier
cc:  The Honorable Leura Canary, United States Attorney, Middle District of Alabama (■■■■■)
     The Honorable Bill Pryor, Attorney General of Alabama (■■■■)
     The Honorable Don Siegelman, Governor of Alabama (■■■■)