June 20, 2007

# Proposal for Alternative Sentencing

*Don Siegelman*

Case 2:05-cr-00119-MEF-CSC   Document 614-2   Filed 06/25/2007   Page 1 of 14

# Table of Contents

Foreword                                              1

    Considerations for Sentencing             1


Arguments Against Incarceration                       1

    Prospects for Rehabilitation              1

    Possible Alternative Sentences            1


The Community Service Option                          1

    A Legacy of Service                       1

    A Proposal for Service                    1

    Conclusion                                1

# Foreword

**Considerations for Sentencing**

Don Siegelman has never committed a crime of violence. Rather, he has been charged and convicted by the court for a crime of *service*. We therefore humbly ask the court to render a punishment that reflects the spirit of the crime committed; to reserve the harshest of punishments - incarceration - for those who are true dangers to society; and to ultimately find that a punishment of closely monitored public service will achieve justice for the state and rehabilitation for the convicted.

The American Heritage Dictionary refers to the word "punish" by stating, "*it usually means subjecting someone to loss of freedom or money or to physical pain for some wrong doing.*" The court well knows, as do the people it represents, that Don Siegelman has endured a great deal of rebuke for his crime. He has suffered public embarrassment and may be known as a convicted felon for the remainder of his life. He will no longer be able to practice law. He will no longer be able to hold public office. This stigma alone carries great significance for Don Siegelman, who has committed his professional life to politics and public service.

Indeed, the very service to which he committed his life served as the foundation for the charges against him. That is why this proposal will assert three points:

1. Don Siegelman's history of and devotion to public service is meaningful and should not be overlooked by the court in rendering a sentence.
2. The best outcome for the people is a sentence that makes use of Don Siegelman's talents and energy, rather than warehousing him fruitlessly in an overcrowded prison system.
3. Don Siegelman can still make a substantial difference in the lives of young people in Alabama, can help at-risk youth avert lives of crime and entanglement in the same legal system he has faced, and can rehabilitate himself through serving the least among us.

In light of these points, we argue it is clear that incarceration is not necessary in the case of Don Siegelman.

# Arguments Against Incarceration

**Prospects for Rehabilitation**

In view of prison overcrowding, the ineffectiveness of prison rehabilitation programs, budgetary constraints, and the documented success of various alternative sentencing programs, sentencing courts have begun to see the merits of distributive justice. This distributive justice frequently involves having the offender compensate the Government and/or victim. In many instances, the Courts have imposed community service in conjunction with the terms of probation. Community service is a valuable option available to the Court for use in the sentencing equation because of the benefit it produces for a nonprofit community organization in need, as well as, the accountability requirement for the offender.

Kay M. Harris, in a publication, Community Service by Offenders, U. S. Department of Justice, National Institute of Corrections (Washington, D.C.; U. S. Government Printing Office, 1979), p. 10, stated:

*"Community service orders can serve most of the classical purposes of punishment, as well as offer additional benefits to the public. These type of orders are intended to serve as punishment or retribution, because performing service without pay is an imposition on the time and liberty of the offender. Although the literature on the deterrent effects of community service is limited, the research that is available suggests that social restitution does serve as a deterrent to additional offenses."*

Furthermore, The United States Supreme Court has stated that probation is to be used *"to provide an individualized program offering a young or unhardened offender an opportunity to rehabilitate [himself] without institutional confinement under the tutelage of a probation officer and under the continuing power of the Court to impose institutional punishment for [his] original offense in the event he abuses the opportunity."* Roberts v. United States, 320 U.S. 264, 272 (1943).

This proposal submits that Don Siegelman, as a man who has never spent time behind bars and who has spent years in the public spotlight, represents an "unhardened offender" as defined by the opinion above.

The Honorable Bailey Brown, Chief Judge, U. S. District Court, Memphis, Tennessee, in

"Community Service as a Condition of Probation," 1977 Federal Probation, written over 30 years ago and still valid today, outlined the following as advantages of imposition of community service in conjunction with a sentence of probation:

(1) The probationer will be required to do work without pay for good cause which should, in effect, have some therapeutic outcome that would make the probationer atone for his misdeed in a concrete and constructive way.

(2) The involved public and/or charitable agencies would receive valuable services from the probationer of which they are very much in need.

(3) The imposition of the requirement of work without pay would make the probationer more acceptable to the public in that the public would be regularly at work for a designated agency which would, in turn, be in touch with his probation officer, the officer would have an additional handle on the probationer.

(4) Since the probationer would be regularly at work for a designated agency which would, in turn, be in touch with his probation officer, the officer would have an additional handle on the probationer.

The support for community corrections and alternative sentencing has become common in light of prison overcrowding and economic trends. These considerations make it more feasible to keep offenders in the community whenever possible. Clearly, in the case of Don Siegelman and in light of prison overcrowding, there does not appear to be any reason that he is not a fit candidate for a structured term of probation with court-ordered community service.

### Possible Alternative Sentences

Alternative sentencing has deep roots in American jurisprudence. As early as 1974, Cesare Beccarria, in his work <u>On Crime and Punishment</u>, explored the concept of punishment by stating: "In order for punishment not to be, in every instance, an act of violence of one of many against a private citizen, it must be essentially public, prompt, necessary, the least possible in given circumstances, dictated by laws."

Beccarria went on to express his doubt about the value of the amount of punishment by stating that deterrence is not guaranteed by the severity of punishment, but rather the

certainty and speed with which it is administered.

Historically, it has been held that prisons should be a place of last resort, a place for the incorrigible, for those whom it has been determined are unfit candidates for probation. There is no evidence in the case of Governor Siegelman that he is a threat to the community or an unfit candidate for probation. An alternative sentencing plan would be quite appropriate in this case.

Two alternatives to prolonged incarceration have been particularly popular. They are listed below as possibilities in the case of Don Siegelman.

(A) Split Sentence

The proposed split sentence would certainly comply with the legislative intent of Public Law 85-741 (August 23, 1958) as codified in 18 U.S.C. §3651 (now repealed giving way to the Federal Sentencing Guidelines), wherein it was believed that many offenders simply needed a small taste of prison life and then a prompt return to the community so that they could continue on with a productive and law-abiding life. Essentially, it was believed that a short period of confinement followed by probation has a salutary effect upon an offender and is conducive to rehabilitation. The primary purpose of the split sentence was to enable the Judge to impose short sentences followed by probation. United States v. Cohen, 617 F.2d 56 (4th Cir. 1980). In the case of Governor Siegelman, it should be obvious that he does not need lengthy incarceration to be rehabilitated and, if the Court grants probation, it reserves the option to impose a custody sentence on Governor Siegelman if he breaches the trust of the Court. Split sentences were precluded under the guidelines. However, the Court could impose a split sentence post Booker. (See United States of American v. Woghin, United States District Court, Eastern District of New York, Case No. 04CR847(ILG), February 6, 2007.)

(B) Intermittent Confinement

In the alternative, this Court could consider intermittent confinement. The United States Sentencing Commission Manual provides for intermittent confinement in certain cases as a condition of probation. U.S.S.G. §5B1.3,(e)(6). Intermittent confinement is defined as custody for intervals of time and may be ordered as a condition of probation during the first year of probation. This type punishment was adopted by Congress when the Sentencing Reform Act of 1984 was passed. It could be an appropriate sentencing alternative in the instant case if the Court is not satisfied that probation, split sentence, and community service is enough.

If this Court rejects the split sentence probation/community service option and believes

traditional confinement beyond that mandated through imposition of the split sentence is warranted, it is suggested that this be accomplished through the imposition of intermittent confinement combined with probation and community service. The advantages of probation and community service have long been recognized.

It is respectfully submitted that intermittent confinement, coupled with the community service proposal would ensure the appropriate accountability under an alternative sentencing plan that would benefit the community, targeted recipients of the community service proposal, and the taxpayers. Such a program would mandate vigorous and meaningful punishment while maximizing the offender's potential through performance of the community service proposal.

# The Community Service Option

**A Legacy of Service**

A substantial part of Don Siegelman's life of service has been devoted to protecting the citizens of Alabama from violent and dangerous offenders. And while the charges levied against him have suggested otherwise, more than one chapter in the history of Siegelman's tenure of service must reflect the improvements he made in the lives of everyday Alabamians. These improvements are many and impressive, and are testimony to the difference his passion and energy can make. These good works are also, in the eyes of many, testimony to Siegelman's good intentions and virtue.

If there ever was a case where one's life work should be measured against the purported harm he did to the State, it is the case of Don Siegelman. And it is the position of this proposal that the crime for which he has been convicted represents one tragic chapter in what is otherwise a triumphant story of public service.

Numerous citizens who know Governor Siegelman have advised the Court that incarceration would have a detrimental effect on him. The court has an important choice. It can sentence Don Siegelman to a life behind bars with the sort of criminal he spent a lifetime putting behind bars. Or the court can find that Siegelman's crimes do not merit such severity, and that a life of atonement through continued service is a more appropriate and fitting punishment.

<u>Court imposed probation with a community service condition would be the most fitting punishment in this case</u>.

Don Siegelman, as Secretary of State for eight years, relentlessly worked to improve Alabama's Election Laws to ensure fair and honest elections. During that time, his family experienced a tragedy when his wife was nearly killed and suffered the loss of her right eye, half of her teeth and a serious head injury by habitual criminal and a drunk driver. With this personal tragedy, Don Siegelman's focus and direction changed and he sought and was successful in securing the job of Alabama's Attorney General.

As Alabama's Attorney General, Siegelman worked closely with victims of crime and was successful in establishing the first national sexual assault protocol. He became a

Proposal for Alternative Sentencing, Don Siegelman 7

friend and leader on local, state, and national levels with Mothers Against Drunk Drivers (MADD). His leadership skills and passion for MADD's cause spurred youth throughout the state to participate in Students Against Drunk Drivers. Attorney General Siegelman made sure that Alabama law enforcement officers were equipped with the necessary tools, training, and equipment to enforce laws against drunk drivers and violent and dangerous criminals.

Attorney General Siegelman worked with the Honorable Ed Carnes, Former Assistant Attorney General and now distinguished Judge at the Eleventh Circuit Court of Appeals, to write and pass more anti-crime legislation than any other Attorney General in the history of the State of Alabama.

Continuing as Lieutenant Governor, Don Siegelman utilized that office to help promote positive changes in the State Ethics Laws and laws relating to women who suffered as victims of domestic violence. He also led the fight to force insurance companies to cover the costs of reconstructive surgery for survivors of breast cancer.

Don Siegelman was drawn to public service and charity based on experiences during the time he was a high school student. He worked with the Red Cross, the March of Dimes, and children with physical and mental disabilities. During his high school years he personally went into homes and assisted parents with therapy involving deformed and disabled children.

The skills and ability that led Don Siegelman to hold more constitutional offices than any person in the state's history can now be utilized as punishment for him and a positive gain for the people of Alabama.

### A Proposal for Service

Governor Siegelman will never again be Governor; he has been stripped of that title. He has lost his dignity, many of his friends, and his ability to earn a living as a lawyer. In short, he has been humbled, humiliated, and materially punished. He will never again be governor, but he can be an inspiration to youth and an agent for change in their lives.

The court can put his skills to use through an alternative sentence that would require the defendant to spend his days again with underprivileged and at-risk children.

On the other hand, only two outcomes will be achieved by the court's incarceration of Don Siegelman. First, his potential for good will be wasted as he spends time behind

bars with those whose crimes caused far greater human suffering. And second, he will become yet another inmate in a prison system already strained by overcrowding.

This proposal offers for the the Court's consideration sanctions that are punitive and rigorous, but yet provide an alternative to traditional incarceration as the only means of insuring that justice be done. Incarceration for Don Siegelman will yield no gain, but cost the people greatly.

Don Siegelman has excellent leadership and public speaking skills. He is presently a convicted felon. The Court could order that Defendant Siegelman be required to conduct leadership classes for at-risk to assist the children in learning skills and to encourage them to finish high school. This would be particularly effective since Defendant Siegelman would be ordered by the Court to participate and the children would be able to see the devastation endured by one stripped of title and rights. The children would be able to see and feel firsthand the embarrassment suffered by a former Governor made to serve as an example by this Court. These youth would bear witness to how the court chooses to mete out justice and right the wrong sanctioned and endorsed by a jury of one's peers.

The following are possible venues for the community service this proposal has described. Each venue offers the chance for Don Siegelman to interact on an intimate basis with children at-risk of entering the legal system themselves.

**Montgomery YMCA**

The proposed program of service would take place under the direction of Montgomery YMCA Director Bob McGaughey and would focus on mentoring, speaking to, and interacting personally with at-risk youth. The Montgomery YMCA has experience in court-ordered public service cases and has expressed a willingness to make positive use of Governor Siegelman's talents.

The proposed service would include, but not be limited to, giving leadership and self-confidence classes to help instill in at-risk children a since of hard work and discipline and the rewards that come from such values.

This could be an eight- to ten-hour per day program five to six days a week, or could be coordinated in conjunction with other court ordered service programs. Governor

Siegelman's attendance and record of activity would be closely monitored at the court's specifications and demands.

### Alabama Department of Youth Services

As governor, Don Siegelman devoted much time and energy to improving the prospects of children remanded to Alabama's juvenile justice system. As a volunteer within the Alabama Department of Youth Services, Siegelman would work hands-on with the state's most vulnerable and at-risk young people. Director Walter Wood would closely supervise Siegelman's activities and maximize his skills and energy.

With facilities located in Chalkville, Autauga County, Mobile, Montgomery (Mt. Meigs), Thomasville, and Vance, the Department would provide ample opportunity for Siegelman to use his energy and people skills to make an impact in the lives of its trustees. Possibilities for interacting with youth at the facilities could include: one-on-one mentoring, speaking to groups about the consequences of crime, and working with small groups to instill focus and encourage character-building.

### Alabama Sheriff's Boys and Girls Ranches

Similar to the Department of Youth Services, the Alabama Sheriff's Boys and Girls Ranches are the repository of hundreds of at-risk children. And while these children are often not youthful offenders, they do represent a population whose lack of parental guidance or positive experiences with adults often results in 'acting out' in the form of crime or or bad behavior.

Governor Siegelman's involvement with children at the Ranches would mirror his role with the Department of Youth Services as a mentor to children and example of how bad choices can have life-long consequences.

### Alabama Boys and Girls Clubs

Proposal for Alternative Sentencing, Don Siegelman                                      10

Across Alabama, Boys and Girls Clubs provide a nurturing place where children can find guidance, leadership, and programs of substance. Governor Siegelman's role in this powerful network would be to testify to the power of choices, interacting one-on-one with children and speaking to small groups.

While participants in Boys and Girls Clubs often hear about the dangers of crime and the ramifications of poor choices, Siegelman's personal appearance would be a tangible example with which the children could identify.

**Alabama Coalition Against Domestic Violence**

Under the direction of Director Carol Gundlach, Don Siegelman could continue a mission he began as Attorney General and continued throughout his public service: to stand up for the rights of domestic violence survivors and intervene to make their journey to recovery easier. As a volunteer in Alabama's domestic violence shelters and within domestic violence crisis centers, Siegelman could offer legal and emotional support to a population desperately in need.

Don Siegelman has a great deal of knowledge of Alabama's domestic violence laws and a passion for reversing the trend of domestic abuse. The Alabama Coalition Against Domestic Violence would welcome his expertise and make full use of his court-ordered time and involvement.

**Other Options**

A number of other options are available for the court's consideration. These are listed below in no particular order. Upon further interest, Siegelman could provide more information and a detailed plan of service.

- Alabama Center for Law and Civic Education/ Teen Court
- Jefferson Court Family Court/ Juvenile Gun Court
- Workforce Development One Stop Career Center/ Lawson State
- Jefferson County Workforce Investment Board/ Youth Programs
- Legal Aid Society
- Jefferson County Rehabilitative Service
- Jefferson County Alcohol and Tobacco Board Youth Programs

## Conclusion

It is the clear position of this proposal that incarceration represents an inappropriate option in the case of Don Siegelman. Furthermore, it poses a misuse of the government's - and ultimately the people's - corrections resources.

Don Siegelman has never committed a crime of violence. And time behind bars for him portends no positive gain for society. On the other hand, time spent changing the lives of at-risk youth would benefit the people greatly, possibly avert to some small extent ventures into a life of crime, and help Siegelman atone for the crimes for which he has been convicted in a meaningful way.

Don Siegelman's story of public service is still being written. It does not have to end in incarceration. With the court's favorable judgment of this proposal, the people and its government can receive what Siegelman always intended to give them: heartfelt public service and improvement in the lives of the most vulnerable Alabamians.