**EXHIBIT B**

**SENTENCING COMPARISONS/LOW RECIDIVISM**

Governor Siegelman submits that the sentencing recommendation suggested by the Government or the Probation Officer are not reasonable and are disparate when balanced against other sentences imposed in this jurisdiction. Also, it is clear from a review of the statistical data that Governor Siegelman has a very low likelihood for recidivism.

The Sourcebook of Federal Sentencing Statistics along with research and literature gathered by the United States Sentencing Commission (USSC) comprises the information used for the following analysis. After terms and lengths of sentences are disclosed, these numbers are compared to and contrasted against similar offenses among each criminal history category (CHC) I-III. Furthermore, recidivism statistics for white-collar crime and violent crimes are discussed.

## I. Sentencing Statistics

In 2006, the USSC reported 72,585 cases sentenced in the country.[1] Murder provided only eighty-one sentences of all reported cases. Twenty-six trial convictions and fifty-five plea negotiations divided the eighty-one murder sentences reported. Only one murder disposition received probation along with confinement. All other murder sentences strictly yielded prison. Although these numbers are accurate according to the USSC, it is important to note that out of the 72,585 cases reported, 10,575 were purposely excluded. Specifically, the USSC excluded 8,871 cases due to zero months prison ordered by the courts.[2]

---

[1] U.S. SENTENCING COMM'N, SOURCEBOOK OF FEDERAL SENTENCING STATISTICS, FISCAL YEAR 2005 § 1, tbl. 1 (2007), *available at* http://www.ussc.gov/JUDPACK/2006/alm06.pdf.
[2] Id. *at* Table 14, fn 1.

### A. National Average Sentence Length for Murder

Murder sentence lengths averaged 249.9 months, with the median resting at 240 months. This number is further evaluated relative to criminal history category (CHC) of each defendant. CHC-III defendants' imprisonment length proved the lowest overall, averaging 208.9 months, with a median of 175 months. CHC- I offenders' average showed 250.8 and 210 months, respectively. CHC-II status proved a dramatic increase in sentence length, compared to III, or I with 310.2 and 333 months respectively, higher than CHC IV-VI by at least 10-15%.

### B. National Violent Crime Sentencing

Federal sentence lengths for violent crimes unsurprisingly averaged well below the rates for murder. Violent crimes typically include rape, robbery, aggravated assault, and homicide. However, kidnaping and hostage taking is included in these statistics as well to show certain similarities among non-homicide violent crime sentences. In 2006, robbery dominated the number of sentences handed down to all of the violent crimes reported. Federal District Courts sentenced 1,130 robberies, 490 assaults, 255 sexual abuses, and 61 kidnaping/hostage taking cases.

The average sentence length and median number of months imposed are listed respectively: kidnaping/hostage; 216.6/204 months, sexual abuse; 100.8/60 months, robbery; 89.2/70, and assault; 34.3/21 months. The CHC categories somewhat correlate to the murder statistics previously mentioned, so much as CHC-II classification did not dramatically increase time served compared to the CHC-I class.

### C. Alabama's Murder and Fraud Sentencing Rates

Murder sentence lengths in the Middle District of Alabama mirror the national image in a nearly identical fashion. According to the USSC, Alabama has not seen a federal murder sentencing since 2003. The USSC reported only two murder sentences that year; both pled their charge and received prison only. However, due to then non-existent reporting requirements, the actual length of the sentence is listed indeterminable.

### D.    Alabama's Major Violent and Non-Violent Sentence Lengths

Although murder statistics were few and far between, robbery is the only potentially violent crime the USSC charted. In 2006, Alabama's three districts sentenced twenty-four robbery cases. Of these, one case alone received probation and confinement, while the rest were sentenced to straight prison. Sentence lengths for robbery averaged 103.6 months, with the Middle District inflating that number averaging 142.7 months alone. The Middle District, however, is not so severe in its approach to fraud. In 2006, fraud sentences in Alabama averaged 19.4 months, with the Middle District doling out a 14.7 month average.

In 2006, Alabama's three Federal Districts combined to sentence ninety-two fraud cases.[3] Of the sentences receiving some prison time, three received a prison/community split sentence while the other 95% were sentenced to prison. Notably, thirty-four cases involved probation. Of those sentences, twenty-three received probation only, while the eleven remaining took a probation and confinement combination. Alabama's Middle District sentenced the fewest number of fraud cases in 2006, although giving fewer probation-only sentences than the other two, as well.[4]

### E.    National Average Sentence Lengths for "White Collar" Crime

The Federal Bureau of Investigation (FBI) defines white-collar crime as "…those illegal acts which are characterized by deceit, concealment, or violation of trust and which are not dependent upon the application of threat of physical force or violence. Individuals and organizations commit these acts to obtain money, property, or services; to avoid the payment or loss of money or services; or to secure personal or business advantage."[5] This definition includes those crimes reported and defined by the National Incident-Based Reporting System (NIBRS); specifically bribery and mail fraud (fraud).[6]

In 2006, bribery sentences averaged twenty-one months with a mean at fifteen months, while fraud sentences carried an approximate twenty-six month and eighteen-month average and median,

---

[3] Id (when running a search for each district at containing "Sentencing Information by Primary Offense" *at* http://www.ussc.gov/ANNRPT/2006)

[4] Id *noting* the Middle District sentencing fraud cases to probation only at a rate of 13% (while Alabama's Northern sentenced probation only 23% of the time, and the Southern District at a 33% rate).

[5] Cynthia Barnett, U.S. DOJ FBI CJIS Division, *The Measurement of White-Collar Crime Using Uniform Crime Reporting (UCR) Data for 1997-1999 available at* http://www.fbi.gov/ucr/whitecollarforweb.pdf.

[6] Id. *at* Appendix A.

respectively.[7] CHC-I defendants averaged twenty-four months for fraud, and just over twenty months for bribery. This length, compared to CHC-III defendants, remained consistent with violent offenses, nearly mirroring each other, while CHC-II classifications received longer sentences.[8] The reason that CHC-II defendants received longer sentences on average, whether the crime charged was violent or not, possibly relies on recidivism.

## II. Predicting Sentencing: Recidivism Rates and Criminal History Classifications

The USSC conducted a recidivism research project based upon Federal Guideline Offenders in May of 2004.[9] The work begins noting that Congress encouraged the "first offender" philosophy in the 1984 Sentencing Reform Act, stressing the relevance of reduced sentencing levels for first offenders under the federal guidelines.[10] The emphasis within this report delineated previous and proposed definitions of "First Offenders" in detail. Using prior arrests, convictions, and minor convictions to comprise three categories of "First Offenders" with zero criminal history points" the report analyzed recidivism data among these groups. The final groupings are labeled and defined as follows: Group A, with no arrests; Group B, with no convictions; and Group C, with minor convictions, only.

The research found Group A to recidivate at a lower rate than any other, at 6.8%. Group C, at 8.8%, while Group B dramatically increased to 17.2%[11]. In nearly identical proportion, the re-conviction recidivism rate proved 2.5%, 2.9%, and 5.3% respective to the primary recidivism rates previously mentioned. While the report suggests that prior arrests apparently predict recidivism, it is noteworthy that recidivism rates for offenders with zero criminal history points stood at 11.7%, while those with only one point nearly doubled that, at 22.6%.

---

[7] *Supra*, note 1 *at* Table 14.
[8] Id *noting that* CHC-II defendants received over a month more on average and a month and a half longer median sentence than CHC-I or III.
[9] U.S. SENTENCING COMM'N, RECIDIVISM AND THE "FIRST OFFENDER RELEASE 2" (2004) *citing* 28 U.S.C. § 994(j), *available at* http://www.ussc.gov/publicat/Recidivism_FirstOffender.pdf
[10] Id. *at* page 1.
[11] Id. *at* Exhibit 8 *dividing* Group B into offenders with one prior arrest and those with two or more prior arrests (those with only one arrest recidivated at 13.2% while those with two or more jumped to 23.2%).

A.   **Sentencing Characteristics**

The report examined sentencing characteristics with their theoretical groupings by virtue of length and type.[12] Group B, following the previous trend, received a prison-only sentence at a higher rate than A or C.[13] Probation only sentences favored Group A twice as much over B, and approximately 66% over C. The same results are true for probation-plus-alternative sentences. The findings overall suggest that any offender with prior dealings with the criminal justice system were more likely to recidivate, as well as receive a sterner sentence than those without any exposure or only misdemeanor convictions.

With those findings in mind, the USSC released a companion to this study in January of 2004. This study compared the U.S. Parole Commission's Salient Factor Score (SFS) to the CHC to determine which system most accurately predicted recidivism.[14] The study concluded that the SFS method proved more reliable and noted their distinct differences. The SFS adds an "offender age" as a predictive factor of recidivism, and when added to the CHC, reduced the SFS advantage by nearly two-thirds.[15]

When analyzing physical and personal characteristics of offenders that are not usually factored in for departure reasoning, the USSC reports show the attributes of those least likely to recidivate. **CHC-I offenders, of whom are over 50 years old, white, employed, college graduates, married, with no illicit drug use prove to be the lowest risk.** Furthermore, offenders classed between instant offense levels ranging 9-10 and 11-12, and those falling under primary sentencing guideline §2F1.1 (Fraud) recidivated substantially less than any other category.[16]

Defendant Governor Siegelman is a Criminal History Category of I. If rated under the parole Salient Factor System he would be considered a very good risk. In other words, he is the least likely to recidivate. Further, it hardly seems necessary that he be treated more harshly than violent and dangerous offenders sentenced in this district.

---

[12] Id. *at* Exhibit 5.
[13] Group B received 66% straight prison sentences, while A and C received 41.2% and 52.4% respectively.
[14] .S. SENTENCING COMM'N, A COMPARISION OF THE FEDERAL SENTENCING GUIDELINES CRIMINAL HISTORY CATEGORY AND THE U.S. PAROLE COMMISSION SALIENT FACTOR SCORE RELEASE 3" (2005) *at* http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf.
[15] Id *at* p.15.
[16] Id *at* Exhibits 9-11.

Case 2:05-cr-00119-MEF-CSC    Document 614-3    Filed 06/25/2007    Page 7 of 7