# EXHIBIT 9

Case 2:05-cr-00119-MEF-CSC    Document 658-10    Filed 09/28/2007    Page 1 of 4

CLINE, BELL & HAYES.txt

18        THE COURT:  Mr. [TKPWRA-EUPBG]ly, the
19             United States may proceed.
20        MR. FRANKLIN:  Thank you, Your Honor.
21             DIRECT EXAMINATION
22   BY MR. FRANKLIN:
23   Q.  Good afternoon, Mr. Bell?

                           243
 1   A.  Good afternoon, Mr. Franklin.
 2   Q.  Would you state your full name and spell your
 3       last name, please?
 4   A.  Raymond [HRO-EUL] bell, B-E-L-L.
 5   Q.  And where are you from?  Where do you live,
 6       Mr. Bell?
 7   A.  I live in Sims, Alabama, S-E-M-M-E-S.
 8   Q.  And where is that?
 9   A.  It's a small city inside something county.
10       Western part of the county by the airport.
11   Q.  And how long have you lived there?
12   A.  Six years.
13   Q.  What do you do for a living?
14   A.  I'm an attorney.
15   Q.  And how long have you practiced law?
16   A.  This is my sixth year.
17   Q.  Prior to practicing law, what did you do for
18       a living?
19   A.  I worked in the governor's office.
20   Q.  And would you tell us how it is you came to
21       first start working in the governor's office?
22   A.  Back in 1995, I was working for a law firm in
23       Mobile, and the senior partner of that law

Page 189

CLINE, BELL & HAYES.txt
307

1  to the right of Mr. Carman. There's an Eric
2  Hanson, a William Norton. Looks like senior
3  vice president and corporate counsel
4  HealthSouth, and Richard Scrushy. Do you
5  recall in what form you got those
6  recommendations from Hanson, Norton, or
7  Scrushy?
8  A. No, sir.
9  Q. Don't recall anything about that?
10 A. No, sir.
11 Q. All right. This memorandum is dated what?
12 A. Can I get that back? I need that back.
13    Well, there it is. June 25, 1999.
14 Q. And would the reference to Mr. Carman
15    recommended by these three people, Hanson,
16    Norton, and Scrushy, would that indicate to
17    you, Mr. Bell, that as of June 25th, 9 1999,
18    that HealthSouth appointee or nominee or
19    candidate, however you want to phrase it, was
20    on Governor Siegelman's radar screen by that
21    time as a potential candidate or is a
22    potential board member, rather?
23 A. Yes, sir.

308

1 Q. And there's been some testimony in the case
2    and there's been some statement in opening
3    statement that there was a meeting between
4    Governor Siegelman and Richard Scrushy, and I
5    don't want to say what date the jury is going
6    to decide, but either the 29th of June or the

Page 239

CLINE, BELL & HAYES.txt

7    14th of July, 1999. Would that indicate to

8    you that prior to either one of those dates,

9    also a HealthSouth member or candidate on the

10   radar screen of goes before those two dates?

11       MR. FRANKLIN: Objection to the form of

12           the question, Your Honor. In that

13           question, he talks about what was

14           said in opening statement and what

15           other witnesses have testified to

16           in this courtroom. His question

17           is supposed to go to this witness

18           and ask him for information, not

19           give him information.

20       MR. KILBORN: Cross-examination, Your

21           Honor.

22       THE COURT: As asked, sustained. You

23           may re-ask it in a different form.

                         309

1  Q.  Let's just point out that obvious, Mr. Bell.

2      It's obvious that the HealthSouth candidate

3      was on the radar screen before either the

4      29th of June or the 24th of July, isn't it?

5  A.  Yes.

6  Q.  And it's obvious that the HealthSouth

7      candidate was on the radar screen before July

8      19th, 1999?

9  A.  Yes, sir.

10  Q.  And I believe that there are 26 people on

11     that particular list of candidates?

12  A.  I'll take your word for it.

13  Q.  Let me show you?