CASE NO. 07-13163-B

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

SEP - 4 2007

THOMAS K. KAHN
CLERK

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff/Appellee,

vs.

DON EUGENE SIEGELMAN, et al.,
Defendants/Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEFENDANT/APPELLANT,
DON EUGENE SIEGELMAN'S,
REPLY IN SUPPORT OF HIS
MOTION FOR RELEASE PENDING APPEAL

DAVID A. McDONALD
Attorney for Defendant/Appellant
KILBORN, ROEBUCK & McDONALD
Post Office Box 832
Mobile, Alabama 36601
Telephone: (251) 434-0045
Facsimile: (251) 434-0047
Email: dam@krmlaw.com

CASE NO. 07-13163-B

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff/Appellee,

vs.

DON EUGENE SIEGELMAN, et al.,
Defendants/Appellants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

DEFENDANT/APPELLANT,
DON EUGENE SIEGELMAN'S,
REPLY IN SUPPORT OF HIS
MOTION FOR RELEASE PENDING APPEAL

DAVID A. McDONALD
Attorney for Defendant/Appellant
KILBORN, ROEBUCK & McDONALD
Post Office Box 832
Mobile, Alabama 36601
Telephone: (251) 434-0045
Facsimile: (251) 434-0047
Email: dam@krmlaw.com

Case No: 07-13163-B

USA vs. Siegelman

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1, counsel for Defendant/Appellant, Don Eugene Siegelman, certifies that the following persons have an interest in the outcome of this case:

Adams, Richard Martin, Counsel for Richard Scrushy

Blakey, George Robert, Counsel for Governor Siegelman

Coody, Honorable Charles S., U.S. Magistrate Judge

Eastland, Hiram C., Jr., Counsel for Governor Siegelman

Feaga, Stephen P., Assistant U.S. Attorney

Franklin, Louis V., Sr., Acting U.S. Attorney

Fitzpatrick, Joseph L., Jr., Special Assistant U.S. Attorney

Fuller, Honorable Mark E., U.S. District Judge

Helmsing, Frederick George, Sr., Counsel for Richard Scrushy

Hernandez, Carmen D., Counsel for Richard Scrushy

James, Susan Graham, Counsel for Governor Siegelman

Jenkins, James K., Counsel for Governor Siegelman

C-1 of 2

Kilborn, Vincent F., III, Counsel for Governor Siegelman

Leach, Arthur W., Counsel for Richard Scrushy

McDonald, David A., Counsel for Governor Siegelman

Maloy, W. Bruce, Counsel for Richard Scrushy

Moore, Leslie V., Counsel for Richard Scrushy

Parkman, James W., III, Counsel for Richard Scrushy

Perrine, J.B., Assistant U.S. Attorney

Pilger, Richard C., Trial Attorney, Public Integrity Section

Pitt, Charles Redding, Counsel for Governor Siegelman

Romano, John-Alex, Appellate Section, Department of Justice

Welch, William M., II, Chief of Public Integrity Section

White, William C., II, Counsel for Richard Scrushy

# TABLE OF CONTENTS

I.      THE STATUTE OF LIMITATIONS ARGUMENT
        RAISES A SUBSTANTIAL QUESTION                    2

II.     WHETHER THE OBSTRUCTION OF JUSTICE
        CHARGE EXCEEDED THE SCOPE OF THE
        CHARGING STATUTE RAISES SUBSTANTIAL
        QUESTION                                         6

III.    THE LOWER COURT'S FAILURE TO REQUIRE
        EXACTING EXPRESS QUID PRO QUO PROOF TO
        SUPPORT THE BRIBERY-TYPE CONVICTIONS ON
        ISSUE ADVOCACY CAMPAIGN CONTRIBUTIONS
        RAISES A SUBSTANTIAL QUESTION                   12

        a.  The Bribery-Type Honest Service Convictions    13

        b.  The Conspiracy to Violate Bribery-Type Honest
            Services Convictions                          19

        c.  The Federal Bribery Convictions               20

CONCLUSION                                               22

i

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA, *
  Plaintiff/Appellee, *
     *
v.      * Case No: 07-13163-B
     *
DON EUGENE SIEGELMAN, *
  Defendant/Appellant. *

## APPELLANT SIEGELMAN'S REPLY IN SUPPORT OF HIS
## MOTION FOR RELEASE PENDING APPEAL

In response to the arguments set forth in Governor Siegelman's motion, the government adopts a posture of great certainty that its legal and factual arguments are indisputably right. The government repeatedly exaggerates the strength of its position, both legally and factually. In order to be entitled to release pending appeal, Governor Siegelman does *not* have to show even that he will *probably* prevail on appeal. His burden is less than that, as shown in the original motion. Despite the government's rhetoric of certainty, Governor Siegelman's arguments are easily strong enough to require release.

In considering the issue of release, the Court should also note that the course of this appeal will be significantly delayed through absolutely no fault of Governor Siegelman. Governor Siegelman ordered a trial transcript more than a year ago, but due to the trial reporter's poor health, transcription

1

of the Record was repeatedly delayed. Sadly, the trial reporter recently passed away, and his replacement has requested an extension until December 31, 2007, to complete the Record. Thereafter, it will take months or more for briefing, argument, and decision of this case. This lengthening of the appellate proceedings makes Governor Siegelman's release pending appeal all the more necessary.

## I.    THE STATUTE OF LIMITATIONS ARGUMENT RAISES A SUBSTANTIAL QUESTION

In his previous brief, Governor Siegelman demonstrated that Count Three (the "bribery" count under 18 U.S.C. §666) was barred by the statute of limitations. To prevail on his Motion for Release Pending Appeal, Governor Siegelman need only show, as to this count, that the statute of limitations argument is substantial.

The government *does not dispute* that Count Three was barred by the statute of limitations, and the government does not argue that the charge was timely. If not a concession of the point, the government's silence surely demonstrates that the limitations issue is a "substantial" one.

Rather than contesting the limitations defense, the government argues only that Governor Siegelman *waived* the limitations issue by not raising it until his post-trial Rule 29 motion. The government argues in error. Governor Siegelman's raising of the limitations issue in his Rule 29 motion

was timely and appropriate because he *could not* have raised this defense before trial.

The government artfully drafted the Indictment to mask its statute of limitations defect. In Count Three of the Second Superseding Indictment, the government charged:

> From on or about **July 19, 1999, and continuing through on or about May 23, 2000** . . . the defendant DON EUGENE SIEGELMAN . . . corruptly solicited, demanded, accepted, and agreed to accept $500,000.00 from defendant RICHARD SCRUSHY, intending to be influenced and rewarded in connection with the appointment of defendant RICHARD SCRUSHY to the CON Board. (emphasis added) (Doc 61, Second Superseding Indictment, Count Three, p. 49)

The Original Indictment was returned on **May 17, 2005** -- less than five years after May 23, 2000. **On its face, the Indictment alleged that a crime occurred within the five year statute of limitations.** Had the government more clearly set forth the basis for its allegations, Governor Siegelman would have had an opportunity to raise his statute of limitations defense before trial.[1]

---

[1] Indeed, the government argued against clarifying when the acts relating to Count Three took place, making it impossible for Governor Siegelman to raise a statute of limitations defense before trial. Governor Siegelman requested that the government clarify its allegations through a Bill of Particulars. Specifically, Governor Siegelman asked the government to disclose (among other things) "when, specifically, did the actions alleged take place?" (Doc 142, 02/20/06 Motion for Bill of Particulars) The government objected to clarifying its Indictment and argued that doing so

As discussed in detail in Governor Siegelman's prior motion, the government's evidence at trial revealed that the crime alleged in Count Three occurred (if at all) in **July of 1999** when the agreement was allegedly **made,** *not* in **May of 2000** when the final contribution was **received**. See *United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999).

At trial, the government presented *no evidence* under which the misconduct alleged in Count Three could have occurred within the statute of limitations. Hence, there is no *factual dispute* to be resolved by a jury. In the case of a *factual dispute*, failure to ask for a statute of limitations instruction might constitute a waiver. *United States v. Grammatikos*, 633 F.2d 1013, 1022 (2nd Cir. 1980). In this case, there can be no waiver because the issue is the sufficiency of the evidence offered by the government to support the verdict.

The very nature of a motion for judgment of acquittal pursuant to Fed.R.Crim.P. 29(a) is to question the sufficiency of the evidence to support a conviction. Accordingly, Governor Siegelman has the right to have this Court, *independent of the jury*, pass on the sufficiency of the evidence. The Supreme Court unfailingly recognizes that the "sufficiency of the evidence" is for the courts; as such, it is a question of law, not fact. See, *e.g., United*

---

would reveal the government's "trial strategies." (Doc 162, Government 02/27/06 Response)

4

*States v. Powell*, 469 U.S. 57, 60 (1984); *United States v. Abrams v. United States*, 250 U.S. 616, 619 (1919).

The government's argument that the limitations issue had to be raised *during* the trial - and that a *post-trial* Rule 29 motion, by contrast, was too late - is wrong.  Such is not the holding of *U.S. v. Najjar*, 283 F.3d 1306 (11th Cir. 2002) or other cases relied upon by the government.  These cases are, instead, about the defendant's failure to raise the limitations issue before the trial court at all.  The government seeks solace in the fact that some cases such as *Najjar* use the phrase "at trial," but the government fails to recognize that these cases involve defendants who *never* raised the issue before the trial court.  Instead of being governed by inexact language in *Najjar* (that would amount to dictum at best), this issue is instead governed by the plain language of Rule 29 itself.

Rule 29(c)(3) (the subsection titled "No prior motion required") states: "A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge."  That plain principle of Rule 29(c)(3) demonstrates that mid-trial invocation of a limitations issue, as grounds for a judgment of acquittal, is *not* required - no more than *any* issue that is offered as grounds for a judgment of acquittal.

5

In any event, the government is wrong in claiming that a purported "waiver" of the limitations issue bars the issue altogether. At worst, the issue was "forfeited," which means that it is still subject to review for plain error. See *U.S. v. Lewis*, ___ F.3d ___, 2007 U.S. App. LEXIS 16922 (11th Cir. 2007) (en banc) (discussing distinction between waiver, which is an express relinquishment of something, and forfeiture, which is a mere failure to assert something - and recognizing that things that are forfeited, rather than waived, should be reviewed on appeal). And, in considering whether there was plain error, this fact is crucial: the government does not even suggest that Governor Siegelman is wrong on the merits of the limitations issue. So, even if there were a forfeiture on the limitations issue, reversal would still be required.

## II.    WHETHER THE OBSTRUCTION OF JUSTICE CHARGE EXCEEDED THE SCOPE OF THE CHARGING STATUTE RAISES A SUBSTANTIAL QUESTION

The government's argument regarding Count Seventeen ignores the Second Superseding Indictment, the facts presented at trial, the verdict, and the law. In its brief, the government states:

> Young and Bailey both testified at trial that defendant, Paul Hamrick, and Bailey had for many years an "absolute pay-for-play" agreement with Young, whereby Young would give them things of value and in exchange defendant would exercise official discretion to benefit Young's business interests.

6

(Government Opposition, p. 7)

The government fails to acknowledge that the jury *rejected* the government's theory of a sweeping "absolute pay-for-play" agreement between Young and Governor Siegelman.  In fact, the jury rejected all charges which in any way referenced or related to Lanny Young (including Counts Two, Ten, Eleven, Twelve, Thirteen, Fourteen, and Sixteen) *except* Count Seventeen.  The government, as it did at sentencing, attempts to *broaden* the scope of Count Seventeen well beyond the $9,200 that is expressly referenced in this count.  And, the government argues as if the jury had accepted rather than rejected the government's allegation regarding a sweeping "pay-for-play" conspiracy between Governor Siegelman and Young.

The government argues that Governor Siegelman was "Bailey's supervisor and Bailey testified that he was executing defendant's commands by engaging the October 16, 2001 transaction." (Government Opposition, p. 11)  Bailey never said any such thing.  Bailey never testified that Siegelman coerced, commanded, or otherwise ordered him to engage in the October 16, 2001 transaction, and Bailey never testified that he was misled about this transaction.  Quite the contrary, Bailey testified that he knew exactly what

he was doing: he was trying to cover up the initial $9,200 given to him by Young.

Bailey, as a willing and knowing participant in the October 16, 2001 transaction, cannot possibly meet the elements of 18 U.S.C. §1512(b)(3). So, the government is forced to employ the feeble argument that Siegelman violated the statute in dealing with Bailey's counsel, George Beck. However, the government presented *no evidence* that Governor Siegelman ever spoke to or communicated with Beck. Beck did not testify, he was never identified as a potential witness, and the government never interviewed Beck. More importantly, the government presented *no evidence* that Governor Siegelman believed that Beck "might communicate with federal authorities." This is a required element. *United States v. Guadalupe*, 402 F.3d 409, 412 (3rd Cir. 2005); *United States v. Veal*, 153 F.3d 1233, 1251 (11th Cir. 1998); *United States v. Ronda*, 455 F.3d 1273 (11th Cir. 2006).

Beck, as Bailey's agent, was *not* an independent witness who was interacting with federal investigators. Beck was acting as Bailey's attorney. Bailey had full knowledge of the transaction, hence so did Beck. The government's suggestion that Bailey's lawyer was the target of the obstruction cannot save this charge.

8

The government strains to salvage Count Seventeen by repeatedly referring to Bailey's check for $2,973.95 and the bill of sale as false or misleading documents. The government even pretends that Bailey never purchased this motorcycle: "in truth and fact, Bailey was not purchasing an interest in defendant's motorcycle." (Government Opposition, p. 11) Contrary to these representations, Bailey purchased the motorcycle, obtained title in his name, sold the motorcycle to a third party, transferred title to the new owner, and kept all of the proceeds. Only in the government's world does this transaction *not* constitute sale of the motorcycle.

The government presented no evidence of any "tampering" in the sense of either "corruptly persuading" or "misleading conduct." And, in his prior brief, Governor Siegelman demonstrated that §1512(b)(3) is not an all-purpose statute, but one with precise words that have precise meanings. Responding to this point, the government claims that this Circuit's precedents conclusively refute the argument. (Government Opposition, p. 10; *Id.* at 6, citing *U.S. v. Ronda*, 455 F.3d 1273 (11th Cir. 2006); *U.S. v. Veal*, 153 F.3d 1233 (11th Cir. 1998); and *U.S. v. Shotts*, 145 F.3d 1289 (11th Cir. 1998)). A review of those cases shows that this Court has *not* rejected the contention that other courts have accepted – the contention, again, that

9

this statute requires tampering of a particular sort, rather than a general cover-up of the sort that the government claims to have proven.

The primary issue that this Court addressed in *Ronda*, regarding the scope of this statute, was not at all the same as the question involved here. The question in *Ronda* was whether the government had been proven that defendants were obstructing a *federal* investigation (as opposed to merely obstructing a *state* investigation). *Ronda*, 455 F.3d at 1284-88. The issue in *Ronda* was whether there was a "federal nexus," not the scope of the prohibited conduct of "tampering."[2]  In short, *Ronda* does not represent a holding or even really any dicta by this Court about the issue presented here.

*Shotts*, too, does not dispose of this issue as the government would hope.  The issue in *Shotts*, regarding this statute, was about the word "corruptly."  *Shotts*, 145 F.3d at 1299-1301.  There was plainly evidence of *persuasion* by the defendant in that case, as cited in the opinion, *Id.* at 1301, so the question of corruptness was the key.  In this case, by contrast, there was simply no "persuasion" of Bailey, and certainly no "corrupt" persuasion.  The government pretends that *Shotts* disposed of this issue, but

---

[2] There was, in *Ronda*, also a jury-instruction issue that touched on the obstruction statute, in the sense of asking whether there could be a conviction for obstruction where there was not in fact a federal crime actually committed. *Ronda*, 455 F.3d at 1288-91.  That question, too, is completely different from the question presented in this case.

it plainly did not. The issue remains substantial, based on the authorities cited in Governor Siegelman's prior motion.

This leaves *Veal*, and *Veal* too does not refute Governor Siegelman's argument as the government claims. In fact, one of the main distinguishing factors between this case and *Veal* underscores why the issue here is a substantial one. The crucial point is this: the defendants in *Veal* misled state investigators. Their behavior thus came within this statute, because those state investigators constituted "persons" within the meaning of the obstruction statute, who could be misled in a way that would interfere with a federal investigation. That is what this particular statute criminalizes, in terms of "misleading."

Thus the government's reliance on *Veal* is misplaced. This Court in *Veal* did not reject other courts' conclusions about the limited scope of the statute. This Court did not hold that every effort to confound investigators is covered by this statute. This Court instead looked at the precise language of the statute, and found that the facts of *Veal* came within it, because misleading state investigators was covered by the prohibition against misleading "another person." Contrary to the government's contention in this case, *Veal* is not at all on point here.

11

In this case, even if one takes the government's evidence as far as it can possibly go, the only people who were to be misled here were federal investigators themselves. But that is not what this statute covers. It covers (in terms of misleading) *misleading others* into giving false information to federal authorities. The government presented no evidence that Governor Siegelman misled "others." As discussed above, the government's reliance upon George Beck, Bailey's attorney, is misplaced.

This Court does not yet have to decide that Governor Siegelman is right in these contentions. The Court needs only to realize that the question is more substantial than the government is willing to admit, and that if the Court ultimately accepts Governor Siegelman's argument, then reversal must follow.

## III. THE LOWER COURT'S FAILURE TO REQUIRE EXACTING EXPRESS QUID PRO QUO PROOF TO SUPPORT THE BRIBERY-TYPE CONVICTIONS ON ISSUE ADVOCACY CAMPAIGN CONTRIBUTIONS RAISES A SUBSTANTIAL QUESTION

A "substantial question" plainly exists as to whether the realities of contributions in our political system and the associated requisite exacting express quid pro quo principles recognized by *McCormick*[3] and its progeny apply to other similar federal statutes when political contributions are

---

[3] *McCormick v. United States*, 500 U.S. 257 (1991).

involved. Logic dictates that *McCormick*'s exacting express quid pro quo restraints *must* apply to other statutes because this proof mechanism is the only way to ensure that prosecutors do not criminalize legitimate political contributions and that juries properly distinguish between legitimate political contributions and bribery.[4]

### A.    The Bribery-Type Honest Service Convictions

The Seventh Circuit in *United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993) has already recognized that the principles of *McCormick* apply to bribery-type charges based upon political contributions. This Court cited *Allen* approvingly in *Davis II. Id.* at 108.

The government does not adequately explain why it specifically referred to the type of *honest services charges* in this case as *bribery-type* honest services charges ("the paradigm" type of honest services charge),[5] but then attempted to prove a *gratuity-type* honest services charge at trial. Similarly, the government does not dispute or discuss Governor Siegelman's point that the alleged bribery-type *conduct underlying* the §1346 bribery-type *honest services charges* and the §666 *federal bribery* charges is the

---

[4] *United States v. Davis*, 967 F.2d 515, 521-22 (11th Cir. 1992) ("*Davis I*"); *United States v. Davis*, 30 F.3d 108 (11th Cir. 1994).
[5] *United States v. deVegter*, 198 F.3d 1324, 1327-26 (11th Cir. 1999); *United States v. Lopez-Lukis*, 102 F.3d 1164, 1165 n.1 (11th Cir. 1997).

13

exact same conduct: political contributions to Governor Siegelman's education lottery campaign.

The government does not dispute or discuss Governor Siegelman's argument that the *honest services jury instruction* provided under the lower court's "*Sawyer* charge" is a *gratuity-type honest services jury instruction* and uses the charging term "*as a result of*" that is a *gratuity-type* jury charge, rather than a *bribery-type* jury charge for the *paradigm bribery-type honest services charges in the Indictment.*[6]

The government fails to acknowledge that the facts, as alleged by the government, constitute a bribe, or no crime at all. Either Governor Siegelman and Richard Scrushy reached an explicit express agreement to exchange a seat on the CON Board for $500,000, or they committed no crime at all. There is no room, based on the facts presented by the government, for the government to allege a *gratuity-type* honest services violation in this case. The government *charged* Siegelman and Scrushy with bribery, but *convicted* the defendants using *gratuity-type* jury instructions. This conclusion is inescapable, and, as a matter of law, unsustainable.

---

[6] Indeed, the government does not dispute that the honest services jury instruction does not include any type of quid pro quo jury charges or that gratuity-type charges, as specifically recognized by the Supreme Court in *United States v. Sun-Diamond*, 526 U.S. 398, 404 (1999) do not require quid pro quo type proof as do bribery-type charges. *Id.*

14

The government's argument that the First Circuit *Sawyer* cases even hold that honest services charges may *in all instances* be proved by *gratuity-type charges* is wrong. The First Circuit in *Sawyer II* itself specifically recognizes that *Sawyer I* simply "expanded" the "category" of honest services type cases to include gratuity-type cases, as opposed to the other "category (1) quid pro quo bribery" type case that requires exacting proof of "intent to effect *specific quid pro quo*." *United States v. Sawyer*, 239 F.3d 31, 41 (1st Cir. 2001). (emphasis added).

Given *Sawyer II*'s above characterization of *Sawyer I*, the government was careful not to dispute or discuss its own specific characterization of *Sawyer* in the *Potter* First Circuit case (previously cited by Governor Siegelman) in which the government distinguished *Sawyer* from the case before the court in *Potter* by characterizing *Sawyer I* "as an honest services wire fraud case dealing with *gratuities, whereas* [as here] *the case before the Court concerns an alleged quid pro quo bribery scheme*." *United States v. Potter*, 2005 WL 2367677, at *7 (D.R.I. Sept. 27, 2005). *affirmed, United States v. Potter*, 463 F.3d 9 (1st Cir. 2006).

Likewise, the government's effort to re-characterize this case as an alternative legal theory "non-disclosure" of material information type of case is inconsistent with the government's previous characterization of this case

as a "paradigm" bribery-type honest services case. As similar to the First Circuit's recognition of different types of "categories" of honest services cases, material non-disclosure type honest services cases are just another "category" of honest services cases that the government did not charge in this case.

Even if the government had charged this case under such an alternative legal theory, this would not save the honest services convictions from the error associated with the lower court's failing to provide an express quid pro quo jury instruction for the charges involving "campaign contributions."[7]

Indeed, this Court in *United States v. Martinez*, 14 F.3d 543, 553-54 (11th Cir. 1994), held that an alternative legal theory will not save the legal defect of a jury instruction failing to provide a quid pro quo instruction.

> The government concedes that the district court failed to instruct the jury on the [*McCormick*] *quid pro quo* requirement. It argues, however, that if such an omission was error, we may still affirm Martinez's conviction because [the government's alternative legal theory]....does not implicate the *quid pro quo* requirement. We reject this argument because, as Martinez points out, an alternative legal theory on which to base a conviction does not save the legal defect in the instruction.....*United*

---

[7] The honest services jury instructions even specifically referenced "campaign contributions" with no quid pro quo jury instruction, much less an express quid pro quo instruction to the jury.

16

> *States v. Heller*, 830 F.2d 150, 155-56 (11th Cir.
> 1987) (conviction reversed where one of the two
> theories is defective, even though evidence exists
> to support guilt under the non-defective
> government argument). Thus, even if an alternative
> theory existed to support Martinez's conviction,
> the legal defect in the jury instruction requires
> reversal. (emphasis in original).

*Id.*[8]

Furthermore, although the *Martinez* case is controlling on this issue, the government concedes "[t]o be sure" the non-disclosure alternative legal theory cases it cited "did not involve a campaign contribution."[9] Moreover, the government is just plain wrong for trying to distinguish this point on the basis there were no campaign contributions in this case. The government referred to the payments for the education lottery throughout the hearings as campaign contributions, and "campaign contributions" were specifically included in the bribery-type honest services jury instructions. Indeed, the issue advocacy type campaign contributions involved in this case are even more sacred than campaign contributions for individual campaigns for election. See, *Wisconsin Right to Life*, at **23-25.

---

[8] The material non-disclosure alternative honest services legal theory would not be a valid legal theory in this case because the evidence would show there were no violations of a duty to disclose the political contributions.
[9] Government Opposition, p. 23.

Finally, the government represented to the lower court, and has now represented to this Court, there is "no case from this or any other circuit requiring a *specific quid pro quo* instruction in a §1346 prosecution." (Government Opposition, p. 25)  Yet, significantly, the First Circuit in *Sawyer II* specifically referred to the requisite proof for a bribery-type honest services charge as the exacting proof of "intent to effect *specific quid pro quo*." *Sawyer II*, at 41.

Further, the district court in Governor Ryan's §1346 honest services case in Illinois acknowledge Governor Ryan's argument that: "the quid pro quo requirement should apply with equal force to an [§1346 honest services] intangible rights prosecution based on campaign contributions for the same reason it applies to bribery and extortion: without such a requirement, any campaign contribution might constitute a violation of criminal law." *Cf. Allen*, 10 F.3d 405, 411 (7th Cir. 1993) ('Accepting a campaign contribution does not equal taking bribe unless the payment is made *in exchange for* an *explicit* promise to perform or not perform an official act." *United States v. Ryan*, 2005 WL 2367765, *3 (N.D. Ill. Sept. 23, 2005). (emphasis in original).

The district court agreed and held the government must "prove an *explicit* quid pro quo" for the "honest services mail fraud" charges, as here, in "the campaign context." *Id.* at 5.

## B. The Conspiracy to Violate Bribery-Type Honest Services Convictions

The government claims that "Nowhere does he [Governor Siegelman] assert that a substantial question is present as to his conviction on Count 5 (conspiracy)." (Government Opposition, p. 5) On the contrary, Governor Siegelman repeatedly argued that "substantial questions" as to Count Five exist for the same reasons that there are "substantial questions" for the Counts Six through Nine bribery-type honest services fraud convictions. See, *e.g.*, Siegelman Motion For Release Pending Appeal, pp. 43, 44 n. 62 and 44-45 n. 63.

Indeed, the law is well-settled that where, as here, the objective of a conspiracy (here to commit bribery-type honest services fraud) does not constitute a substantive crime (bribery-type honest services fraud) that will survive reversal, an alleged conspiracy to engage in the substantive crime fails as well. *Torwood DBC v. Dick*, 810 F.2d 925, 927-28 & n.2 (10th Cir. 1987).

For these reasons, as with the other counts, the government has exaggerated the strength of its position on the "honest services" charges.

The issues as to those charges, like the other issues on appeal, are "substantial."

### C.    The Federal Bribery Convictions

For the same reasons discussed above, the trial court should have required an exacting proof of an express quid pro quo on the Count Three federal bribery charge.    Indeed, the Seventh Circuit in *Allen* (cited approvingly by this Court in *Davis II*) specifically recognizes that the principles of *McCormick* that require the exacting proof of an express quid pro quo extortion also apply to bribery-type political contribution.

The government was careful not to discuss *United States v. Ford*, 435 F.3d 204, 210 (2d Cir. 2006), cited by Governor Siegelman, since the Second Circuit found in that case that the §666 federal bribery statute is "patterned after" the §201 federal bribery statute *Allen* found to require exacting proof of an express quid pro quo when the charges are based, as here, on political contributions.

Instead, the government restricted its discussion of §666 bribery cases to those that did not involve political contributions. For example, the government cites *United States v. Gee*, 432 F.3d 713, 714 (7th Cir. 2005) for its §666 federal bribery finding that "A *quid pro quo* of money for a specific legislative act is *sufficient* to violate the statute, but it is not *necessary*." The

government fails to note, however, that the *Gee* case is a §666 federal bribery kickback case that was not based, as here, upon political contributions.

Furthermore, the government's argument that the lower court's instructions to the jury were "harmless error" since the instructions at least included a quid pro quo instruction (as opposed to an express quid pro quo instruction) is without merit. As opposed to the government's desperate argument that the quid pro quo instruction "substantially covered"[10] the express quid pro quo requirement, this Court in *Davis II* has already traveled that road, holding that the *Davis I* panel's finding that the jury instruction was "near enough"[11] to the requisite express quid pro quo proof "outlined in *McCormick*"[12] must be reversed.[13] *Davis II* held that jury instructions must include language to the effect that an "explicit promise," a "specific quid pro quo" must be found by the jury to convict.[14]

---

[10] Government Opposition, pp. 19-20.
[11] *United States v. Davis*, 967 F.2d 516, 522 (11th Cir. 1992).
[12] *Id.*
[13] *Davis II*, 30 F.3d at 108.
[14] *Davis II*, 30 F.3d at 108.

## CONCLUSION

For the foregoing reasons, we respectfully request that this Honorable Court grant this motion and immediately release Governor Don Eugene Siegelman on bond pending the resolution of his appeal.

Respectfully submitted,

David A. McDonald
KILBORN, ROEBUCK & MCDONALD
Post Office Box 832
Mobile, Alabama 36602
Phone:  (251) 434-0045
Fax:  (251) 434-0047
Email:  dam@krmlaw.com

Hiram C. Eastland, Jr.
EASTLAND LAW OFFICES
107 Grand Boulevard
Greenwood, Mississippi  38930
Phone:  (662) 453-1227
Fax:  (662) 453-2808
Email:  eastlanglaw@bellsouth.net

OF COUNSEL:

Vincent F. Kilborn, III
KILBORN, ROEBUCK & McDONALD
Post Office Box 66710
Mobile, Alabama  36606
Phone:  (251) 479-9010
Fax:  (251) 479-6747
Email:  vfk@krmlaw.com

22

Charles Redding Pitt
JOHN D. SAXON, P.C.
2119 Third Avenue North
Birmingham, Alabama  35203
Phone:  (205) 324-0233
Fax:  (205) 324-1583
Email:  rpitt@saxonattorneys.com

Professor G. Robert Blakey
NOTRE DAME LAW SCHOOL*
Kresge Law Library
Post Office Box R
Notre Dame, IN  46556
*For purposes of identification only
Phone:  (574) 631-5717
Fax:  (574) 631-4197
Email:  blakey.1@nd.edu

## WORD COUNT CERTIFICATION

I certify that the word count on this Reply, according to Microsoft Word, is 4,746 words (including footnotes).

_____
David A. McDonald

## CERTIFICATE OF SERVICE

I certify that on September 1st, 2007, I served by mail the foregoing Reply in Support of Governor Siegelman's Motion for Release Pending Appeal upon Louis V. Franklin, Sr., Acting United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104, by First Class Mail, postage pre-paid.

_____
David A. McDonald